UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
AT MEMPHIS

| | |
|---|---|
| **THOMAS JOSEPH BUCK,** | ) |
| Plaintiff–Respondent, | ) ) ) |
| v. | ) Case No. _____ |
| **JANICE J. COMPTON,** | ) ) ) |
| Defendant–Claimant, | ) |

**MEMORANDUM IN SUPPORT OF MOTION TO VACATE ARBITRATION AWARD**

Ms. Compton filed the underlying arbitration against Mr. Buck to recover damages for alleged securities fraud. The Panel awarded her an astronomical sum, $7,526,826, despite her having received approximately $6.5 million in settlement payments prior to the hearing.

For the purposes of this motion, Mr. Buck does not contest whether he engaged in the misconduct alleged by Ms. Compton. Given the narrow standard of review imposed by the Federal Arbitration Act ("FAA"), Mr. Buck understands this is not the time or place to re-arbitrate the merits of Ms. Compton's claims. And he does not do so here.

Nonetheless, the FAA does not permit arbitrators to do what they want with impunity, with no guardrails or standards (*i.e.*, to blatantly exceed their authority and to manifestly disregard well-established and applicable law). No arbitrator is permitted to disregard controlling law of which the parties make them aware. Here, the Panel awarded $7,526,826 by disregarding established law presented to it and exceeding its authority in the process.

The Panel disregarded the absolute six-year time bar of arbitrability (akin to a statute of repose) imposed by FINRA Rule 12206(a). The Panel awarded federal RICO damages despite Mr. Buck having never been criminally convicted of committing securities fraud against Ms.

1

Compton. The Panel also acted contrary to the two-year statute of limitations for actions brought under Indiana's state-law version of RICO.

The Panel awarded interest on damages that it expressly stated, in the Award, that it did not award to Ms. Compton. The Panel also did not offset the $6.5 million Ms. Compton already received from prior settlements related to the conduct at the center of her arbitration, which—as the result of the Award—has the effect of giving her a multimillion dollar, double-recovery windfall.

As will be explained herein, the arbitrators repeatedly exceeded their authority and manifestly disregarded the law. Mr. Buck respectfully requests that the Court vacate the Award and order that a new FINRA panel be appointed to hear the case.

## BACKGROUND

Thomas Joseph Buck was a broker at Merrill Lynch Pierce Fenner & Smith Inc. ("Merrill Lynch") from 1981 to early 2015. (App'x 2, Statement of Claim ¶ 6.) Janice J. Compton and her husband opened accounts with Merrill Lynch and Mr. Buck was assigned to those accounts beginning in 1999. (*Id.* ¶ 15.))

Ms. Compton and her husband divorced in 2009. (*Id.* ¶ 17.) Following a division of assets, Ms. Compton opened Merrill Lynch accounts worth approximately $7 million. (*Id.*) Mr. Buck was assigned to Ms. Compton's accounts. (*Id.*)

In 2015, Merrill Lynch investigated Mr. Buck for possible misconduct. (*Id.* ¶ 7.) Mr. Buck was primarily alleged to have kept certain clients in commission-based accounts (*i.e.*, Merrill Lynch and Mr. Buck received a commission for each trade), when those clients would have been charged less in fee-based accounts (*i.e.*, Merrill Lynch and Mr. Buck received a flat percentage, typically a small percentage of the assets, for managing the account). (*Id.*) Merrill Lynch

terminated Mr. Buck on March 4, 2015, and he became associated with another brokerage firm for a brief period. (*Id.* ¶¶ 7, 39.)

The United States Securities and Exchange Commission ("SEC") initiated a civil-enforcement action against Mr. Buck in October 2017. (*Id.* ¶ 45.) In December 2017, Mr. Buck settled that action for approximately $5.1 million. (*Id.*) The SEC used approximately half of that money to establish a Victims Compensation Fund (the "Fund").[1] (*Id.*) Through a settlement with the Fund, Ms. Compton, the only former customer of Mr. Buck's to apply for payment from the SEC fund, received $946,868. (*Id.*)

In September 2017, the Department of Justice charged Mr. Buck with securities fraud under 18 U.S.C. § 1348 via an Information. (*Id.* ¶ 44; App'x 1, Information.) Ms. Compton was not a named victim of the Information. (*See generally* App'x 1, Information; App'x 5, Claimant's Prehearing Brief p. 31-32 (admitting Ms. Compton was not Client A, B, C, as referenced in the Information, and instead was identified as "Client D" during sentencing proceedings).) Mr. Buck pled guilty on January 18, 2018 with regard to Clients A, B, and C only. (App'x 2, Statement of Claim ¶ 44.)

On July 31, 2020, Ms. Compton filed a Statement of Claim with the Financial Industry Regulatory Authority ("FINRA") against Merrill Lynch and Mr. Buck. (*See generally id.*) Ms. Compton alleged that, from 2009 through 2014, Merrill Lynch and Mr. Buck made specific unauthorized, unsuitable, and excessive trades that constituted securities fraud. (*Id.* ¶¶ 22-29 (Ms.

---

[1] "When the SEC brings a successful enforcement action, the court or the SEC may order a wrongdoer to disgorge (give up) the ill-gotten gains resulting from the illegal conduct. The disgorged funds may be distributed to investors who were harmed by securities law violations." *U.S. Securities and Exchange Commission*, available at https://www.sec.gov/oiea/investor-alerts-bulletins/ib_recovermoney.html (last accessed May 27, 2022).

Compton listing allegedly specific fraudulent trades); App'x 4, Mot. to Dismiss, Ex. 3 (Ms. Compton identifying allegedly fraudulent trades).

In her FINRA arbitration, Ms. Compton alleged five causes of action against Merrill Lynch and Mr. Buck: violation of the Indiana Corrupt Business Influence Act ("ICBIA") through a pattern of racketeering, Ind. Code § 34-2-2-6 *et seq.*;[2] violation of the federal Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961 *et seq.*; civil recovery under Indiana's Crime Victim Statute; breach of fiduciary duty; and fraud.   (App'x 2, Statement of Claim ¶¶ 46-53, 61-86.)   Ms. Compton also alleged a cause of action against Merrill Lynch for negligent supervision, asserting, in essence, that it knew, or should have known, of Mr. Buck's purported misconduct, did not stop it, and benefitted from it.  (*Id.* ¶¶ 46-91.)

Before the arbitration hearing began, Mr. Buck moved to dismiss, as untimely, Ms. Compton's claims that predated the six-year arbitration eligibility bar established by FINRA Rule 12206(a), (*i.e.*, claims based on trades occurring prior to July 31, 2014).  (App'x 4, Mot. to Dismiss, Ex. 3.)  The Panel denied the motion just a day after a prehearing conference on the motion.  (App'x 6, Award, p. 3.)

Ms. Compton and Merrill Lynch settled prior to the arbitration hearing.  (App'x 5, Claimant's Prehearing Brief, p. 40.)  Merrill Lynch paid Ms. Compton $5,500,000 and excluded Mr. Buck from the mediated settlement.  (*Id.*)

The Panel conducted an in-person arbitration hearing in Memphis and entered the Award on May 6, 2022.  (App'x 6, Award.)  The Panel awarded Ms. Compton $7,526,826.  (*Id.*, p. 3.)  That amount consisted of four components, as follows:

---

[2] The parties agreed that Indiana law governed their dispute (*See* App'x 2, Statement of Claim ¶¶ 46-60, 67-71 (bringing claims under Indiana law); App'x 5, Claimant's Prehearing Brief, p. 23 n.18 (stating Ms. Compton "will be traveling under Indiana law at the hearing").)

4

- $770,269 in "compensatory damages."

- $1,860,144 of "interest" on "well-managed damages," but without an actual monetary judgment for well-managed damages:

    > Respondent Thomas Joseph Buck is liable for and shall pay to Claimant interest on the well managed damages amount of $5,812,948.80, which represents 80% of the overall loss value of the accounts requested by Claimant, at the rate of 8% per annum from March 25, 2018, through and including March 25, 2022. The total interest awarded is $1,860,144.00. Please note that the Panel is not awarding the well-managed damages amount of $5,812,948.80. It is only basing its interest calculations on the amount of well-managed damages.

- $2,310,806 in "treble damages" under the ICBIA and federal RICO; and

- $2,585,2320 in "attorneys' fees" under the ICBIA and federal RICO.

(*Id.*)

Mr. Buck timely filed and served this motion to vacate the Award. 9 U.S.C. § 12 (requiring filing and service of motion to vacate "within three months after the award is filed or delivered").

## JURISDICTION AND VENUE

The Court has diversity jurisdiction over this proceeding pursuant to 28 U.S.C. § 1332(a). The amount in controversy, exclusive of interest and costs, exceeds $75,000. Mr. Buck is a citizen of Florida, and Ms. Compton is a citizen of Tennessee, so the parties are completely diverse. Pursuant to 9 U.S.C. § 9, venue lies in this district because the award was made here.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") controls the review of the Award because the arbitration provision between the parties involves interstate commerce. 9 U.S.C. §§ 1-3. Under the FAA, a court may vacate an arbitration award when, among other reasons, "the arbitrators exceeded their powers or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." *Id.* § 10(a)(4).

An arbitrator exceeds his or her powers if "the arbitrator acts outside the scope of his contractually delegated authority—issuing an award that simply reflects his own notions of economic justice." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013) (cleaned up). "[A]n award must be vacated if it is based upon 'general considerations of fairness and equity rather than the exact terms of the agreement.' " *Farley v. Eaton Corp.*, 701 Fed. App'x 481, 486 (6th Cir. 2017) (quoting *Beacon Journal Publ'g Co. v. Akron Newspaper Guild, Local No. 7*, 114 F.3d 596, 599 (6th Cir. 1997)).

Further, § 10(a)(4) "allows an arbitration award to be vacated if it was made in manifest disregard of the law." *In re Romanzi*, 31 F.4th 367, 375 (6th Cir. 2022) (quotation omitted). "An arbitration panel acts with manifest disregard if (1) the applicable legal principle is clearly defined and not subject to reasonable debate; and (2) the arbitrators refused to heed that legal principle." *Dawahare v. Spencer*, 210 F.3d 666, 669 (6th Cir. 2000).

## ARGUMENT

I.  **The Panel exceeded its authority and manifestly disregarded the law by hearing claims that predate the six-year eligibility bar established by Rule 12206(a).**

The Panel exceeded its authority by denying Mr. Buck's motion to dismiss and hearing claims based on transactions that, by Ms. Compton's own admission, occurred prior to July 31, 2014 (six years before Ms. Compton filed her statement of claim on July 31, 2020) (App'x 4, Mot. to Dismiss, Ex. 3). FINRA Code of Arbitration Rule 12206(a) establishes a six-year limitation on eligibility: "No claim shall be eligible for submission to arbitration under the Code where six years have elapsed from the occurrence or event giving rise to the claim."

6

The Sixth Circuit has held that Rule 12206(a)[3] "is a substantive temporal limitation on the parties' agreement to contract and as such is not subject to tolling." *Ohio Co. v. Nemecek*, 98 F.3d 234, 237 (6th Cir. 1996). The six-year limitation is jurisdictional. *Id*. at 238. Equitable doctrines such as fraudulent concealment and the discovery rule therefore do not apply. *Id.* at 235 & 238 (rejecting argument that "the running of the six-year eligibility period was tolled until discovery of the misconduct"); *see also Dean Witter Reynolds, Inc. v. McCoy*, 853 F. Supp. 1023, 1030–31 (E.D. Tenn. 1994), *aff'd*, 70 F.3d 1271 (6th Cir. 1995) ("The date of the occurrence or event does not under any circumstances depend on the date when the aggrieved investor first discovers that he or she has suffered a financial loss.").[4] Consistent with the Sixth Circuit's holding in *Nemecek*, in 2017 a FINRA arbitration panel held the rule

> serves as an absolute bar to claims submitted for arbitration more than six years after the event which gave rise to the dispute. As an absolute bar, [Rule 12206(a)] does not depend on when Claimant supposedly became aware of his claims, as the date of the occurrence or event does not under any circumstances depend on the date when the aggrieved investor first discovers that he or she has suffered a financial loss.

(App'x 3, Ans. to Statement of Claim, Ex. 1, *Cordero v. Merrill Lynch, et al.*, FINRA Case No. 17-00449, at p. 3 (Sept. 2017).)

---

[3] The Sixth Circuit interpreted New York Stock Exchange Rule 603, which is a predecessor rule to FINRA's Rule 12206(a).

[4] In *Nemecek*, the Sixth Circuit decided in the first instance whether the plaintiff's claims were time barred under the predecessor to Rule 12206(a). *Id*. Since *Nemecek*, the Sixth Circuit has held that the authority to make that decision regarding eligibility rests, in the first instance, with the arbitrator. *See Smith v. Dean Witter Reynolds, Inc.*, No. 02-6158, 2004 WL 1859623, at *1 (6th Cir. Aug. 18, 2004) (holding that gateway question of whether predecessor to FINRA Rule 12206 time bars claims lies with the arbitrator). However, *Nemecek's* holding that Rule 12206(a) is not subject to equitable tolling has never been overruled and remains controlling law.

Prior to rendering its decision on Mr. Buck's motion to dismiss, the Panel was presented with applicable law, which was repeated during a prehearing conference with the arbitrators. (*See generally* App'x 4, Mot. to Dismiss.) By allowing Ms. Compton to pursue claims predating July 31, 2014, the Panel ignored controlling law. The Award should be vacated.

**II.     The Panel exceeded its authority and manifestly disregarded the law because Ms. Compton's claims do not fall within RICO's "conviction exception" for securities fraud.**

The Panel exceeded its authority and manifestly disregard the law because Ms. Compton's RICO claims do not fall within the "conviction exception" for securities fraud.

To prove RICO liability, a plaintiff must prove, *inter alia*, the existence of sufficient "predicate acts." *Vemco, Inc. v. Camardella*, 23 F.3d 129, 133 (6th Cir. 1994). Through the Private Securities Litigation Reform Act of 1995 ("Reform Act"), Congress eliminated securities fraud as a RICO predicate act except where the defendant has been criminally convicted for securities fraud based on the same conduct that formed the basis for the conviction. 109 Stat. 737, 758 § 107 (Dec. 22, 1995); *see also Rowe v. Marietta Corp.*, 955 F. Supp. 836, 844 (W.D. Tenn. 1997) ("Clearly, Congress intended § 107 to remove as a predicate to RICO conduct that would otherwise be actionable as fraud in the purchase or sale of securities.")). RICO thus now provides that

> no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962. The exception contained in the preceding sentence does not apply to an action against any person that is criminally convicted in connection with the fraud, in which case the statute of limitations shall start to run on the date on which the conviction becomes final.

18 U.S.C. § 1964(c).

Mr. Buck has never been criminally convicted "in connection with the [alleged] fraud" against Ms. Compton. Ms. Compton was not a named victim of the Information. (*See generally*

8

App'x 1, Information.) Mr. Buck pled guilty only in connection with his alleged criminal conduct pertaining to three persons *other* than Ms. Compton.

While the securities fraud to which Mr. Buck pled guilty against other persons may have been similar in nature to the alleged conduct involving Ms. Compton, that does not mean Ms. Compton's claims fall within the conviction exception. Pursuant to the plain language of § 1964(c), the conviction exception applies only to a person criminally convicted "in connection with *the* fraud"—that is, the fraudulent conduct for which the defendant was actually convicted.

As mandated by the plain language of the statute, courts apply the statute in this manner. *See Krear v. Malek*, 961 F. Supp. 1065, 1077 (E.D. Mich. 1997) ("Unless the plaintiffs are named victims of the scheme to defraud in the information, this court cannot find that they have been criminally defrauded and are thereby entitled to invoke the 'conviction exception.' To hold otherwise would allow the anomalous situation of permitting a plaintiff who was not criminally defrauded and who would not otherwise be entitled to bring a civil RICO action to, in fact, bring such an action simply because he claims to be part of an alleged [securities fraud] scheme."); *In re Enron Corp. Sec. Deriv. & ERISA Litig.*, 284 F. Supp. 2d 511, 623 (S.D. Tex. 2003) (agreeing with the court in *Krear* that only plaintiffs who have been found to be criminally defrauded may make use of the exception); *Rogers v. Nacchio*, No. 05 Civ. 60667, 2006 WL 7997562, at *4 (S.D. Fla. June 6, 2006) (agreeing with the analysis in *Krear* that the exception is available only "to those plaintiffs against whom a defendant has specifically been convicted of criminal fraud"), *aff'd in part, appeal dismissed in part*, 241 Fed. App'x 602 (11th Cir.2007); *Kaplan v. S.A.C. Cap. Advisors, L.P.*, 104 F. Supp. 3d 384, 391 (S.D.N.Y. 2015) (holding that discussion of a victim during a sentencing proceeding is irrelevant to analysis under conviction exception because "a sentencing court may consider any information concerning the background, character and conduct

of the defendant, including uncharged or acquitted conduct" (citing 18 U.S.C. § 3661; U.S.S.G. § 1B.4 cmt; *United States v. Watts*, 519 U.S. 148, 153-55 (1997)).

Simply put, Mr. Buck never pled that his actions with respect to *Ms. Compton* were a crime. His arbitration answer, submitted to the Panel and made part of the record, explained how "the criminal exception" was inapplicable to Ms. Compton's claim.  (App'x 3, Ans. to Statement of Claim, pp. 11-12.)  The Panel's award of treble damages and attorneys' fees under RICO therefore should be vacated.

**III.   The Panel exceeded its authority and manifestly disregarding the law because the applicable statute of limitations bars Ms. Compton's ICBIA claim.**

The Panel exceeded its authority and manifestly disregarded the law the applicable two-year statute of limitations bars Ms. Compton's ICBIA claims.

Indiana Code Annotated § 34-11-2-4(a)(3) provides that "[a]n action for . . . injury to personal property must be commenced within two (2) years after the cause of action arose."  A claim brought under the ICBIA is an action for injury to personal property.  *Branham Corp. v. Newland Res., LLC*, 17 N.E.3d 979, 987, 991-92 (Ind. Ct. App. 2014) (applying two-year statute of limitations to ICBIA claim and affirming grant of summary judgment because claims "could have been timely pursued" but "were not").[5]

"Under Indiana's discovery rule, a cause of action accrues, and the limitation period begins to run, when a claimant knows or in the exercise of ordinary diligence should have known that an injury had been sustained as a result of the tortious act of another."  *Branham*, 17 N.E.3d at 987

---

[5] Before the Panel, Ms. Compton argued that the *Branham* court's application of the two-year statute of limitation is nonbinding dicta because "[t]he parties agree[d] that the two-year statute of limitation" was applicable, *Branham*, 17 N.E.3d at 987.  Ms. Compton is incorrect, however, because the *Branham* court held that the plaintiff's claims were not "timely pursued" and "the trial court properly granted summary judgment to the defendants on statute of limitations grounds."  *Id.* at 991.

(Ind. Ct. App. 2014). Ms. Compton asserted she discovered Mr. Buck's alleged misconduct shortly after March 2015 when Merrill Lynch terminated his employment. (App'x 2, Statement of Claim ¶ 96 ("[Ms. Compton] did not and could not reasonably have discovered her claims until sometime after Buck's termination."); *id.* ¶ 97 ("Here, the earliest event/occurrence giving rise to all but one of Janice's own claims was her discovery of Buck's fraud following his termination in March of 2015.").)

Under Indiana law, Ms. Compton's claims therefore arose, at the latest, in 2015. Indiana law required Ms. Compton to bring her ICBIA claim within two years (i.e., no later than 2017). She filed her arbitration statement of claim three years too late—in 2020. Mr. Buck's arbitration answer, submitted to the arbitration panel and made part of the record, clearly set forth the applicable statute of limitations. (App'x 3, Ans. to Statement of Claim, pp. 10-11.) The Panel's award of treble damages and attorneys' fees under the ICBIA therefore should be vacated.

**IV. The Panel exceeded its authority and manifestly disregarded the law by awarding interest on a nonexistent monetary judgment.**

The Panel awarded $1,860,144.00 of "interest on the well-managed damages amount of $5,812,948.80." (App'x 6, Award, p. 3.) The Panel, however, expressly stated it "is not awarding the well-managed damages amount of $5,812,948.80." (*Id.*) In other words, the Panel awarded prejudgment interest on a nonexistent monetary judgment.

By definition, interest cannot be assessed in the absence of a corresponding monetary judgment. Ind. Code Ann. § 34-51-4-7 ("The court may award prejudgment interest as part of a judgment."); *Blinzinger v. Americana Healthcare Corp.*, 505 N.E.2d 449 (Ind. Ct. App. 1987) (reversing interest reward because there was no "money judgment" by the trial court on which to award interest); *Lincoln Diagnostics, Inc. v. Panatrex, Inc.*, 2009 WL 3010840, at *12 (C.D. Ill. Sept. 16, 2009) ("Because no damages have been awarded, there is also no basis for awarding

11

prejudgment interest."); *Olivares v. Brentwood Indus.*, 2015 WL 13658070, at *2 (W.D. Ark. Apr. 13, 2015) ("Olivares is not entitled to any other compensatory damages, so there is no damages award upon which to base an award of prejudgment interest."); *Davis v. Standefor*, No. CV088056PSGJTLX, 2009 WL 10672743, at *2 (C.D. Cal. July 30, 2009) ("As no damages were awarded on the state law causes of action, there is no prejudgment interest to be had on these claims.").

What the Panel did is akin to a court awarding interest despite the jury having returned a verdict of $0. That makes no sense on its face. There can be "no reasonable debate" on this point. *See Dawahare*, 210 F.3d at 669. It is precisely the kind of "outrageous circumstance" that warrants vacating the Award. *In re Romanzi*, 31 F.4th at 375.

V. **The Panel exceeded its authority and manifestly disregarded the law by not offsetting the approximately $6.5 million in settlement payments Ms. Compton already received.**

The Panel failed to offset from the awarded damages the $6,446,868 that Ms. Compton already received from settlements with Merrill Lynch and the SEC Fund. (App'x 2, Statement of Claim ¶ 45; App'x 5, Claimant's Prehearing Brief, p. 40.) During the arbitration, Ms. Compton expressly conceded that the $6,446,868 in prior settlement payments should be offset from any award: "Ms. Compton recognizes that these settlements should be deducted out of her claim for compensatory damages." (App'x 5, Claimant's Prehearing Brief, pp. 3, 40; *see also* App'x 2, Statement of Claim, ¶ 45 n.19 (Ms. Compton stating her damages sought are subject to "a credit for the amount she has already recovered from the SEC Victim's Fund").)

Ms. Compton's concession was consistent with Indiana law, which mandates offset to account for prior settlement payments. *See Shelton v. Kroger Ltd. P'ship I*, 58 N.E.3d 229, 232 (Ind. Ct. App. 2016) ("Indiana courts have traditionally followed the one satisfaction principle.

12

By this we have meant that courts should take account of settlement agreements and credit the funds received by the plaintiff through such agreements, *pro tanto*, toward the judgment against a co-defendant."); *Palmer v. Comprehensive Neurologic Servs., P.C.*, 864 N.E.2d 1093, 1100 (Ind. Ct. App. 2007) ("A trial court has the power and duty to reduce jury verdicts by amounts received in settlement to ensure that a plaintiff not receive more than a full recovery."). In the absence of an offset, Ms. Compton would receive more than a full recovery of her damages, which Indiana law does not permit.

Here, the Panel did not follow the clearly defined legal principle requiring that the prior settlements be offset from Ms. Compton's damages. The Panel failed to offset the SEC Fund and Merrill Lynch settlement payments despite Ms. Compton's concession that these settlements should be deducted out of her claim for compensatory damages. (App'x 5, Claimant's Prehearing Brief, p. 3, 40.)

**VI.    The proceedings should be remanded to a new arbitration panel.**

If the Court vacates any part of the Award, which was a final award resolving all issues presented for adjudication, it should remand the proceedings to a new arbitration panel.

The Panel that issued the final Award no longer exists under the doctrine of *functus officio* and is not allowed under law to have any further role in relation to the dispute. *See In re Romanzi*, 31 F.4th at 376 ("The doctrine of *functus officio* prohibits an arbitrator from reopening a case after 'having performed his or her office'—hence the name." (quoting BLACK'S LAW DICTIONARY 815 (11th ed. 2019)); *Am. Intl. Specialty Lines Ins. Co. v. Allied Cap. Corp.*, 35 N.Y.3d 64, 71 (2020) ("Functus officio, Latin for "having performed one's office" (BLACK'S LAW DICTIONARY 11th ed  2019, *functus officio*), has operated historically as a restriction on

the authority of arbitrators, precluding them from taking additional actions after issuing a final award." (cleaned up)).

## CONCLUSION

For the foregoing reasons, Mr. Buck respectfully requests that the Court vacate the Award and remand this case to a new arbitration panel.

Respectfully Submitted,

s/ Salvador M. Hernandez
Salvador M. Hernandez (20121)
Keane A. Barger (33196)
RILEY & JACOBSON, PLC
1906 West End Avenue
Nashville, TN 37203
(615-320-3700
(615) 320-3737 (facsimile)
shernandez@rjfirm.com
kbarger@rjfirm.com

*Counsel for Plaintiff–Respondent*

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing has been served upon the following via the Court's ECF system, U.S. mail, and email:

Niel Prosser
James T. Ritt
Rob Clapper
Kyle Johnson
PROSSER, CLAPPER & JOHNSON PLC
5865 Ridgeway Center Pkwy, Suite 300
Memphis, TN 38120
(901) 820-4433
np@proserlaw.com
jritt@prosserlaw.com
rclapper@prosserlaw.com
kjohnson@prosserlaw.com

*Counsel for Defendant–Claimant*

this 6th day of June 2022.

                                            s/ Salvador M. Hernandez