# EXHIBIT 4



**KAUFMANN
GILDIN &
ROBBINS LLP**
ATTORNEYS AT LAW

767 THIRD AVENUE
NEW YORK NEW YORK 10017
TEL(212) 755-3100
FAX(212) 755-3174
WWW.KAUFMANNGILDIN.COM

Writer's Direct Dial: 212.705.0815
drobbins@kaufmanngildin.com

October 11, 2021

**Via The Portal**

Steeve D. Encaoua
Senior Case Administrator
FINRA Dispute Resolution Services
Southeast Regional Office
Boca Center Tower 1
5200 Town Center Circle – Suite 200
Boca Raton, FL 33486-1017

**Subject: FINRA Dispute Resolution Services Arbitration Number 20-02468**
*Janice J. Compton vs. Merrill Lynch, Pierce, Fenner & Smith Inc. and*
*Thomas Joseph Buck*

**THOMAS J. BUCK'S MOTION TO DISMISS PURSUANT TO RULE 12206**

Dear Mr. Encaoua:

We represent Respondent Tom Buck and this is his Motion to Dismiss all claims that arise out of transactions or occurrences prior to August 2014 because Claimant filed this FINRA arbitration on July 31, 2020 and she did not enter into tolling agreements with Mr. Buck, as she did with Respondent Merrill Lynch. All transactions or occurrences more than six years before that filing on July 31, 2020 are ineligible for FINRA arbitration under Rule 12206(a). This motion does not concern claims against Mr. Buck for transactions or occurrences within six years of the filing as they are subject to arbitration.

We want to make it clear at the outset that this motion assumes for the sake of argument that the substance of all of Claimant's allegations of misconduct – though strongly denied by Mr. Buck and Merrill Lynch – took place and that but for the passage of such a long period of time, those claims *would* be eligible for FINRA arbitration.

In Mr. Buck's October 15, 2020 Answer to the July 31, 2020 Statement of Claim, he stated that this Motion to Dismiss would be made. Now that discovery between Claimant and Mr. Buck has drawn to a close and since Claimant has acquired a supermarket of documents largely from Merrill Lynch (well over 100,000) and other entities. the time is right for this Motion, which we have no doubt will be met with the same vitriolic hyperbole and sanctimonious hubris routinely espoused by her counsel.

Kaufmann Gildin & Robbins LLP

Steeve D. Encaoua
Senior Case Administrator
October 11, 2021
Page 2

But – members of the Panel – here is Claimant's inherent, self-inflicted problem which bolsters Mr. Buck's Motion to Dismiss:

- Claimant's own pre-arbitration writings will compel the arbitrators to bar her claims against Mr. Buck of any alleged misconduct that she states occurred more than six years before the filing of her Statement of Claim.

- Those pre-arbitration writings, by her own hand, surgically delineate the trades that caused her to complain and, years later, to untimely file this arbitration against Mr. Buck and Merrill Lynch.

The post-July 2014 trades (those within six years of the claim being filed) did not result in any loss to Claimant, who received $946,868 from the SEC fund that was financed solely by Mr. Buck. Her counsel to this arbitration wrote the SEC in January 2020 – months before they filed this arbitration – that: "We spoke to Ms. Compton and she was delighted to hear the final distribution number of $946,868. She is willing to accept and passes along her thanks to you and the SEC." (See the email attached to our July 19, 2021 Rule 12507 requests of Claimant, an exhibit to this motion.)

That was in January 2020. It would not be until seven months later - July 31, 2020 – that Claimant filed this FINRA arbitration, which was more than five years after she learned of Mr. Buck's termination from Merrill Lynch in the spring of 2015 and a year-and-a-half after she sat in the courtroom during for Mr. Buck's February 2019 sentencing hearing.

## OUR PREVIEW OF THIS MOTION

The Panel will recall the following from Mr. Buck's Answer on this issue:

### Time-Bar Nature Of The Claims

- "A fair reading of the long Statement of Claim (that has no trading analysis attached but does reference particular bond and equity trading) focuses the reader on trading deemed to be problematic in 2009 through 2013. Mr. Buck and Claimant did not enter into any tolling agreement to extend any applicable statutes of limitation (as Merrill Lynch apparently did)."

- "Let us *assume arguendo* that there is merit to the claims of fraud and other wrongdoing by Mr. Buck with regard to Claimant's Merrill Lynch accounts. Those claims are still time-barred under Indiana law[1]and are ineligible for arbitration

---

[1] Tennessee law does not apply under the legal principle of *lex loci delicti commissi,* which means the law of the place where the tort was committed. The term is commonly shortened to *lex loci delicti.* See:

Kaufmann Gildin & Robbins LLP

Steeve D. Encaoua
Senior Case Administrator
October 11, 2021
Page 3

under FINRA Rule 12206(a), which states that "No claim shall be eligible for submission to arbitration under the Code where six years have elapsed from the occurrence or event giving rise to the claim."

## WHAT FINRA TELLS ITS ARBITRATORS ABOUT MOTIONS TO DISMISS[2]

**Motions to Dismiss**

A motion to dismiss is a request made to the panel by a party—prior to or after the conclusion of the case-in-chief—to eliminate some or all claims raised by the party filing a claim. Under the Code, there are three types of motions to dismiss, each of which will be addressed separately in this Guide:

FINRA Rule 12206(b) Eligibility Motions: Motions to dismiss based on eligibility grounds. These motions are usually made before a party has concluded its case-in-chief.

**FINRA Rule 12206(b) Eligibility Motions**

A respondent may file a motion to dismiss a case because of eligibility under FINRA Rule 12206, which states that no claim shall be eligible for submission to arbitration under the Code where six years have elapsed from the occurrence or event giving rise to the claim.

In addition to stating that the full panel will resolve any questions regarding eligibility of a claim, FINRA Rule 12206 also contains the following procedural requirements:

- A party must file an eligibility motion in writing, separately from the answer, and only after filing the answer.

- A party must file the motion at least 90 days before a hearing, and the other parties have 30 days to respond. Any reply must be made within five days of receipt of a response.

- FINRA staff will forward the eligibility motion and all response papers to the full panel for review...

- Before granting a motion under this rule, the panel must hold a hearing on the record.

---

https://definitions.uslegal.com/l/lex-loci-delicti-commissi/  But, in any case, before the arbitrators now is not whether the Claim is time barred under applicable state statutes, only the FINRA rule of arbitration eligibility.
[2] https://www.finra.org/arbitration-mediation/arbitrators-guide

Kaufmann Gildin & Robbins LLP

Steeve D. Encaoua
Senior Case Administrator
October 11, 2021
Page 4

- If the panel grants an eligibility motion, the decision must be unanimous, and must be accompanied by a written explanation.

- If the panel determines that a claim was filed after the six-year eligibility cut-off and grants the eligibility motion, it cannot rule on any other grounds for dismissal.

The panel determines whether a claim meets the six-year eligibility requirement by reviewing the submissions, pleadings and arguments of the parties. When appropriate, the panel may give the parties a reasonable opportunity to conduct discovery. As with any discovery request, arbitrators have discretion to grant, deny or modify the request.

If the arbitrators have additional questions about the eligibility of the claim, they should ask the parties to brief the issue. The arbitrators may find that there is a continuing occurrence or event giving rise to the dispute. For example, although a customer purchased stock 10 years ago, there are allegations of ongoing fraud starting with the purchase, but continuing to a date within six years of the date the claim was filed.

If the panel dismisses a claim on the grounds of eligibility, the non-moving party may withdraw any remaining related claims without prejudice and may pursue all claims, including the dismissed claim, in court. Before dismissing a claim, however, the arbitrators should carefully consider each party's positions in their moving, response and reply papers and oral arguments, and must hold a hearing on the record. If the panel reaches a unanimous decision to grant the eligibility motion, it should inform FINRA of its ruling promptly and provide a written decision.

**Fees, Costs and Sanctions**

If the panel denies an eligibility motion, the panel must assess forum fees associated with any hearings on the motion against the moving party. If the panel deems that an eligibility motion was frivolous, the panel must award reasonable

**CLAIMANT'S PRE-ARBITRATION WRITINGS ASSERT DISCRETE MISCONDUCT**

Never having complained about Mr. Buck before his March 2015 termination, Claimant began ending emails and detailed trading analyses of his alleged misconduct going back to 2008.

A. On **June 5, 2015,** Claimant wrote to Robert L. Smith, Vice President/Administrative Manager of Merrill Lynch about the trading in her accounts and the commission structure.

B. On **June 11, 2015,** Mr. Smith mailed her a summary report conducted by Capital Forensics, Inc. from November 2008 to February 2015 (shortly before Mr. Buck's

Kaufmann Gildin & Robbins LLP

Steeve D. Encaoua
Senior Case Administrator
October 11, 2021
Page 5

      termination) that showed a positive performance of $11,349,969.85 and that her
      account paid commissions of $1,404,188,02 during that period.   (The more accurate
      profit number was $11,618,577.)

C. Thereafter, discovery shows communications between Claimant and Merrill Lynch
    about her accounts' activity, including a July 27, 2016 letter to Mr. Smith in which
    she delineated her "concerns" to include:

    1. "Of the 1,100+ trades, over 50% were unauthorized per my phone records".

    2. "From *September 16, 2012 until June 24, 2014,* 294 confirmation sheets were not
       mailed (for over 290 trades)."

D. On **November 13, 2017,** Claimant sent an email and transaction analysis to Douglas
    Kistler, who took over her account after Mr. Buck's discharge.  attached as an exhibit
    to this Motion.

    1. The first attachment was called "Bond Transactions in J. Compton Accounts" for
       the period 2009 – 2014. In it she claimed that of the $45,199,671 of bond
       purchases, $26,112,573 were unauthorized.

    2. The second attachment was a chart was entitled Buck's Allocations for Compton
       Accounts for the period Aug. 19, 2009 to Dec. 31, 2014.

E. The next day, **November 14, 2017,** Claimant sent Mr. Smith an email  adding the
    date Nov. 14, 2017 to her analysis of  "Buck's Investment Allocation for J. Compton
    Accounts" and reduced the alleged realized loss amount. attached as an exhibit to this
    Motion [#4].

    1. Attached to her updated analysis was a multi-page spreadsheet of  mutual fund
       and preferred stock/corporate bond transactions from.

    2. In those attachments, she indicated which trades were allegedly unauthorized.

    3. The only transaction listed that was within the six-year period (i.e., after July
       2014) was the purchase of a Blackrock mutual fund which she did not assert was
       unauthorized.

F. **Claimant sent Merrill Lynch a 36 page analysis** attached as an exhibit to this
    Motion [#4], which provided an in-depth analysis of what appears to have been all
    trading activity in her accounts for five years, from December 2009 through
    December 2014.

Kaufmann Gildin & Robbins LLP

Steeve D. Encaoua
Senior Case Administrator
October 11, 2021
Page 6

1. Claimant's analysis was broken down into these categories:

   - Overall Performance by Asset

   - **2009 – 2014 Trades by Asset Allocation**

     ➢ **Stocks** – One page lists such trades after July 2014 [Bates ML-Compton – 00021593]

       Of those 21 trades, 4 are alleged to have been made without any phone call record [3 sales and 1 purchase].

       According to Claimant's analysis, of those 3 sales, two were profitable and one was unprofitable.

     ➢ **Bonds** – One page lists municipal bond trades *after* July 2014 [Bates ML-Compton – 00021597]

       Of those three trades (purchases), two are alleged to have been made without a record of phone calls

       All positions were held by the time of Mr. Buck's termination.

       Another page lists four bond trades after July 2014 [Bates ML-Compton – 00021600]

       Of those four trades, two sales and one purchase were authorized and for one purchase there was no phone record. That purchase was maintained at the time of Mr. Buck's termination.

     ➢ **REITS and Funds** – One page lists a Blackrock Group purchase after July 2014 [[Bates ML-Compton – 00021603]

       According to Claimant, it was an authorized purchase.

     ➢ **Another chart,** entitled "2009 – 2014 Purchases/Sales and Allocation at Beginning/End of Year" specifies no alleged misconduct.

     ➢ **Mutual Funds** – One page lists a Blackrock fund purchased in December 2014; there is no indication that it was allegedly unauthorized. [Bates ML-Compton – 00021608]

     ➢ **Preferred Stocks** – There are no transactions listed after 2013.

     ➢ **"Bond Transactions in J. Compton Accounts"** is the same as the document emailed by Claimant on November 13, 2017 but has a smaller amount of alleged unauthorized bond purchases.

Kaufmann Gildin & Robbins LLP

Steeve D. Encaoua
Senior Case Administrator
October 11, 2021
Page 7

> ➤ **There** were then a few pages, with very small print, entitled **"All Bonds by Purchase Date",** this time from April 2000 through September 2014, with 3 purchases after July 2014. [Bates ML-Compton – 00026161-7]

> ➤ Claimant's last analysis is entitled "**Buck's Performance for Exact Target,"** with all transaction dates limited to 2012.

## OUR ISSUE-SPEECIFIC DISCOVERY REQUESTS AND CLAIMANT'S RESPONSES

To be well-armed for this Motion, in July 2021 we submitted Rule 12507 requests upon Claimant's counsel. With regard to this motion, we wrote Claimant's counsel on July 19, 2021:[3]

To put these requests in context, we seek:

- what your client's damages are
- which trades within the six years prior to the Claim being accepted by FINRA are at  issue
- the tolling agreement with Merrill Lynch
- trades at issue during a certain period of time.

Here are our requests and Claimant's responses:

**Request #1 – What Are Claimant's Damages?**

**"Context:** Many customer attorneys think best practice is to surprise defense counsel with detailed damage calculations just 20 days before the hearing supposedly "in compliance" with Rule 12514(a) – Prehearing Exchange of Documents and Witness Lists, and Explained Decision Requests – which states that:

"At least 20 days before the first scheduled hearing date, all parties must provide all other parties with copies of all documents and other materials in  their possession or control that they intend to use at the hearing that have not already been produced."

This rule is not, however, a "get out of jail free card" for failing to respond to case-specific Rule 12507 requests within 60 days of the discovery requests. One has nothing to do with the other.

---

[3] While the full correspondence is attached, we have excerpted those requests that focus on this Motion.

Kaufmann Gildin & Robbins LLP

Steeve D. Encaoua
Senior Case Administrator
October 11, 2021
Page 8

And when:

1.   Claimant alleges millions and millions of dollars in damages without any specificity and

2.   Claimant is "delighted" in obtaining the final amount of $946,865 from the victim's fund set up with Mr. Buck's money (See attached email),

then we believe it is only fair to know just what … the claimed damages [are] so that we can retain our own expert witness to assist us in defending the claim.

Getting that information on the eve of a hearing would not be fair to either side since there is a chance our expert would be compelled to issue her own analysis within 20 days before the hearing. Lastly, by now, you must know what damages your client has allegedly suffered."

***The Statement of Claim makes the following assertions on this subject:***

- "The amount of her losses for lack of prudent management will be the subject of expert testimony at the hearing, but it is currently believed to exceed $7 million with pre-judgment interest."

- "The damages Janice seeks in this case are very substantial and are intended to send a message: No profits should come from putting clients last."

- "Janice's damages extend far beyond disgorgement of commissions and the interest thereon. Indeed, her single largest element of damage stems from Buck's mismanagement. Because Buck's primary goal in managing her accounts was to generate commissions for himself (and Merrill), Janice largely missed out on one of the longest bull markets in United States history."

- "The amount of such damages will be proved at trial but with interest, is expected to exceed $7 million."

- "While the amount will be shown at trial, once just the compensatoly damages are trebled, they alone will likely exceed $20 million."

- "As a result of the Respondents' misconduct as set forth above, Janice seeks an award of damages jointly and severally against the Respondents as follows:

Kaufmann Gildin & Robbins LLP

Steeve D. Encaoua
Senior Case Administrator
October 11, 2021
Page 9

    1. An amount equal to the returns Janice lost due to the Respondents' failure to prudently manage her accounts e.g. well managed damages;

    2. Disgorgement of the balance of the commissions Janice has not recovered to date from the SEC's Victim's Fund."

"When Respondent Merrill Lynch asked for your damage calculation [we wrote in our Rule 12507 requests] you responded as follows

**Request 16.** All documents and/or communications supporting Claimant's claims for damages, and all calculations thereof, in this arbitration, including without limitation documents, if any, supporting Claimant's claims in this arbitration for: (a) well managed damages; (b) "[d]isgorgement of the balance of the commissions Janice has not recovered to date from the SEC's Victim's Fund;" (c) punitive/exemplary damages; (d) attorney's fees, costs, and expenses, and (e) treble damages, referenced on pages 42- 43 of the Statement of Claim.

**Claimant's Response:**

- Janice directs Merrill to, *inter alia*, her Merrill account statements, trade confirmations and correspondence with Merrill.
- To the extent anything further is sought, Janice objects on grounds that this request is premature, calls for information not due until the 20-day exchange and because this request cannot be accurately answered until discovery is completed.
- Janice further objects on grounds that this request seeks documents that are privileged, including those that relate to the calculation of damages.
- Janice also relies upon her General Objections and, in addition, specifically objects that this request is overly broad, unduly burdensome, invades her attorneys' work product and calls for extensive fact finding that is outside that permitted by the rules governing FINRA arbitrations.

**Mr. Buck's Rule 12507 Request**

1. *Produce your damage calculations.* "We don't seek privileged communications. Nor should we be compelled to do our own calculation when, respectfully, your client was "delighted" with what she already got from Tom Buck's fund."

2. Identity the expert witness firm and address that prepared it.

Kaufmann Gildin & Robbins LLP

Steeve D. Encaoua
Senior Case Administrator
October 11, 2021
Page 10

### *And What was Claimant's Response to this Request to Know Her Damages?*

- "Ms. Compton objects to the argumentative (and prolix) nature of this Request. While Mr. Buck's format is novel, it does not change the fact that any preliminary damages calculations are privileged work- product."

- "In addition, the Request is premature since discovery is ongoing and no  damages calculations have been finalized. Ms. Compton continues to rely on the   Response she provided to Merrill's similar Request No. 16 in its First Set of Discovery and hereby incorporates its substance by reference herein."

- "Ms. Compton directs Mr. Buck to her Merrill account statements, trade confirmations and correspondence with Merrill/Buck that have been produced to date by all parties. To the extent anything further is sought, Ms. Compton objects and states that documentation to support her claimed trading damages will be provided at the 20-day exchange. Ms. Compton also relies upon her General Objections."

Claimant comes before this Panel $20 millions of dollars in damages  against Mr. Buck and Merrill Lynch, presumably based on calculations she refuses to provide to those she seeks to recover such damages from.  Claimant is defiant in not providing this crucial information while at the same time submitting   multiple discovery requests to Respondents and filing countless discovery-related motions seeking Orders, subpoenas and even sanctions.

This same pattern of hypocrisy extends from discovery into Claimant's claims against Mr. Buck.  Despite having already received nearly $950,000 from Mr. Buck through the SEC fund that he alone financed; despite having expressed her pleasure with that payment; and despite the fact that her own analyses assert that nearly all of her alleged damages occurred after FINRA's six-year eligibility period, she asks the Panel to award her millions of additional dollars, to be shared with her attorneys.

### Request #3 – Statute of Limitations

"A footnote in the Statement of Claim states that "The tolling agreement [between Ms. Compton and Merrill Lynch] went into effective on September  5, 2019 and expired on the date of the filing of this Statement of Claim.""

Mr. Buck' s Request

"Produce the executed tolling agreement."

Kaufmann Gildin & Robbins LLP

Steeve D. Encaoua
Senior Case Administrator
October 11, 2021
Page 11

### *And What was Claimant's Response to this Request for the Tolling Agreement?*

- In recognition of timeliness issues, Claimant entered into three tolling agreements with Merrill Lynch, extending her time: (1) first from September 5, 2019 to January 3, 2020; (2) then from September 5, 2019 to April 2, 2020; and, (3) then from September 5, 2019 to July 1, 2020.

- Claimant then filed her Statement of Claim on July 31, 2020.

- Three 2019 tolling agreements between Claimant and Respondent Merrill Lynch (only) were produced by Claimant in response to our Rule 12507 request and are attached as exhibits to this Motion [#5]. Specifically, they provide:

#### *#1 – Tolling Agreement*

"The effective date of the Tolling Agreement is September 5, 20 I 9 (the "Effective Date"). The termination date of the Tolling Agreement shall be the earliest of (i) January 3, 2020, (ii) thirty (30) business days after any Party receives express written notice of termination from any other Party by overnight courier (such as Federal Express or UPS), with a courtesy copy provided via electronic mail, or (iii) a date prior to January 3, 2020 that the Parties, by mutual agreement, consent to in writing is the date on which the Tolling Agreement will terminate ("Termination Date")."

#### *#2 – First Amended Tolling Agreement*

"The effective date of the First Amended Tolling Agreement is September *5,* 2019 (the "Effective Date"). The termination date of the First Amended Tolling Agreement shall be the earliest of (i) April 2, 2020, (ii) thirty (30) business days after any Party receives express written notice of termination from any other Party by overnight courier (such as Federal Express or UPS), with a courtesy copy provided via electronic mail, or (iii) a date prior to April 2, 2020 that the Parties, by mutual agreement, consent to in writing is the date on which the First Amended Tolling Agreement will terminate ("Termination Date").

#### *#3 – Second Amended Tolling Agreement*

"The effective date of the Second Amended Tolling Agreement is September 5, 2019 (the "Effective Date"). The termination date of the Second Amended Tolling Agreement shall be the earliest of (i) July 1, 2020, (ii) thirty (30) business days after any Party receives express written notice of termination from any other Party by overnight courier (such as Federal Express or UPS), with a courtesy copy provided via electronic email, or (iii) a date prior to July l, 2020 that the Parties, by mutual agreement, consent to in writing is the date on which the Second Amended Tolling Agreement ("Termination Date" ).

Kaufmann Gildin & Robbins LLP

Steeve D. Encaoua
Senior Case Administrator
October 11, 2021
Page 12


Each of the three tolling agreements state that they apply to arbitration eligibility as well as statutes of limitation:

> Other than as stated herein**, any eligibility**, statute of limitations, statute of repose, and/or other **time-related defense or claim, whether statutory, contractual or otherwise, whether under the FINRA Code of Arbitration Procedure,** federal, or state law, and whether at law, in equity or otherwise, which are or may be applicable to any Potential Claims or Potential Defenses are hereby temporarily tolled for the duration of, and shall not run at any time during, the Tolling Period. (bold added)

If Janice Compton was not concerned about FINRA's six-year eligibility rule, she would not have entered into the three tolling agreements with Merrill Lynch, extending her time to file her Statement of Claim for almost 10 months. Since Mr. Buck was not asked to enter into any of these agreements and did not do so, this panel is authorized to bar her claims *against Mr. Buck* related to transactions that occurred prior to August 1, 2014.

### *Request #6 – Trades At Issue Within Six Years of Filing Statement of Claim*

In our Rule 12507 requests, we wrote: "While we have a professional disagreement on the applicability of Rule 12206 to the claims, our side has no idea which *trades that took place ·within six years of the filing of the Claim* your client is seeking damages for. And while we can certainly read monthly account statements, we don' t know which of those trades are at issue."

#### Mr. Buck's Request

"Identify which trades as set forth in the August 2014 – February 2015 Merrill Lynch monthly account statements are at issue in this case (i.e., for which Claimant seeks damages), especially in light of the following statement in paragraph 8 of the Statement of Claim: "During 2014, however, his trading slowed and in 2015 it stopped altogether."

### *And What was Claimant's Response to this Request to Learn the Trades at Issue?*

#### Ms. Compton's Response:

- "Ms. Compton objects to the argumentative (and prolix) nature of this Request, the implication that there is some legal basis to limit trades to those occurring "within six years of the filing of the Statement of Claim", or that the dates specified in Mr. Buck's Request even correspond to such a date range."

Kaufmann Gildin & Robbins LLP

Steeve D. Encaoua
Senior Case Administrator
October 11, 2021
Page 13

- "Ms. Compton also objects to this Request because it is not limited to the "identification of individuals, entities, and time periods related to the dispute" and is thus prohibited under FINRA Rule 12507."

- "Subject to the above and her General Objections, Ms. Compton states that *all trades* are at issue. By his own admission, Buck usurped control over Ms. Compton's accounts thereby assuming a fiduciary duty legally obligating him to act in her best interest."

Once again, Claimant's troublesome pattern of placing the entire burden of this arbitration on Respondents is on display here. She has repeatedly argued to this Panel that she is entitled to every piece of information that may, potentially, be related to her claims. She has sought, and received, documents relating to FINRA, SEC and Justice Department actions for which she has already been compensated, as well as documents relating to non-party, individual customers of Merrill Lynch who, when given the opportunity to bring claims against Mr. Buck, chose not to.[4]

However, when Mr. Buck requests highly relevant information such as Claimant's damage calculation or the identification of the trades Claimant has based her claims upon, he is met with an outright refusal to cooperate.

### Summation of Motion

As experienced practitioners in FINRA securities arbitration, we are sensitive to the nature of a motion to dismiss of any kind before a Claimant has the opportunity to present her/his case-in-chief. But FINRA (and before it the NASD) has always had in place the six year rule of arbitration eligibility. If such a motion is granted, it does not mean a Claimant has no recourse; she/he can still go to court, where, of course, as a Plaintiff, she/he will be subject to statutes of limitations and other procedures.

This motion has shown that in her own mind and by her own hand, Claimant believed certain trades to have been the result of Mr. Buck's misconduct. Indeed, in response to our Rule 12507 requests, her counsel stated: "Ms. Compton states that *all trades* are at issue," which would also, by implication, include the ones she claims to have been authorized.

The attached analyses that Claimant prepared and sent to Merrill Lynch after Mr. Buck was terminated makes clear just what trades are at issue. By making her complaint as clear as she has done, Claimant has subjected herself to FINRA's six-year rule of arbitration eligibility for those transactions that occurred prior to August 2014.

---

[4] Many of these individuals were also given access to the SEC fund to recoup any alleged losses they suffered at the hands of Mr. Buck. *All*, with the exception of Claimant, refused to seek such funds.

Kaufmann Gildin & Robbins LLP

Steeve D. Encaoua
Senior Case Administrator
October 11, 2021
Page 14


After Claimant secured approximately $950,000 from the SEC fund, which was almost five years after Tom Buck was discharged by Merrill Lynch, she waited another half year to file her FINRA Statement of Claim, asserting that she is entitled to more money because of alleged misconduct that occurred, almost exclusively, from 2008 through 2013, despite the $11.6 million of profits she made as a result of Mr. Buck's recommendations.

Time has run out for Claimant to seek damages in this FINRA arbitration for her largely non-arbitrable claim against Mr. Buck. That is purpose of this motion and we look forward to presenting it at a hearing.

For over six years - since the spring of 2015 - Mr. Buck has taken responsibility for his actions. He settled with FINRA, with the SEC and with the U.S. Department of Justice. He pleaded guilty to a federal court judge in Indianapolis. He financed a fund for his former clients and he served time in a federal prison. But that is not enough for this Claimant, despite the fact that what she complains of is largely ineligible for arbitration before this FINRA panel.

Respectfully Submitted,

DAVID E. ROBBINS

Kaufmann Gildin & Robbins LLP

Steeve D. Encaoua
Senior Case Administrator
October 11, 2021
Page 15

## EXHIBITS TO MOTION TO DISMISS

1. Statement of Claim (without exhibits) – highlighted on pages $17 - 21$.

2. Answer – highlighted on pages $9 - 10$.

3. Janice Compton's presentations to Merrill Lynch of the trades and misconduct she is complaining about.

4. Monthly summary of account activity.

5. Three tolling agreements between Claimant and Merrill Lynch.

6. Mr. Buck's Rule 12507 discovery requests and Claimant's objections and responses thereto.

# Exhibit 1

## IN ARBITRATION PROCEEDINGS BEFORE

## FINRA DISPUTE RESOLUTION

| | |
|---|---|
| **IN THE MATTER OF ARBITRATION BETWEEN:** ) | |
| ) | |
| **JANICE J. COMPTON** ) | |
| ) | |
| **CLAIMANT,** ) | |
| ) | **CASE NO. 20-_____** |
| **vs.** ) | |
| ) | |
| **MERRILL LYNCH, PIERCE, FENNER &** ) | |
| **SMITH, INC., THOMAS J. BUCK and** ) | |
| **JOHN DOE(S),** ) | |
| ) | |
| **RESPONDENTS.** ) | |

## STATEMENT OF CLAIM

Claimant Janice J. Compton ("Janice" or "Claimant") brings the following claims for

damages against Respondents Merrill Lynch, Pierce, Fenner & Smith, Inc. (CRD #7691)

("Merrill" or "the Firm"), Thomas J. Buck (CRD #1024868) ("Buck"), and the unknown Merrill

employees who participated in, aided and abetted, were consciously indifferent to, negligently

failed to supervise, and/or were otherwise responsible in whole or in part, for Buck's infractions

as described below ("John Doe(s)" or "Buck's Supervisors") (collectively "Respondents").

## I.  PRELIMINARY STATEMENT

This case involves a long-running fraud by one of Merrill's top brokers—a fraud that in

certain respects is on-going even today. The fraud was orchestrated by Buck, the biggest producer

Merrill had in the entire State of Indiana. Buck was fired in 2015 and is now in federal prison for

securities fraud involving the very scheme at issue here. Simply put, Buck assumed discretion over

the accounts of several dozen of his customers—customers who deeply trusted him—and then

1

proceeded to make unneeded and/or unsuitable trades in their accounts simply to generate commissions for himself (and Merrill). These trades frequently involved the short-term trading of relatively high-commission securities—securities normally held long-term. As to Janice Compton alone, Buck made over 1,100 trades in her accounts and generated commissions of approximately $1,400,000.

That Buck did all this is not legitimately in dispute. As part of his guilty plea in his criminal case, Buck admitted to running this scheme and Merrill, itself, has acknowledged that the many customer complaints that arose out of this scheme had "substantial merit." What remains a mystery is how Buck was able to engage in such a pervasive scheme for so long. By its nature, Buck's scheme generated numerous red flags and its operative infractions—over-charging for commissions, over-trading of long-term securities, and assumption of discretion—were *known* by Merrill compliance and management, but *never effectively acted upon*. The identity(ies) of exactly who protected Buck and allowed him to flourish remains a closely guarded secret. Indeed, upon information and belief, no Merrill management or compliance personnel lost their job due to the Buck debacle. Rather, the personnel who allowed, benefited from, and abetted Buck's fraud closed ranks, claimed that he was a lone wolf and today remain unscathed by their decisions to protect *Buck* instead of Merrill's own *clients*.

Janice Compton was one of those clients that Merrill's management and compliance personnel repeatedly failed. Janice had been close friends with Buck and his family for nearly sixteen years when she opened her accounts with him in 2009. The substantial amount of money she received then—and the additional tens of millions of dollars she received thereafter—came as a result of her painful divorce. Even setting aside the emotional tumult caused by the divorce, Janice was ill-equipped to manage this money. All of the family's investments had been handled

2

by her husband, who was an expert in financial matters. In contrast, Janice had very limited investment experience and she therefore relied heavily on Buck. For the next five years, Janice allowed Buck to manage her money as he thought best, with Buck only keeping Janice generally apprised of the activity and performance in her accounts.

Her trust in Buck's friendship and honesty—and in Merrill's reputation as a premiere brokerage firm—proved to be misplaced. Serving as her investment advisor, Buck assumed discretion and control over Janice's accounts from the start, ultimately making over 1,100 trades, charging high commissions and frequently turning over positions that would normally be held long-term by a moderate to moderately conservative investor such as Janice. Hand and glove with this overtrading was Buck's deceit regarding the form of account that was most suitable for her— commission-based vs. fee-based. Buck repeatedly represented to Janice that she was better served in a commission-based account, when in reality her commissions were approximately three *times* more than what she should have paid under a fee-based arrangement. The severity of Buck's multiple breaches of fiduciary duty is reflected in the fact that he was prosecuted criminally for securities fraud by the U.S. Department of Justice and sentenced to 40 months in prison.

The damages Janice seeks in this case are very substantial and are intended to send a message: **No profits should come from putting clients last.** Janice's damages extend far beyond disgorgement of commissions and the interest thereon. Indeed, her single largest element of damage stems from Buck's mismanagement. Because Buck's primary goal in managing her accounts was to generate commissions for himself (and Merrill), Janice largely missed out on one of the longest bull markets in United States history. While Janice's accounts did generate an overall profit—making some $3.7 million dollars over five years—they made nowhere near what they should have made with simple, prudent management. Merrill will claim that Janice should be

3

satisfied with this profit. However, when Janice opened her accounts, she understood that they would be managed for her benefit—not Buck's. Janice had a right to expect that Buck would adhere to such a minimal fiduciary duty and is entitled to a recovery of all of her losses arising out of his failure to do so. The amount of such damages will be proved at trial but with interest, is expected to exceed $7 million. Finally—because Buck's scheme is fully actionable under both Indiana and federal RICO—treble damages, attorneys' fees and costs are not only available *but mandatory*. While the amount will be shown at trial, once just the compensatory damages are trebled, they alone will likely exceed $20 million.

Ironically, as large as they are, these figures are still barely noticeable to a firm the size of Merrill. However, they are very much warranted—given the scope of Buck's fraud, Merrill's years-long failure to stop it and Merrill's subsequent efforts to cover up both the involvement of others at the Firm and the full losses Buck's fraud caused to the customers who had most trusted him.

## II. THE PARTIES

1. **Claimant – Janice Compton.** Janice Compton is 61 years old. She graduated from college in 1981. After working for approximately 11 years, she left the workforce to raise her two children and has not been employed since 1992. In 2008—after nearly 25 years of marriage—Janice's husband asked for a divorce. As a result, Janice received cash and securities now worth more than $50 million dollars.

2. **Respondent Merrill Lynch.** Merrill (CRD #7691), has its main office in New York City and maintains branches all over the country, including the "Northside" Branch located in Carmel, Indiana—the suburb of Indianapolis where the relationship between Buck and the Comptons

began. Merrill is owned by Bank of America and is one of the largest financial firms in the country, with some 14,000 brokers. In the 2019 fiscal year, the firm generated some $91 *billion* in revenues and approximately $27.4 *billion* in profits. Despite its monumental failure to supervise Buck, to date Merrill has received no discernable regulatory penalty for its part in allowing Buck to defraud his customers.

3. **Respondent John Does a/k/a "Buck's Supervisors."** The John Doe Respondent(s), also referred to herein as "Buck's Supervisors" are unknown past or current Merrill employees who managed, supervised, surveilled, or otherwise aided and abetted Buck in his scheme. Among other things, Buck's Supervisors were obligated to ensure that Buck's sales practices conformed to the laws, regulations, and rules governing the securities industry. The Buck Supervisors include individuals who, though not tasked with his supervision, knew of Buck's fraud and provided assistance that helped his scheme to continue. The Buck Supervisors, upon information and belief, may include those who immediately supervised/surveilled Buck up through senior Merrill executives who knew of (or should have known of/or who consciously disregarded evidence of) Buck's misconduct and/or the supervisory lapses that allowed his fraud to continue for as long as it did.

4. **Respondent Buck – an overview of his long-running scheme to defraud**. Thomas Joseph Buck (CRD # 1024868) is 66 years old. Buck is currently a resident of the federal prison in Terre Haute, Indiana, where he is serving a 40-month sentence for securities fraud for the same acts that are at issue here. Buck's scheme—which he admittedly operated for years—was based upon his assumption of discretion in the accounts of dozens of his best customers. Selecting only customers who he knew would not question his actions—such as Janice—Buck proceeded

5

to buy and sell high-commission products simply to enrich himself. Account performance—if it was considered at all—was at most secondary.

5. Buck concentrated his trading on securities that paid high commissions but which drew less scrutiny from compliance—including municipal bonds, common stocks, master limited partnerships and certain new issue syndicate items.[1] Charging as much as he thought he could on these trades, Buck was able to generate total commissions of approximately 2%- 2.7% on each round trip. Since there was frequently more than one such roundtrip per year, Buck's trading generated far more income for him—and Merrill—than would have been received from a fee-based account.[2] While Merrill pushed its other brokers to switch to fee-based accounts, Buck's Supervisors knew that Buck had relatively few such accounts. Indeed, Buck's lack of fee-based accounts was well known since Merrill internally published each broker's daily production and Buck's production did not correspond to when fees were assessed. Merrill and Buck's Supervisors thus allowed Buck to gouge his selected customers year after year, knowing that these customers were being overcharged. They also knew—or consciously ignored—that Buck's rapid trading of bonds, stocks and other securities had no legitimate justification and that Buck had assumed discretion over certain accounts—buying and selling without obtaining prior authorization from the client.  This misconduct was not only known to Buck's Supervisors, it was even known outside of Merrill. This is apparent from the following article from AdvisorHub published just *four days* after Buck's termination:

---

[1] Upon information and belief, Buck had previously focused on "A-Share" mutual funds but switched vehicles for his on-going frauds because trading these high commission products brought too much actual and/or potential scrutiny.

[2] For customers with large accounts (such as Janice), the fee should have been far less than 1% of chargeable assets.

It has been well known among industry insiders that Buck and his team of 'heavy hitters' have taken liberties in making trades and executing transactions in clients' accounts without authorization. Buck's large book, comprised heavily of physicians, attorneys, and other professionals, has continued to remain primarily transaction based, even though the industry and, in particular Merrill Lynch, have made strong efforts and advancements in converting both existing and new assets into fee based relationships. How management at Merrill Lynch has continued to look the other way while Buck and his minions have continued to exploit their clients to pad their own pockets, raises several questions which will most certainly need to be answered before the final fallout of this major announcement comes to pass.

(See *Merrill Fires Barron's 100 Advisor: Tom Buck/#1 Indiana,* Advisor Hub, March 8, 2015, attached as **Exhibit A**.)

6. **Buck's Background at Merrill**. Buck began at Merrill in 1981, working in its "Northside" Branch in Indianapolis, Indiana as a financial advisor.[3] Buck was later promoted to "Sales Manager" for the branch—a position, ironically, that gave him a role in ensuring the Branch's compliance efforts. Upon information and belief, Buck used this position to gain insights into how to exploit weaknesses in Merrill's supervisory system and to help accumulate his book of business. Over time, Buck was enormously successful financially and became one of the top brokers in the whole Merrill system. Buck assembled, and operated through a tightly controlled a team that included additional supporting brokers and staff that numbered from time to time approximately 5-10 people.[4] In time, Buck's production put him in the top 25 within Merrill's entire stable of 14,000 brokers and he was easily its largest producer in the State of Indiana.

---

[3] This branch was also sometimes known as the "Carmel" Branch. Merrill also had a second large branch in Indianapolis – the "Downtown" Branch. These two branches sometimes had the same individual as Branch Manager. In addition, the Branch Manager of the Northside Branch sometimes also served as a Regional Manager, as well.

[4] Upon information and belief, a large percentage of each team member's income came from Buck and they were thus entirely dependent on him financially.

7

Indeed, for at least the last three years before his fraud became public, Buck ranked among the top 100 brokers in *the entire country*.[5] His customer assets reportedly totaled $1.3 *billion* and he generated revenues of $10 million annually. This phenomenal success enriched not only Buck, but also his branch, regional and district managers, as well as others, and put Buck on a first name basis with Merrill's top management.[6] Buck's out-sized production also made him immune to the scrutiny afforded to lessor brokers, and Buck was allowed to operate for years with blatant disregard for the securities laws and Merrill's own policies and procedures.

7. **Merrill's investigation and termination of Buck.** Following an investigation that purportedly focused on Buck's "high-activity brokerage accounts"—and included whether Buck: a) had lied to clients in order to keep them in commission-based accounts; b) engaged in "unauthorized trades," and c) had falsely marked orders as "unsolicited trades"—Merrill fired Buck on March 4, 2015. (*See* excerpts of the CRD Snapshot for Buck at pp. 17-18, attached as **Exhibit B**).[7] Merrill has since indicated in regulatory filings that this investigation

---

[5] In 2012 Buck was ranked 91st, in 2013 he was ranked 95th, and jumped up to 80th in 2014. *See* https://www.barrons.com/report/top-financial-advisors/100/2012; https://www.barrons.com/report/top-financial-advisors/100/2013; https://www.barrons.com/report/top-financial-advisors/100/2014.

[6] Merrill's senior executives in New York/New Jersey were even known to fly to Indianapolis to attend Buck's annual Christmas parties.

[7] Significantly, Merrill has largely acknowledged Buck's guilt, telling FINRA that:

> The firm concluded that client complaints against former financial advisor, Thomas Buck (terminated March 4, 2015), had *substantial merit*.

(*See* excerpts of Buck's CRD Snapshot, p. 18 **Exhibit B**) (emphasis added).

lasted for only a day.[8] This contention, however, is simply not plausible. Buck's scheme involved literally dozens of customers and had been in place—in one form or another—for many years. Moreover, it strains credulity that the decision to fire one of the Firm's largest producers could have been vetted up through Merrill's successive levels of management over the course of a day.

8. Rather, the reality of Buck's firing was very different. Upon information and belief, Merrill's investigation into Buck unfolded over a substantial period of time starting back in 2014. In fact, Buck's awareness of this investigation can be inferred from changes in how he traded Janice's accounts during parts of 2014 and up until March 2015 when he was fired. In past years Buck had actively traded certain of Janice's accounts—placing multiple trades nearly every month. During 2014, however, his trading slowed and in 2015 it stopped altogether. This is a strong indication that Buck knew he was under scrutiny and no longer had the ability to make trades carte blanche in Janice's accounts.

9. In addition, far from being done precipitously, Buck's termination was carefully orchestrated in order not to implicate those who had permitted Buck's long-running scheme. Amazingly, there were no consequences for Merrill management. None of Buck's direct supervisors, compliance officers or team members were fired as a result of Buck's scheme—or even publicly disciplined. Indeed, the primary compliance officer for the Northside Branch—Bob

---

[8] Buck's official Central Registration Depository Record ("CRD") reflects Merrill's statement that its internal review was initiated on "03/03/2015" and that Buck was discharged the next day on "03/04/2015." (*Id.* at p. 17.)

Smith—is still in place today, despite having the distinction that one of Merrill's largest producers committed a multi-year fraud on his watch.[9]

10. Instead of a thorough airing of how Buck was able to perpetrate his long-running fraud—despite the presence of Merrill's many supposed checks and balances—Merrill moved quickly to sweep all such questions under the rug. It did this both with Buck's customers who complained and with the Regulators who justifiably inquired as to what had happened. Buck's firing resulted in 36 *new* customer complaints against Buck.[10] (*See* the Summary of Buck's Termination Related Customer Complaints, attached hereto as **Exhibit C**). Among other things, these complaints included allegations of unauthorized trading, excessive trading, unsuitable trading and the misrepresentation/ omission of material facts. None of these complaints started as (or even later matured into) arbitrations. Rather, (except for Janice's) most were settled before the customer had any opportunity to investigate his or her claim. Indeed, about two-thirds of these complaints were settled within three months of filing. Even so, Merrill paid some $5.4 million to the customers who complained in order to avoid further

---

[9] The fact that Mr. Smith is still employed is actually a strong indication that Mr. Smith knew of and elevated Buck's violations—but was *ignored* by Merrill management. Terminating him under such circumstances for "missing" Buck's scheme was not possible since he could have gone public (or to the Regulators) with at least some of the names of those who enabled Buck. Upon information and belief, this same fear of mutual disclosure has protected the jobs and reputations of all of Buck's Supervisors, and has led to a highly effective cover-up of Merrill's supervisory failures as to Buck.

[10] Prior to his termination Buck already had three customer complaints, including two that were settled, at least one of which settled within pennies for the full amount demanded by the customer, i.e., $ 75,000 on a $75,131 claim. Merrill was thus long on notice that Buck was a compliance risk. Instead of upping its scrutiny of Buck in light of these red flags, it did exactly the opposite and deliberately averted its glance.

questions and to effectively buy their silence.[11] Upon information and belief, this amount was still a relative bargain for at least two reasons. First, Merrill could fund at least part of these payouts with money that belonged to Buck but which he forfeited when he was fired.[12] Second, Merrill paid settling customers only a fraction of their losses since, at most, Merrill's refunds were limited to a portion of the commissions Buck fraudulently generated. Losses for the *underperformance* of these customer's accounts—accounts which Buck "managed" for the purpose of generating commissions—were not even calculated or acknowledged, let alone paid.

11. Merrill also moved with lightning speed on the regulatory front, apparently convincing FINRA, the SEC and the government both that Buck acted alone and that Buck somehow successfully deceived Merrill's managerial, compliance and supervisory personnel for years— despite their affirmative duties to follow up on red flags and to check behind self-serving, exculpatory explanations.[13] Merrill worked to direct all regulatory focus towards Buck, went above and beyond in "co-operating" to show his most glaring infractions (e.g. lying to customers about the relative benefits of fee-based accounts) and quietly hid the fact that Buck's actions were known within the firm and were tacitly permitted/aided and abetted by Buck's Supervisors.

---

[11] Merrill's top five settlements for these customers were $719,014, $600,000, $565,000, $430,000, and $400,000, respectively.

[12] Upon information and belief, by virtue of being fired, Buck forfeited all his accumulated deferred compensation which is believed to have been several million dollars.

[13] In its negotiations with Janice over Buck's misconduct, Merrill, ironically, has claimed that *she* should have uncovered Buck's frauds even though their legions of compliance and other personnel supposedly failed to do so.

### III. BACKGROUND

12. **Janice was unprepared for her new role as an investor**. Janice grew up in Indiana and went to college at Purdue, receiving a degree in management in 1981. For the next 11 years, she was employed by IBM in Indianapolis and Boston where, among other things, she worked on a team which marketed large mainframe computers. Janice threw herself into this work and, even after leaving IBM, continued for years as a volunteer to help schools better use technology. At IBM, Janice also met her husband, Bob Compton, whom she married in 1984 after he graduated from Harvard Business School. Bob became a venture capitalist working in both Boston and in Indianapolis. He was an early investor in a number of startups, and over time this work made the Comptons wealthy. In particular, Bob was an early investor in Exact Target, a company that went public in 2012 and was thereafter acquired in 2013 by Salesforce for $2.5 billion. (It was the proceeds from her sales of these Exact Target shares that generated most of Janice's current wealth.)

13. After the birth of her first child, Janice left the workforce and this time threw herself into caring for the couple's children. Their first daughter (Elizabeth) was born in 1992 and their second daughter (Meredith) was born in 1994. In addition to the normal challenges of managing a family, both girls experienced serious health issues. Meredith was born with club feet and required weekly cast changes and several operations. Elizabeth developed Type I diabetes in her pre-teens, which required constant monitoring, special diets, and frequent shots.

14. As fate would have it, in 1989 Janice and Bob moved to Carmel, Indiana to a house directly across the street from Buck's home. The families were neighbors for about eleven years and became close after the Compton's first daughter was born in 1992. The Bucks had daughters the same ages as the Comptons and their girls became inseparable. The families went to social

events together, shared meals together and even vacationed together. This continued even after the Comptons moved to Memphis, Tennessee in 1997. In fact, the Comptons and the Bucks took a trip to Africa together in 2006.

15. This friendship eventually led to a business relationship between Buck and Bob Compton, who opened his first accounts with Buck in 1999. These and all his other Merrill accounts were opened in Bob's name only. Janice had little involvement in or knowledge of Bob's accounts, other than to know that Bob was pleased with Buck's performance and considered Buck to be a good, cautious and knowledgeable financial advisor.

16. In 1997, the Comptons moved to Memphis so that Bob could run a company he had previously invested in. Janice, as homemaker and mother, immersed herself in her daughters' activities at their new school—volunteering as a Girl Scout Leader, starting a city-wide swim club for middle school students, and assisting with her daughters' after school teams. Janice also immersed herself in the community, starting and running two charitable organizations (Ali's Way, Inc. and Thunder, Inc.), serving on a school's board of trustees, and fundraising for Junior Diabetes Research Foundation, Ronald McDonald House-Memphis and the St. Jude Children's Research Hospital.

17. In 2008, Bob announced that he wanted to end their marriage of nearly 25 years. This betrayal up-ended Janice's life. At the time, the girls were 14 and 16 and Janice was effectively left as a single parent. Bob's exit also resulted in investment responsibilities being thrust upon Janice for which she was not prepared. As part of their division of assets, Bob split certain of his Merrill accounts with Janice in August 2009, transferring approximately $6,860,000 in securities and cash to a new account—also at Merrill—to be handled by Buck. Bob had strongly recommended Buck, telling Janice among other things that he was a "very good

13

conservative money manager." (*See* 3/23/2009 email between Bob and Janice, attached as **Exhibit D**). Janice, in turn, welcomed this advice. Given how little she knew about investing, it gave her comfort that a close friend—someone she thought truly cared about her and her girls—would be managing her money.

18. **Janice's new Merrill accounts**. On March 30, 2009, Janice signed the one-page document Buck's office sent for her to establish her account. While she did not know it at the time, this was an inauspicious start since this one-page document gave Merrill *none* of the critical information it needed to adequately supervise Buck's management of Janice's account—information such as her risk tolerance, investment objectives, investment experience, income, net worth, etc.

19. The internal documents Merrill used to open at least three of Janice's accounts[14] are inaccurate, incomplete and/or contradictory in critical particulars – something that itself should have raised red flags with Merrill. For example, for Account #8268, the source of the money used to open the account is listed as "personal savings" rather than as the result of her impeding divorce—a fact which would have flagged Janice's inexperience. In addition, the new account forms for accounts #8268 and #1050 both enormously exaggerate her investment experience and contradict each other. Janice's investment experience is listed as "15 years" for account #8268 and "20 years" for account #1050—even though these two accounts were opened within a few months of each other. If Merrill had only inquired, it would have learned that neither number was accurate, and she had no experience overseeing any sizable account. Perhaps most telling, however, is that Buck was able to make some 1,100 trades in Janice's accounts even though

---

[14] Though Janice had a total of five accounts at Merrill, even with prodding from undersigned counsel, Merrill has provided fulsome new account paperwork for only three of the five accounts.

Merrill's own documents listed her "Trading Frequency" as "seldom." Despite this designation, Merrill did not intervene with Buck or even call Janice asking why. This is emblematic of the degree of deference Merrill gave Buck—not only as to Janice's accounts, but upon information and belief, to all of Buck's clients, thereby allowing him to exploit them and perpetrate his years-long fraud.

20. Janice's exact risk tolerance and investment objectives evolved over time and varied by account. (Buck, for example, never sat down with Janice to create an Investment Policy Statement that would have better defined her tolerance for risk and goals). That said, Janice considered herself overall to be a moderate to conservative investor. This, however, did not mean that she had the same objectives for all of her money or accounts. Rather, she saw her money as comprised of different buckets. With some buckets she was willing to take more risk than others. As for her investment objectives, they could be characterized as at least short term and long term. Short term, Janice wanted to largely live off the income her accounts generated. Long term, she wanted the accounts to grow so that she could leave a legacy to her daughters and have the freedom to do such things as make charitable donations. She also did not want to have a chance at losing all of her money and thus wanted to keep a significant cash position. After communicating these goals, she largely left the mechanics of how they were managed to Buck.

21. Buck encouraged Janice to rely on him to manage her accounts and, given their close relationship, she was comfortable doing so. Buck thus decided what was bought and sold in the accounts without getting advance authorization from Janice—and without explaining to her the risks, benefits or even the rationales for the trades he made. This exercise of de facto discretion made Buck a *fiduciary* to Janice and imposed upon him (and Merrill) all the duties

15

that arise from such a relationship.[15] Janice let Buck manage her accounts not knowing that it was highly inappropriate for Buck to act without a written grant of discretion.[16] Janice would have granted Buck discretion if he had asked. Buck, however, did not ask because he did not want the additional scrutiny that is supposed to come with a discretionary account. In addition, certain trades that would be lucrative to him would have been prohibited in a discretionary account altogether, such as purchasing Merrill-underwritten new issues.

22. Upon information and belief, Buck also assumed de facto discretion in the accounts of dozens of other customers. This assumption of discretion was part of Buck's overall scheme because it enabled him to more easily over-trade customer accounts in order to generate commissions.

23. As soon as Janice's first account was funded in August 2009, Buck assumed control. He proceeded to sell most of the securities that had been transferred into her account from Bob and then began a course of aggressive trading—selling long-term positions prematurely and trading other positions speculatively. He did so knowingly—in complete disregard for Janice's investment objectives and risk tolerances—and did so in order to generate commissions for himself and Merrill. While this trading contradicted Janice's listed objectives, it drew no effective scrutiny because of who Buck was. In little more than five years of trading, Buck generated more than $1.4 million in commissions on some 1,100 trades. Janice, however, never got a phone call from the branch manager or from a compliance officer asking her if she

---

[15] As fiduciaries, Buck and Merrill owed Janice the obligations to exercise the utmost good faith, care, loyalty, candor, and honesty in regard to her investments, including a duty to prudently manage her accounts in light of her actual investment objectives and risk tolerances.

[16] Janice does not claim that Buck's trades were "unauthorized" in the legal sense. She deeply trusted Buck and knew that he was managing her accounts. While after Buck was fired Janice complained about trades being "unauthorized", she did so in the layman's sense that trades occurred without any prior phone call – something that is not necessary when the advisor is operating with discretion, de facto or de jure.

understood Buck's strategy, approved his short-term trades of long-term securities, and understood that she could save substantially on commissions with a fee-based account.

24. Buck kept Janice only loosely apprised of what he was doing—explaining only in general terms what he wanted to do or what he had already done. Janice described these calls with Buck in her Victim's Statement that she submitted to the Court prior to Buck's sentencing:

> Every call from Tom Buck would start the same way. I would ask, "How are you?" And he would answer, "Well, I'm just sitting here looking at how great your accounts are doing." Then we would talk about what his daughters and wife were doing and I'd update him on what my daughters were up to. Only after that discussion would he discuss the next purchases and sales he wanted to make with my accounts. We never discussed anything regarding the risk of the trades or the commission involved. Why would I question the actions of someone who had been doing this for so long and with such success?

(*See* Janice's Victim Impact Statement at p. 2, attached as **Exhibit E**.) Although he would sometimes solicit her input, this was largely for show. Given Janice's trust in him—and her lack of confidence in herself—Buck knew that Janice would defer to him. From the period from August 2009 to his termination in March 2015, Buck maintained firm control of Janice's accounts.

25. **Short Term Trading in Bonds.** Short term trading in bonds was a hallmark of Buck's mismanagement. Buck essentially treated Janice's bond holding as his own private inventory —to be swapped/traded with the Firm or other of his customers at will. While bonds by their nature are intended to be held for the long term, Buck routinely sold them prematurely. Indeed, even using a relatively short 15-month holding period, Buck sold no less than 58 positions early, totaling over $15 million dollars. Following the tortured course of a single $200,000 position that Buck invested—and then reinvested four additional times over a 15-month

period—dramatically demonstrates this abuse. The following timeline reflects the five separate bonds that Buck bought with this $200,000 between February 26, 2010 and May 17, 2011:

- o **2/26/2010** - Buck buys $200,000 of bonds issued by the Washington State HCF Auth. 4.625%.

- o **7/26/2010** - Buck sells this position five months later and invests $200,000 in bonds issued by the Omaha Pub Pwr Neb 4.5%.

- o **11/18/2010** - Buck sells this position some three months later in order to buy $200,000 in bonds issued by the NY Metro Trans. Auth. 4.5%.

- o **12/14/2010** - Buck sells this position after approximately 1 month in order to buy $200,000 in bonds issued by Tex. State Trans. 4.5%.

- o **5/17/2011** - Buck sells this position after five months in order to buy $200,000 in bonds issued by Brownsburg Ind. Swr Rev 4.625%.

In little more than a year, Buck thus used this $200,000 to make five different purchases and four sales, generating commissions of approximately 2% on each purchase and .4% on each sale—making more in commissions for himself than Janice did on the stated coupon. Throughout this process, Merrill's Branch Manager and Compliance personnel are nowhere to be seen.

26. Far from an outlier, this example is emblematic of how Buck traded bonds in Janice's accounts for years. Below is a list of some of the other short-term bond trades in her accounts along with the holding period:

| Holding | Buy Date | Sell Date | Holding Period |
|---|---|---|---|
| Chicago Bd. Of Ed. | 9/8/2009 | 12/21/2009 | 3.5 months |
| In. Health - Sisters | 11/24/2009 | 12/21/2009 | less than 1 month |
| Birmingham AL Wtr Works | 12/21/2009 | 5/20/2010 | 5 months |
| MI State Univ. | 5/20/2010 | 12/14/2010 | 7 months |
| AZ State Univ. | 1/24/2011 | 8/16/2011 | 7 months |
| Tex A&M Univ. | 2/25/2011 | 10/13/2011 | 7.5 months |

| | | | |
|---|---|---|---|
| Maine Health & Higher Ed. | 8/16/2011 | 10/20/2011 | 2 months |
| Memphis Shelby Cty., TN | 8/29/2011 | 12/2/2011 | 3 months |
| Anderson Cty., TN | 10/18/2011 | 2/22/2012 | 4 months |
| DC Rev. | 12/2/2011 | 2/10/2012 | 2 months |
| Port Authority of NY/NJ | 2/22/2012 | 6/21/2012 | 4 months |
| NJ State Trans. (zero coupon bonds) | 2/14/2012 | 5/25/2012 | 3 months |
| Metro PEA IL (zero coupon bonds) | 5/25/2012 | 6/18/2012 | less than 1 month |
| Metro ATL | 6/18/2012 | 7/12/2013 | 13 months |
| Leander TX (zero coupon bonds) | 6/21/2012 | 7/19/2013 | 13 months |
| Wisc. Health & Ed. | 10/1/2012 | 6/4/2013 | 8 months |
| Ind. Fin. Auth. Hosp. | 10/29/2012 | 6/4/2013 | 7 months |
| Cal Unified HS Dist. | 6/4/2013 | 9/27/2013 | 3.5 months |
| JEA FL Elec Sys. | 6/4/2013 | 9/27/2013 | 3.5 months |
| Univ. Al. | 6/4/2013 | 9/27/2013 | 3.5 months |

Indeed, there are at least 20 bonds that Buck sold so rapidly that Janice *never received* a single coupon payment.

27. **Short term trading in MLP.**   Master limited partnerships are intended to be long-term, income generating investments, both because they are designed to provide reliable income distributions and because of their complicated deferred taxation structure. Despite this fact, Buck engaged in the same pattern of short term, speculative trading as he did with bond trades:

| Holding | Buy Date | Sell Date | Holding Period |
|---|---|---|---|
| Kinder Morgan Energy | 7/29/2010 | 3/15/2011 | 7.5 months |
| Plains All American Pipeline | 3/12/2010 | 7/29/2010 | 4.5 months |
| Sunoco Logistics Partners | 3/12/2010 | 7/29/2010 | 4.5 months |
| Global Partners LP | 7/29/2010 | 11/1/2010 | 3 months |
| Williams Partners, LP | 11/1/2010 | 2/18/2011 | 3.5 months |
| Boardwalk Pipeline Partners | 2/18/2011 | 9/13/2011 | 8 months |
| Buckeye Partners | 2/2/2012 | 3/21/2012 3/22/2012 | 1.5 & 3.5 months |
| Buckeye Partners | 9/25/2012 | 12/13/2012 | 2.5 months |

| TC Pipelines | 9/13/2011 | 3/21/2012 6/18/2012 | 6 & 9 months |
|---|---|---|---|
| TC Pipelines | 9/25/2012 | 11/1/2012 | 1 month |
| TC Pipelines | 12/3/2012 | 12/13/2012 | 10 days |
| Regency Energy Partners | 7/24/2012 | 12/13/2012 | 4.5 months |

28. **Short-Term Holding of Equities.** Buck's pattern of short-term, speculative sales also extended to equities. Upon information and belief and among other things, Buck used the release of new Merrill research as an excuse to jump from position to position. The following is an abbreviated list of stocks that were purchased only to be sold months (sometimes only weeks) later:

| Holding | Buy Date | Sell Date | Holding Period |
|---|---|---|---|
| American Movil | 12/11/2009 | 2/19/2010 | 2 months |
| Progress Energy | 6/9/2010 | 9/2/2010 | 3 months |
| GlaxoSmithKlein | 6/9/2010 | 9/2/2010 | 3 months |
| PPL Corp. | 10/26/2010 | 11/15/2010 | less than 1 month |
| National Bank of Canada | 12/9/2010 | 2/16/2011 | 2 months |
| Seagate Technologies | 4/25/2011 | 7/25/2011 | 3 months |
| Honeywell | 7/25/2011 | 11/16/2011 | 4 months |
| HSBC | 7/27/2011 | 11/16/2011 | 4 months |
| AFLAC | 3/15/2012 | 5/22/2012 | 2 months |
| Caterpillar | 9/24/2012 | 10/17/2012 | less than 1 month |
| Telefonica Brazil | 6/18/2012 9/25/2012 | 10/17/2012 | 4 & less than 1 month(s) |
| Veolia Environmental | 5/15/2012 9/25/2012 | 10/17/2012 | 5 & less than 1 month(s) |
| CSX | 7/24/2012 9/25/2012 | 11/2/2012 | 3 & 1 month(s) |
| Cisco | 10/10/2013 | 12/18/2013 | 2 months |

29. In some cases, Buck purchased and sold Janice in and out of the same stock on multiple occasions:

- o HSBC:
  - i. bought on 8/24/2010 – sold on 12/9/2010;
  - ii. bought on 7/27/2011 – sold on 1/10/2102; and
  - iii. bought on 7/24/2012 – sold on 9/20/2012.

- o U.S. Bancorp:
  - i. bought on 1/26/2010 – sold on 9/2/2010; and
  - ii. bought on 3/15/2012 & 9/25/2012 – sold on 12/13/2012.

- o Cisco:
  - i. bought on 12/11/2009 & 1/26/2010 – sold on 2/25/2011;
  - ii. bought on 1/26/2010 – sold on 11/17/2011; and
  - iii. bought on 10/10/2013 – sold on 12/18/2013.

- o ArcelorMittal:
  - i. bought on 5/22/2012 – sold on 8/2/2012; and
  - ii. bought on 9/24/2012 & 9/25/2012 – sold on 11/1/2012.

30. The above are but a few examples of Buck's mismanagement of Janice's accounts. In short, Buck employed the same short-term, commission-generation strategy across her accounts. Buck employed no cogent investment strategy and executed trades merely to generate commissions. And all the while, Merrill and Buck's Supervisors, including his team members, knowingly looked the other way, allowing Buck's abuse and mismanagement to go on for years. Merrill and Buck's Supervisors incentivized Buck to commit his frauds and thereafter, as at least to Janice, ratified his and their misconduct. While Janice's accounts did generate an overall profit, had her accounts been properly and prudently managed—for her benefit rather than Buck's—she would have made significantly more. The amount of her losses for lack of prudent management will be the subject of expert testimony at the hearing, but it is currently believed to exceed $7 million with pre-judgment interest.

31. At the same time Buck was over-trading Janice's accounts, he was also lying to her about the benefits she would receive from converting to a fee-based account. On at least two occasions, Janice asked if she might be better off in a fee-based account, and both times Buck dissembled, telling her that she would in fact pay more in fees than she was paying in commissions. He also assured her that Merrill would proactively inform her when it might be the right time to switch to a fee-based account. In truth, Janice was paying as much as 3-4 times more in commissions than she would with an appropriate fee.

32. **Exact Target.** The only portion of her accounts over which Janice retained some control involved the Exact Target shares she received from Bob as part of their divorce. In a move designed to reduce her exposure to stocks and to save on taxes, Janice sold her position in Exact Target in the fall of 2012 for approximately $34 million and then re-established approximately half the position a month later for approximately $17 million (the "New Position"). The remaining $17 million or so in proceeds from this sale (minus approximately $5.8 million for taxes) was left in her account for Buck to manage. The following summer, Salesforce acquired Exact Target—resulting in the exchange of her New Position for approximately $25 million netting a pre-tax profit of approximately of some $7.7 million. Other than transferring $5 million of this money for Buck to manage, Janice largely kept the net proceeds—some $17 million in cash—as a reserve for safety.

33. **Merrill Lynch failed to supervise Buck.** The proof will show that Merrill and Buck's Supervisors knew—or were recklessly/willfully blind in ignoring—Buck's years of blatant misconduct. Upon information and belief, the proof will also show Merrill and Buck's Supervisors at least tacitly supported Buck's misconduct by, among other things, concealing its existence and ignoring their affirmative duties to supervise and therefore stop Buck.

34. Merrill's and Buck's Supervisors' duty to supervise Buck required them to, *inter alia*,

    i.    Establish procedures—and a system for applying those procedures—that would reasonably prevent and detect violations of the securities rules/laws by Buck;

    ii.    Supervise Buck with a view to prevent violations;

    iii.    Vigorously investigate red flags or other suggestions of irregularity/wrongdoing regarding Buck and/or his team through diligent inquiry by those with the knowledge and authority to conduct a thorough investigation, including going beyond the unverified and self-serving representations of the employee under review;

    iv.    Contact customers directly when the red flags concern issues in their accounts;

    v.    Provide the compliance department with the resources/power to effectively and independently police Buck and his Team; and

    vi.    Place adequate limitations on Buck to prevent a repetition of the misconduct once issues had been identified.

35. In order to surveil its brokers and detect possible violations of the securities laws/regulatory rules, Merrill should have employed both qualified and properly supported personnel plus sophisticated automated surveillance systems to generate reports commonly referred to as "exception reports." Such reports are supposed to look for and detect both violations of the securities laws/rules, as well as Merrill's own policies and procedures, and should have detected the very sales practice issues described herein, including Buck's assumption of discretion, premature sales of long-term securities, excessive commissions, speculative trading, improper use of a commission versus a fee-based platform, etc. To the extent that Merrill's compliance personnel and/or system of exception reports did detect Buck's improper activities, these red flags were ignored, suppressed and/or not acted upon. To the extent that Buck's improper practices were not detected, Merrill's personnel failed at (or were prevented from doing) their jobs and its systems were inadequately designed and/or implemented. Upon

23

information and belief, Buck's activities were lighting up Merrill's exception reports or were otherwise known (or apparent with reasonable diligence), yet Buck's Supervisors looked the other way, actively shielding Buck from any meaningful scrutiny for years while benefiting—directly or indirectly—from the vast revenues he generated.

36. Consistent with this dereliction of duty, at no time prior to Buck's termination did anyone in a management, compliance or supervisory capacity at Merrill contact Janice about the activity in her accounts or the fact that given the level of trading, a fee-based account would be a much cheaper option.

37. Given the long period over which his scheme ran and the huge sums of money it generated, Buck's Supervisors, upon information and belief, knew of, aided and abetted and/or ratified Buck's scheme. Buck's Supervisors at the branch, regional and executive levels had, among other things, strong monetary incentives to allow Buck to proceed and severe reputational disincentives to stop him. Upon information and belief, no person in the managerial/supervisory/compliance chain responsible for Buck was disciplined for their repeated failures to stop his misconduct.

38. **Merrill Lynch's Settlement Fraud.** Once Buck's fraud became public, Merrill failed to make its customers whole. Instead, it has misrepresented to customers the amount and scope of their losses in order to obtain advantageous settlements, partially reimbursing commissions while refusing to even acknowledge the losses caused by Buck's mismanagement of their accounts. Merrill has also sought to hide the network of people who enabled Buck to carry out his scheme in order to avoid further reputational damage to the firm and to the Buck Supervisors involved.

39. Buck was fired by Merrill on March 4, 2015. While Merrill contacted Janice shortly thereafter, it provided no explanation for his termination—leaving her to learn the grim truth from news

reports. So began a pattern that lasted the next four plus years (from 2015 to 2019) of Merrill concealing the extent of Buck's misconduct—and the true amount of Janice's losses—while at the same time trying to negotiate a highly favorable settlement. All the way, Merrill continuously discouraged Janice from filing suit lulling Janice into believing that no suit would be needed. At the same time, however, it was also consistently trying to short-change her, striving mightily to convince Janice to accept the same partial return-of-commission settlements that it foisted on Buck's less determined victims. A partial return of commissions, however, does not come close to fully reimbursing Janice for her losses, which include the relatively poor returns she earned due to Buck's gross mis-management of her accounts—a management style that focused on generating commissions for Buck, not profits for Janice.

40. In support of its "Just move on nothing to see here" approach, Merrill, among other things, has variously argued that Janice should be satisfied:

      i.  because her accounts made a profit;

      ii.  because a well-managed account would have generated the same returns as Buck's; and

      iii.  because Buck achieved an internal rate of return of 10% even when the profits from Exact Target are excluded.

While the first of these is true—Janice's account did make a profit—it conveniently ignores that this profit was far smaller than it should have been due to Buck's reckless mismanagement. The remaining contentions above, however, are not even half true. While Merrill, during its years-long discussions with Janice presented well-managed account returns to justify Buck's handling of her accounts, these calculations were based on grossly inappropriate hypothetical allocations of only 20% - 30% of her accounts to equities, with the balance (i.e. 70% - 80%)

in low-yielding fixed income securities. Such an allocation is not appropriate for a *moderate* to conservative investor, particularly one that could afford to take some risk due to having approximately $17 million in cash anchoring her account. Similarly, Merrill argued that Janice should be satisfied with Buck's returns because he achieved a 10% internal rate of return. The true rate of return achieved by Buck was less than 5%, not the 10% claimed by Merrill. By presenting skewed and/or false information as to her actual losses, Merrill sought to convince Janice that her claim had no value beyond, at most, a partial return of the commissions that Buck had fraudulently charged.

41. Merrill's undertook these efforts to hide the true extent of Buck's fraud even though as a current advisory customer, Merrill had a fiduciary obligation to be completely transparent with her—even though such honesty was adverse to Merrill's immediate interests. Ironically, Janice had remained a customer of Merrill—rather than move her accounts to another firm—because she thought Merrill would value its relationship with her and thus treat her fairly.

42. Through these and other acts, Merrill has attempted to overreach Janice during its extended discussions with her. This conduct not only tolls any statute of limitations (to the extent that a statute of limitations has any applicability in this arbitration), but also is relevant to Janice's claim for punitive damages since it shows Merrill failed to offer a fair settlement for Janice's damages after Buck's fraud became public. (*See* Tenn. Code Ann. § 29-39-104(4).)

43. **Janice's subsequent education in as to investments**. After concluding her divorce and launching her girls, Janice decided she would learn more about investments. She did not like feeling stupid and after years of total helplessness, she thus began to take some limited steps to educate herself about stocks. In the fall of 2014, she even opened a self-directed account with Merrill in which she bought one stock a month. Once Buck was fired in 2015, this effort

to learn about investments morphed into a herculean effort of trying to figure out how she had

been cheated by Buck. As she had done at other turning points in her life, Janice threw herself

into learning as much as she could. Janice described her steep learning curve in the Victim's

Statement that she provided to the Court in conjunction with Buck's sentencing, as follows:

> During those 2034 days in which Tom "managed" my accounts, approximately 1100 trades took place and over 450 of those trades were unauthorized. Once I became aware of what had gone on in my accounts in March 2015, I began to educate myself on the investment process and researched in detail on the types of things he bought and sold.
>
> I cannot adequately describe the feeling of betrayal by what Tom did to me. I couldn't believe it at first and was terribly embarrassed that this happened.
>
> I felt so stupid for not knowing the rules of investing, for not understanding the investments and for believing Tom in the first place. I couldn't understand (and still don't understand) how Tom could have done that to me as well as to my daughters.

(*See* Janice's Victim Impact Statement at pp. 3-4, attached as **Exhibit E.**)

44. **Buck's conviction for securities fraud and industry bars.** On September 6, 2017, the

Department of Justice charged Buck with securities fraud under 18 U.S.C. Section 1348—

alleging the very misconduct Janice has described herein—via an Information.[17] (*See*

Information, *United States of America v. Thomas J. Buck,* attached as **Exhibit F.**) Specifically,

the government alleged,

> As part of the scheme to defraud, in violation of NYSE Rule 408 and Merrill Lynch policy, BUCK exercised discretion when placing certain trades on certain client accounts without obtaining authorization from the client. As a result, certain clients on a

---

[17] An "Information" is a formal charging document the government uses to institute criminal proceedings against a defendant that outlines the elements of and the probable cause against the defendant for an alleged crime.

commission based cost platform, which comprised 80% of BUCK'S clients, paid commissions on these trades.

As further part of the scheme to defraud, BUCK made false and materially misleading representations to his clients about the total amount the clients were paying Merrill Lynch in annual commissions.

As further part of the scheme to defraud, BUCK intentionally failed to inform certain clients that a fee-based option was available, and that the fee-based option could be cheaper than the commissions the client was paying.

(*Id*. at p. 5.) On January 18, 2018, Buck pled guilty to this charge and, in doing so, admitted each allegation of *criminal* securities fraud contained in the Information. (*See* Plea Minute Entry attached as **Exhibit G**.) The Court thereafter sentenced Buck to prison for 40 months despite Buck's request to serve no time. (*See* Sentencing Minute Entry and Final Judgment attached as **Exhibit H**). In seeking the most prison time possible, the prosecutors relayed to the Court the harm Buck caused to Janice and her family. (*See* Janice's Victim Statement referenced in the Government's Sentencing Memorandum which is attached as **Exhibit I**.)[18]

45. In addition to his criminal conviction, Buck has been permanently barred from the securities industry. FINRA's bar came in July 2015 just a few months after Buck's termination. (See FINRA AWC attached as **Exhibit J**.) The SEC instituted an enforcement action against Buck in federal court on October 31, 2017, followed by an in-house SEC administrative action, resulting in a bar from Buck acting as an investment advisor. (*See* Complaint in SEC Civil Case, Consent Judgment in SEC Civil Case, and SEC Administrative Action, collectively attached as **Exhibit K**.) The SEC also imposed $5.1 million in fines and restitution, which Buck has since personally paid. The proceeds of the SEC enforcement action went to a

---

[18] Janice is referred to as "Client D" in the Government's Sentencing Memorandum and specifically mentioned on pages 6, 7, 22 and 23 as well as Footnote 14 in **Exhibit I**.

Victim's Fund, from which Janice recently obtained a partial recovery of the commissions she paid ($782,220), plus pre-judgment interest ($131,209) and post-judgment interest ($33,439) on this amount, albeit at the (low) rates that apply to SEC disgorgement actions.[19]

## IV.  CAUSES OF ACTION

The following claims are pled independently of one another and, where appropriate, in the alternative. Each Count incorporates the proceeding paragraphs by reference.

## COUNT ONE

### INDIANA'S CORRUPT BUSINESS INFLUENCE ACT - OPERATING AN ENTERPRISE THROUGH A PATTERN OF RACKETEERING

#### *RESPONDENTS: BUCK, BUCK'S SUPERVISORS & MERRILL (DERIVATIVELY)*

46. The preceding paragraphs are hereby incorporated by reference.

47. It is a violation of the Indiana Corrupt Business Influence Act ("ICBIA") for:

     i.     A person who is employed by or associated with any enterprise;

     ii.    To knowingly or intentionally conduct or otherwise participate in the activities of that enterprise;

     iii.   Through a pattern of racketeering activity.

*See* Indiana Code Ann. § 35-45-6-2. Buck, Merrill and the John Doe Respondents have violated Indiana Code Ann. § 35-45-6-2, in multiple ways, including as follows.

---

[19] While plaintiffs in Tennessee can get statutory pre-judgement interest at a rate of 10%, the rate applied by the SEC was only 5% to 6%. Janice's demand here seeks interest on the full amount of commissions at 10% with a credit for the amount she has already recovered from the SEC Victim's Fund.

48. Under the ICBIA, racketeering means to "commit, … conspire to commit a violation of, or aiding and abetting in a violation" of a number of crimes including fraud. (Ind. Code Ann. § 35-45-6-1(1)(e).)

49. Merrill is an enterprise engaged in the financial services industry and Buck and the John Doe Respondents were at all relevant times employed by Merrill.

50. As alleged above and/or as will be proven at trial, Buck knowingly and/or intentionally conducted—or otherwise participated in—the activities of Merrill through a pattern of racketeering activity that included the commission of multiple acts of fraud against Janice as well as other customers. Buck's scheme also included other predicate acts under the ICBIA, including theft. (*See* also Ind. Code Ann. §§ 35-45-6-1(1)(e), 35-43-4-2.)

51. As alleged above and/or as will be proven at trial, some or all of the John Doe Respondents— Buck's Supervisors—likewise, at a minimum, participated in the activities of Merrill through a pattern of racketeering activity by, among  other things, aiding and abetting Buck and/or conspiring with Buck in his commission of multiple acts of fraud against Janice and/or other customers. The participation of these Respondents also included other predicate acts under the ICBIA, including theft. (*See* also Ind. Code Ann. §§ 35-45-6-1(1)(e), 35-43-4-2.)

52. As a direct and proximate result of these violations of the ICBIA, Janice has been injured in her property in the ways and in the amount to be shown at trial. The private right of action created by the ICBIA *requires* that Janice be awarded three times her compensatory damages, the cost of bringing this action, and attorneys' fees, and allows for punitive damages.[20]

---

[20] Ind. Code Ann. § 34-24-2-6 reads as follows:

53. Buck and his Supervisors are liable for these damages directly, while Merrill is liable for these damages under principles of respondeat superior because the individual respondents acted within the scope of their employment and/or within their actual or apparent authority. Merrill is also liable for its employees' criminal conduct and resulting damages under Indiana Code Ann. § 35-41-2-3, which holds a corporation strictly liable for the criminal acts of its employees committed within the scope of the authority given to them.

**COUNT TWO**

**INDIANA CORRUPT BUSINESS INFLUENCE ACT - USE OF RACKETEERING PROCEEDS TO OPERATE AN ENTERPRISE**

*RESPONDENTS: MERRILL & BUCK'S SUPERVISORS*

54. The preceding paragraphs are hereby incorporated by reference.

55. It is a violation of the Indiana Corrupt Business Influence Act ("ICBIA") for:

    i.    A person who knowingly or intentionally receives any proceeds directly or indirectly from a pattern of racketeering activity;

    ii.    To use or invest those proceeds or the proceeds derived therefrom to operate an enterprise.

*See* Indiana Code Ann. § 35-45-6-2(1). Merrill and the John Doe Respondents have violated

Indiana Code Ann. § 35-45-6-2(1), in multiple ways, including as follows.

---

    Upon a showing by a preponderance of the evidence that the aggrieved person has been damaged by corrupt business influence, the court **shall** order the person causing the damage through a violation of IC 35-45-6-2 to pay to the aggrieved person:
        (1) an amount equal to three (3) times the person's actual damages;
        (2) the costs of the action;
        (3) a reasonable attorney's fee; and
        (4) any punitive damages awarded by the court and allowable under law.

Ind. Code Ann. § 34-24-2-6(b) (emphasis added).

56. In addition to being an enterprise" for purposes of the ICBIA, Merrill, as a corporation, is also a "person" under the law.

57. As described in Count 1, Buck and the John Doe Respondents conducted and/or otherwise participated in the activities of Merrill through a pattern of racketeering activity.

58. Buck's Supervisors and Merrill, itself through said employees, knowingly and/or intentionally used income that was derived from that pattern of racketeering activity in the operations of Merrill, which included, among other things, the large sums generated by Buck through his fraudulent trading practices. Merrill, through both Buck and one or more of the John Doe Respondents, knowingly and/or intentionally received proceeds from Buck's fraudulent acts and used those proceeds in the operation of Merrill.

59. As a direct and proximate result of Buck's Supervisors' and Merrill's violations of the ICBIA, Janice has been injured in her property in the ways and in the amount to be shown at trial. In addition, the ICBIA's private right of action requires this Panel to award three times Janice's compensatory damages, the cost of bringing this action, and attorneys' fees, and allows for punitive damages.[21]

60. Merrill and Buck's Supervisors are liable for these damages directly, while Merrill is also liable for these damages under principles of respondeat superior because the individual respondents acted within the scope of their employment and/or within their actual or apparent authority. Merrill is also liable for its employees' criminal conduct and resulting damages under Indiana Code Ann. § 35-41-2-3, which holds a corporation strictly liable for the criminal acts of its employees committed within the scope of the authority given to them.

---

[21] *See* Footnote 20, *supra.*

## COUNT THREE

**FEDERAL RICO - OPERATING AN ENTERPRISE THROUGH A PATTERN OF RACKETEERING**

*RESPONDENTS: BUCK & MERRILL LYNCH (DERIVATIVELY)*

61. The preceding paragraphs are hereby incorporated by reference.

62. It is a violation 18 U.S.C. 1964(c)—the Racketeer Influenced and Corruption Act ("RICO")

for:

    i.    a person who is employed by or associated with an enterprise engaged
          in or the activities of which affects interstate or foreign commerce,

    ii.   to conduct or participate in the conduct of the enterprise's affairs, and

    iii.  to do so through a pattern of racketeering activity.

  Buck has violated 18 U.S.C. 1964(c) in multiple ways, including as follows.

63. At all relevant times Buck was employed by Merrill—the enterprise—a financial services

    business that was engaged in or the activities of which affected interstate commerce.

64. As alleged above, Buck conducted—or otherwise participated in the conduct—of Merrill's

    affairs through a pattern of racketeering activity that included the commission of multiple acts

    of securities fraud against Janice and other of Buck's customers. (*See* 18 U.S.C. § 1961(1)(D)

    and §1348.) Buck pled guilty to this crime and his conviction became final on February 15,

    2019. (*See* Buck Information, Buck's Guilty Plea, and the Government's Sentencing

    Memorandum, **Exhibits G, H**, and **I,** respectively.)

65. As a direct and proximate result of these RICO violations, Janice has been injured in her

    property in the ways and in the amount to be shown at trial. The private right of action created

by RICO *requires* that Janice be awarded three times her compensatory damages, the cost of bringing this action, and attorneys' fees. [22]

66. Buck is liable for these damages directly, while Merrill is liable for these damages under principles of respondeat superior because Buck acted within the scope of his employment and/or within his actual or apparent authority. Merrill is also liable for its employees' criminal conduct and resulting damages under Indiana Code Ann. § 35-41-2-3, which holds a corporation strictly liable for the criminal acts of its employees committed within the scope of the authority given to them.

## COUNT FOUR

### CIVIL RECOVERY UNDER INDIANA'S CRIME VICTIM STATUTE
### *RESPONDENTS: BUCK AND MERRILL (DERIVATIVELY)*

67. The preceding paragraphs are hereby incorporated by reference.

68. Per Indiana Code Ann. § 34-24-3-1, Indiana's Crime Victim Statute, a person who suffers a pecuniary loss as a result of criminal conduct, including fraud and theft, may recover from the person who caused the loss: treble damages, the costs of bringing the action, and attorney's fees.

---

[22] The civil RICO recovery statute reads as follows,

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor …and **shall** recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee….

18 U.S.C. 1964(c) (emphasis added).

69. As described above, Buck handled Janice's accounts in a manner that constituted criminal fraud and/or theft from which Janice suffered pecuniary losses.

70. As a direct and proximate result of Buck's fraud/theft, Janice has been injured in her property in the ways and in the amount to be shown at trial.

71. Buck is directly liable to Janice under the Indiana Crime Victim Statute, while Merrill is liable for Buck's conduct and the resulting damages under principles of respondeat superior because Buck acted within the scope of his employment and/or within his actual or apparent authority. Merrill is also liable for Buck's criminal conduct and treble damages under Indiana Code Ann. § 35-41-2-3, which holds a corporation strictly liable for the criminal acts of its employees committed within the scope of the authority given to them.

## COUNT FIVE
### BREACH OF FIDUCIARY DUTY
#### *RESPONDENTS: ALL*

72. The preceding paragraphs are hereby incorporated by reference.

73. A breach of fiduciary duty is actionable where it is shown that: 1) the parties are in a fiduciary relationship; 2) a fiduciary duty is breached; and 3) either the claimant is thereby injured and/or the respondent is benefited.

74. Respondents owed Janice broad fiduciary duties, both those that are inherent to any broker-client relationship, as well as the additional and broader fiduciary duties that arose when Buck assumed discretion and control over Janice's accounts. By assuming discretion, Respondents were obliged to, *inter alia*, always act in Janice's best interests, adhere to rigorous duties of loyalty, avoid conflicts of interest, act with the utmost good faith and a high standard of care, and adhere to the duty of candor. *See* 2 Norman S. Poser & James A. Fanto, Broker-Dealer

35

Law and Regulation §16.01, at 16-3,4 (4th ed. 2017); *see also Johnson v. John Hancock Funds*, 217 S.W.3d 414, 428 (Tenn. App. 2006) (when a client requests the broker to provide investment advice–and the broker proceeds to do so–the broker "assumes broad fiduciary obligations that extend beyond the individual transactions").

75. Respondents' fiduciary duties also required them to, *inter alia*:

     i.    prudently manage Janice's accounts in light of her actual investment objectives and risk tolerances and avoid unsuitable investments;

     ii.    avoid all self-dealing and selfish interests;

     iii.    avoid speculative investments;

     iv.    refrain from misrepresenting any material facts;

     v.    disclose all material facts that could affect a transaction or the principle/agent relationship;

     vi.    forthrightly explain the practical impact and risks of a trading strategy;

     vii.    stay informed regarding any changes that affect the market and responsibly act to protect Janice's accounts from those changes; and

     viii.    faithfully adhere to all of the other fiduciary duties described herein or imposed by law.

76. Respondents also had an on-going obligation to disclose and correct any previous breaches of fiduciary duty to Janice.

77. Respondents breached these duties by at least the following acts:

     i.    Engaging in (and, in the case of Merrill, permitting and/or ratifying) all of the frauds for which Buck is now in prison;

     ii.    Managing Janice's accounts in order to generate commissions for Buck and Merrill rather than for the benefit of Janice;

     iii.    Managing Janice's accounts without any legitimate strategy;

     iv.    Purchasing, and selling unsuitable products;

     v. Following unsuitable investment strategies;

     vi. Placing trades in disregard of Janice's investment objectives;

     vii. Purchasing securities in which Buck/Merrill had a conflict of interest;

     viii. Lying to Janice regarding the benefits of converting at least some of her accounts to fee-based accounts;

     ix. Failing to adequately supervise Buck; ignoring numerous red flags relating to Buck's management; and ratifying and incentivizing his breaches of fiduciary duty to Janice; and

     x. Failing to disclose and correct Respondents' previous breaches of fiduciary duty, even as Merrill continued to manage and the enjoy the revenue from Janice's accounts.

78. Merrill is both directly and derivatively liable for breach of fiduciary duty to Janice. Among other things, it is directly liable in that it failed to effectively supervise Buck and his supervisors and is derivatively liable under principles of agency/respondeat superior for the acts of its employees, including Buck.

79. Respondents' breaches of their fiduciary duties were ongoing and continuing in nature, and Merrill's have persisted to this day through, inter alia, affirmatively concealing the full extent of Janice's damages and the involvement of other of its employees in Buck's scheme, in blatant disregard of its duty of candor to Janice and duty to correct prior fiduciary breaches.

80. Respondents' breaches of fiduciary duty greatly damaged Janice, including causing her to lose the returns she reasonably should have received if her account had been prudently managed.

## COUNT SIX

### FRAUD

#### *RESPONDENTS: ALL*

81. The preceding paragraphs are hereby incorporated by reference.

82. The elements of a claim for common law and promissory fraud in Tennessee include:

  i. an intentional misrepresentation of a material fact or omission of a material fact when there is a duty to disclose;

  ii. knowledge of the representation's falsity or a reckless disregard for the representations' truth or falsity;

  iii. an injury caused by the reasonable reliance on the misrepresentation (or omission); and

  iv. the misrepresentation (or omission) involves a past or existing fact or in the case of promissory fraud the misrepresentation embodies a promise of future action or projection without the present intention to carry out the promise or no reasonable belief in the projection.

83. Respondents' conduct as described and alleged in the paragraphs above constituted common law and promissory fraud.

84. Janice reasonably relied on Respondents' various representations, omissions, and concealments due to, among other things, her close and long-standing relationship with Buck.

85. Merrill Lynch is derivatively liable for Buck's fraud through principles of respondeat superior and agency. Buck's scheme—while fraudulent—was executed within the scope of his employment with Merrill and/or with Merrill's apparent authority. It is also directly liable for the damages caused by Buck's scheme because, upon information and belief, Buck's managers/supervisors aided and abetted or otherwise assisted in his scheme.

86. As a direct and proximate result of Buck's fraud, Janice has been injured in her property in the ways and in the amount to be shown at trial.

## COUNT SEVEN

### NEGLIGENT SUPERVISION AND RATIFICATION

#### *RESPONDENT: MERRILL*

87. The preceding paragraphs are hereby incorporated by reference.

88. Merrill had statutory, regulatory, common law, and internal obligations to supervise Buck's activities, as well as the activities of its management and its compliance personnel. Merrill was at least negligent in carrying out these obligations in that, among other things, it failed to detect and/or prevent Buck from: assuming control over Janice's accounts, mismanaging Janice's accounts, trading Janice's accounts for his own benefit, and failing to ensure effective branch and compliance oversight. Instead, Merrill incentivized Buck's misconduct and fraud and later ratified it by among other things concealing its full scope. Among other things, Merrill:

    i.   Failed to enforce SEC, FINRA and other SRO rules;

    ii.  Failed to establish procedures—and a system for applying those procedures—that would reasonably prevent and detect violations of the securities rules/laws by Buck;

    iii. Failed to supervise Buck with a view to prevent violations;

    iv.  Failed to vigorously investigate red flags or other suggestions of irregularity/ wrongdoing regarding Buck and/or his team through diligent inquiry by those with the knowledge and authority to conduct a thorough investigation, including going beyond the unverified and self-serving representations of Buck or others under his control;

    v.   Failed to contact Janice directly when red flags were raised in her accounts;

    vi.  Failed to provide the compliance department with the resources/power to effectively and independently police Buck;

    vii. Failed to place adequate limitations on Buck to prevent further misconduct once issues had been identified; and

    viii. Failed to follow industry practices for supervision.

89. Upon information and belief, the manner in which Buck's Supervisor's conducted their oversight of Buck did not comport with Merrill Lynch's internal policies, rules, and guidelines. Rather than stop Buck's scheme, Buck's Supervisors and Merrill allowed him to continue it— ratifying his misconduct.

90. As a direct and proximate result of Merrill's negligent supervision, Janice has been injured in her property in the ways and in the amount to be shown at trial.

91. Merrill is both directly liable for its failure to supervise Buck and derivatively liable for Buck's Supervisors' failures under principles of respondeat superior and agency principles.

## VI. EXEMPLARY DAMAGES

92. In Tennessee, punitive damages should be awarded when a respondent has acted maliciously, intentionally, fraudulently or recklessly. *See* Tenn. Code Ann. § 29-39-104(a)(1).

93. In evaluating the amount of punitive damages, the Panel should look at the factors listed in Tenn. Code Ann. § 29-39-104(4), which as applied to this case include, *inter alia*,

    i.    the Respondents' net worth and financial condition;

    ii.    the nature and reprehensibility of the Respondents' wrongdoing;

    iii.    the impact of Respondents' conduct on Janice and others;

    iv.    the relationship of Respondents to Janice;

    v.    Respondents' motivation for causing harm to Janice and others;

    vi.    whether the Respondents attempted to conceal the misconduct;

    vii.    whether the Respondents profited from the misconduct; and

    viii.    whether once the misconduct was admittedly known to Merrill, whether it attempted to make amends by offering a prompt and fair settlement for actual harm caused to Janice.

94. The proof will demonstrate the applicability of most—if not all—of these factors. Justice therefore warrants an award of punitive damages against each Respondent in an amount to be determined by the Panel consistent with the public policy of punishing past misconduct and deterring further misconduct in the future.

## VII.   STATUTE OF LIMITATIONS & ELGIBILITY

95. Janice and Merrill entered a tolling agreement that suspends any time-based defense as of September 5, 2019.[23] To the extent that statutes of limitation are even apply in this arbitration, all of Janice's claims are timely when calculated from this date. The above claims have varying statutes of limitations that have either not run or have been tolled. The statute of limitations for Janice's federal RICO claim (Count Three) has only recently accrued. It has a four-year statute of limitations that did not begin to run until at least February 15, 2019—the date Buck was sentenced and his conviction became final. The Indiana Corrupt Business Influence Act claims (Counts One and Two) have a ten-year statute of limitations. These claims are thus timely on their face.

96. As for the rest of Janice's claims, each claim is timely based on the existence of several tolling doctrines, including lack of discovery (Janice did not and could not reasonably have discovered her claims until sometime after Buck's termination); equitable estoppel (Merrill's active concealment of Janice's claims and damages was intended to—and in fact did—induce and lull Janice into putting off filing suit, which estops Merrill from asserting statute of limitations defenses); promissory estoppel (since Buck's termination, Merrill has consistently suggested

---

[23] The tolling agreement went into effect on September 5, 2019 and expired on the date of the filing of this Statement of Claim.

that Janice engage in settlement discussions and mediation—and made severely undervalued settlement offers to Janice as recently as July 2019—such that Merrill has represented to Janice that her claims remain valid and pending), and revival (even if some of Janice's claims are somehow untimely, Merrill has revived its obligations and Janice's damages by acknowledging her claims and expressing a willingness to partially pay them). The application of these doctrines is only of academic interest, however, because as opposed to states whose legislatures have explicitly applied statutes of limitations to arbitration claims, Tennessee's legislature has declined to do so.

97. Further, Janice's claims are fully eligible for submission under FINRA Rule 12206, which states that "No claim shall be eligible for submission to arbitration under the Code where six years have elapsed from the occurrence or event giving rise to the claim." Here, the earliest event/occurrence giving rise to all but one of Janice's claims was her discovery of Buck's fraud following his termination in March of 2015.  As such, any claim brought prior to March 2021 falls within the 6-year eligibility rule. Moreover, Merrill repeatedly told Janice in its discussions with her that her claims were actionable for the 6-year period that precedes Buck's termination in March 2015, and it would therefore be estopped if it now attempted to claim otherwise. Moreover, with respect to Janice's federal RICO claim, the event giving rise to that claim—the point Buck's criminal conviction became final—did not occur until February 15, 2019, putting that claim plainly within the six-year period.

## VIII.  DAMAGES & PRAYER FOR RELEIF

As a result of the Respondents' misconduct as set forth above, Janice seeks an award of damages jointly and severally against the Respondents as follows:

42

1. An amount equal to the returns Janice lost due to the Respondents' failure to prudently manage her accounts e.g. well managed damages;

2. Disgorgement of the balance of the commissions Janice has not recovered to date from the SEC's Victim's Fund;

3. Pre-judgement interest at the highest rate allowed by law;

4. Treble damages;

5. Attorney's fees, costs and expenses;

6. Punitive/exemplary damages; and

7. Such other, different or additional relief and damages which the Panel deems to be just and equitable.

## IX.  RIGHT TO AMEND

Given that Respondents hold documents and information necessary for Janice to fully evaluate her claims, Janice reserves the right to amend this Statement of Claim and/or at the final hearing to prove up the claims made with additional or different facts and/or to prove up additional claims.

Respectfully submitted this 31st day of July, 2020.

/s/ Niel Prosser

Nathaniel Prosser (TN #11647)
Rob Clapper (TN #34180)
Kyle Johnson (TN #36066)
Jake Dickerson (TN #26269)

The Prosser Law Firm, PLC
5865 Ridgeway Center Parkway, Suite 300
Memphis, Tennessee 38120
Telephone: (901) 820-4433

Exhibit 2



**KAUFMANN
GILDIN &
ROBBINS LLP**
ATTORNEYS AT LAW

767 THIRD AVENUE
NEW YORK NEW YORK 10017

TEL(212) 755-3100
FAX(212) 755-3174
WWW.KAUFMANNGILDIN.COM

Writer's Direct Dial: 212.705.0815
drobbins@kaufmanngildin.com

October 15, 2020

**Via The Portal**

Steeve D. Encaoua
Senior Case Administrator
FINRA Dispute Resolution Services
Southeast Regional Office
Boca Center Tower 1
5200 Town Center Circle – Suite 200
Boca Raton, FL 33486-1017

**Subject:** FINRA Dispute Resolution Services Arbitration Number 20-02468
*Janice J. Compton vs. Merrill Lynch, Pierce, Fenner & Smith Inc. and
Thomas Joseph Buck*

**THOMAS J. BUCK'S ANSWER TO STATEMENT OF CLAIM**

Dear Mr. Encaoua:

This is the Answer of Respondent Thomas Buck, who requests that the arbitration Panel dismiss all claims against him for the reasons set forth in this Answer and as will be presented at the arbitration hearing. While Respondents in a FINRA arbitration have no burden of proof, we will nevertheless show that the claims and allegations against Mr. Buck are not only time-barred but are false.

**Overview of Answer**

Before FINRA, the Securities and Exchange Commission ("SEC") and the United States Federal District Court for the Southern District of Indiana, Tom Buck took responsibility for his misconduct, tendering $5,091,637 to the SEC (representing what that federal agency deemed to be the disgorgement of excessive compensation/commissions, interest and penalty). Mr. Buck pled guilty to a charge of securities fraud fully understanding that he would thereafter be incarcerated

**KAUFMANN GILDIN & ROBBINS LLP**

Steeve D. Encaoua
FINRA Dispute Resolution Services
October 15, 2020
Page 2

and, while the Department of Justice asked the federal judge that he be sentenced to a term of 78 months, the Court recognized that the amount of loss to customers alleged by DOJ was wholly inconsistent with the facts; the Court sentenced him to 40 months and he has returned home.

Of the $5.1 million Tom Buck paid the government, the SEC established a fund for his former clients who claimed they were excessively charged commissions in lieu of management fees. A fund of $2,858,043 was established in addition to payments made by Respondent Merrill Lynch to customers. All of those customers accepted payments from Merrill Lynch *except* Claimant, who obtained $946,868 from the SEC despite the fact that:

(1)   Merrill Lynch determined the so-called "excessive fee" amount to be less;

(2)   Claimant approved all the trading in her accounts and was always aware of their status;[1] and,

(3)   As a result of Tom Buck's securities recommendations to Claimant over the years, she made millions of dollars in trading profits.

Despite these facts, Claimant – who sat silent in the courtroom when Tom was sentenced – has waited years to complain about  trading that took place from 2009 through 2013, rendering her otherwise meritless claims time-barred.  Further, the trading activity at issue in Tom Buck's FINRA, SEC and DOJ matters is different from the trading in Claimant's accounts, as will be explained in this Answer and at the hearing.

We are presently at a disadvantage in fulfilling Respondent Tom Buck's Rule 12303(a)(2) obligation to serve each party with an Answer "specifying the relevant facts and available defenses to the statement of claim" because he has not had access to Claimant's account records since the spring of 2015. For example, by not having access to Claimant's monthly account statements, we cannot see the trading in 2012 and 2013 that she claims to have been untoward (but which has been referred to in Respondent Merrill Lynch's Answer).[2] This disadvantage should be resolved after Claimant and Merrill Lynch produce Discovery Guide documents and respond to Rule 12507

---

[1] Although Mr. Buck recalls one instance of a miscommunication, to be explained below.
[2] We also need to see account commission runs and what Merrill Lynch refers to as Annual Time Rated Return tables by households to be certain of the returns from the inception of the relationship in 2000 through its cessation in the spring of 2015 and thereafter (because, upon information and belief, Claimant maintained accounts with Merrill Lynch up to sometime this year).

**KAUFMANN GILDIN & ROBBINS LLP**

Steeve D. Encaoua
FINRA Dispute Resolution Services
October 15, 2020
Page 3

additional requests.  At that time, Mr. Buck may very well seek to amend this Answer.  Until then, what follows is based on his best recollection of events that occurred many years ago.

This Answer will provide a preview of Tom Buck's testimony and will explain how the claims are time-barred by applicable statutes of limitation and are ineligible for FINRA arbitration in accordance with a FINRA arbitration rule.  When Tom testifies, the arbitrators will readily see that he never intended to defraud Claimant and that he had her best interests as his motivation for his recommendations.  One need only read Merrill Lynch's Answer to see that there are often two sides to a story.

### THE ALLEGATIONS AND TOM BUCK'S ANTICIPATED TESTIMONY

The following are 11 of the many allegations in the 43-page Statement of Claim that Mr. Buck will respond to in this Answer and which he will expand upon at the hearing.[3]

*Quoted Assertions in the Statement of Claim*[4]

1. **2009 and Thereafter** – "As soon as Janice's first account was funded in August 2009, Buck assumed control. He proceeded to sell most of the securities that had been transferred into her account from Bob and then began a course of aggressive trading—selling long-term positions prematurely and trading other positions speculatively. He did so knowingly—in complete disregard for Janice's investment objectives and risk tolerances—and did so in order to generate commissions for himself and Merrill. While this trading contradicted Janice's listed objectives, it drew no effective scrutiny because of who Buck was. In little more than five years of trading, Buck generated more than $1.4 million in commissions on some 1,100 trades."

2. **Tens of Millions of Dollars** – "Janice had been close friends with Buck and

---

[3] All of the allegations of the Statement of Claim are not responded to in this Answer but will be addressed at the hearing.

[4] While the Claim has 97 numbered paragraphs and while the following quotes have not been changed, we have numbered them for formatting purposes and added headings that we believe summarize the allegations quoted.

**KAUFMANN GILDIN & ROBBINS LLP**

Steeve D. Encaoua
FINRA Dispute Resolution Services
October 15, 2020
Page 4

his family for nearly sixteen years when she opened her accounts with him in 2009. The substantial amount of money she received then – and the additional tens of millions of dollars she received thereafter – came as a result of her painful divorce."

3. **Five Years of Mismanagement** – "For the next five years, Janice allowed Buck to manage her money as he thought best, with Buck only keeping Janice generally apprised of the activity and performance in her accounts. … Buck assumed discretion and control over Janice's accounts from the start, ultimately making over 1,100 trades, charging high commissions and frequently turning over positions that would normally be held long-term by a moderate to moderately conservative investor such as Janice."

4. **Trading Was Profitable** – "While Janice's accounts did generate an overall profit—making some $3.7 million dollars over five years—they made nowhere near what they should have made with simple, prudent management. … Janice had a right to expect that Buck would adhere to such a minimal fiduciary duty and is entitled to a recovery of all of her losses arising out of his failure to do so. The amount of such damages will be proved at trial but with interest, is expected to exceed $7 million."[5]

5. **Never Questioned Trades** – "Selecting only customers who he knew would not question his actions – such as Janice – Buck proceeded to buy and sell high-commission products simply to enrich himself. Account performance – if it was considered at all – was at most secondary."

6. **What was Traded** – "Buck concentrated his trading on securities that paid high commissions but which drew less scrutiny from compliance—including

---

[5] If we are reading this correctly, Claimant is asserting that instead of a $3.7 million profit she earned, the accounts should have generated a profit of $7 million. And this is on top of the $946,868 she received from the SEC fund paid for by Tom Buck. We will seek the statistical support for these alleged damages in accordance with the Discovery Guide and Rule 12507.

**KAUFMANN GILDIN & ROBBINS LLP**

Steeve D. Encaoua
FINRA Dispute Resolution Services
October 15, 2020
Page 5

municipal bonds, common stocks, master limited partnerships and certain new issue syndicate items."

7. **Change of Degree of Trading in 2014** – "Buck's awareness of this investigation can be inferred from changes in how he traded Janice's accounts during parts of 2014 and up until March 2015 when he was fired. In past years Buck had actively traded certain of Janice's accounts—placing multiple trades nearly every month. During 2014, however, his trading slowed and in 2015 it stopped altogether."

8. **"Short Term Trading in Bonds** – Short term trading in bonds was a hallmark of Buck's mismanagement. Buck essentially treated Janice's bond holding as his own private inventory – to be swapped/traded with the Firm or other of his customers at will. While bonds by their nature are intended to be held for the long term, Buck routinely sold them prematurely…The following timeline [in paragraph 26 of the Statement of Claim] reflects the five separate bonds that Buck bought with this $200,000 between February 26, 2010 and May 17, 2011."

9. **"Short-Term Trading in MLP** – … Buck engaged in the same pattern of short term, speculative trading as he did with bond trades [in 2010, 2011 and 2012 listed paragraph 27 of the Statement of Claim.]"

10. **"Short-Term Holding of Equities.** Buck's pattern of short-term, speculative sales also extended to equities….The following is an abbreviated list of stocks that were purchased only to be sold months (sometimes only weeks) later [from 2009 to 2013, as set forth in paragraph 28 of the Statement of Claim].

11. **No Cogent Strategy** – "Buck employed no cogent investment strategy and executed trades merely to generate commissions."

**KAUFMANN GILDIN & ROBBINS LLP**

Steeve D. Encaoua
FINRA Dispute Resolution Services
October 15, 2020
Page 6

*Tom Buck's Responses to These Quoted Assertions in the Statement of Claim*

These are strong allegations of intentional wrongdoing that need to be addressed at in-person arbitration hearings and they will be. Until then, what follows is Tom Buck's anticipated testimony (which, again, is not based on access to any documents). In words or substance, the arbitrators will hear the following from Tom:

1. **Accounts Opened in 2000** – Bob and Janice Compton opened their accounts with him in 2000. They were in Bob Compton's name and served as the financial support for the family since Bob – who is primarily a venture capitalist – was the primary income earner. From the late 1990s to approximately 2005, he held a senior corporate position with Medtronic Sofamore Danek in Memphis. Tom recalls that a majority of the assets in the accounts (all fee-based) were in bonds. There was very little trading in the accounts after the initial purchases.

2. **2009 Separation** – In 2009, the Comptons separated and Janice opened an account worth approximately $7 million. She profiled as a moderately conservative investor, with a balance of about 45% bonds/45% stocks/10% cash.

3. **Commission-Based** – Tom suggested a commission arrangement based on the previous nine years' experience with the Comptons.  His also recommended that she be on the commission platform because, as he recalls, most of his clients paid less in commissions than they would have in fees and therefore the commission platform was expected to be in her best interests. At Mr. Buck's sentencing hearing (that Claimant attended), it was shown  by his expert witness that the clients referenced by the Department of Justice did not suffer the damages alleged by that agency.

4. **Strategy** – Because Claimant had not run a portfolio before (although, according to Tom, she is very smart, savvy and had been in the IBM 401K program for 20 years), he made certain to fully explain proposed strategy. That is, he recommended

**KAUFMANN GILDIN & ROBBINS LLP**

Steeve D. Encaoua
FINRA Dispute Resolution Services
October 15, 2020
Page 7

maintaining about a 50% bonds and split the stock portion into two tranches: defensive stocks (P&G, J7J, AT&T, etc.) and offensive stocks (Boeing, Intel, etc.).

5. **Miscommunication Recalled** – There is one time that Tom recalls miscommunicating with Claimant about a purchase. Over the phone, he recommended adding a certain dollar amount to each of the defensive stocks, almost 15 or 20 in her accounts. A day or two later, Claimant called Tom, wanting to know what those purchases were for. When he explained, she said she thought that Tom meant "defense" stocks, like Raytheon. She did not complain, but from that day forward, Tom made certain that he informed her fully before every trade.

6. **Exact Target Stock and Tax-Swapping** – Because the following will be a central subject in Mr. Buck's defense, it will be summarized here and expanded upon greatly at the hearing:

   A. *Alleged Overbilling* – The alleged "overbilling" was due to the aggressive tax-swapping necessitated by the Exact Target IPO and buyout. The tax swaps were effective in reducing Claimant's sizeable tax bill.

   B. *December 2011* – That month, Claimant received word that Exact Target – a major investor of the Comptons – would be going public in the foreseeable future. This was great news, but was going to create a large tax bill, about which Claimant expressed concern. Tom explained that the only means he had to reduce her tax burden was to take advantage of "down strokes" in the markets to execute tax-swaps to turn a paper loss into a deductible write off. Claimant said she was all for that.

   C. *2012* – Exact Target went public and Claimant received approximately $30 million in Exact Target stock. She decided to sell half and keep half based on Tom's advice because with the proceeds from the sales she would have enough

**KAUFMANN GILDIN & ROBBINS LLP**

Steeve D. Encaoua
FINRA Dispute Resolution Services
October 15, 2020
Page 8

              to build her portfolio to provide life-long security for her and her family.

**D.** *Tax-Swaps Continued* – In November 2012, Claimant and her accountant told Tom that they realized that capital gains tax rates were increasing from 15% in 2012 to 23.8% in 2013. So, they decided – with no input from Tom – to sell the half of Claimant's stock and immediately buy it back, thereby realizing a $15 million capital gain and paying taxes at 15% (i.e., about $2.25 million in taxes). That would save her the 8.8% difference in tax rate on $15 million (i.e., a saving of approximately $1.3 million).

**E.** *2013* – That year, Exact Target was bought in an all-cash deal by Sales Force, which resulted in Claimant having a 43.8% short-term profit capital gain rate on about $10 million. With Claimant's approval, Tom did as much tax-swapping as he could throughout 2013.

**F.** *Resulting Commissions* – Because of the tax-swaps, commissions were higher than they otherwise would have been.

**G.** *Exact Target Profit Omitted* – The Statement of Claim omits the profit made on the Exact Target stock from its IPO in the spring of 2012 until its buyout by Sales Force in 2013. At the IPO, Tom recommended that Claimant sell half of her stock for diversification and income security and keep the other half because the prospects for the company were very good.

**H.** *Knowledge of Trading in Exact Target* – Tom was also an early stage investor and, as a result, was well informed about the company. Claimant seems to assert that the profit from that decision should not be considered for this arbitration. That is wrong. The decision to own half of the Exact Target stock was made with Tom, as were all other investment decisions in her portfolio. Tom made the recommendation; he explained the reasons and risks; and, Claimant gave the OK

**KAUFMANN GILDIN & ROBBINS LLP**

Steeve D. Encaoua
FINRA Dispute Resolution Services
October 15, 2020
Page 9

after a discussion. When those items are included in the calculations, one will find that at Tom Buck's recommendation, Claimant made more than $20 million.

I.   *Why Claimant Sold Exact* – Tom recalls that Claimant sold 750,000 shares of Exact Target because she knew the capital gains tax rate was going to rise. Again, Exact Target was acquired by Sales Force in 2013, which generated a tax gain of 43% from this sale of these shares. To the best of his recollection, no other client of Mr. Buck's sold investments in 2012 to avoid that increase in the capital gains tax.

J.   *Slow Down in 2014* – Claimant claims that Tom slowed down his trades in 2014 because he knew Merrill Lynch was on to him. In reality, trading slowed down because the tax-swap strategy that Claimant requested to avoid the huge tax bill was no longer needed.

## TIME-BAR NATURE OF THE CLAIMS

A fair reading of the long Statement of Claim (that has no trading analysis attached but does reference particular bond and equity trading) focuses the reader on trading deemed to be problematic in 2009 through 2013. Mr. Buck and Claimant did not enter into any tolling agreement to extend any applicable statutes of limitation (as Merrill Lynch apparently did).

Let us *assume arguendo* that there is merit to the claims of fraud and other wrongdoing by Mr. Buck with regard to Claimant's Merrill Lynch accounts. Those claims are still time-barred under Indiana law[6] and are ineligible for arbitration under FINRA Rule 12206(a), which states that "No claim shall be eligible for submission to arbitration under the Code where six years have elapsed from the occurrence or event giving rise to the claim."

---

[6] Tennessee law does not apply under the legal principle of *lex loci delicti commissi,* which means the law of the place where the tort was committed. The term is commonly shortened to *lex loci delicti.* See: https://definitions.uslegal.com/l/lex-loci-delicti-commissi/

**KAUFMANN GILDIN & ROBBINS LLP**

Steeve D. Encaoua
FINRA Dispute Resolution Services
October 15, 2020
Page 10

*Arbitration Eligibility in Indiana*

The United States Court of Appeals for the Seventh Circuit, which has jurisdiction over the State of Indiana, has held that FINRA's eligibility rule is absolute and not subject to tolling. In that court's analysis of § 15 of the NASD Code (the predecessor to Rule 12206), it held:

- "[W]e note that [FINRA] reads [Rule 12206] to be an eligibility requirement rather than a statute of limitations."[7]
- "[Rule 12206] therefore serves as an absolute bar to claims submitted for arbitration more than six years after the event which gave rise to the dispute."[8]

The federal appeals court's analysis was cited in September 2017 by the arbitration panel in FINRA Case No. 17-00449 in support of that panel's decision to *grant* a respondent's motion to dismiss on the ground that the customer's claim was time-barred under Rule 12206.[9]

Unlike Claimant's dispute with Respondent Merrill Lynch, there is no tolling and standstill agreement between Claimant and Mr. Buck. Therefore, the Panel may not award damages against Mr. Buck for any transaction that occurred before **July 31, 2014**, as any such transaction is ineligible for arbitration under Rule 12206(a).

*Statement of Claim Counts:*

**I.    Indiana's Corrupt Business Influence Act – Operating An Enterprise Through Pattern of Racketeering ("ICBIA")**

*Mr. Buck's Response:*

In her Statement of Claim, Claimant incorrectly asserts that the statute of limitations for a claim under the ICBIA is 10 years.[10]    The statute referenced by Claimant (IC 35-45-6-2) states that violations of the ICBIA are a "Level 5" felony, which has a statute of limitation of 5 years *to bring a criminal prosecution*.[11]    However, *civil actions* like this arbitration seeking damages for violations of the ICBIA are governed by IC 34-24-2-6.

---

[7] *PaineWebber, Inc. v. Farnam*, 870 F.2d 1286, 1292 (7th Cir. 1989).
[8] *Id.* at 1292.
[9] *See Cordero v. Merrill Lynch, et al.*, FINRA Case No. 17-00449 (September 2017). **Exhibit #1** to this Answer.
[10] *See* Statement of Claim, pg. 41.
[11] *See* IC 35-41-4-2(a)(1).

**KAUFMANN GILDIN & ROBBINS LLP**

Steeve D. Encaoua
FINRA Dispute Resolution Services
October 15, 2020
Page 11

In *Branham Corp. v. New Res. LLC,* 17 N.E.3d 979 (Ind. Ct. App. 2014), the Indiana Court of Appeals confirmed that an action under IC 34-24-2-6 is one for injury to personal property and therefore falls within the purview of IC 34-11-2-4, which states that an action for injury to personal property must be commenced within 2 years after the cause of action accrues.[12]

The wrongdoing alleged in the Statement of Claim is related to trading that took place between 2009 and 2013. Whether Indiana's 5-year or 2-year statute of limitations applies, Claimant's claims against Mr. Buck under the ICBIA are time-barred and must be denied.

**II.     Indiana Corrupt Business Influence Act – Use Of Racketeering Proceeds To Operate An Enterprise** [*not claimed against Mr. Buck*]

**III.    Federal Rico – Operating An Enterprise Through A Pattern Of Racketeering**
*Mr. Buck's Response*:

The Private Securities Litigation Reform Act of 1995 ("Reform Act") amended RICO to eliminate securities fraud as a predicate act except where the defendant has been criminally convicted of the securities fraud. However, this exception does not apply to Claimant in this matter against Mr. Buck.

The "securities fraud" for which Mr. Buck pled guilty was not similar to the trading activity that is at issue in this case: the trading activity in 2009 – 2013, as set forth in this Answer and as will be explained at the arbitration.

In 1997, the United States District Court for the Eastern District of Michigan, Southern Division, ruled that the so-called "conviction exception" to RICO only applies to victims named in the criminal conviction. That court held:

> [T]he record reveals that Congress was very weary of the susceptibility of civil RICO to litigation abuses in the securities fraud area. In recognition of Congress' intention and mindful of it concerns, this court is inclined to interpret the "conviction exception" language as narrowly as possible so that *the exception is only available to those plaintiffs against whom a*

---

[12] *See* IC 34-11-2-4(a)(2)

**KAUFMANN GILDIN & ROBBINS LLP**

Steeve D. Encaoua
FINRA Dispute Resolution Services
October 15, 2020
Page 12

> *defendant has specifically been convicted of criminal fraud.*[13] (*Italics* added)

The *Krear* court's narrow interpretation of the "conviction exception" has been adopted throughout the country since it was issued in 1997. In 2015, the United States District Court for the Southern District of New York applied this narrow interpretation in *Kaplan v. S.A.C. Capital Advisors L.P.* That court, in addition to adopting the interpretation of the *Krear* court, further limited the exception to parties specifically named in the allocution[14] in cases where a plea is reached, stating:

> This Court agrees, for the reasons stated in *Krear* and the other decisions described above, that RICO's criminal conviction exception must be interpreted as narrowly as possible. Accordingly, in accord with *Krear,* the exception is "only available to those plaintiffs against whom a defendant has specifically been convicted of criminal fraud." . . . Further, particular plaintiffs cannot avail themselves of RICO's criminal conviction exception where they were not specifically named in the plea allocution if there is one.[15]

Having not been named in Mr. Buck's criminal conviction nor his plea allocution, Claimant cannot avail herself of the "conviction exception" and her claim must comport with the statute of limitations for civil RICO actions. The United States Supreme Court has ruled that civil litigation related to RICO violations have a 4-year statute of limitations. [16]

The trading activity at issue in this case took place between 2009-2013, well beyond the four-year limit required under the RICO statute. Therefore, Claimant's federal RICO claim is untimely and must be denied.

---

[13] *Krear v. Malek*, 961 F. Supp. 1065, 1076 (E.D. Mich. 1997).)
[14] After pleading guilty, a defendant is typically offered a formal opportunity to address the court to express remorse, and explain personal circumstances that might be considered in sentencing. This is known as an allocution statement. https://www.americanbar.org/groups/public_education/publications/teaching-legal-docs/what-is-an-allocution-statement-/
[15] *Kaplan v. S.A.C. Capital Advisors, L.P.*, 104 F. Supp. 3d 384, 389 (S.D.N.Y. 2015).
[16] *See Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156, 107 S. Ct. 2759, 2767, 97 L. Ed. 2d 121 (1987).

**KAUFMANN GILDIN & ROBBINS LLP**

Steeve D. Encaoua
FINRA Dispute Resolution Services
October 15, 2020
Page 13

**IV.     Civil Recovery Under Indiana's Crime Victim Statute**

*Mr. Buck's Response*:

In Count Four of the Statement of Claim, Claimant alleges that she is entitled to, among other things, treble damages under Indiana's Crime Victim Relief Act (CVRA), but she is mistaken. The CVRA creates a civil remedy for victims of a criminal offense. As stated above, in Mr. Buck's response to the federal RICO claim, Claimant was not a named victim of the crime to which Mr. Buck pled guilty. As with her federal RICO claim, Claimant invokes the CVRA to bootstrap her claim to an unrelated criminal proceeding in an attempt to obtain treble damages to which she is not entitled.

The Indiana Supreme Court has interpreted the CVRA to only apply where a predicate, criminal act was committed against the claimant. While Claimant here made a claim for "fraud," that claim – while incorrectly citing Tennessee law – was for *common law fraud* and not *criminal fraud* as required by the CVRA.[17] In affirming an Indiana Court of Appeals denial of exemplary damages, the Indiana Supreme Court held:

- "[T]he court's original order expressly premised its judgment on common-law fraud, and it just as expressly *refused* to award any additional damages under the CVRA. . . [I]t was well within its discretion to impose common-law liability for fraud as an intentional tort, while declining to impose quasi-criminal CVRA liability."[18]

- "The [Plaintiff's] open-ended complaint encompassed multiple alternative theories of liability. The relevant count of their complaint was simply captioned 'Fraud'; they pleaded all the elements of common-law fraudulent misrepresentation; and their prayer for relief was expressly 'not . . . limited to' the CVRA."[19]

Without the predicate claim of criminal wrongdoing, Claimant has no standing to request exemplary damages under the CVRA. However, even if the Panel were to find a predicate criminal act, Claimant's claim under the CVRA is time barred.

---

[17] *See* Statement of Claim, pg.38.

[18] *Wysocki v. Johnson*, 18 N.E.3d 600, 604-605 (Ind. 2014).

[19] *Id.* at 605.

**KAUFMANN GILDIN & ROBBINS LLP**

Steeve D. Encaoua
FINRA Dispute Resolution Services
October 15, 2020
Page 14

Indiana courts have interpreted the CVRA to be punitive, not compensatory in nature, thus requiring a claim to be brought within 2 years. The Court of Appeals of Indiana affirmed this interpretation in 2003, holding:

> We note that Indiana Code section 34–24–3–1 [the CVRA] allows a plaintiff to collect treble damages, attorney's fees, and court costs from a defendant who has committed certain violations of the criminal code . . . . We also note, however, that this court has determined that a claim under Indiana Code section 34–24–3–1 is penal in nature. . . . . As such, a two-year statute of limitation applies.[20]

The trading activity that Claimant seeks compensation for took place between 2009-2013 and falls well outside of the 2-year statute of limitation. Claimant has failed to assert the condition precedent of criminal wrongdoing and has failed to bring this claim within 2 years, thus barring her from any exemplary damages under the CVRA.

Notwithstanding, Claimant has already recovered $946,868 indirectly from Mr. Buck (who funded the SEC fund). This amount, upon information and belief, greatly exceeds the loss that Merrill Lynch and the Department of Justice determined that Claimant suffered.

## V.     Breach of Fiduciary Duty

*Mr. Buck's Response*:

The Statement of Claim cites inapplicable Tennessee law, making no reference to the law of the state in which the alleged misconduct occurred. In Indiana, where the wrongdoing is alleged to have taken place, claims for Breach of Fiduciary Duty are divided into two categories – claims involving negotiable instruments and claims for tortious breach of fiduciary duty. Claims involving negotiable instruments are governed by IC 26-1-3.1-307, which has a statute of limitation of 3 years. *See* IC 26-1-3.1-118(g).

---

[20] *Clark v. Univ. of Evansville*, 784 N.E.2d 942, 945 (Ind. Ct. App. 2003) (citing *Browning v. Walters,* 616 N.E.2d 1040, 1046 (Ind.Ct.App.1993)).

**KAUFMANN GILDIN & ROBBINS LLP**

Steeve D. Encaoua
FINRA Dispute Resolution Services
October 15, 2020
Page 15

While Claimant makes no reference as to which form of breach she seeks damages for, the facts and interpretation of the Statement of Claim make it appear that the Claimant is asserting a claim of tortious breach of fiduciary duty.  In 2009, the Indiana Supreme Court held:

> Our Court of Appeals has determined that a breach of fiduciary duty is a tort claim for injury to personal property and therefore *the applicable statute of limitation is two years.*[21] (*Italics* added)

As such, whether you apply the 3-year or 2-year statute of limitation, under Indiana law, Claimant's claim for Breach of Fiduciary Duty is time barred against Mr. Buck.

**VI.     Fraud**

*Mr. Buck's Response*:

Here, too, Claimant cites "elements of a claim for common law and promissory fraud in Tennessee" (par. 82), despite her allegation that the fraud occurred in Indiana.  Indiana's statute of limitations governing fraud is IC 34-11-2-7, which sets a 6-year time limit to bring such a claim. Claimant's Statement of Claim was filed in the summer of 2020, rendering claims related to trades prior to July 2014 time-barred (i.e., the trades at issue). [22]

**VII.    Negligent Supervision** [*not asserted against Mr. Buck*]

**VIII.   Exemplary Damages**

*Mr. Buck's Response*:

While not listed as a formal Cause of Action, Claimant seeks Exemplary Damages in her Statement of Claim.  However, Claimant, again, wrongly cites the law of a state in which the alleged wrongful conduct did not occur.  All of the alleged wrongdoing that Claimant seeks damages for took place in Indiana.  Therefore, any attempt to obtain Exemplary Damages under

---

[21] *City of E. Chicago, Indiana v. E. Chicago Second Century, Inc.*, 908 N.E. 2d 611, 618 (Ind. 2009).
[22] While Mr. Buck reiterates that only Indiana law is applicable in this matter, Claimant's claims for fraud and breach of fiduciary are also time barred under Tennessee law.  Tenn. Code Ann. § 28-3-105(1) places a 3-year statute of limitation on these claims.  Therefore, Claimant is barred from seeking damages for any wrongdoing that took place prior to  July 31, 2017.

**KAUFMANN GILDIN & ROBBINS LLP**

Steeve D. Encaoua
FINRA Dispute Resolution Services
October 15, 2020
Page 16

the Tennessee statute are improper and must be denied.

## AFFIRMATIVE DEFENSES

Without admitting any of the allegations of wrongful conduct in the Statement of Claim or that Claimant will meet her burden of proof at the hearing, Respondent Thomas Buck asserts the following Affirmative Defenses. He reserves his right to amend his Answer to include any applicable defenses that may become available or apparent during the course of this arbitration:

**First Affirmative Defense** – The Statement of Claim and each of the causes of action contained therein are barred because they fail to state facts sufficient to constitute a cause of action against me or any of the Respondents. The truth, the facts, are to the contrary.

**Second Affirmative Defense** – Claimant's causes of action are barred by applicable statutes of limitation. Here we are in 2020 and the Claimant is complaining about transactions in 2009 through 2013. They are also ineligible for arbitration at FINRA because of the passage of time since those transactions.

**Third Affirmative Defense** – Claimant is barred from recovery by the equitable doctrines of waiver, estoppel, unclean hands and laches. Claimant approved the trading at issue.

**Fourth Affirmative Defense** – The damages, if any, allegedly suffered by Claimant were proximately caused or were the consequence of the conduct, actions, omissions, negligence or intentional acts of Claimant herself and/or parties other than Mr. Buck. Indeed, by Claimant's own admission, there was a trading profit of almost $4 million. There are no guarantees in the securities markets and when Claimant regularly reviewed her account statements, she could see that the causes of her profits and losses were multi-faceted.

**Fifth Affirmative Defense** – Tom Buck acted in good faith and did not know of and in the exercise of reasonable care could not have known of the facts from which liability is alleged to arise. He always had Claimant's best interest at heart in making investment recommendations.

**Sixth Affirmative Defense** – Any duty or obligation, contractual or otherwise, that Claimant claims that Tom Buck owed to her was fully performed, satisfied and discharged.

**KAUFMANN GILDIN & ROBBINS LLP**

Steeve D. Encaoua
FINRA Dispute Resolution Services
October 15, 2020
Page 17

  **Seventh Affirmative Defense** – Claimant has expressly or implicitly consented to each and every action on Tom Buck's part of which she now complains.

  **Eighth Affirmative Defense** – None of Tom Buck's acts  with regard to Claimant were willful, malicious, in bad faith or motivated by ill-will or fraud. To seek punitive damages on top of the millions of dollars of profits Claimant made, plus the $946,868 she received indirectly from Mr. Buck (through the SEC fund), is inequitable.

  **Ninth Affirmative Defense** – Claimant is not entitled to an award of attorney's fees or costs because there is no basis for it under statute, contract or otherwise.

  **Tenth Affirmative Defense** – Claimant's causes of action are barred, in whole or in part, by her acquiescence in the purported acts and/or omissions upon which they are predicated.

  **Eleventh Affirmative Defense** – Claimant is barred from recovery to the extent she affirmed and ratified the investments, transactions and all actions and omissions of which she now complains.  She regularly received trade confirmations and monthly statements and, upon information and belief, had online access to her Merrill Lynch accounts.

  **Twelfth Affirmative Defense** – Claimant knowingly and voluntarily assumed the risk of losing her invested assets when she chose and approved the subject investments.

  **Thirteenth Affirmative Defense** – Claimant knew of and understood the basic operation and risks of the disputed investments and/or retained (or could have retained) outside advisors to advise her regarding the disputed investments before they were purchased. Indeed, the sales referenced above were a strategy discussed with Claimant's accountant.

  **Fourteenth Affirmative Defense** – Claimant had actual and/or constructive knowledge of facts and investment risks and assumed any such risks associated with the investments.

**KAUFMANN GILDIN & ROBBINS LLP**

Steeve D. Encaoua
FINRA Dispute Resolution Services
October 15, 2020
Page 18

## PRAYER FOR RELIEF

On Claimants' Statement of Claim, Respondent Thomas J. Buck respectfully requests that:

1.   All causes of action be dismissed against him in their entirety;

2.   Claimant takes nothing further by way of her Statement of Claim;

3.   His portion of the forum fees be assessed against Claimant;

4.   He be awarded his costs and expenses, including reasonable attorney's fees and expert fees incurred in defending this arbitration; and,

5.   He be granted any other relief that the Panel deems just and proper.

Respectfully Submitted,

*/David E. Robbins/*

David E. Robbins

*Sam A. Silverstein*

Sam A. Silverstein

EXHIBIT 1

**Award**
**FINRA Office of Dispute Resolution**

In the Matter of the Arbitration Between:

<u>Claimant</u>                                          <u>Case Number</u>: 17-00449
Adolfo Cordero

     vs.

<u>Respondents</u>                                     <u>Hearing Site</u>: Miami, Florida
Merrill Lynch, Pierce, Fenner & Smith, Inc.
Simon David Kopel

Nature of the Dispute: Customer vs. Member and Associated Person

## REPRESENTATION OF PARTIES

For Claimant Adolfo Cordero: Luis F. Biason, Esq., Luis F. Biason, P.A., North Miami
Beach, Florida.

For Respondents Merrill Lynch, Pierce, Fenner & Smith, Inc. ("MLPFS") and Simon
David Kopel ("Kopel"): Tanya S. Lambrechts, Esq., Bressler, Amery & Ross, P.C., Fort
Lauderdale, Florida.

## CASE INFORMATION

Statement of Claim filed on or about: February 14, 2017.
Adolfo Cordero signed the Submission Agreement: February 14, 2017.

Statement of Answer filed by Respondents MLPFS and Kopel on or about: May 25,
2017.
Respondent MLPFS signed the Submission Agreement: May 25, 2017.
Respondent Kopel signed the Submission Agreement: May 25, 2017.

Motion to Dismiss the Statement of Claim as Ineligible for Arbitration Pursuant to FINRA
Rule 12206(a) ("Motion to Dismiss") filed by Respondents MLPFS and Kopel on or
about: July 10, 2017.
Response in Opposition to Respondents' Motion to Dismiss ("Response to Motion to
Dismiss") filed by Claimant on or about: August 9, 2017.
Reply in Support of Motion to Dismiss filed by Respondents MLPFS and Kopel on or
about: August 14, 2017.
Response to Respondents' August 14, 2017, Reply ("Sur-reply") filed by Claimant on or
about: August 18, 2017.

FINRA Office of Dispute Resolution
Arbitration No. 17-00449
Award Page 2 of 6

## CASE SUMMARY

Claimant asserted the following causes of action: unauthorized trading; churning; and omission of facts. The causes of action relate to the alleged unauthorized trading of mutual funds held in Claimant's account by Respondent Kopel while working for Respondent MLPFS.

Unless specifically admitted in the Statement of Answer, Respondents denied the allegations made in the Statement of Claim and asserted various affirmative defenses.

## RELIEF REQUESTED

In the Statement of Claim, Claimant requested: approximately $50,000.00 in compensatory damages; unspecified punitive damages; interest; costs (forum fees, witness and production fees) and attorneys' fees.

In the Statement of Answer, Respondents requested that: the Statement of Claim be denied with prejudice; the FINRA costs associated with the arbitration proceeding be assessed against Claimant; and all references to this proceeding be expunged from Respondent Kopel's Central Registration Depository ("CRD") records.

## OTHER ISSUES CONSIDERED AND DECIDED

The Arbitrators acknowledge that they have each read the pleadings and other materials filed by the parties.

On or about, July 10, 2017, Respondents MLPFS and Kopel filed a Motion to Dismiss in which they argued, among other things, that Claimant's claims were ineligible for arbitration pursuant to Rule 12206(a) because Claimant sold the subject investments and closed his account at MLPFS over 15 years ago. On or about August 14, 2017, Claimant filed a Response to Motion to Dismiss in which he argued, among other things, that the eligibility of his claim was subject to equitable tolling under New Jersey State law because Claimant was prevented from asserting his rights in an extraordinary way (i.e., during a period of incarceration in New Jersey, he was attacked and injured by a prison gang). On or about August 14, 2017, Respondents MLPFS and Kopel filed a Reply in Support of Motion to Dismiss in which they argued, among other things, that even if everything stated in Claimant's Response to Motion to Dismiss were true, his claims were still ineligible for arbitration and time barred by statutes of limitation. On or about August 18, 2017, Claimant filed a Sur-reply in which he reiterated that he was prevented from asserting his rights in an extraordinary way as a result of his incarceration and subsequent detention by U.S. Immigration and Customs Enforcement upon his release from prison.

On August 21, 2017, the Arbitrator heard oral arguments on Respondents' Motion to Dismiss and granted the Motion to Dismiss pursuant to Rule 12206 of the Code of Arbitration Procedure (the "Code"). The Arbitrator granted Respondents MLPFS and Kopel's Motion to Dismiss and provided the following explanation:

FINRA Office of Dispute Resolution
Arbitration No.  17-00449
Award Page 3 of 6

FINRA Rule 12206 (the "Eligibility Rule") bars the arbitration of claims arising more than six years prior to the filing of the Statement of Claim. The Eligibility Rule acts as a statute of repose and prohibits the instant claims from proceeding in FINRA arbitration – the purpose being to protect parties from litigating stale claims without adequate documentation and witness recollection. Additionally, even if Claimant's claims were eligible, they are time-barred by the applicable statutes of limitations. Accordingly, the claims are ineligible for arbitration, time-barred, and should be dismissed.

Claimant's claims are clearly ineligible for arbitration before FINRA. According to the Eligibility Rule, "[n]o claim shall be eligible for submission to arbitration under the code where six years have elapsed from the occurrence or event giving rise to the claim." FINRA Rule 12206(a). This provision "serves as an absolute bar to claims submitted for arbitration more than six years after the event which gave rise to the dispute." *Paine Webber v. Farnam*, 870 F.2d 1286, 1292 (7th Cir. 1989). As an absolute bar, the Eligibility Rule does not depend on when Claimant supposedly became aware of his alleged claims, as "[t]he date of the occurrence or event does not under any circumstances depend on the date when the aggrieved investor first discovers that he or she has suffered a financial loss." *Dean Witter Reynolds, Inc. v. McCoy*, 853 F. Supp. 1023, 1030-1031 (E.D. Tenn. 1994).

Claimant argues that the Eligibility Rule is subject to equitable tolling and applies New Jersey state procedural law to support his position. He cited a series of cases under New Jersey law in furtherance thereof. He asserts that "the guiding principle of equitable tolling is whether a plaintiff is prevented from asserting rights in an extraordinary way."

Claimant contends that while in prison he was attacked and, due to an extended recovery period, he was unable to pursue his claim. Claimant was attacked on September 30, 2010 – nine years after his account was closed at Respondent MLPFS.

Claimant admits in his Statement of Claim and response to Respondents' Motion to Dismiss that he was aware of the fact that he had a claim against Respondent MLPFS on or around 2001. There was nothing offered to suggest why a claim could not have been filed during this period of time.

Respondent's Motion to Dismiss pursuant to Rule 12206 of the Code is granted by the Arbitrator without prejudice to any right the Claimant has to file in court; the Claimant is not prohibited from pursuing his or her claims in a court pursuant to Rule 12206(b) of the Code.

To the extent that Respondent Kopel did not pursue his request for expungement of this proceeding from his CRD records at the August 21, 2017, hearing, the Arbitrator deemed Respondent Kopel's request withdrawn and did not make a determination on the request.

FINRA Office of Dispute Resolution
Arbitration No. 17-00449
Award Page 4 of 6

## AWARD

After considering the pleadings, the testimony and evidence presented at the recorded telephonic hearing, the Arbitrator has decided in full and final resolution of the issues submitted for determination as follows:

1. Claimant's claims are hereby dismissed pursuant to Rule 12206.

2. Any and all claims not specifically addressed herein are hereby denied.

## FEES

Pursuant to the Code, the following fees are assessed:

**Filing Fees**
FINRA Office of Dispute Resolution assessed a filing fee* for each claim:

| | | |
|---|---|---|
| Initial Claim Filing Fee | =$ | 600.00 |

*The filing fee is made up of a non-refundable and a refundable portion.*

**Member Fees**
Member fees are assessed to each member firm that is a party in these proceedings or to the member firm(s) that employed the associated person(s) at the time of the event(s) giving rise to the dispute. Accordingly, as party, Respondent MLPFS is assessed the following:

| | | |
|---|---|---|
| Member Surcharge | =$ | 750.00 |
| Member Process Fee | =$ | 1,750.00 |

**Hearing Session Fees and Assessments**
The Arbitrator has assessed hearing session fees for each session conducted. A session is any meeting between the parties and the arbitrator(s), including a pre-hearing conference with the arbitrator(s) that lasts four (4) hours or less. Fees associated with these proceedings are:

| | | | |
|---|---|---|---|
| Two (2) pre-hearing sessions with a single arbitrator @ $450.00/session | =$ | 900.00 |
| Pre-hearing conferences:  July 25, 2017 | 1 session | |
|                                           August 21, 2017 | 1 session | |

| | | |
|---|---|---|
| Total Hearing Session Fees | =$ | 900.00 |

The Arbitrator has assessed $450.00 of the hearing session fees to Claimant.

The Arbitrator has assessed $450.00 of the hearing session fees jointly and severally to Respondents MLPFS and Kopel.

FINRA Office of Dispute Resolution
Arbitration No.  17-00449
Award Page 5 of 6

All balances are payable to FINRA Office of Dispute Resolution and are due upon receipt.

FINRA Office of Dispute Resolution
Arbitration No.  17-00449
Award Page 6 of 6

## ARBITRATOR

Richard Carl Smukler                    -                    Sole Public Arbitrator

I, the undersigned Arbitrator, do hereby affirm that I am the individual described herein
and who executed this instrument which is my award.

## Arbitrator's Signature

_____                    _____

Richard Carl Smukler                                          Signature Date
Sole Public Arbitrator

_____

Date of Service (For FINRA Office of Dispute Resolution office use only)

FINRA Office of Dispute Resolution
Arbitration No. 17-00449
Award Page 6 of 6

## ARBITRATOR

Richard Carl Smukler                    -                    Sole Public Arbitrator

I, the undersigned Arbitrator, do hereby affirm that I am the individual described herein
and who executed this instrument which is my award.

### Arbitrator's Signature

September 20, 2017

Richard Carl Smukler                                        Signature Date
Sole Public Arbitrator

September 27, 2017

Date of Service (For FINRA Office of Dispute Resolution office use only)

# Exhibit 3

| From: | Janice Compton [janicejcompton@gmail.com] |
|---|---|
| Sent: | 11/13/2017 1:01:37 PM |
| To: | Kistler, Doug M - INDIANAPOL IN [doug_kistler@ml.com] |
| Subject: | Fwd: Scanned document from HP ePrint user |
| Attachments: | filename-1.pdf; filename-1-142.pdf |

I know Mr. Smith has been trying to reach me...would like to discuss.  The attached documents are of asset allocation/commissions/REALIZED gains/losses  and the other document has the BOND transactions from August 19 2009-December 31, 2014

Janice Compton

ML-Compton-00002836

## BOND TRANSACTIONS IN J. COMPTON ACCOUNTS

| | Bonds Bought | Mark/Up 2% | Bonds Sold | Mark/Dwn .005 % | #of Bonds Bought | #of Bonds Sold |
|---|---|---|---|---|---|---|
| 2009 | 1,351,413 | 27,028 | 1,828,185 | 9,140 | 6 | 9 |
| Unauthor. | 729,070 | | 1,441,350 | | | |
| 2010 | 4,338,448 | 86,768 | 3,734,562 | 18,672 | 24 | 24 |
| Unauthor. | 2,715,384 | | 2,584,906 | | | |
| 2011 | 5,195,274 | 103,905 | 4,746,818 | 23,734 | 22 | 23 |
| Unauthoriz. | 4,297,913 | | 4,130,573 | | | |
| 2012 | 2,260,968 | 45,219 | 1,881,496 | 9,407 | 8 | 7 |
| Unauthoriz. | 2,438,000 | | 1,300,464 | | | |
| 2013 | 9,374,122 | 187,482 | 3,383,936 | 16,919 | 28 | 11 |
| Unauthoriz. | 3,809,248 | | 876,270 | | | |
| 2014 | 3,878,930 | 77,578 | 3,225,512 | 16,127 | 12 | 10 |
| Unauthoriz. | 766,446 | | 1,022,949 | | | |
| Total Traded | 26,399,155 | 527,983 | 18,800,510 | 93,999 | 100 | 84 |
| Unauthoriz. | 14,756,061 | | 11,356,512 | | | |
| Total $$ Traded | 45,199,671 | 621,985 total mk/up and mk/dwn(commissions) | | | | |
| Unauthoriz. | 26,112,573 | | | | | |
| Realized Gains/Loss for Bonds | | -526,636 | | | | |

Markup/Markdown amounts are estimates only based on industry standards not on personal ac---Information unavailable
Initial Bond Portfolio --$4.053 M
Does not include coporate bonds/preferred stocks or bond funds
DOES NOT ACCOUNT FOR THE TYPES OR QUALITY OF BONDS THAT WERE BOUGHT AND SOLD
PERSONAL AND CONFIDENTIAL -NOT TO BE SHARED WITHOUT PERMISSION

ML-Compton-00002837

Buck's Investment Allocation for J.Compton Accounts

8/19/2009-12/31/2014

| | Bought | Commissions MkUp | Sold | Commissions MarkDwn | Total Transacations | Total Commiss | Realized Gain/Loss |
|---|---|---|---|---|---|---|---|
| Mutual/Closed End Funds | 7,383,634 | 124,526 | 5,227,145 | ????? | 12,610,779 | 124,526 | -381,379 |
| Preferred Stks. (missing some data on comm.stmts.) | 3,522,305 | 20,674 | 3,043,152 | 32,844 | 6,565,457 | 53,418 | 136,979 |
| REITS | 653,640 | 7,616 | 566,831 | 6,670 | 1,220,470 | 14,286 | 26,055 |
| MLP's | 3,832,654 | 44,571 | 3,773,846 | 41,740 | 7,606,500 | 86,211 | -73,355 |
| Alt. Investments | 1,422,189 | ????? | | ????? | 1,422,189 | | |
| Bonds | 26,399,155 | 527,983 | 18,800,452 | 93,002 | 45,199,607 | 620,985 | -526,636 |
| Equities | 34,671,076 | 250,851 | 49,270,224 | 254,517 | 83,941,300 | 502,622 | 508,607 |
| ExactTarget (for info only) | -17,507,918 | 37,458 | -34,503,995 | 74,996 | | | |
| Total $$ Involved | 77,884,653 | 976,221 | 80,681,650 | 428,773 | 158,566,302 | 1,408,048 | -309,729 |

????? Missing signification data on commissions on confirmations sheets

Total $$    158,566,302

THIS IS WHAT I STARTED WITH ON AUGUST 2009--A Conservative Investor Acct.
      4,053,000 Bonds
         25,000 corporate bonds
       960,100 Preferred Stks
         53,025 MLP's
             229 Mutual Funds
         50,000 Alt. Investments

      5,141,974 Investments
      1,500,000 Cash
      6,641,974 total

ML-Compton-00002838

| | |
|---|---|
| **From:** | Janice Compton [janicejcompton@gmail.com] |
| **Sent:** | 11/14/2017 5:22:54 PM |
| **To:** | Kistler, Doug M - INDIANAPOL IN [doug_kistler@ml.com] |
| **Subject:** | Updated Asset Allocation/Mutual Funds/Preferrred Stocks |
| **Attachments:** | Investment Allocation - Sheet1-11.pdf; Copy of Funds Only as of 11_2017 - Sheet1.pdf; Preferred Stocks - Sheet1-8.pdf |

The updated Asset Allocation has today's date on it.

ML-Compton-00002839

| | | Buck's Investment Allocation for J.Compton Accounts | | | 11/14/2017 | | | |
|---|---|---|---|---|---|---|---|---|
| | | 8/19/2009-12/31/2014 | | | | | | |
| | | Bought | Commissions MkUp | Sold | Commissions MarkDwn | Total Transacations | Total Commiss | Realized Gain/Loss |
| Mutual/Closed End Funds | | 7,372,378 | 126,211 | 5,218,139 | ?????? | 12,590,527 | ?????? 126,211 | -332,857 |
| Preferred Stks. (missing some data on comm.stmts.) | | 3,522,305 | 20,674 | 3,043,152 | 32,844 | 6,565,457 | 53,518 | 136,979 |
| REITS | | 653,640 | 7,616 | 566,831 | 6,670 | 1,220,470 | 14,286 | 26,055 |
| MLP's | | 3,832,654 | 44,571 | 3,773,846 | 41,740 | 7,606,500 | 86,311 | -73,355 |
| Alt. Investments | | 1,422,189 | ????? | | ????? | 1,422,189 | ???? | |
| Bonds | | 26,399,155 | 527,983 | 18,800,452 | 94,002 | 45,199,607 | 621,985 | -526,636 |
| Equities | | 34,671,076 | 250,851 | 49,270,224 | 254,517 | 83,941,300 | 505,368 | 508,607 |
| | ExactTarget (for info only) | -17,507,918 | 37,498 | -34,503,995 | 74,996 | | | |
| Total $$ Involved | | 77,873,397 | 977,906 | 80,681,650 | 429,773 | 158,546,050 | 1,407,679 | -261,207 |
| | ?????? | Missing signification data on commissions on confirmations sheets | | | | | | |
| Total $$ | | 158,546,050 | | | | | | |

THIS IS WHAT I STARTED WITH ON AUGUST 2009--A Conservative Investor Acct.

| | |
|---|---|
| 4,053,000 | Bonds |
| 25,000 | corporate bonds |
| 960,100 | Preferred Stks |
| 53,025 | MLP's |
| 229 | Mutual Funds |
| 50,000 | Alt. Investments |
| 5,141,974 | Investments |
| 1,500,000 | Cash |
| 6,641,974 | total |

ML-Compton-00002840

| | MUTUAL FUNDS/CLOSED END FUNDS | | | Date purch | Shares | Price | Inv. Amt. | Commiss | Call/NoCal | Sell Date | Shares | Price | Call/NoCal | SalesAmt | Commiss. | Gain/Loss ST/LT | Months Hld | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 AEPGX | American Euro Pacific | 2724sh | 1.98% | 2/23/2010 | 762 | 36.70 | 98,005 | 1989 | CalRd | 3/15/2011 | 762 | 40.54 | CalRd | 30,691 NotDiscl | | 2,919 l/t gain | 13 | |
| | American Euro Pacific | 298706102 | | 2/23/2010 | 1,962 | 36.70 | xxx | | xxx | xxx | 9/26/2011 | 1,962 | 34.31 | NoCalRd | 67,313 NotDiscl | | -4,696 s/t loss | 19 | |
| | American Euro Pacific | 298706102 | | 12/28/2010 | n/a | n/a | n/a | n/a reinv. | | 1,552 | 9/26/2011 | n/a | 34.31 | NoCalRd | 1,303 NotDiscl | | -244 s/t loss | 9 | |
| 2 | American Euro Pacific | 298706102 | 3.50% | 8/23/2011 | 1,293 | 39 | 48,248 | 1,746 | CalRd | 9/26/2011 | 1,293 | 34.31 | NoCalRd | 45,707 NotDiscl | | (inabv) s/t loss | 1 | |
| 3 BPK | BlackRock 2018 | 09248C106 | ClosedEnd | 5/24/2013 | 20,000 | 16.28 | 325,735 | 4058 | (futures) | 6/23/2014 | 20,000 | 15.84 | CalRd | 316,876 | 4130 | -17,071 l/t loss | 13 | |
| 4 | BlackRock 2018 | 09248C106 | ClosedEnd | 12/23/2014 | 9,800 | 16.10 | 157,848 | 2121 | CalRd | | | | | xxxxx | xxxx | xxxx | xxx | xx |
| 5 BKK | BlackRock 2020 | 09249X109 | ClosedEnd | 4/1/2013 | 13,699 | 16.69 | 228,749 | 2919 | NoCalRd | 12/18/2013 | 13699 | 15.73 | CalRd | 215,567 | 2715 | -18,827 s/t loss | 8 | |
| 6 | BlackRock 2020 | 09249X109 | ClosedEnd | 4/2/2013 | 6,301 | 16.71 | 105,351 | 1500 | NoCalRd | 12/18/2013 | 6301 | 15.73 | CalRd | 99,152 | 1249 | -6,956 s/t loss | 8 | |
| 7 | BlackRock 2020 | 09249X109 | ClosedEnd | 7/22/2014 | 15,000 | 16.54 | 248,098 | 3148 CalRd >1% | still own 3/30/15 | | | | | xxx | xxxx | xxxx | xxxx | xx |
| BTZ | BlackRock Credit | | ClosedEnd | Transferred in 2009 | | | | | | | | | | | | | | |
| 8 MDLOX | BlackRock Global | 5595 sh | 2.02% | 2/23/2010 | 1,500 | 17.87 | 97,980 | 2,014 | CalRd | 3/15/2011 | 1500 | 19.44 | CalRd | 29,160 NotDiscl | | 2,348 l/t gain | 13 | |
| | BlackRock Global | 09251T103 | (inabove) | 2/23/2010 | 4,095 | 17.87 | xxxx | | xxxx | 7/25/2012 | 4095 | 18.52 | NoCalRd | 75,835 NotDiscl | | 2,654 l/t gain | 29 | |
| 9 | BlackRock Global | 09251T103 | 2.01% | 6/9/2010 | 2,871 966 | | 35,278 | 1005 | NoCalRd | 7/25/2012 | 1905 | | NoCalRd | 35,278 NotDiscl | | 2,109 l/t gain | 24 | |
| NewISS | BlackRock Global | 09251T103 | 2.90% | 4/16/2012 | 5,050 | 19.80 | n/a | n/a | NoCalRd | canTed 4/25 | UnusalTrans | | | xxx | xxxx | xxxx | xxxx | xx |
| (futures) | BlackRock Global | 09251T103 | 3.99% | 4/25/2012 | 5,175 | 20.01 | n/a | n/a | NoCalRd | canTed 4/27 | UnusalTrans | | | xxx | xxxx | xxxx | xxxx | xx |
| 10 | BlackRock Global | 09251T103 | 2.48% | 4/27/2012 | 5,175 | 19.70 | 99,412 | 2,535 | NoCalRd | | | | 20.15 CalRd | 11.36 | | | | |
| 11 MUI | BlackRock Muni Int | 09253X102 | ClosedEnd | 8/16/2011 | 5,600 | 14.28 | 71,410 | 1,063 | NoCalRd | 11/16/2011 | 5000 | 14.84 | CalRd | 74,202 | 1,083 | 629 s/t gain | 3 | |
| 12 | BlackRock Muni Int | 09253X102 | | 12/18/2013 | 22,000 | 13.48 | 296,598 | 3,911 CalRd >1% | still own 4/30/15 | | | | | xxxx | xxxx | xxxx | xxxx | xx |
| 13 BCX | BlackRock Res & Comm | 09252TA108 | NexIssue | 3/28/2011 | 4,000 | 20.00 | 80,000 NotDiscl | | NoCalRd | 4/30/2012 | 4000 | 14.21 | CalRd | 56,866 | 909 | -22,649 l/t loss | 13 | 1400 |
| 14 | BlackRock Res & Comm | 09252TA108 | ClosedEnd | 9/25/2012 | 6,000 | 14.69 | 88,140 | 1,235 | CalRd | 12/13/2012 | 6,000 | 13.113 | CalRd | 77,525 | 1,103 | -11,805 s/t loss | 3 | |
| 15 | BlackRock Res & Comm | 09252TA108 | ClosedEnd | 11/7/2012 | 7,000 | 14.08 | 98,560 | 1,477 | CalRd | 12/13/2012 | 7,000 | | CalRd | 90,504 | 1,286 | -9,538 s/t loss | 1 | |
| 16 BTT | BlackRockMuni Term | 09257P105 | MLNewIss | 8/28/2012 | 10,000 | 25.00 | 250,000 NotDiscl | | NoCalRd | 4/1/2013 | 10,000 | 22.769 | NoCalRd | 225,049 | 2,634 | -24,587 s/t loss | 8 | 528 |
| 17 | BlackRockMuni Term | 09257P105 | | 10/1/2012 | 4,565 | 25.20 | 115,073 | 1,327 | CalRd | 4/1/2013 | 4565 | | NoCalRd | 331,634 | 1,202 | -13,505 s/t loss | 6 | |
| 18 SLMCX | Columbia Seligmann | 816333108 | 3.45% | 2/23/2010 | 2,161 | 38.99 | 81,318 | 2,930 | CalRd | 3/21/2011 Restored | | 49.57 | CalRd | 107,115 NotDiscl | | 22,853 l/t gain | 25 | 10,332 |
| ? | Columbia Seligmann | 403 sh | | 2/23/2010 | 403 | 38.99 | 15,713 | 544 | CalRd | 4/5/2012 | | 49.2 | NoCalRd | 19,826 NotDiscl | | 4,112 l/t gain | 26 | |
| 19 | Columbia Seligmann | 1013 | 3.51% | 2/25/2011 | 1,013 | 49.32 | 48,241 | 1,753 | CalRd | 4/5/2012 | | | NoCalRd | 49,658 NotDiscl | | -122 l/t loss | 14 | |
| | Columbia Seligmann | 19842W200 | MFund | 2/25/2011 | | | 838 not sold | | CalRd | 4/5/2012 | | | NoCalRd | 769 NotDiscl | | -48 l/t loss | 30 | |
| 20 SLMCX | Columbia Seligmann | MFund | 3.49% | 8/23/2011 | 1,222 | 40.89 | 48,246 | 1,748 | CalRd | 8/15/2013 | 8670 | 46.45 | NoCalRd | 56,761 NotDiscl | | 6,788 l/t gain | 16 | |
| 21 | Columbia Seligmann | 19766H429 | 2.51% | 11/16/2011 | 1,109 | 45.08 | 48,741 | 1,253 | CalRd | 8/15/2013 | | | NoCalRd | 51,512 NotDiscl | | 1,513 l/t gain | 19 | |
| | Columbia Seligmann | 19766H429 | | 12/20/2011 | n/a | n/a | n/a reinvest | | 43 | 8/15/2013 | | | NoCalRd | 46 NotDiscl | | 3 l/t gain | 20 | |
| | Columbia Seligmann | 19766H429 | | 12/20/2011 | n/a | n/a | n/a reinvest | | 10,311 | 8/15/2013 | | | NoCalRd | 11,659 NotDiscl | | 1,347 l/t gain | 20 | |
| 22 | Columbia Seligmann | 19766H429 | 3.49% | 9/25/2012 | 2,168 | 46.12 | 96,594 | 3,490 | CalRd | 8/15/2013 | | | NoCalRd | 100,702 NotDiscl | | 708 s/t gain ($3490) | 8 | |
| 23 | Columbia Seligmann | 19766H429 | 2.49% | 10/1/2012 | 1,105 | 45.23 | 48,745 | 1249 | CalRd | 8/15/2013 | | | NoCalRd | 51,326 NotDiscl | | 1,342 s/t gain ($ | 8 | |
| 24 | Columbia Seligmann | 19766H429 | 2.49% | 12/14/2012 | 2,263 | 44.16 | 97,505 | 2,489 | NoCalRd | 8/15/2013 | | | NoCalRd | 105,160 NotDiscl | | 5,133 s/t gain | 8 | |
| | Columbia Seligmann | 19766H429 | | 12/20/2012 | n/a | n/a | n/a reinvest | | 15,329 | 8/15/2013 | | | NoCalRd | 17,186 NotDiscl | | 1,861 s/t gain | 8 | |
| | Columbia Seligmann | 19766H429 | | 12/20/2012 | n/a | n/a | n/a reinvest | | 6,711 | 8/15/2013 | | | NoCalRd | 7,524 NotDiscl | | 813 s/t gain | 8 | |
| | Columbia Seligmann | 19766H429 | | 5/23/2013 | n/a | n/a | n/a reinvest | | 33 | 8/15/2013 | | | NoCalRd | 34 NotDiscl | | 2 s/t gain | 3 | |
| | Columbia Seligmann | 19766H429 | | | | | | | 2 | 8/15/2013 | | | NoCalRd | 92 NotDiscl | | | | |
| 25 EOT | EatonVanNatlMuniOp | 27829L105 | ClosedEnd | 3/7/2012 | 1,040 | 21.55 | 22,412 | 440 | NoCalRd | 8/7/2013 | 1040 | 18.182 | CalRd | 18,634 | 273 | -4,223 l/t loss | 17 | |
| 26 | EatonVanNatlMuniOp | 27829L105 | ClosedEnd | 3/8/2012 | 3,960 | 21.92 | 86,822 | 1,104 | NoCalRd | 8/7/2013 | 3960 | 18.182 | CalRd | 70,995 | 1039 | -16,976 l/t loss | 17 | |

ML-Compton-00002841

| | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 27 ETX | EatonVanMuniTr | 27829U105 | ClosedEnd | 9/24/2013 | 15,000 | 14.34 | 215,148 | 2,868 | CalRd | still own 3/30/2015 | | | xxxx | xxxx | xxxx | xxx | xx | |
| 28 | IvyScience | 466000718 | MUtewIss | 8/15/2013 | 6,760 | | 309,008 | 9,986 | NoCalRd >2.4% | still own 3/30/2015 | | | xxxx | xxxx | xxxx | xxxx | xx | 10,476 capital gain/re |
| 29 AIIEX | Invesco Inter. Groath | NewIssue | 3.48% | 5/20/2010 | 4,351 | 22.98 | 96,513 | 3,481 | CalRd | 3/15/2011 | 2500 | 27.1 | CalRd | 67,744 | NotDiscl | 10,291 s/t gain | | 10 |
| 30 | Invesco Inter. Groath | 8882102 | MFund | 5/20/2010 | | | n/a | | n/a | 10/18/2011 | 1851 | | NoCalRd | 47,827 | NotDiscl | 5,289 l/t gain | | 17 |
| | Invesco Inter. Groath | 8882102 | 3.48% | 6/9/2010 | 2,147 | 23.98 | 49,094 | 1739 | NoCalRd | 10/18/2011 | 2147 | | NoCalRd | 55,475 | NotDiscl | 5,488 l/t gain | | 16 |
| | Invesco Inter. Groath | 8882102 | MFund | 12/10/2010 | n/a | | n/a | | reinvest | 10/18/2011 | n/a | | NoCalRd | 1,693 | NotDiscl | -75 s/t loss | | 10 |
| 31 | Invesco MunicipTrust | 46131J103 | | 6/4/2013 | 15,000 | 13.10 | 196,486 | 2710 | CalRd. >1% | 9/24/2013 | 15,000 | 11.65 | CalRd. | 174,752 | 2,525 | -26,982 s/t loss | | 3 |
| 32 MMD | Mainstay Defined Term | 56064K100 | ClosedEnd | 9/25/2012 | 10,000 | 19.87 | 198,794 | 2,297 | CalRd | 6/4/2013 | 15,000 | 18.32 | CalRd | 274791 | 3375 | -20,159 s/t loss | | 9 |
| 33 | Mainstay Defined Term | | ClosedEnd | 10/1/2012 | 5,000 | 19.99 | 99,994 | 1,253 | CalRd | 6/4/2013 | | | CalRd | | | -10,784 s/t loss | | 8 |
| 34 | Mainstay Defined Term | NotIssIp | ClosedEnd | 6/23/2014 | 20,000 | 17.60 | 352,038 | 4,282 | NoCalRd | still own 3/30/2015 | | | xxxx | xxxx | xxxx | xxxx | xx | |
| 35 NMA | Nuveen Muni Advantag | 67062H106 | ClosedEnd | 8/16/2011 | 5,000 | 13.82 | 69,069 | 1,045 | NoCalRd | 10/4/2011 | 5000 | 14.37 | CalRd. | 71,701 | 1,064 | 502 s/t gain | | 3 |
| 36 NPT | Nuveen Prem. Muni 4 | 67066X105 | | 8/16/2011 | 5,000 | 12.18 | 60,990 | 993 | NoCalRd | 11/16/2011 | 5000 | 12.91 | CalRd | 64,575 | 1,020 | 1,555 s/t gain | | 3 |
| 37 NID | NuveenInterMuniTerm | 670671106 | MUtewIss | 12/5/2012 | 20,000 | 15.00 | 300,090 | NotDiscl | | 6/4/2013 | 20,000 | 12.855 | CalRd. | 257,174 | 3,475 | -46,311 s/t loss | | 6 |
| 38 | NuveenInterMuniTerm | 670671106 | ClosedEnd | 9/24/2013 | 15,000 | 11.50 | 172,462 | 2,505 | CalRd >1.5% | still own 3/30/2015 | | | xxxx | xxxx | xxxx | xxxx | xx | 10,260 |
| 39 NIQ | NuveenQalMuniTerm | 670671103 | | 6/4/2013 | 15,000 | 13.55 | 203,356 | 2,768 | CalRd | 9/24/2013 | 15,000 | 11.44 | CalRd. | 171,691 | 2,499 | -36,947 s/t loss | | 3 |
| 40 | NuveenQalMuniTerm | 670671103 | | 4/2/2014 | 17,000 | 12.19 | 207,305 | 2,902 | CalRd >1.35 | still own 3/30/2015 | | | xxxx | xxxx | xxxx | xxxx | xx | |
| 41 ODMAX | Oppenheimer Develop | MFund | 4.75% | 2/1/2011 | 1,494 | 33.46 | 47,619 | 2,375 | CalRd | 11/26/2012 | 3155 | 33.94 | CalRd | 50,703 | NotDiscl | 709 l/t gain | | 15 |
| 42 | Oppenheimer Develop | 683974109 | 3.75% | 9/26/2011 | 1,661 | 30.90 | 48,117 | 1,877 | NoCalRd | 11/26/2012 (inabove) | | 60 | CalRd | 56,371 | NotDiscl | 6,385 l/t gain | | 14 |
| | Oppenheimer Develop | | | 12/12/2011 | 60 | | n/a | | 1,790 | 60 shares | 11/26/2012 | | 33.94 | CalRd | 2,030 | NotDiscl | 237 s/t gain | | |
| 43 PCRAX | Pimco Commodity | 722005584 | NewIssue | 4/30/2012 | 8,694 | 6.90 | 59,994 | 2,695 | NoCalRd >3.75% | 11/26/2012 | 8795 | 6.77 | CalRd | 58,858 | NotDiscl | -1,140 s/t loss | | 7 |
| | Pimco Commodity | 722005584 | 4.49% | 6/21/2012 | 49 | | 291 | n/a | | 11/26/2012 | | | CalRd | 310 | NotDiscl | 40 s/t gain | | 5 |
| | Pimco Commodity | 722005584 | | 9/20/2012 | 1 | | 7 | n/a | | 11/26/2012 | | | CalRd | 7 | NotDiscl | 0 | | 2 |
| | Pimco Commodity | 722005584 | | 9/20/2012 | 1 | | n/a | | n/a | 11/26/2012 | | | CalRd | 6 | NotDiscl | 0 | | 2 |
| | Pimco Commodity | 722005584 | | 9/20/2012 | 51 | | 351 | n/a | | 11/26/2012 | | | CalRd | 345 | NotDiscl | -6 s/t loss | | 2 |
| 44 | Pru Global HiYield | 74433A109 | | 6/4/2013 | 15,000 | 17.76 | 266,524 | 3,305 | CalRd | 11/25/2013 | 15,000 | 16.81 | NoCalRd | 252,150 | 3103 | -20,878 s/t loss | | 5 |
| 45 ISD | Prudential Sh. HiYield | 74442F107 | MUtewIss | 4/25/2012 | 5,000 | 20.00 | 100,500 | NotDiscl | NoCalRd | 6/4/2013 | 5,000 | 19.19 | CalRd | 94802 | 3487 | -5,197 l/t Loss | | 14 |
| 46 | Prudential Sh. HiYield | 74442F107 | ClosedEnd | 6/21/2012 | 10,000 | 20.12 | 201,217 | 2,314 | CalRd | 6/4/2013 | 10,000 | 19.19 | CalRd | 189604 | | -13,932 s/t loss | | 8 |
| 47 | Prudential Sh. HiYield | 74442F107 | | 11/25/2013 | 15,000 | 17.81 | 267,258 | 3,311 | NoCalRd | 12/23/2014 | 15,000 | 16.04 | CalRd | 240594 | 3085 | -33,076 l/t Loss | | 13 |
| | Prudential Sh. HiYield | 74442F107 | | 11/25/2013 | | | n/a | | n/a | | | | xxx | xxxx | xxxx | xxxx | xx | |
| 48 | Prudential Sh. HiYield | 74442F107 | | 11/27/2013 | | | n/a | | 3,270 | NoCalRd | (Canclled | 11/25 trade. wrongprice) | | xxx | xxxx | xxxx | xxxx | xx | |
| 49 HEMZX | Virtus Emer. Mkts. | MFUND | 4.76% | 2/14/2012 | 5,175 | 9.66 | 47,614 | 2,380 | NoCalRd | 1/24/2014 | 3586ish/rs | | CalRd | 45,797 | | -4,197 REMPT. FI | | 23 |
| 50 | Virtus Emer. Mkts. | 92828T707 | 3.77% | 9/25/2012 | 10,193 | 9.81 | 96,223 | 3,771 | CalRd. | 1/24/2014 | | | CalRd | 90,206 | | -9,792 l/t loss | | 16 |
| 51 | Virtus Emer. Mkts. | CANCELLED | 3.75% | 10/1/2012 | 5,019 | 9.96 | 48,137 | 1,807 | CalRd | 1/24/2014 | | | CalRd | 44,417 | | -5,597 l/t loss | | 27 |
| | Virtus Emer. Mkts. | n/a | | 11/26/2012 | | | n/a | | n/a | CANCELLED | | | xxx | xxx | xxx | xxx | xx | |
| 52 | Virtus Emer. Mkts. | 92828T707 | 2.71% | 12/3/2012 | 15,105 | 9.93 | 149,992 | 4,078 | NoCalRd | 1/24/2014 | | | CalTed | 149,998 | NotDiscl | -16,321 l/t loss | | 26 |
| | Virtus Emer. Mkts. | 92828T707 | MFund | 12/20/2012 | n/a | n/a | reinvest | n/a | n/a | 1/24/2014 | | | CalRd | 10 | | | | 25 (458 long/term gain r |
| | Virtus Emer. Mkts. | 92828T707 | | 6/20/2013 | | | reinvest | n/a | n/a | 1/24/2014 | | | CalRd | 485 | | 87 | | 7 |
| | Virtus Emer. Mkts. | 92828T707 | MFund | 12/20/2013 | | | reinvest | n/a | n/a | 1/24/2014 | | | CalRd | 62 | | | | 1 |

ML-Compton-00002842

| 53 | WFOFX | Wells Fargo Emerg Mk | | MFund | 4.76% | 8/23/2011 | 2,258 | 22.14 | 47,623 | 2,371 | CalRd. | 7/25/2012 | 5043 | 18.66 | NoCalRd | 42,131 | NotDiscl | -7,665 s/t loss | 11 | |
| | | Wells Fargo Emerg Mk | 94984B389 | MFund | | 9/26/2011 | 2,484 | 20.12 | n/a | | Not/Discl | Cancled on 10/5/11 | xxxx | | Cancelled | xxx | xxx | xxx | xxx | xx | |
| 54 | | Wells Fargo Emerg Mk | | NotUnsol | 4.71% | 10/5/2011 | 2,692 | 20.12 | 51,579 | 2,384 | NoCalRd | 7/25/2012 | | | NoCalRd | 50,229 | NotDiscl | -3,936 s/t loss | 9 | |
| | | Wells Fargo Emerg Mk | 94984B389 | MFund | | 12/11/2011 | 55 | n/a | 1,097 | reinvest | n/a | 7/25/2012 | | | n/a | 1,026 | NotDiscl | -72 s/t loss | 7 | |
| | | Wells Fargo Emerg Mk | 94984B389 | MFund | | 12/16/2011 | 37 | n/a | 703 | reinvest | n/a | 7/25/2012 | | | n/a | 694 | NotDiscl | -9 s/t loss | 7 | |
| 55 | MTT | Western Asset Muni | 95766A109 | ClosedEnd | | 6/4/2013 | 10,000 | 21.72 | 217,299 | 2,637 | CalRd | 4/2/2014 | 10000 | | CalRd | 218,529 | 2,647 | -4,070 s/t loss | 10 | 2520 |
| | | | | | | | | | 126,211 | | | | | | | | ?????? | | | |
| | | | | Total Transactions | | | | | 7,372,378 | | | 12,612,820 | | | | 5,218,139 | | -332,857 LOSS | | |

NotDisclosed--Commiss on Amount Not on Confrmation Sheet

ML-Compton-00002843

| | Investment Name | CUSUIP | Date | Purchase Amount (nocomm) | Commissi | Call/NoCal | Date Sold | CALL/ | Sales Amount (w/Comm) | Commiss | Total Com | GAIN/LOSS | Red/Sale | Mon. Held | DIVIDEND YEAR | PrinPymt | LT Gain |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PREFERRED STOCKS/CORPORATE BONDS | | | | | | as of 11/14/2017 | | | | | | | | | | | |
| | Aegon Cap. 6.875% | N00927306 | 2/19/2010 | 145,790 | 1,676 | NoCallRd | 5/20/2010 | CallRd | 121,380 | 1,515 | 3191 | -27,614 | s/t loss | 3 | 3007 | | |
| MLNEWISSUE | Aegon NV 8% Notes | 7924608 | 1/24/2012 | 200,000 | NotDiscl | NoCallRd | 10/15/2012 | NoCallRd | 220,921 | 2,325 | | 18,586 | s/t gain | 9 | 2678 | | |
| | AIG PFD..7.7% | 26874859 | 7/18/2012 | 205,858 | 2236 | NoCallRd | 11/1/2012 | NoCallRd | 202,240 | 2409 | 4645 | -10,515 | s/t loss | 4 | ??? | | |
| | AIG PFD..7.7% | 26874859 | 12/3/2012 | 201,891 | 2426 | NoCallRd | 3/18/2013 | NoCallRd | 200,000 | NotDiscl | NotDisc | -6,749 | s/t loss | 3 | 2850/ 3850 | | |
| | Allianz (8.375%) | 18805200 | 6/25/2009 | 108,450 | Transferre | n/a | 9/17/2009 | NoCallRd | 122,678 | 1,413 | 1,413 | 14,228 | s/t gain | 3 | 2617 | | |
| MLNEWISSUE | Aviva PLC -8.25% | 05382A203 | 11/17/2011 | 200,000 | NotDiscl | NoCallRd | 7/18/2012 | NoCallRd | 220,074 | 2,319 | NotDisc | 17,745 | s/t gain | | | | |
| Newissue | Barclay' PLC(6.625%) | 06739F390 | 10/5/2009 | 102,920 | 1263 | NoCallRd | 5/20/2010 | CallRd | 96,504 | 1,230 | 2493 | -7,656 | s/t loss | 7 | 2070/2070 | | |
| | Barclay's PLC (7.75%) | 06739HS11 | 6/25/2009 | 94,799 | Transferre | n/a | | | 124,297 | 1,414 | | 28,076 | s/t gain | | 8 2421/ | | |
| | Barclay's PLC (7.75%) | 06739HS11 | 10/15/2012 | 205,209 | 2,217 | NoCallRd | 2/19/2010 S/O 3/30/2015 | | xxxx | xxx | xxxx | xxx | s/t gain | xx | 3875/15500 | | |
| | Barclay's PLC(8.125%) | 06739H362 | 6/25/2009 | 99,900 | Transferre | n/a | 10/1/2009 | CallRd | 121,756 | 1,396 | 1,396 | 20,450 | s/t gain | 4 | 2539 | | |
| | CitiGrp. Prferrd | 172967366 | 2/20/2014 | 179340 | 2218 | NoCallRd | S/O 3/30/2015 | | xxxx | xxx | xxx | xxx | s/t gain | xx | 8,720 | | |
| | DB Cont Cap7.60% | 25154A108 | 9/8/2009 | 86,400 | 1,104 | NoCallRd | 11/3/2009 | NoCallRd | 90,280 | 1,129 | 2,233 | 471 | s/t gain | 3 | 1604 | | |
| | Ford Motor Credit Co. | 34539CZU9 | 3/18/2005 | 25,000 | Transferre | TRANSFER | 11/25/2009 | NoCallRd | 22,360 | 335 | 335 | -2,644 | l/t loss | 56 | 1185 | ML/Princip |
| MLNEWISSUE | GE-Sr.Notes-4.875% | 369622428 | 10/2/2012 | 200,000 | NotDiscl | NoCallRd | 7/15/2013 | NoCallRd | 182,081 | 2,237 | 2,237 | -20,164 | s/t loss | 9 | 7447 | | |
| | Harris Preferred Cap C | 414567206 | 9/17/2009 | 114,000 | 1,346 | NoCallRd | 12/21/2009 | NoCallRd | 112,235 | 1,328 | 2674 | -4,460 | s/t loss | 3 | 2304 | | |
| | Harris Preferred Cap C | 414567206 | 3/7/2012 | 208,109 | 2,237 | NoCallRd | 4/16/2012 | NoCallRd | 202,420 | 2,197 | 4434 | -8,911 | s/t Loss | 1 | 2415 | (Prin Pymt of $ |
| | HSBC-6.5% | 40428H862 | 11/3/2009 | 92,760 | 744 | NoCallRd | 12/11/2009 | NoCallRd | 92,680 | 744 | 1,488 | 9,050 | s/t gain | 1 | 3065 | | |
| | ING GROEP-8.5% | 456837806 | 6/25/2009 | 93,139 | Transferre | n/a | 1/1/2010 | NoCallRd | 85,228 | 1,164 | 1,164 | -7,910 | s/t loss | 3 | 2656 | | |
| | ING Group 7.375% | 456837707 | 2/19/2010 | n/a | n/a | NoCallRd | CANCELLED TRADE | xxx | xxxx | xxx | xxx | xxx | xxx | xx | xx | | |
| | ING Group 7.375% | 456837707 | 2/24/2010 | n/a | n/a | NoCallRd | Cancel 2/19/2010 | xxx | xxxx | xxx | xxx | xxx | xxx | xx | xx | | |
| MLNEWISSUE | Qwest Sr. Notes 7% | 74913G402 | 3/22/2012 | 200,000 | NotDiscl | CallRd | 6/15/2012 | NoCallRd | 202,555 | 2,198 | NotDiscl | 346 | | 3 | | No1stCoupon -$14K | |
| | Qwest Sr. Notes 7% | 74913G402 | 7/15/2013 | 201,508 | 2402 | NoCallRd | S/O 3/30/2015 | | xxxx | xxxx | xxx | xxx | | xxx | | 3,500 | 13,989 | |
| | Qwest Sr. Notes 7% | 74913G501 | 6/14/2012 | 200,000 | NotDiscl | NoCallRd | 2/20/2014 | NotDiscl | 198,320 | 2,375 | NotDiscl | -4,065 | s/t loss | 20 713/140 | | 3500 | |
| | PPLUS Series -7.25% | 73941X718 | 6/26/2009 | 3,646 | Transferre | n/a | 2/19/2010 | NoCallRd | 4,811 | 845 | | 1,164 | s/t gain | 8 | 4531 | | |
| | PPLUS Series -7.25% | 73941X718 | 6/26/2009 | 3,736 | Transferre | n/a | 2/19/2010 | NoCallRd | 4,811 | (incl. in ab) | | 1,074 | s/t gain | 8 | | | |
| | PPLUS Series -7.25% | 73941X718 | 6/26/2009 | 5,755 | Transferre | n/a | 2/22/2010 | NoCallRd | 7,216 | (incl. in ab) | | | | | | | |
| | PPLUS Series -7.25% | 73941X718 | 6/29/2009 | 29,587 | Transferre | n/a | 2/19/2010 | NoCallRd | 36,203 | (incl in ab) | | 6,616 | s/t gain | 8 | | | |
| | PPLUS Series -7.25% | 73941X718 | 6/30/2009 | 5,830 | Transferre | n/a | 2/19/2010 | NoCallRd | 7,096 | (incl in ab) | | 1,265 | s/t gain | 8 | | | |
| | PPLUS Series -7.25% | 73941X718 | 6/30/2009 | 27,768 | Transferre | n/a | 2/22/2010 | NoCallRd | 58,440 | 811 | | 5,691 | s/t gain | 8 | | | |
| | PPLUS Series -7.25% | 73941X718 | 7/1/2009 | 20,058 | Transferre | n/a | 2/22/2010 | NoCallRd | | | | 3,637 | s/t gain | 7 | | | |
| | PPLUS Series 7.25% | 73941X718 | 6/30/2009 | 1,976 | Transferre | n/a | 2/19/2010 | NoCallRd | 2,440 | 34 | | 404 | s/t gain | 8 | | | |

ML-Compton-00002844

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Suntrust Capital IX Tru | 867885105 | 6/26/2009 | 111,050 | Transferre | n/a | 1/26/2010 | | CallRd | 122,122 | 1,400 | 1,400 | 16,315 | s/t gain | 7 | 5920 |
| KeyCorp Cap. X Trust | 49327R103 | 6/26/2009 | 92,549 | Transferred | n/a | 2/19/2010 | Acct.1050 | NoCallRd | 182,004 | 2,026 | 2,026 | 92,549 | s/t gain | 8 |
| KeyCorp Cap. X Trust | | 12/21/2009 | 54,777 | 805 | NoCallRd | | | | | | | | | |
| | | | | | | | | | | 32,844 | | 136,979 | Gain | |
| | Total Transactions | | 3,522,305 | 20,674 | | | | | 3,043,152 | 32,844 | | | | |
| | | | Total Transactions | | 6,565,457 | | | | | | | | | |
| | | | Total Commissions | | 53,418 | | | | | | | | | |

ML-Compton-00002845

## Overall Performance by Asset

| | Bought | Commissions Mk/Up | Sold | Commissions Mk/Dwn | Losses Only | | Interest/ Dividends |
|---|---|---|---|---|---|---|---|
| Bonds | 26,374,082 | 527,481 | 19,064,138 | 95,317 | -887,002 | | 1,096,760 |
| Equities | 16,400,863 | 210,454 | 14,806,074 | 183,768 | -731,099 | 462,527 | |
| Mutual Funds | 7,715,871 | 166,566 | 4,985,043 | 43,929 | -426,019 | -345,571 | 232,350 |
| REITS | 470,956 | 5,480 | 345,940 | 4,403 | -19,607 | -4,463 | |
| MLPS | 4,277,376 | 49,459 | 3,311,230 | 39,371 | -202,224 | -40,956 | |
| Preferred Stocks | 2,864,132 | 53,202 | 3,263,138 | 37,255 | -95,174 | -8,205 | |
| Alt. | 1,129,005 | 18,724 | | | | | |
| Subtotal | 59,203,882 | 1,031,366 | 45,773,563 | 404,043 | | | |
| Exact Target Trades | 17,507,918 | 37,996 | 34,508,679 | 74,996 | | | |
| Totals | 76,711,800 | 1,069,362 | 80,282,242 | 479,039 | | | |
| TOTAL Commissions | | 1,548,401 | | | | | |

ML-Compton-00021583



2009-2014 Trades by Asset Allocation

| | Name | Date | Call/No Call | Action | Unauthor. Purchases | Investmt Cost | Commiss./ HkUp * | Total Purch | Unauthor. Sold | Sold | Commiss. /HkDown | Net Proceeds | All Loss | Gain/Loss | Sht Term Lng Term | Month Held |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | **STOCKS** | | | | | | | | | | | | | | | |
| 1 | Altria | 12/11/2009 | NoCallRd | Bought | 27,748 | 27,395 | 353 | 27,748 | | | | | | | | |
| 2 | ABB | 12/11/2009 | NoCallRd | Bought | 21,884 | 21,598 | 286 | 21,884 | | | | | | | | |
| 3 | America Movil | 12/11/2009 | NoCallRd | Bought | 19,261 | 19,025 | 236 | 19,261 | | | | | | | | |
| 4 | AT & T | 12/11/2009 | NoCallRd | Bought | 17,004 | 16,799 | 205 | 17,004 | | | | | | | | |
| 5 | AT & T | 12/11/2009 | NoCallRd | Bought | 11,336 | 11,199 | 137 | 11,336 | | | | | | | | |
| 6 | Apple | 12/11/2009 | NoCallRd | Bought | 19,636 | 19,431 | 205 | 19,636 | | | | | | | | |
| 7 | BP | 12/11/2009 | NoCallRd | Bought | 22,836 | 22,573 | 263 | 22,836 | | | | | | | | |
| 8 | BHP | 12/11/2009 | NoCallRd | Bought | 22,360 | 22,112 | 248 | 22,360 | | | | | | | | |
| 9 | Boeing | 12/11/2009 | NoCallRd | Bought | 22,557 | 22,296 | 261 | 22,557 | | | | | | | | |
| 10 | Cisco | 12/11/2009 | NoCallRd | Bought | 24,022 | 23,727 | 295 | 24,022 | | | | | | | | |
| 11 | Conagra | 12/11/2009 | NoCallRd | Bought | 22,864 | 22,578 | 286 | 22,864 | | | | | | | | |
| 12 | Deere | 12/11/2009 | NoCallRd | Bought | 21,258 | 21,007 | 251 | 21,258 | | | | | | | | |
| 13 | Emerson | 12/11/2009 | NoCallRd | Bought | 25,496 | 25,192 | 304 | 25,496 | | | | | | | | |
| 14 | HCP | 12/11/2009 | NoCallRd | Bought | 25,256 | 24,959 | 297 | 25,256 | | | | | | | | |
| 15 | Monsanto | 12/11/2009 | NoCallRd | Bought | 16,786 | 16,606 | 180 | 16,786 | | | | | | | | |
| 16 | Monsanto | 12/11/2009 | NoCallRd | Bought | 8,392 | 8,302 | 90 | 8,392 | | | | | | | | |
| 17 | Phillip Morris | 12/11/2009 | NoCallRd | Bought | 24,620 | 24,339 | 281 | 24,620 | | | | | | | | |
| 18 | Pfizer | 12/11/2009 | NoCallRd | Bought | 26,099 | 25,759 | 340 | 26,099 | | | | | | | | |
| 19 | Quest | 12/11/2009 | NoCallRd | Bought | 24,412 | 24,137 | 275 | 24,412 | | | | | | | | |
| 20 | Qualcom | 12/11/2009 | NoCallRd | Bought | 22,856 | 22,589 | 267 | 22,856 | | | | | | | | |
| 21 | Royal Dutch | 12/11/2009 | NoCallRd | Bought | 23,190 | 22,924 | 266 | 23,190 | | | | | | | | |
| 22 | US Bancorp | 12/11/2009 | NoCallRd | Bought | 23,308 | 23,009 | 299 | 23,308 | | | | | | | | |
| 23 | UTC | 12/11/2009 | NoCallRd | Bought | 21,130 | 20,891 | 239 | 21,130 | | | | | | | | |
| 24 | Verizon | 12/11/2009 | NoCallRd | Bought | 10,232 | 10,110 | 122 | 10,232 | | | | | | | | |
| 25 | Verizon | 12/11/2009 | NoCallRd | Bought | 17,052 | 16,849 | 203 | 17,052 | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| 1 | ABB | 1/26/2010 | CallRd | Bought | | 12,900 | 273 | 13,173 | | | | | | | | |
| 2 | ABB | 1/26/2010 | CallRd | Bought | | 5,529 | 117 | 5,646 | | | | | | | | |
| 3 | Altria | 1/26/2010 | CallRd | Bought | | 19,877 | 407 | 20,284 | | | | | | | | |
| 4 | America Movil SAB | 1/26/2010 | CallRd | Bought | | 21,289 | 396 | 21,685 | | | | | | | | |
| 5 | Apple | 1/26/2010 | CallRd | Bought | | 9,145 | 147 | 9,292 | | | | | | | | |
| 6 | Apple | 1/26/2010 | CallRd | Bought | | 11,177 | 179 | 11,356 | | | | | | | | |
| 7 | ATT | 1/26/2010 | CallRd | Bought | | 20,214 | 400 | 20,614 | | | | | | | | |
| 8 | BHP Billion ADR | 1/26/2010 | CallRd. | Bought | | 21,906 | 380 | 22,286 | | | | | | | | |
| 9 | Boeing | 1/26/2010 | CallRd | Bought | | 23,088 | 411 | 23,449 | | | | | | | | |
| 10 | BP PLC SPON ADR | 1/26/2010 | CallRd | Bought | | 23,199 | 413 | 23,612 | | | | | | | | |
| 11 | Cisco | 1/26/2010 | CallRd | Bought | | 9,132 | 182 | 9,314 | | | | | | | | |
| 12 | Cisco | 1/26/2010 | CallRd | Bought | | 11,414 | 227 | 11,641 | | | | | | | | |
| 13 | Conagra | 1/26/2010 | CallRd | Bought | | 20,753 | 412 | 21,165 | | | | | | | | |
| 14 | Deere | 1/26/2010 | CallRd | Bought | | 10,734 | 196 | 10,930 | | | | | | | | |
| 15 | Deere | 1/26/2010 | CallRd | Bought | | 10,734 | 196 | 10,930 | | | | | | | | |
| 16 | Emerson Electric | 1/26/2010 | CallRd | Bought | | 21,100 | 393 | 21,493 | | | | | | | | |
| | Frontier Comm. | 1/26/2010 | CallRd | n/a | | 1,342 xxxx | | 1,342 | | | | | | | | |
| 17 | HCP | 1/26/2010 | CallRd | Bought | | 2,906 | 56 | 2,962 | | | | | | | | |
| 18 | HCP | 1/26/2010 | CallRd | Bought | | 17434 | 339 | 17,773 | | | | | | | | |
| 19 | Monsanto | 1/26/2010 | CallRd | Bought | | 23,310 | 397 | 23,707 | | | | | | | | |
| 20 | Pfizer | 1/26/2010 | CallRd | Bought | | 14,974 | 323 | 15,297 | | | | | | | | |
| 21 | Philip Morris | 1/26/2010 | CallRd | Bought | | 18,743 | 359 | 19,102 | | | | | | | | |
| 22 | Qualcomm | 1/26/2010 | CallRd | Bought | | 18,800 | 360 | 19,160 | | | | | | | | |

ML-Compton-00021584

| No. | Security | Date/Type | Action | L1 | L2 | L3 | L4 | R1 | R2 | R3 | R4 | R5 | Note | Ref |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 23 | Quest Diagnostics | 1/26/2010 CalRd | Bought | | 22,964 | 410 | 23,374 | | | | | | | |
| 24 | Royal Dutch Shell ADR | 1/26/2010 CalRd | Bought | | 22,308 | 402 | 22,710 | | | | | | | |
| 25 | United Tech Corp | 1/26/2010 CalRd | Bought | | 13,670 | 241 | 13,911 | | | | | | | |
| 26 | United Tech Corp | 1/26/2010 CalRd | Bought | | 13,670 | 241 | 13,911 | | | | | | | |
| 27 | US Bancorp | 1/26/2010 CalRd | Bought | | 22,245 | 430 | 22,675 | | | | | | | |
| 28 | Verizon | 1/26/2010 CalRd | Bought | | 21,241 | 406 | 21,647 | | | | | | | |
| 29 | Groupo Televisa | 2/19/2010 NoCalRd | Bought | 39,810 | 39,138 | 672 | 39,810 | | | | | | | |
| 30 | AmericaMovil | 2/19/2010 NoCalRd | Sold | | | | | 22,293 | 22,293 | 342 | 21951 | | 603 s/t gain | 1 |
| 31 | AmericaMovil | 2/19/2010 NoCalRd | Sold | | | | | 18,108 | 18,108 | 273 | 17835 | -1432 | -1432 s/t loss | 2 |
| 32 | Corning | 5/10/2010 CalRd | Bought | | 18,600 | 281 | 18,881 | | | | | | | |
| 33 | Corning | 5/10/2010 CalRd | Bought | | 37,200 | 561 | 37,761 | | | | | | | |
| 34 | National Grid | 5/10/2010 CalRd | Bought | | 64,386 | 802 | 65,188 | | | | | | | |
| 35 | Total SA ADR | 5/10/2010 CalRd | Bought | | 51,340 | 692 | 52,032 | | | | | | | |
| 36 | BP | 5/10/2010 CalRd | Sold | | | | | | 39,248 | 601 | 38647 | -7820 | -7820 s/t loss | 7 |
| 37 | EmersonElec | 5/10/2010 CalRd | Sold | | | | | | 55,891 | 728 | 55163 | | 8154 s/t gain | 5 |
| 38 | Altria | 6/9/2010 NoCalRd | Bought | 10,422 | 10,170 | 252 | 10,422 | | | | | | | |
| 39 | ABB | 6/9/2010 NoCalRd | Bought | 8,745 | 8,515 | 230 | 8,745 | | | | | | | |
| 40 | AT & T | 6/9/2010 NoCalRd | Bought | 7,693 | 7,500 | 193 | 7,693 | | | | | | | |
| 41 | Barclay's ADR | 6/9/2010 NoCalRd | Bought | 28,258 | 27,806 | 452 | 28,258 | | | | | | | |
| 42 | Barclay's ADR | 6/9/2010 NoCalRd | Bought | 21,613 | 21,268 | 345 | 21,613 | | | | | | | |
| 43 | BHP | 6/9/2010 NoCalRd | Bought | 18,954 | 18,613 | 341 | 18,954 | | | | | | | |
| 44 | Boeing | 6/9/2010 NoCalRd | Bought | 12,639 | 12,400 | 239 | 12,639 | | | | | | | |
| 45 | Conagra | 6/9/2010 NoCalRd | Bought | 10,121 | 9,878 | 243 | 10,121 | | | | | | | |
| 46 | Deere | 6/9/2010 NoCalRd | Bought | 11,486 | 11,260 | 226 | 11,486 | | | | | | | |
| 47 | DuPont | 6/9/2010 NoCalRd | Bought | 40,293 | 39,750 | 543 | 40,293 | | | | | | | |
| 48 | DuPont | 6/9/2010 NoCalRd | Bought | 14,653 | 14,456 | 197 | 14,653 | | | | | | | |
| 49 | Ford | 6/9/2010 NoCalRd | Bought | 34,476 | 33,780 | 696 | 34,476 | | | | | | | |
| 50 | Glaxo | 6/9/2010 NoCalRd | Bought | 37,693 | 37,167 | 526 | 37,693 | | | | | | | |
| 51 | Glaxo | 6/9/2010 NoCalRd | Bought | 13,707 | 13,516 | 191 | 13,707 | | | | | | | |
| 52 | HCP | 6/9/2010 NoCalRd | Bought | 12,848 | 12,574 | 274 | 12,848 | | | | | | | |
| 53 | Prog.Energy | 6/9/2010 NoCalRd | Bought | 42,963 | 42,348 | 615 | 42,963 | | | | | | | |
| 54 | Prog.Energy | 6/9/2010 NoCalRd | Bought | 3,905 | 3,850 | 55 | 3,905 | | | | | | | |
| 55 | PhilipMorris | 6/9/2010 NoCalRd | Bought | 4,519 | 4,431 | 88 | 4,519 | | | | | | | |
| 56 | PhilipMorris | 6/9/2010 NoCalRd | Bought | 9,041 | 8,864 | 177 | 9,041 | | | | | | | |
| 57 | QuestDiag | 6/9/2010 NoCalRd | Bought | 5,312 | 5,204 | 108 | 5,312 | | | | | | | |
| 58 | QuestDiag | 6/9/2010 NoCalRd | Bought | 5,312 | 5,204 | 108 | 5,312 | | | | | | | |
| 59 | Qualcomm | 6/9/2010 NoCalRd | Bought | 21,380 | 20,982 | 398 | 21,380 | | | | | | | |
| 60 | Royal Dutch Shell ADR | 6/9/2010 NoCalRd | Bought | 10,075 | 9,866 | 209 | 10,075 | | | | | | | |
| 61 | Total SA ADR | 6/9/2010 NoCalRd | Bought | 9,254 | 9,056 | 198 | 9,254 | | | | | | | |
| 62 | United Tech Corp | 6/9/2010 NoCalRd | Bought | 19,597 | 19,249 | 348 | 19,597 | | | | | | | |
| | NationalGrid | 6/30/2010 NoCalRd | Bought | n/a | n/a | | n/a | | | | | | | |
| 63 | Ford | 7/5/2010 NoCalRd | Sold | | | | | 24,409 | 24,409 | NotDiscl | | | | |
| 64 | Emerson Electric | 8/24/2010 NoCalRd | Bought | 70,367 | 69,525 | 842 | 70,367 | | | | | | | |
| 65 | Ford | 8/24/2010 NoCalRd | Bought | 11,572 | 11,280 | 292 | 11,572 | | | | | | | |
| 66 | HSBC HLDG ADR | 8/24/2010 NoCalRd | Bought | 49,295 | 48,620 | 675 | 49,295 | | | | | | | |
| 67 | HCP | 8/24/2010 NoCalRd | Sold | | | | | 64,087 | 64,087 | 830 | 63,257 | | 4390 s/t gain | 8 |
| 68 | Monsanto | 8/24/2010 NoCalRd | Sold | | | | | 34,080 | 34,080 | 554 | 33,496 | -15,377 | -15,377 s/t loss | 8 |
| 69 | Barclays PLC ADR | 9/2/2010 NoCalRd | Bought | 54,548 | 53,751 | 797 | 54,548 | | | | | | | |
| 70 | Barclays PLC ADR | 9/2/2010 NoCalRd | Bought | 3895 | 3839 | 56 | 3895 | | | | | | | |
| 71 | Sanofi | 9/2/2010 NoCalRd | Bought | 48,241 | 47,596 | 645 | 48,241 | | | | | | | |
| 72 | Sanofi | 9/2/2010 NoCalRd | Bought | 12,060 | 11,899 | 161 | 12,060 | | | | | | | |
| 73 | Waste Mgmt | 9/2/2010 NoCalRd | Bought | 3,433 | 3,385 | 48 | 3,433 | | | | | | | |
| 74 | Waste Mgmt | 9/2/2010 NoCalRd | Bought | 6,866 | 6,770 | 96 | 6,866 | | | | | | | |
| 75 | Waste Mgmt | 9/2/2010 NoCalRd | Bought | 20,594 | 20,307 | 287 | 20,594 | | | | | | | |
| 76 | Waste Mgmt | 9/2/2010 NoCalRd | Bought | 3,433 | 3,385 | 48 | 3,433 | | | | | | | |
| 77 | Waste Mgmt | 9/2/2010 NoCalRd | Bought | 6,866 | 6,770 | 96 | 6,866 | | | | | | | |
| 78 | Waste Mgmt | 9/2/2010 NoCalRd | Bought | 10,299 | 10,155 | 144 | 10,299 | | | | | | | |
| 79 | Grupo | 9/2/2010 NoCalRd | Sold | | | | | 13,363 | 13,360 | 233 | 13,130 | -811 | -811 s/t loss | 7 |

ML-Compton-00021585

| # | Name | Date | | | | | | | | | | | | | |
|---|------|------|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 80 | Grupo | 9/2/2010 NoCal'Rd | Sold | | | | | 24,817 | 24,817 | 433 | 24332 | -1496 | -1496 s/t loss | 7 |
| 81 | Glaxosmithkline | 9/2/2010 NoCal'Rd | Sold | | | | | 23,304 | 23,304 | 307 | 22,997 | | 2427 s/t gain | 3 |
| 82 | Glaxosmithkline | 9/2/2010 NoCal'Rd | Sold | | | | | 34,965 | 34,965 | 461 | 34,504 | | 3659 s/t gain | 3 |
| 83 | Prog.Energy | 9/2/2010 NoCal'Rd | Sold | | | | | 4,339 | 4,339 | 59 | 4280 | | 4495 s/t gain | 3 |
| 84 | Prog.Energy | 9/2/2010 NoCal'Rd | Sold | | | | | 8,678 | 8,678 | 118 | 8560 | | (in#above) | |
| 85 | Prog.Energy | 9/2/2010 NoCal'Rd | Sold | | | | | 4,340 | 4,340 | 59 | 4281 | | (in#above) | |
| 86 | Prog.Energy | 9/2/2010 NoCal'Rd | Sold | | | | | 17,364 | 17,364 | 237 | 17,127 | | (in#above) | |
| 87 | Prog.Energy | 9/2/2010 NoCal'Rd | Sold | | | | | 17,364 | 17,364 | 237 | 17,364 | | (in#above) | |
| 88 | US Bancorp | 9/2/2010 NoCal'Rd | Sold | | | | | 26,340 | 26,340 | 432 | 25,908 | -4,967 | -4,967 s/t loss | 9 |
| 89 | US Bancorp | 9/2/2010 NoCal'Rd | Sold | | | | | 15,366 | 15,366 | 252 | 15,114 | | (in#above) | 9 |
| 90 | Ford | 9/19/2010 Cal'Rd | Bought | 12,288 | 12,288 | NotDisc | 12,288 | | | | | | | |
| 91 | Centurylink | 10/26/2010 Cal'Rd | Bought | | 49,008 | 689 | 49,697 | | | | | | | |
| 92 | Kimberly Clark | 10/26/2010 Cal'Rd | Bought | | 51,728 | 683 | 52,411 | | | | | | | |
| 93 | PPL | 10/26/2010 Cal'Rd | Bought | | 53,780 | 768 | 54,548 | | | | | | | |
| 94 | Astrazeneca | 11/15/2010 NoCal'Rd | Bought | 49,335 | 48,660 | 675 | 49,335 | | | | | | | |
| 95 | Centerpoint Energy | 11/15/2010 NoCal'Rd | Bought | 49,424 | 48,630 | 794 | 49,424 | | | | | | | |
| 96 | Glaxosmithkline | 11/15/2010 NoCal'Rd | Bought | 39,973 | 39,360 | 613 | 39,973 | | | | | | | |
| 97 | PPL | 11/15/2010 NoCal'Rd | Sold | | | | | 52,180 | 52,180 | 758 | 51422 | -3138 | -3138 s/t loss | 1 |
| 98 | Pfizer | 11/15/2010 NoCal'Rd | Sold | | | | | 37,356 | 37,356 | 672 | 36684 | -4730 | -4730 s/t loss | 10 |
| 99 | Sanofi | 11/15/2010 NoCal'Rd | Sold | | | | | 67,780 | 67,780 | 861 | 66919 | | 6603 s/t gain | 3 |
| 100 | National Bank Canada | 12/9/2010 NoCal'Rd | Bought | 83,422 | 82,512 | 910 | 83,422 | | | | | | | |
| 101 | NatAustral | 12/9/2010 NoCal'Rd | Bought | 4,802 | 4,740 | 62 | 4,802 | | | | | | | |
| 102 | NatAustral | 12/9/2010 NoCal'Rd | Bought | 67,296 | 66,416 | 880 | 67,296 | | | | | | | |
| 103 | Barclays PLC ADR | 12/9/2010 NoCal'Rd | Sold | | | | | 52,217 | 52,217 | 670 | 51,547 | | 1649 s/t gain | 6 |
| 104 | Barclays PLC ADR | 12/9/2010 NoCal'Rd | Sold | | | | | 52,217 | 52,217 | 670 | 51,547 | -6890 | -6890 s/t loss | 3 |
| 105 | HSBC HLDG ADR | 12/9/2010 NoCal'Rd | Sold | | | | | 20,280 | 20,280 | 270 | 20,010 | | 979 s/t gain | 4 |
| 106 | HSBC HLDG ADR | 12/9/2010 NoCal'Rd | Sold | | | | | 32,253 | 32,253 | 430 | 31,823 | | 1546 s/t gain | 4 |
| | | | | | | | | | | | | | **2011** | |
| 1 | Conoco | 2/7/2011 NoCal'Rd | Bought | 51,309 | 50,726 | 582 | 51,309 | | | | | | | |
| 2 | Conoco | 2/7/2011 NoCal'Rd | Bought | 14,659 | 14,493 | 166 | 14,659 | | | | | | | |
| 3 | Conoco | 2/7/2011 NoCal'Rd | Bought | 7,330 | 7,247 | 83 | 7,330 | | | | | | | |
| | Phillips 66 | 2/7/2011 NoCal'Rd | n/a | | StockSplit | n/a | | | | | | | | |
| 4 | Royal Dutch Shell ADR | 2/7/2011 NoCal'Rd | Sold | | | | | 35,260 | 35,260 | 327 | 34,838 | | 4,679 l/t gain | 14 |
| 5 | Royal Dutch Shell ADR | 2/7/2011 NoCal'Rd | Sold | | | | | 7,054 | 7,054 | 81 | 6,971 | | 3,861 s/t gain | 8 |
| 6 | Royal Dutch Shell ADR | 2/7/2011 NoCal'Rd | Sold | | | | | 28,212 | 28,212 | 327 | 27,893 | | 5,169 l/t gain | 13 |
| 7 | Canadian Imperial Bank | 2/16/2011 NoCal'Rd | Bought | 83,780 | 82,879 | 901 | 83,780 | | | | | | | |
| 8 | NatBankCana | 2/16/2011 NoCal'Rd | Sold | | | | | 44,856 | 44,856 | 479 | 44,365 | | 2,656 s/t gain | 2 |
| 9 | NatBankCana | 2/16/2011 NoCal'Rd | Sold | | | | | 44,868 | 44,868 | 479 | 44,365 | | 2,674 s/t gain | 2 |
| 10 | Cisco | 2/25/2011 Cal'Rd | Sold | | | | | 27,750 | 553 | 27,185 | -5,901 | -5,901 s/t loss | 14 | |
| 11 | Waste Mgmt | 2/25/2011 Cal'Rd | Sold | | | | | 55,245 | 748 | 54,484 | | 2,994 s/t gain | 5 | |
| 12 | Telus Corp | 3/15/2011 Cal'Rd | Bought | | 41,285 | 591 | 41,876 | | | | | | | |
| 13 | Telus Corp | 3/15/2011 Cal'Rd | Bought | | 4,589 | 65 | 4,654 | | | | | | | |
| 14 | Deere | 3/15/2011 Cal'Rd | Sold | | | | | 34,688 | 370 | 34,311 | | 13,044 l/t gain | 14 | |
| 15 | Deere | 3/15/2011 Cal'Rd | Sold | | | | | 34,812 | 370 | 34,312 | | 12,446 l/t gain | 15 | |
| 16 | DuPont | 3/15/2011 Cal'Rd | Sold | | | | | 57,183 | 658 | 56,528 | | 16,219 s/t gain | 9 | |
| 17 | DuPont | 3/15/2011 Cal'Rd | Sold | | | | | 20,793 | 239 | 20,557 | | 5,838 s/t gain | 9 | |
| 18 | Verizon | 3/15/2011 Cal'Rd | Sold | | | | | 17,390 | 242 | 17,136 | | 1,140 l/t gain | 15 | |
| 19 | Verizon | 3/15/2011 Cal'Rd | Sold | | | | | 3,478 | 48 | 3,425 | | 230 l/t gain | 15 | |
| 20 | Verizon | 3/15/2011 Cal'Rd | Sold | | | | | 31,306 | 437 | 30,863 | | 4,159 l/t gain | 14 | |
| 21 | Costamare | 4/19/2011 Cal'Rd | Bought | | 70,214 | 997 | 71,211 | | | | | | | |
| 22 | Glaxosmithkline | 4/19/2011 Cal'Rd | Bought | | 20,290 | 384 | 20,674 | | | | | | | |
| 23 | Seagate Tech | 4/25/2011 Cal'Rd | Bought | | 72,000 | 1009 | 73,009 | | | | | | | |
| 24 | DuPont | 5/12/2011 NoCal'Rd | Bought | 65,726 | 64,932 | 794 | 65,726 | | | | | | | |
| 25 | Royal Bank Canada | 5/12/2011 NoCal'Rd | Bought | 61,132 | 60,380 | 752 | 61,132 | | | | | | | |
| 26 | Southern Copper Corp. | 5/12/2011 NoCal'Rd | Bought | 52,672 | 51,945 | 726 | 52,672 | | | | | | | |
| 27 | BHP Billiton ADR | 5/12/2011 NoCal'Rd | Sold | | | | | 28,035 | 28,035 | 301 | 27,734 | | 5,364 l/t gain | 17 |

ML-Compton-00021586

| # | Security | Date / Type | Action | (a) | (b) | (c) | (d) | (e) | (f) | (g) | (h) | Adj | Gain/Loss | Ref |
|---|----------|-------------|--------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----------|-----|
| 28 | BHP Billiton ADR | 5/12/2011 NoCallRd | Sold | | | | | 28,035 | 28,035 | 301 | 27,734 | | 5,439 l/t gain | 16 |
| 29 | BHP Billiton ADR | 5/12/2011 NoCallRd | Sold | | | | | 28,015 | 28,015 | 301 | 27,734 | | 8,771 s/t gain | 11 |
| 30 | Nat'lAustralia | 5/12/2011 NoCallRd | Sold | | | | | 5,640 | 5,640 | 70 | 5,570 | | 831 s/t gain | 5 |
| 31 | Nat'lAustralia | 5/12/2011 NoCallRd | Sold | | | | | 78,963 | 78,963 | 969 | 77,994 | | 11,666 s/t gain | 5 |
| 32 | National Grid | 5/12/2011 NoCallRd | Sold | | | | | 71,582 | 71,582 | 850 | 70,719 | | 11,484 l/t gain | 12 |
| 33 | CSX | 5/25/2011 NoCallRd | Bought | 53,454 | 52,769 | 684 | 53,454 | | | | | | | |
| 34 | Centerpoint Energy | 5/25/2011 NoCallRd | Sold | | | | | 56,551 | 56,551 | 846 | 55,705 | | 7,921 s/t gain | 7 |
| 35 | ENI SPA ADR | 6/6/2011 NoCallRd | Bought | 23,702 | 23,425 | 282 | 23,702 | | | | | | | |
| 36 | ENI SPA ADR | 6/6/2011 NoCallRd | Bought | 4,742 | 4,685 | 56 | 4,742 | | | | | | | |
| 37 | ENI SPA ADR | 6/6/2011 NoCallRd | Bought | 42,677 | 42,174 | 503 | 42,677 | | | | | | | |
| 38 | Total SA ADR | 6/6/2011 NoCallRd | Sold | | | | | 5,582 | 5,582 | 67 | 5,504 | | 2,175 l/t gain | 13 |
| 39 | Total SA ADR | 6/6/2011 NoCallRd | Sold | | | | | 22,330 | 22,330 | 269 | 22,055 | | 305 l/t gain | 13 |
| 40 | Total SA ADR | 6/6/2011 NoCallRd | Sold | | | | | 39,074 | 39,074 | 471 | 38,506 | | 2,175 l/t gain | 13 |
| 41 | General Mills | 6/14/2011 NoCallRd | Bought | 3,855 | 3,810 | 45 | 3,855 | | | | | | | |
| 42 | General Mills | 6/14/2011 NoCallRd | Bought | 20,590 | 20,350 | 244 | 20,590 | | | | | | | |
| 43 | General Mills | 6/14/2011 NoCallRd | Bought | 52,693 | 52,071 | 626 | 52,693 | | | | | | | |
| 44 | Conagra | 6/14/2011 NoCallRd | Sold | | | | | 21,962 | 21,962 | 313 | 21,643 | -214 | -214 l/t loss | 18 |
| 45 | Conagra | 6/14/2011 NoCallRd | Sold | | | | | 34,160 | 34,160 | 488 | 33,659 | | 1,386 l/t gain | 18 |
| 46 | Nat'lAustralia | 7/19/2011 NoCallRd | Bought | 77,384 | 76,406 | 978 | 77,384 | | | | | | | |
| 47 | PG & E Corpt | 7/19/2011 NoCallRd | Bought | 84,161 | 83,198 | 963 | 84,161 | | | | | | | |
| 48 | TAL | 7/19/2011 NoCallRd | Bought | 62,436 | 61,616 | 820 | 62,436 | | | | | | | |
| 49 | Altria | 7/25/2011 NoCallRd | Bought | 13,083 | 12,798 | 285 | 13,083 | | | | | | | |
| 50 | ATT | 7/25/2011 NoCallRd | Bought | 15,008 | 14,688 | 320 | 15,008 | | | | | | | |
| 51 | Centurylink | 7/25/2011 NoCallRd | Bought | 3,824 | 3,745 | 79 | 3,824 | | | | | | | |
| 52 | Centurylink | 7/25/2011 NoCallRd | Bought | 11,471 | 11,232 | 239 | 11,471 | | | | | | | |
| 53 | Canadian Imperial Bank | 7/25/2011 NoCallRd | Bought | 15,742 | 15,453 | 289 | 15,742 | | | | | | | |
| 54 | Costamare | 7/25/2011 NoCallRd | Bought | 17,470 | 17,091 | 379 | 17,470 | | | | | | | |
| 55 | DuPont | 7/25/2011 NoCallRd | Bought | 16,278 | 15,965 | 313 | 16,278 | | | | | | | |
| 56 | ENI SPA ADR | 7/25/2011 NoCallRd | Bought | 13,615 | 13,346 | 269 | 13,615 | | | | | | | |
| 57 | Glaxosmithkline | 7/25/2011 NoCallRd | Bought | 13,291 | 13,026 | 265 | 13,291 | | | | | | | |
| 58 | General Mills | 7/25/2011 NoCallRd | Bought | 3,772 | 3,693 | 79 | 3,772 | | | | | | | |
| 59 | General Mills | 7/25/2011 NoCallRd | Bought | 11,319 | 11,082 | 237 | 11,319 | | | | | | | |
| 60 | Kimberly Clark | 7/25/2011 NoCallRd | Bought | 20,017 | 19,660 | 357 | 20,017 | | | | | | | |
| 61 | Nat'lAustralia | 7/25/2011 NoCallRd | Bought | 13,300 | 13,012 | 288 | 13,300 | | | | | | | |
| 62 | PG & E Corpt | 7/25/2011 NoCallRd | Bought | 8,531 | 8,362 | 169 | 8,531 | | | | | | | |
| 63 | PG & E Corpt | 7/25/2011 NoCallRd | Bought | 4,265 | 4,181 | 84 | 4,265 | | | | | | | |
| 64 | PG & E Corpt | 7/25/2011 NoCallRd | Bought | 4,266 | 4,181 | 84 | 4,266 | | | | | | | |
| 65 | PPL | 7/25/2011 NoCallRd | Bought | 16,969 | 16,473 | 236 | 16,969 | | | | | | | |
| 66 | PPL | 7/25/2011 NoCallRd | Bought | 8,406 | 8,368 | 118 | 8,406 | | | | | | | |
| 67 | PPL | 7/25/2011 NoCallRd | Bought | 31,119 | 30,686 | 433 | 31,119 | | | | | | | |
| 68 | Royal Bank Canada | 7/25/2011 NoCallRd | Bought | 16,795 | 16,476 | 319 | 16,795 | | | | | | | |
| 69 | Southern Copper Corp. | 7/25/2011 NoCallRd | Bought | 10,776 | 10,555 | 221 | 10,776 | | | | | | | |
| 70 | Southern Copper Corp. | 7/25/2011 NoCallRd | Bought | 3,593 | 3,520 | 73 | 3,593 | | | | | | | |
| 71 | TAL | 7/25/2011 NoCallRd | Bought | 6,020 | 5,877 | 143 | 6,020 | | | | | | | |
| 72 | TAL | 7/25/2011 NoCallRd | Bought | 3,011 | 2,940 | 71 | 3,011 | | | | | | | |
| 73 | Vodafone | 7/25/2011 NoCallRd | Bought | 13,223 | 13,033 | 190 | 13,223 | | | | | | | |
| 74 | Vodafone | 7/25/2011 NoCallRd | Bought | 13,223 | 13,033 | 190 | 13,223 | | | | | | | |
| 75 | Vodafone | 7/25/2011 NoCallRd | Bought | 26,450 | 26,069 | 381 | 26,450 | | | | | | | |
| 76 | Honeywell | 7/25/2011 NoCallRd | Bought | 61,979 | 61,235 | 744 | 61,979 | | | | | | | |
| 77 | Honeywell | 7/25/2011 NoCallRd | Bought | 5,635 | 5,568 | 67 | 5,635 | | | | | | | |
| 78 | Eli Lilly | 7/25/2011 NoCallRd | Bought | 57,955 | 57,189 | 766 | 57,955 | | | | | | | |
| 79 | Astrazeneca | 7/25/2011 NoCallRd | Sold | | | | | 24,850 | 24,850 | 341 | 24,509 | -161 | -161 s/t loss | 8 |
| 80 | Astrazeneca | 7/25/2011 NoCallRd | Sold | | | | | 24,853 | 24,853 | 341 | 24,509 | -163 | -163 s/t loss | 8 |
| 81 | Seagate | 7/25/2011 NoCallRd | Sold | | | | | 14,690 | 14,690 | 230 | 14,460 | -3,794 | -3,794 s/t loss | 3 |
| 82 | Seagate | 7/25/2011 NoCallRd | Sold | | | | | 38,198 | 38,198 | 599 | 37,599 | -9,866 | -9,866 s/t loss | 3 |
| 83 | Seagate | 7/25/2011 NoCallRd | Sold | | | | | 5,877 | 5,877 | 92 | 5,785 | -1,516 | -1,516 s/t loss | 3 |
| 84 | Centurylink | 7/27/2011 CallRd | Bought | | 15,190 | 317 | 15,507 | | | | | | | |
| 85 | HSBC HLDG ADR | 7/27/2011 CallRd | Bought | | 49,205 | 678 | 49,683 | | | | | | | |

ML-Compton-00021587

| # | Name | Date / Type | Action | | | | | | Gain/Loss | Note | Ref |
|---|------|-------------|--------|---|---|---|---|---|-----------|------|-----|
| 86 | Royal Dutch Shell ADR | 7/27/2011 CallRd | Bought | | 52,185 | 680 | 52,865 | | | | |
| 87 | Vodafone | 7/27/2011 CallRd | Bought | | 13,358 | 288 | 13,646 | | | | |
| 88 | ABB | 7/27/2011 CallRd | Sold | | 2,429 | 50 | 2,379 | | | 553 l/t gain | 19 |
| 89 | ABB | 7/27/2011 CallRd | Sold | | 2,429 | 50 | 2,379 | | | 553 l/t gain | 19 |
| 90 | ABB | 7/27/2011 CallRd | Sold | | 12,146 | 254 | 11,892 | | | 2,765 l/t gain | 19 |
| 91 | Boeing | 7/27/2011 CallRd | Sold | | 21,678 | 377 | 21,301 | | 4,379 | l/t gain | 19 |
| 92 | Corning | 7/27/2011 CallRd | Sold | | 11,327 | 254 | 11,073 | -2,144 | | -2,144 l/t loss | 14 |
| 93 | Corning | 7/27/2011 CallRd | Sold | | 4,854 | 109 | 4,745 | -925 | | -925 l/t loss | 14 |
| 94 | Emerson Electric | 7/27/2011 CallRd | Sold | | 5,047 | 94 | 4,953 | | | 261 s/t gain | 11 |
| 95 | Emerson Electric | 7/27/2011 CallRd | Sold | | 5,047 | 94 | 4,953 | | | 255 s/t gain | 11 |
| 96 | Emerson Electric | 7/27/2011 CallRd | Sold | | 10,095 | 188 | 9,907 | | | 523 s/t gain | 11 |
| 97 | Ford | 7/27/2011 CallRd | Sold | | 12,500 | 306 | 12,194 | | | 693 l/t gain | 13 |
| 98 | Quest Diagnostics | 7/27/2011 CallRd | Sold | | 54,860 | 716 | 54,164 | -2,756 | | -2,756 l/t loss | 19 |
| 99 | Qualcomm | 7/27/2011 CallRd | Sold | | 5,516 | 98 | 5,418 | | | 1,684 l/t gain | 19 |
| 100 | Qualcomm | 7/27/2011 CallRd | Sold | | 11,032 | 196 | 10,836 | | | 1,684 l/t gain | 19 |
| 101 | Qualcomm | 7/27/2011 CallRd | Sold | | 11,032 | 196 | 10,836 | | | 845 l/t gain | 19 |
| 102 | UTC | 7/27/2011 CallRd | Sold | | 25,413 | 440 | 24,973 | | | 3,829 l/t gain | 19 |
| 103 | ABB | 10/4/2011 CallRd | Bought | | 32,084 | 629 | 32,713 | | | | |
| 104 | BHP Billiton ADR | 10/4/2011 CallRd | Bought | | 64,794 | 786 | 65,580 | | | | |
| 105 | CSX | 10/4/2011 CallRd | Bought | | 18,040 | 390 | 18,430 | | | | |
| 106 | Corning | 10/4/2011 CallRd | Bought | | 23,104 | 510 | 23,614 | | | | |
| 107 | National Grid | 10/4/2011 CallRd | Bought | | 57,283 | 748 | 58,031 | | | | |
| 108 | Vodafone | 10/4/2011 CallRd | Sold | | 12,876 | 282 | 12,594 | -1,065 | | -1,065 s/t loss | 3 |
| 109 | Vodafone | 10/4/2011 CallRd | Sold | | 20,608 | 301 | 20,307 | -1,157 | | -1,157 s/t loss | 3 |
| 110 | Vodafone | 10/4/2011 CallRd | Sold | | 12,881 | 188 | 12,693 | -727 | | -727 s/t loss | 3 |
| 111 | Vodafone | 10/4/2011 CallRd | Sold | | 18,036 | 263 | 17,773 | -1,015 | | -1,015 s/t loss | 3 |
| 112 | Deere | 10/31/2011 NoCallRd | Bought | 69,007 | 68,233 | 774 | 69,007 | | | | |
| 113 | Deere | 10/31/2011 NoCallRd | Bought | 7,668 | 7,582 | 86 | 7,668 | | | | |
| 114 | Ford | 10/31/2011 NoCallRd | Bought | 23,715 | 23,204 | 511 | 23,715 | | | | |
| 115 | Intel | 10/31/2011 NoCallRd | Bought | 61,918 | 61,066 | 852 | 61,918 | | | | |
| 116 | CanImpBank | 11/16/2011 CallRd | Sold | | 70,417 | 818 | 69,599 | -14,193 | | -14,193 s/t loss | 9 |
| 117 | Costamare | 11/16/2011 CallRd | Sold | | 48,955 | 857 | 48,096 | -23,125 | | -23,125 s/t loss | 7 |
| 118 | Honeywell | 11/16/2011 CallRd | Sold | | 65,208 | 796 | 64,412 | -4,027 | | -4,027 s/t loss | 4 |
| 119 | HSBC HLDG ADR | 11/16/2011 CallRd | Sold | | 39,140 | 612 | 38,528 | -11,368 | | -11,368 s/t loss | 4 |
| 120 | RoyBkCanada | 11/16/2011 CallRd | Sold | | 44,640 | 648 | 43,992 | -17,152 | | -17,152 s/t loss | 6 |
| 121 | Canadian Imperial Bank | 11/16/2011 CallRd | Sold | | 14,084 | 258 | 13,826 | -2,216 | | -2,216 s/t loss | 4 |
| 122 | Costamare | 11/16/2011 CallRd | Sold | | 12,304 | 304 | 12,000 | -5,859 | | -5,859 s/t loss | 4 |
| 123 | RoyBkCanada | 11/16/2011 CallRd | Sold | | 13,404 | 267 | 13,137 | -3,989 | | -3,989 s/t loss | 4 |
| 124 | Cisco | 11/17/2011 NoCallRd | Sold | 7,349 | 7,349 | 208 | 7,141 | -10,664 | | -10,664 s/t loss | 22 |
| 125 | Ford | 11/17/2011 NoCallRd | Sold | 50,562 | 50,562 | 927 | 49,635 | -4,380 | | -4,380 WashSale | 1 |
| 126 | Rio Tinto ADR | 12/2/2011 NoCallRd | Bought | 63,385 | 62,606 | 779 | 63,385 | | | | |
| 127 | Rio Tinto ADR | 12/2/2011 NoCallRd | Bought | 15,955 | 15,650 | 305 | 15,955 | | | | |
| 128 | SouthernCopper | 12/2/2011 NoCallRd | Sold | 40,066 | 40,066 | 597 | 39,467 | -7,142 | | -7,142 s/t loss | 7 |
| 129 | SouthernCopper | 12/2/2011 NoCallRd | Sold | 6,164 | 6,164 | 92 | 6,072 | | | | |
| 130 | SouthernCopper | 12/2/2011 NoCallRd | Sold | 12,322 | 12,322 | 271 | 12,050 | -2,624 | | -2,624 s/t loss | 5 |
| 131 | Aust. NW ZBG ADR | 12/13/2011 CallRd | Bought | | 72,275 | 981 | 73,256 | | | | |
| 132 | Ford | 12/13/2011 CallRd | Bought | | 62,745 | 1,068 | 63,813 | | | | |
| 133 | Lockheed Martin | 12/16/2011 NoCallRd | Bought | 39,278 | 38,845 | 433 | 19,278 | | | | |
| 134 | Lockheed Martin | 12/16/2011 NoCallRd | Bought | 7,858 | 7,772 | 86 | 7,858 | | | | |
| 135 | Lockheed Martin | 12/16/2011 NoCallRd | Bought | 31,438 | 31,092 | 346 | 31,438 | | | 12,564 | |
| 1 | ENI SPA ADR | 1/8/2012 NoCallRd | Bought | 15,128 | 14,791 | 337 | 15,128 | | | | |
| 2 | Petrleo Bras ADR | 1/10/2012 NoCallRd | Bought | 16,823 | 16,594 | 229 | 16,823 | | | | |
| 3 | Petrleo Bras ADR | 1/10/2012 NoCallRd | Bought | 42,063 | 41,490 | 573 | 42,063 | | | | |
| 4 | Qualcomm | 1/10/2012 NoCallRd | Bought | 5,692 | 5,593 | 99 | 5,692 | | | | |
| 5 | Qualcomm | 1/10/2012 NoCallRd | Bought | 22,773 | 22,376 | 397 | 22,773 | | | | |

ML-Compton-00021588

| # | Security | Date | Action | B1 | B2 | B3 | B4 | S1 | S2 | S3 | S4 | S5 | Gain/Loss | N |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6 | Telus Corp | 1/10/2012 NoCallRd | Bought | 21,574 | 21,192 | 382 | 21,574 | | | | | | | |
| 7 | Telus Corp | 1/10/2012 NoCallRd | Bought | 5,394 | 5,299 | 95 | 5,394 | | | | | | | |
| 8 | United Tech Corp | 1/10/2012 NoCallRd | Bought | 23,245 | 22,854 | 391 | 23,245 | | | | | | | |
| 9 | AT&T | 1/10/2012 NoCallRd | Sold | | | | | 62,559 | 62,559 | 832 | 61,727 | | 5,052 l/t gain | 25 |
| 10 | RoyalDutch | 1/10/2012 NoCallRd | Sold | | | | | 7,697 | 7,697 | 98 | 7599 | | 80 s/t gain | 6 |
| 11 | RoyalDutch | 1/10/2012 NoCallRd | Sold | | | | | 15,390 | 15,390 | 197 | 15,193 | | 176 s/t gain | 6 |
| 12 | RoyalDutch | 1/10/2012 NoCallRd | Sold | | | | | 30,784 | 30,784 | 395 | 30,369 | | 45 s/t gain | 6 |
| 13 | AT&T | 1/10/2012 NoCallRd | Sold | | | | | 14,895 | 14,895 | 306 | 14,589 | -752 | -752 s/t loss | 6 |
| 14 | PUB SVC Enterprise | 1/20/2012 NoCallRd | Bought | 76,568 | 75,625 | 943 | 76,568 | | | | | | | |
| 15 | LockheedMt | 1/20/2012 NoCallRd | Sold | | | | | 83,100 | 83,100 | 902 | 82,198 | | 3,609 s/t gain | 1 |
| 16 | BHP | 2/2/2012 NoCallRd | Sold | | | | | 56,364 | 56,364 | 619 | 55,745 | | 9,277 s/t gain | 4 |
| 17 | BHP | 2/2/2012 NoCallRd | Sold | | | | | 24,159 | 24,159 | 265 | 23,694 | | 3,981 s/t gain | 4 |
| 18 | FrontierCom | 2/2/2012 NoCallRd | Sold | | | | | 1,524 | 1,524 | 76 | 1,448 | -1,591 | -1,591 s/t loss | 26 |
| 19 | FirstEnergy Corp | 2/14/2012 NoCallRd | Bought | 61,093 | 60,317 | 776 | 61,093 | | | | | | | |
| 20 | PPL | 2/14/2012 NoCallRd | Sold | | | | | 55,631 | 55,631 | 781 | 54,850 | -2,523 | -2,523 s/t loss | 6 |
| 21 | Glaxosmithkline | 2/16/2012 CallRd | Bought | | 58,480 | 718 | 59,198 | | | | | | | |
| 22 | Glaxosmithkline | 2/16/2012 CallRd | Bought | | 4,498 | 55 | 4,553 | | | | | | | |
| 23 | Glaxosmithkline | 2/16/2012 CallRd | Bought | | 4,499 | 55 | 4,553 | | | | | | | |
| 24 | TAL | 2/16/2012 CallRd | Sold | | | | | | 37,737 | 459 | 37,278 | | 5,583 s/t gain | 7 |
| 25 | TAL | 2/16/2012 CallRd | Sold | | | | | | 36,632 | 445 | 36,187 | | 5,433 s/t gain | 7 |
| 26 | Aflac | 3/15/2012 NoCallRd | Bought | 94,503 | 93,473 | 1,030 | 94,503 | | | | | | | |
| 27 | US Bancorp | 3/15/2012 NoCallRd | Bought | 94,718 | 93,627 | 1,091 | 94,718 | | | | | | | |
| 28 | Natl Grid | 3/15/2012 NoCallRd | Sold | | | | | 61,185 | 61,185 | 769 | 60,416 | | 1,622 s/t gain | 5 |
| 29 | PGSE | 3/15/2012 NoCallRd | Sold | | | | | 86,189 | 86,189 | 982 | 85,207 | | 1,032 s/t gain | 8 |
| 30 NotUnsol | ABB | 3/21/2012 CallRd | Sold | | | | | | 20,412 | 414 | 19,998 | | 1,460 l/t gain | 25 |
| 31 NotUnsol | Apple | 3/21/2012 CallRd | Sold | | | | | | 30,296 | 462 | 29,834 | | 20,006 l/t gain | 27 |
| 32 NotUnsol | Deere | 3/21/2012 CallRd | Sold | | | | | | 8,210 | 137 | 8,073 | | 313 s/t gain | 5 |
| 33 NotUnsol | Deere | 3/21/2012 CallRd | Sold | | | | | | 16,421 | 275 | 16,146 | | 638 s/t gain | 5 |
| 34 NotUnsol | Glaxosmithkline | 3/21/2012 CallRd | Sold | | | | | | 58,994 | 761 | 58,233 | | 5,839 l/t gain | 16 |
| 35 NotUnsol | Qualcomm | 3/21/2012 CallRd | Sold | | | | | | 19,807 | 325 | 19,482 | | 6,328 l/t gain | 26 |
| 36 NotUnsol | Qualcomm | 3/21/2012 CallRd | Sold | | | | | | 13,204 | 216 | 12,988 | | 3,405 l/t gain | 26 |
| 37 NotUnsol | RioTinto | 3/21/2012 CallRd | Sold | | | | | | 5,451 | 104 | 5,347 | | 58 s/t gain | 3 |
| 38 NotUnsol | RioTinto | 3/21/2012 CallRd | Sold | | | | | | 5,451 | 104 | 5,347 | | 63 s/t gain | 3 |
| 39 NotUnsol | RioTinto | 3/21/2012 CallRd | Sold | | | | | | 5,451 | 104 | 5,347 | | 64 s/t gain | 3 |
| 40 | Vodafone | 4/16/2012 NoCallRd | Bought | 82,277 | 81,267 | 1,010 | 82,277 | | | | | | | |
| 41 | Intel | 4/17/2012 NoCallRd | Bought | 57,669 | 56,880 | 789 | 57,669 | | | | | | | |
| 42 | Corning | 4/17/2012 NoCallRd | Sold | | | | | 27,260 | 27,260 | 446 | 26,810 | | 2,600 s/t gain | 6 |
| 43 | Corning | 4/17/2012 NoCallRd | Sold | | | | | 27,260 | 27,260 | 446 | 26,810 | -10,955 | -10,955 l/t loss | 23 |
| 44 | Total SA ADR | 4/30/2012 NoCallRd | Bought | 48,767 | 48,096 | 671 | 48,767 | | | | | | | |
| 45 | Petrleo Bras ADR | 4/30/2012 NoCallRd | Sold | | | | | 49,309 | 49,309 | 745 | 48,564 | -10,336 | -10,336 l/t loss | 3 |
| 46 | ABB | 5/2/2012 CallRd | Bought | | 35,939 | 651 | 36,590 | | | | | | | |
| 47 | Conoco | 5/2/2012 CallRd | Sold | | | | | | 54,409 | 717 | 53,692 | -2,101 | -2,101 l/t loss | 15 |
| 48 | Deere | 5/2/2012 CallRd | Bought | | 24,815 | 415 | 25,230 | | | | | | | |
| 49 | Repsol | 5/2/2012 CallRd | Bought | | 91,430 | 1,197 | 92,627 | | | | | | | |
| 50 | PGSE | 5/2/2012 CallRd | Sold | | | | | | 17,700 | 347 | 17,353 | | -60 s/t loss | 10 |
| 51 | TAL | 5/15/2012 NoCallRd | Bought | 75,305 | 74,480 | 905 | 75,305 | | | | | | | |
| 52 | Veolia Environmental | 5/15/2012 NoCallRd | Bought | 76,752 | 75,600 | 1,152 | 76,752 | | | | | | | |
| 53 | Phillps66 | 5/15/2012 NoCallRd | Sold | | | | | 15,685 | 15,685 | 329 | 15,356 | -1,443 | -1,443 l/t loss | 15 |
| 54 | PUB SVC Enterprise | 5/15/2012 NoCallRd | Sold | | | | | 79,375 | 79,375 | 967 | 78,408 | | 1,826 s/t gain | 4 |
| 55 | Arcelormittal S.A. | 5/22/2012 NoCallRd | Bought | 76,793 | 75,700 | 1,093 | 76,793 | | | | | | | |
| 56 | Aflac | 5/22/2012 NoCallRd | Sold | | | | | 78,971 | 78,971 | 941 | 78,030 | -15,537 | -15,537 s/t Loss | 2 |
| 57 | CSX | 5/22/2012 NoCallRd | Sold | | | | | 66,464 | 66,464 | 918 | 65,546 | -6,747 | -6,747 s/t loss | 11 |
| 58 | Deere | 5/22/2012 NoCallRd | Sold | | | | | 52,920 | 52,920 | 685 | 52,235 | -1,754 | -1,754 s/t loss | 7 |
| 59 | Deere | 5/22/2012 NoCallRd | Sold | | | | | 22,680 | 22,680 | 369 | 22,291 | -2,952 | -2,952 s/t loss | 1 |
| 60 | ENI SPA ADR | 5/22/2012 NoCallRd | Sold | | | | | 60,480 | 60,480 | 783 | 59,697 | -11,446 | -11,446 s/t loss | 11 |
| 61 | ENI | 5/22/2012 NoCallRd | Sold | | | | | 12,096 | 12,096 | 252 | 11,844 | -2,052 | -2,052 s/t loss | 10 |
| 62 | Ford | 5/22/2012 NoCallRd | Sold | | | | | 61,500 | 61,500 | 1,059 | 60,441 | | 6,072 s/t gain | 6 |
| 63 | NatlAust | 5/22/2012 NoCallRd | Sold | | | | | 70,670 | 70,670 | 940 | 69,730 | -7,667 | -7,667 s/t loss | 10 |

ML-Compton-00021589

| # | Security | Date | Action | | | | | | | | | | Description | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 64 | RioTinto | 5/22/2012 NoCallRd | Sold | | | | | 41,571 | 41,571 | 622 | 40,949 | -6,601 | -6,601 s/t loss | 6 |
| 65 | RioTinto | 5/22/2012 NoCallRd | Sold | | | | | 13,857 | 13,857 | 272 | 13,585 | -2,382 | -2,382 s/t loss | 5 |
| 66 | Total SA ADR | 5/22/2012 NoCallRd | Sold | | | | | 44,830 | 44,830 | 649 | 44,181 | -4,599 | -4,599 s/t loss | 1 |
| 67 | TAL | 5/22/2012 NoCallRd | Sold | | | | | 69,080 | 69,080 | 869 | 68,211 | | 7187 s/t gain | 0 |
| 68 | TAL | 5/22/2012 NoCallRd | Sold | | | | | 10,362 | 10,362 | 232 | 10,130 | | 1,037 s/t gain | 10 |
| 69 | DuPont | 5/22/2012 NoCallRd | Sold | | | | | 14,710 | 14,710 | 282 | 14,428 | -2,166 | -2,166 s/t loss | 10 |
| 70 | DuPont | 5/22/2012 NoCallRd | Sold | | | | | 58,872 | 58,872 | 754 | 58,118 | -7,621 | -7,621 l/t loss | 13 |
| 71 | NatlAust | 5/22/2012 NoCallRd | Sold | | | | | 11,770 | 11,770 | 270 | 11,500 | -2,099 | -2,099 s/t loss | 10 |
| 72 | Repsol | 5/22/2012 NoCallRd | Sold | | | | | 87,175 | 87,175 | 1,169 | 86,006 | -6,634 | -6,634 s/t loss | 1 |
| 73 | Canadian Imperial Bank | 6/7/2012 NoCallRd | Bought | 70,634 | 69,820 | 814 | 70,634 | | | | | | | |
| 74 | TAL | 6/7/2012 NoCallRd | Bought | 68,460 | 67,600 | 860 | 68,460 | | | | | | | |
| 75 | PPL | 6/15/2012 NoCallRd | Bought | 50,542 | 49,812 | 730 | 50,542 | | | | | | | |
| 76 | EmersonEle | 6/15/2012 NoCallRd | Sold | | | | | 51,445 | 51,445 | 699 | 50,746 | -868 | -868 l/t loss | 22 |
| 77 | Qwest $25 | 6/15/2012 NoCallRd | Sold | | | | | 202,555 | 202,555 | 2,198 | 200,357 | | 346 s/t gain | 3 |
| 78 | Astrazeneca | 6/18/2012 NoCallRd | Bought | 63,226 | 62,430 | 796 | 63,226 | | | | | | | |
| 79 | Royal Dutch Shell ADR | 6/18/2012 NoCallRd | Bought | 83,555 | 82,644 | 911 | 83,555 | | | | | | | |
| 80 | Eli Lilly | 6/18/2012 NoCallRd | Sold | | | | | 62,715 | 62,715 | 797 | 61,918 | | 3,183 s/t gain | 11 |
| 81 | Procter and Gamble | 7/5/2012 NoCallRd | Bought | 62,145 | 61,386 | 759 | 62,145 | | | | | | | |
| 82 | Procter and Gamble | 7/5/2012 NoCallRd | Bought | 24,975 | 24,546 | 429 | 24,975 | | | | | | | |
| 83 | Kimberly Clark | 7/5/2012 NoCallRd | Sold | | | | | 67,241 | 67,241 | 785 | 66,456 | | 14,032 s/t gain | 12 |
| 84 | Kimberly Clark | 7/5/2012 NoCallRd | Sold | | | | | 25,219 | 25,219 | 428 | 24,791 | | | |
| 85 | CSX | 7/24/2012 CallRd | Bought | | 45,291 | 624 | 45,915 | | | | | | | |
| 86 | CSX | 7/24/2012 CallRd | Bought | | 21,570 | 297 | 21,867 | | | | | | | |
| 87 | Deere | 7/24/2012 CallRd | Bought | | 7,348 | 97 | 7,445 | | | | | | | |
| 88 | Deere | 7/24/2012 CallRd | Bought | | 14,697 | 193 | 14,890 | | | | | | | |
| 89 | Deere | 7/24/2012 CallRd | Bought | | 22,047 | 289 | 22,336 | | | | | | | |
| 90 | Deere | 7/24/2012 CallRd | Bought | | 7,349 | 97 | 7,446 | | | | | | | |
| 91 | Deere | 7/24/2012 CallRd | Bought | | 22,099 | 382 | 22,481 | | | | | | | |
| 92 | DuPont | 7/24/2012 CallRd | Bought | | 14,291 | 277 | 14,568 | | | | | | | |
| 93 | DuPont | 7/24/2012 CallRd | Bought | | 4,763 | 61 | 4,824 | | | | | | | |
| 94 | DuPont | 7/24/2012 CallRd | Bought | | 38,112 | 495 | 38,607 | | | | | | | |
| 95 | DuPont | 7/24/2012 CallRd | Bought | | 14,320 | 277 | 14,597 | | | | | | | |
| 96 | ENI SPA ADR | 7/24/2012 CallRd | Bought | | 3,678 | 240 | 3,918 | | | | | | | |
| 97 | ENI SPA ADR | 7/24/2012 CallRd | Bought | | 14,714 | 745 | 15,459 | | | | | | | |
| 98 | ENI SPA ADR | 7/24/2012 CallRd | Bought | | 3,678 | 240 | 3,918 | | | | | | | |
| 99 | ENI SPA ADR | 7/24/2012 CallRd | Bought | | 33,111 | 448 | 33,559 | | | | | | | |
| 100 | ENI SPA ADR | 7/24/2012 CallRd | Bought | | 11,042 | 240 | 11,282 | | | | | | | |
| 101 | Ford | 7/24/2012 CallRd | Bought | | 53,985 | 1,010 | 54,995 | | | | | | | |
| 102 | RioTinto | 7/24/2012 CallRd | Bought | | 17,283 | 268 | 17,551 | | | | | | | |
| 103 | RioTinto | 7/24/2012 CallRd | Bought | | 8,642 | 134 | 8,776 | | | | | | | |
| 104 | RioTinto | 7/24/2012 CallRd | Bought | | 8,640 | 134 | 8,774 | | | | | | | |
| 105 | RioTinto | 7/24/2012 CallRd | Bought | | 4,320 | 67 | 4,387 | | | | | | | |
| 106 | Rio Tinto ADR | 7/24/2012 CallRd | Bought | | 12,990 | 262 | 13,252 | | | | | | | |
| 107 | RoyalDutch | 7/24/2012 CallRd | Bought | | 20,910 | 244 | 21,154 | | | | | | | |
| 108 | RoyalDutch | 7/24/2012 CallRd | Bought | | 6,971 | 81 | 7,052 | | | | | | | |
| 109 | RoyalDutch | 7/24/2012 CallRd | Bought | | 41,832 | 488 | 42,320 | | | | | | | |
| 110 | TAL | 7/24/2012 CallRd | Bought | | 64,519 | 839 | 65,358 | | | | | | | |
| 111 | TAL | 7/24/2012 CallRd | Bought | | 9,666 | 223 | 9,889 | | | | | | | |
| 112 | FirstEnergy Corp | 7/31/2012 CallRd | Sold | | | | | | 70,776 | 845 | 69,931 | | 8,824 s/t gain | 5 |
| 113 | Rio Tinto ADR | 8/2/2012 NoCallRd | Bought | 46,240 | 45,586 | 654 | 46,240 | | | | | | | |
| 114 | Arcelormittal S.A. | 8/2/2012 NoCallRd | Sold | | | | | 76,600 | 76,600 | 1,099 | 75,501 | -1305 | -1305 s/t loss | 2.5 |
| 115 | Credit Suisse | 8/21/2012 NoCallRd | Bought | 75,019 | 73,997 | 1,022 | 75,019 | | | | | | | |
| 116 | EatonCorp | 8/21/2012 NoCallRd | Bought | 94,019 | 92,992 | 1,027 | 94,019 | | | | | | | |
| 117 | Telefonica | 8/21/2012 NoCallRd | Bought | 87,258 | 86,180 | 1,078 | 87,258 | | | | | | | |
| 118 | AustNWZBG | 8/21/2012 NoCallRd | Sold | | | | | 91,420 | 91,420 | 1,107 | 90,313 | | 17,043 s/t gain | 8 |
| 119 | Vodafone | 8/21/2012 NoCallRd | Sold | | | | | 88,162 | 88,162 | 1,055 | 87,107 | | 4,815 s/t gain | 4 |
| 120 | Eli Lilly | 9/13/2012 NoCallRd | Bought | 71,378 | 70,529 | 849 | 71,378 | | | | | | | |
| 121 | Astrazeneca | 9/13/2012 NoCallRd | Sold | | | | | 70,985 | 70,985 | 852 | 70,133 | | 6,895 s/t gain | 3 |

ML-Compton-00021590

EXACT TARGET SHARES BEGIN TO SELL--Stocks purchased with ET cash

| | Company | Date | Action | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | 211,318 | 2,196 | 213,514 | | 160,073 | 1,544 | 158,529 | | 4,425 s/t gain | | 2 |
| 122 | Marathon Oil Corp. | 9/20/2012 CallRd | Bought | | | | | | | | | | | | |
| | | 9/20/2012 CallRd | Sold | 78,996 | 77,888 | 1,108 | 78,996 | | | | | | | | |
| 123 | RoyalDutch | 9/24/2012 CallRd | Bought | 130,139 | 128,815 | 1,324 | 130,139 | | | | | | | | |
| 124 | ArcelorMittal S.A. | 9/24/2012 NoCallRd | Bought | 92,396 | 91,439 | 957 | 92,396 | | | | | | | | |
| | BP PLC SPON ADR | 9/24/2012 NoCallRd | Bought | 104,370 | 103,305 | 1065 | 104,370 | | | | | | | | |
| 125 | Caterpillar | 9/24/2012 NoCallRd | Bought | 129,123 | 127,895 | 1,228 | 129,123 | | | | | | | | |
| 126 | Johnson and Johnson | 9/24/2012 NoCallRd | Bought | 112,958 | 111,807 | 1,151 | 112,958 | 69,554 | 69,554 | 843 | 68,711 | | 12,768 s/t gain | | 2 |
| 127 | Kimberly Clark | 9/24/2012 NoCallRd | Bought | | | | | | | | | | | | |
| 128 | National Grid | 9/24/2012 NoCallRd | Sold | | 103,342 | 1,156 | 104,498 | | | | | | | | |
| 129 | ENI | 9/25/2012 CallRd | Bought | | 96,835 | 1,233 | 98,068 | | | | | | | | |
| 130 | Altria | 9/25/2012 CallRd | Bought | | 78,243 | 1,110 | 79,353 | | | | | | | | |
| 131 | ABB | 9/25/2012 CallRd | Bought | | 49,074 | 659 | 49,733 | | | | | | | | |
| 132 | ArcelorMittal S.A. | 9/25/2012 CallRd | Bought | | 64,556 | 900 | 65,456 | | | | | | | | |
| 133 | Boeing | 9/25/2012 CallRd | Bought | | 84,659 | 972 | 85,631 | | | | | | | | |
| 134 | CSX | 9/25/2012 CallRd | Bought | | 90,119 | 1,128 | 91,247 | | | | | | | | |
| 135 | Centurylink | 9/25/2012 CallRd | Bought | | 79,819 | 880 | 80,699 | | | | | | | | |
| 136 | Credit Suisse | 9/25/2012 CallRd | Bought | | 58,235 | 720 | 58,955 | | | | | | | | |
| 137 | Canadian Imperial Bank | 9/25/2012 CallRd. | Bought | | 61,498 | 771 | 62,269 | | | | | | | | |
| 138 | Deere | 9/25/2012 CallRd | Bought | | 103,286 | 1,575 | 104,861 | | | | | | | | |
| 139 | DuPont | 9/25/2012 CallRd | Bought | | 71,218 | 854 | 72,072 | | | | | | | | |
| 140 | Ford | 9/25/2012 CallRd | Bought | | 80,377 | 944 | 81,321 | | | | | | | | |
| 141 | GlaxoSmithKline | 9/25/2012 CallRd | Bought | | 91,479 | 1137 | 92,616 | | | | | | | | |
| 142 | General Mills | 9/25/2012 CallRd | Bought | | 71,593 | 856 | 72,449 | | | | | | | | |
| 143 | Intel | 9/25/2012 CallRd | Bought | | 58,315 | 798 | 59,113 | | | | | | | | |
| 144 | Eli Lilly | 9/25/2012 CallRd | Bought | | 91,640 | 958 | 92,598 | | | | | | | | |
| 145 | PPL | 9/25/2012 CallRd | Bought | | 104,936 | 1076 | 106,012 | | | | | | | | |
| 146 | Phillip Morris | 9/25/2012 CallRd | Bought | | 95,948 | 1,017 | 96,965 | | | | | | | | |
| 147 | Procter and Gamble | 9/25/2012 CallRd | Bought | | 71,961 | 858 | 72,819 | | | | | | | | |
| 148 | Qualcomm | 9/25/2012 CallRd | Bought | | 94,466 | 1,007 | 95,473 | | | | | | | | |
| 149 | Rio Tinto ADR | 9/25/2012 CallRd | Bought | | 65,398 | 905 | 66,303 | | | | | | | | |
| 150 | Telus Corp | 9/25/2012 CallRd | Bought | | 69,159 | 870 | 70,029 | | | | | | | | |
| 151 | Telefonica | 9/25/2012 CallRd | Bought | | 79,727 | 800 | 80,607 | 78,641 | 802 | 77,839 | -7298 | -7798 s/t loss | | 1 |
| 152 | US Bancorp | 9/25/2012 CallRd | Bought | | 70,291 | 1,117 | 71,408 | 86,354 | 923 | 85,431 | -6,979 | -6,979 s/t loss | | 1 |
| 153 | United Tech Corp | 9/25/2012 CallRd | Bought | | | | | 88,000 | 989 | 87011 | -3,479 | -3,479 s/t loss | | 1 |
| 154 | Veolia Environmental | 9/25/2012 CallRd | Sold | | | | | 145,811 | 1,652 | 144,159 | -9,423 | -9,423 s/t loss | | 2 |
| 155 | Centurylink | 10/17/2012 CallRd | Sold | | | | | 134,885 | 1,904 | 132,981 | -15,200 | -15,200 s/t loss | | 5 |
| 156 | Caterpillar | 10/17/2012 CallRd | Sold | | | | | 149,500 | 2,060 | 147,440 | -10,930 | -10,930 s/t loss | | 1.5 |
| 157 | Intel | 10/17/2012 CallRd | Sold | | | | | 63,519 | 842 | 62,677 | -5,115 | -5,115 s/t loss | | 4 |
| 158 | Telefonica | 10/17/2012 CallRd | Sold | | | | | 60,650 | 815 | 59,835 | -4,811 | -4,811 s/t loss | | 3 |
| 159 | Veolia Environmental | 11/1/2012 CallRd | Sold | | | | | 106,800 | 1,317 | 105,483 | -14,717 | -14,717 s/t loss | | 4 |
| 160 | ArcelorMittal S.A. | 11/1/2012 CallRd | Sold | | | | | | | | | | | | |
| 161 | CSX | 11/1/2012 CallRd | Sold | | | | | | | | | 9,785 s/t gain | | |
| 162 | CSX | 11/1/2012 CallRd | Bought | | 121,157 | 1,611 | 121,157 | 103,811 | 103,811 NetDisd | | 103,811 | | | | 3 |
| 163 | DuPont | 12/3/2012 NoCallRd | Bought | | 102,610 | 101,567 | 1,273 | 102,840 | | | | -7,422 | -7,422 s/t loss | | 22 |
| 164 | CSX | 12/3/2012 CallRd | Sold | | | | | 124,226 | 1,495 | 122,731 | -3,404 | -3,404 l/t loss | | 17 |
| 165 | DuPont | 12/3/2012 NoCallRd | Sold | | 157,494 | 155,393 | 2,110 | 157,494 | 183,175 | 1,640 | 181,535 | -753 | -753 s/t loss | | 7 |
| 166 | EatonCorp | 12/4/2012 NoCallRd | Bought | | | | | 13,129 | 313 | 12,816 | -6,308 | -6,308 WASH | | 9 |
| 167 | ArcelorMittal S.A. | 12/13/2012 | CallRd | Sold | | | | | 67,878 | 966 | 65,912 | -8,748 | -8,748 s/t loss | |
| 168 | BP | 12/13/2012 | CallRd | Sold | | | | | 157,902 | 1,882 | 156,020 | | | | |
| 169 | Glaxosmith | 12/13/2012 | CallRd | Sold | | | | | | | | | | | |
| 170 | Glaxosmith | 12/13/2012 | CallRd | Sold | | | | | | | | | | | |
| 171 | TAL | 12/13/2012 | CallRd | Sold | | | | | | | | | | | |
| 172 | US Bancorp | 12/13/2012 | | Sold | | | | | | | | | | | |
| 173 | | | | Bought | | 103,478 | 1,319 | 104,797 | 14,791 | 337 | 14,442 | | 3,159 s/t gain | | 6 |
| 1 | ATT | 1/8/2013 CallRd | Sold | | | | | | | | | | | |
| 2 | ENI | 1/8/2013 CallRd | | | | | | | | | | | | |

| # | Security | Date | Action | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | 206,975 | 2,549 | 209,524 | | | 208,515 | 2,562 | 205,953 | | | 8,084 s/t gain | 8 |
| | | | | | | | | | | 84,984 | 1,127 | 83,856 | | | 11,395 s/t gain | 6 |
| | | | | | | | | | | 51,786 | 765 | 51,020 | | | 9,225 l/t gain | 36 |
| 3 | Allison Transmission | 1/8/2013 CalRd | Bought | | | | | | | | | | | | | 6 |
| 4 | ABB | 1/8/2013 CalRd | Sold | | | | | 233,573 | 233,573 | 2,675 | 230,897 | | | 64,608 s/t gain | |
| 5 | TAL | 1/8/2013 CalRd | Sold | 178,497 | 176,223 | 2,262 | 178,497 | | | | | | | 3,289 s/t gain | 5 |
| 6 | Boeing | 1/22/2013 CalRd | Bought | | | | | | | | | | | -6292 s/t loss | 4 |
| 7 | Bardays PLC ADR | 2/5/2013 NoCalRd | Sold | | 181,617 | 2,033 | 183,651 | | | 199,683 | 2,137 | 197,545 | -6292 | -5000 s/t loss | 2 |
| 8 | Credit Suisse | 2/5/2013 NoCalRd | Bought | | 182,397 | 2,190 | 184,786 | | | 128,916 | 1,885 | 127,029 | -5000 | | |
| 9 | TAL | 2/14/2013 CalRd | Bought | | | | | 128,916 | 128,916 | 167,489 | 2,188 | 165,299 | | | |
| 10 | Vodafone | 2/14/2013 CalRd | Sold | | | | | 167,489 | 167,489 | | | | | 17,150 s/t gain | 7 |
| 11 | Telus | 4/1/2013 NoCalRd | Sold | | 223,423 | 2,409 | 225,832 | | | 219,033 | 2,371 | 216,660 | | | |
| 12 | Arcelormittal S.A. | 4/1/2013 NoCalRd | Bought | | 220,851 | 2,387 | 223,238 | | | | | | | | |
| 13 | Bardays PLC ADR | 4/18/2013 CalRd | Bought | | | 1,831 | 124,316 | | | | | | | 4,852 l/t gain | 22 |
| 14 | Glaxosmithkline | 4/18/2013 CalRd | Sold | 124,316 | 122,485 | 2,212 | 172,543 | | | | | | | 7,800 l/t gain | 35 |
| 15 | Kraft | 5/1/2013 NoCalRd | Bought | 172,543 | 170,330 | 1,675 | 135,275 | | | 18,457 | 224 | 18,227 | | 16,183 l/t gain | 40 |
| 16 | General Hills | 5/1/2013 NoCalRd | Sold | | 133,600 | 2,025 | 176,769 | | | 18,452 | 224 | 18,222 | | 23,307 l/t gain | 41 |
| 17 | Arcelormittal S.A. | 5/24/2013 CalRd | Bought | | 174,744 | | | | | 36,924 | 449 | 36,474 | | | |
| 18 | Bardays PLC ADR | 5/24/2013 CalRd | Bought | | | | | | | 51,690 | 628 | 51,060 | | | |
| 19 | Aust. NW ZBG ADR | 5/24/2013 CalRd | Sold | | | | | | | | | | | | |
| 20 | Garmin | 5/24/2013 CalRd | Sold | | | | | | | | | | -8,985 | -8,985 s/t loss | 2 |
| 21 | Altria | 5/24/2013 CalRd | Sold | | | 717 | 45,075 | 113,500 | 113,500 | 1,754 | 111,730 | -23,266 | -23,266 s/t loss | 4 |
| 22 | Altria | 5/24/2013 CalRd | Bought | | 44,359 | | | 164,635 | 164,635 | 2,164 | 162,455 | -18,633 | -18,633 l/t loss | 11 |
| 23 | Altria | 6/26/2013 CalRd | Bought | | | | | 154,593 | 154,593 | 1,792 | 153,201 | | | |
| 24 | Interactive Intell | 6/26/2013 CalRd | Sold | | | | | | | | | | | | |
| 25 | Three D Systems | 7/1/2013 NoCalRd | Sold | | | | | | | | | | | 34,038 l/t gain | 8 |
| 26 | Arcelormittal S.A. | 7/1/2013 NoCalRd | Sold | | 169,311 | 1,914 | 174,226 | 246,463 | 246,463 | 2,884 | 243,579 | | | |
| 27 | Bardays PLC ADR | 7/1/2013 NoCalRd | Bought | | 231,899 | 2,761 | 234,660 | | | | | | | 49,834 s/t gain | 7 |
| 28 | RioTinto | 8/6/2013 CalRd | Sold | 234,660 | 240,538 | 2,584 | 243,123 | 237,092 | 237,092 | 2,655 | 234,437 | | | |
| 29 | Rio Tinto ADR | 9/16/2013 NoCalRd | Bought | 243,123 | | | | | | | | | | 32,739 l/t gain | 13 |
| 30 | ABB | 9/16/2013 NoCalRd | Sold | | 238,692 | 2,668 | 241,361 | 249,026 | 249,026 | 2,756 | 246,268 | | | |
| 31 | Allison Trans | 9/16/2013 NoCalRd | Bought | | | | | | | | | | | 8,335 s/t gain | 5 |
| 32 | Verizon | 9/16/2013 NoCalRd | Sold | | | | | | | | | | | 9,966 s/t gain | 8 |
| 33 | Vodafone | 9/23/2013 CalRd | Bought | | 138,353 | 1,866 | 140,219 | 145,400 | | 1,775 | 143,616 | | | |
| 34 | Valero Energy | 9/23/2013 CalRd | Sold | | 130,599 | 1,600 | 132,199 | 187,797 | | 2,086 | 185,698 | | | |
| 35 | Marathon | 10/10/2013 CalRd | Bought | | | | | | | | | | | | |
| 36 | Costamare | 10/10/2013 CalRd | Sold | | | | | | | | | | | 34,595 s/t gain | 10 |
| 37 | Nat'l Australia | 10/10/2013 CalRd | Sold | | 64,824 | 916 | 65,740 | | | 137,441 | 1,559 | 137,441 | | 2,578 l/t gain | 15 |
| 38 | Aust. NW ZBG ADR | 10/10/2013 CalRd | Bought | | 164,818 | 1,815 | 166,634 | | | 17,180 | 194 | 17,180 | | 6,644 l/t gain | 9 |
| 39 | TAL | 10/10/2013 CalRd | Bought | | 68,370 | 1,021 | 69,391 | | | 166,951 | 1,834 | 165,100 | | | |
| 40 | Avago Technologies | 10/10/2013 CalRd | Bought | | | | | | | | | | | | |
| 41 | BHP Biliton ADR | 10/10/2013 CalRd | Sold | | | | | | | | | | | | |
| 42 | Cisco | 10/10/2013 CalRd | Sold | | | 1813 | 145,750 | | | | | | | | |
| 43 | DuPont | 10/10/2013 CalRd | Bought | | 143,936 | 1,950 | 167,848 | | | | | | | | |
| 44 | DuPont | 10/10/2013 CalRd | Bought | | 165,898 | 1,675 | 130,886 | | | | | | | | |
| 45 | Qualcomm | 10/21/2013 CalRd | Bought | | 145,297 | 2,057 | 175,948 | | | | | | | 20,003 l/t gain | 17 |
| 46 | Intel | 10/21/2013 CalRd | Sold | 175,948 | 173,880 | 1,275 | 87,769 | | | 173,220 | 1,862 | 171,348 | | 8558 l/t gain | 10 |
| 47 | Oracle | 10/28/2013 CalRd | Bought | 87,769 | 86,494 | 1,288 | 111,740 | | | 143,735 | 1,506 | 142,125 | -14,316 | -14,316 s/t loss | 2 |
| 48 | TAL | 11/25/2013 NoCalRd | Bought | 111,740 | 110,451 | | | | | 119,400 | 1,504 | 117,882 | -8,300 | -8,300 s/t loss | 2 |
| 49 | Credit Suisse | 11/25/2013 NoCalRd | Bought | | | | | | | 62,070 | 967 | 61,091 | | | |
| 50 | Corning | 11/25/2013 NoCalRd | Sold | | | | | | | | | | | | |
| 51 | General Dyn | 11/25/2013 NoCalRd | Sold | | | | | | | | | | | | |
| 52 | CanadaBank | 11/25/2013 NoCalRd | Sold | | | | | | | | | | | | |
| 53 | Deere | 12/18/2013 CalRd | Sold | | | | | | | | | | | | |
| 54 | Nat'l Australia | 12/18/2013 CalRd | Sold | | | | | | | | | | | | |
| 55 | Cisco | 12/18/2013 CalRd | Sold | | | | | | | | | | | | |
| 56 | | | | | | | | | | | | | | | | |

ML-Compton-00021592

|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  | 147,533 | 1,859 | 149,402 |  | 191,734 | 2,104 | 189,629 |  | 18,369 s/tgain | | 5 |
|  |  |  |  |  |  |  |  |  | 226,971 | 2,469 | 224,501 |  | 47,717 s/tgain | | 8 |
| 1 | Seaspan | 1/13/2014 CallRd | Bought |  |  |  |  |  |  |  |  |  |  |  |  |
| 2 | RioTinto | 1/13/2014 CallRd | Sold |  |  |  |  |  |  |  |  |  | ????? Not in 1099 | | 7 |
| 3 | Garmin | 1/13/2014 CallRd | Sold | 69,421 | 68,400 | 1,021 | 69,421 |  |  |  |  |  |  |  |  |
| 4 | Cisco | 1/21/2014 NoCallRd | Bought | 121,348 | 119,840 | 1,508 | 121,348 |  | 79,910 | 1,019 | 78,891 |  | 30,393 l/t gain | | 17 |
| 5 | Nat'lAustralia | 1/21/2014 NoCallRd | Bought |  | 100,740 | 1,246 | 101,986 |  |  |  |  |  |  |  |  |
| 6 | Alkermes | 1/22/2014 CallRd | Bought |  |  |  |  |  | 161,265 | 1,735 | 159,530 |  | 31,528 l/t gain | | 16 |
| 7 | ThreeDSystm | 1/24/2014 CallRd | Sold |  | 195,590 | 2,152 | 197,742 |  |  |  |  |  | 30,393 l/t gain | | 16 |
| 8 | Sanofi | 2/3/2014 CallRd | Bought |  |  |  |  |  | 137,445 | 137,445 | 1,533 | 135,912 |  |  |  |  |
| 9 | KimberlyClk | 2/3/2014 CallRd | Sold | 155,315 | 153,570 | 1,745 | 155,315 |  | 138,340 | 138,340 | 1,565 | 136,775 |  |  |  |  |
| 10 | Abbvie | 2/20/2014 NoCallRd | Bought |  |  |  |  |  |  |  |  |  | 514 s/t gain | | 4 |
| 11 | J&J | 2/20/2014 NoCallRd | Sold |  | 53,405 | 399 | 53,804 |  | 123,616 | 1,740 | 121,876 |  | -10,961 s/t loss | | 4 |
| 12 | Nat'lGrid | 2/20/2014 NoCallRd | Sold |  | 153,454 | 1,844 | 155,298 |  | 92,212 | 1,173 | 91,030 | -10,961 | 62,938 l/t gain | | 54 |
| 13 | Interalvelent | 5/8/2014 CallRd | Bought |  |  |  |  |  | 94,498 | 1,075 | 93,423 |  |  |  |  |
| 14 | Noble | 5/23/2014 CallRd | Bought |  |  |  |  |  |  |  |  |  |  |  |  |
| 15 | Nat'lAustralia | 5/23/2014 OFFICE VISIT | Sold |  |  |  |  |  |  |  |  |  |  |  |  |
| 16 | Alkermes | 5/29/2014 OFFICE VISIT | Sold |  | 163,020 | 1,825 | 164,845 |  | 171,425 | 2,047 | 169,388 | -6574 | -6574 s/t loss | | 8 |
| 17 | Apple | 6/19/2014 CallRd | Bought |  | 180,663 | 2,000 | 182,663 |  |  |  |  |  |  |  |  |
| 18 | ENI | 7/22/2014 CallRd | Bought |  |  |  |  |  |  |  |  |  |  |  |  |
| 19 | HSBC-ADR | 7/22/2014 CallRd | Sold |  | 174,315 | 1,896 | 176,211 |  | 227,700 | 2,725 | 224,975 | -9701 | -9701 l/t loss | | 11 |
| 20 | CreditSuisse | 7/25/2014 | REDEEM |  |  |  |  |  | 145,455 | 1,851 | 143,604 |  | 682 s/t gain | | 7 |
|  | Bskt Clrn BAC | 8/4/2014 CallRd | Bought |  |  |  |  |  | 129,864 | 1,543 | -12,244 | -12,244 | -12,244 s/t loss | | 10 |
| 21 | CardinalHlth | 8/4/2014 CallRd | Sold |  |  |  |  |  | 138,500 | 1,717 | 136,783 |  | 596 s/t gain | | 3 |
| 22 | ABB | 8/4/2014 CallRd | Sold |  |  |  |  |  | 15,763 | 428 | 15,335 | -3789 | -3789 s/t loss | | 3 |
| 23 | Seaspan | 8/4/2014 CallRd | Sold |  |  |  |  |  | 89,642 | 89,642 | 1,086 | 88,556 |  | 38,608 l/t gain | | 23 |
| 24 | TAL | 8/20/2014 CallRd | Sold |  |  |  |  |  | 275,520 | 275,520 | 3,431 | 272,089 |  | 112,209 l/t gain | | 24 |
| 25 | Noble | 8/20/2014 CallRd | Sold |  |  |  |  |  |  |  |  |  |  |  |  |
| 26 | ParagonShare | 8/25/2014 NoCallRd | Sold | 124,213 | 122,730 | 1,483 | 124,213 |  | 103,560 | 103,560 | 1,320 | 102,240 | -2,572 | -2,572 l/t loss | | 19 |
| 27 | Boeing | 8/25/2014 NoCallRd | Sold |  |  |  |  |  | 327,570 | 327,570 | 3,424 | 324,146 |  | 82,766 l/t gain | | 12 |
| 28 | FordMotors | 8/25/2014 NoCallRd | Bought |  |  |  |  |  |  |  |  |  |  |  |  |
| 29 | CenturyLink | 8/25/2014 NoCallRd | Sold |  | 176,221 | 1,912 | 178,133 |  | 183,811 | 1,962 | 181,849 | -9,949 | -9,949 l/t loss | | 24 |
| 30 | AT&T | 9/26/2014 CallRd | Sold |  |  |  |  |  | 146,645 | 1,936 | 144,709 |  | 6538 l/tgain | | 13 |
| 31 | Valero | 10/2/2014 CallRd | Bought |  |  |  |  |  | 102,668 | 1,424 | 102,544 | 14,893 | 14,893 s/tgain | | 4 |
| 32 | Nat'l Grid | 10/2/2014 CallRd | Sold |  |  |  |  |  | 173,507 | 1,939 | 171,558 | -11,111 | -11,111 s/tloss | | 5 |
| 33 | Philip Morris | 10/16/2014 CallRd | Sold |  |  |  |  |  | 117,829 | 1,416 | 116,404 | -50,235 | -50,235 l/tloss | | 14 |
| 34 | Costamare | 11/21/2014 CallRd | Sold |  |  |  |  |  | 108,382 | 1,361 | 107,020 | -58,001 | -58,001 s/tloss | | 6 |
| 35 | Corning | 11/21/2014 CallRd | Sold |  |  |  |  |  | 189,244 | 2,118 | 187,126 | -38,722 | -38,722 s/tloss | | 8 |
| 36 | HSBC | 12/23/2014 CallRd | Sold |  |  |  |  |  | 184,400 | 2,057 | 182,343 | -15,805 | -15,805 s/tloss | | 10 |
| 37 | BHP | 12/23/2014 CallRd | Sold |  |  |  |  |  | 132,224 | 1,663 | 130,561 | -29,514 | -29,514 s/tloss | | 11 |
| 38 | ENI | 12/23/2014 CallRd | Sold |  |  |  |  |  |  |  |  |  |  |  |  |
| 39 | Glaxo | 12/23/2014 CallRd | Sold |  |  |  |  |  | 14,806,074 | 183,768 |  | -731,099 | 462,527 |  |  |  |
| 40 | Sanofi | 12/23/2014 CallRd | Sold |  |  |  |  |  |  |  |  |  |  |  |  |
| 41 | Atlas |  |  |  | 16,190,409 | 210,454 | 16,400,863 |  |  |  |  |  |  |  |  |

| BONDS |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  | 262,297 | 5353 | 267,650 |  | 274,797 | 274,797 |  |  | 18,965 s/t gain | | 5 |
| 1 | FloridaSt | 8/31/2009 CallRd | Bought |  |  |  |  |  |  |  |  |  | 6234 l/t gain | | 99 |
| 2 NewIssue | WashCty/OR | 9/1/2009 NoCallRd | Sold | 127,500 | 124,950 | 2550 | 127,500 |  | 132,413 | 132,413 |  |  | 11909 l/t gain | | 98 |
| 3 NewIssue | CNJ/ILL | 9/8/2009 NoCallRd | Bought |  |  |  |  |  |  |  |  |  |  |  |  |
| 4 | Clackamas | 9/8/2009 NoCallRd | Sold |  | 245,306 | 5006 | 250,312 |  |  | 260,072 |  |  | 3678 l/t gain | | 77 |
| 5 | FloridaStEd | 10/16/2009 CallRd | Bought |  |  |  |  |  |  |  |  |  | 10,608 s/t gain | | 6 |
| 6 | Hawaii | 10/16/2009 CallRd | Sold | 202,500 | 198,500 | 4000 | 202,500 |  |  | 126,755 |  |  | 13,744 s/t gain | | 9 |
| 7 NewIssue | IN/St.Fran | 11/24/2009 TradeB4Cal | Bought |  |  |  |  |  | 462,127 | 462,127 |  |  |  |  |  |
| 8 | NYNY | 11/24/2009 CallRd | Sold |  |  |  |  |  | 250,312 | 250,312 |  |  |  |  |  |
| 9 NewIssue | Dallas Txmo | 12/11/2009 NoCallRd | Sold |  |  |  |  |  |  |  |  |  |  |  |  |
| 10 | IN Fin Hwy | 12/11/2009 NoCallRd | Sold | 198,320 | 194,353 | 3,966 | 198,320 |  |  |  |  |  |  |  |  |
| 11 NewIssue | BemisTalks | 12/21/2009 NoCallRd | Bought |  |  |  |  |  |  |  |  |  |  |  |  |

ML-Compton-00021593

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12 NewIssue | BhmWbwks | 12/21/2009 NoCalRd | Bought | 300,750 | 294,735 | 6,015 | 300,750 | | | | -2,684 | -2,684 s/t loss | 3 |
| 13 SellNew | CHI/IL Brd | 12/21/2009 NoCalRd | Sold | | | | | 124,726 | 124,726 | | -5,502 | -5,502 s/t loss | 1 |
| 14 SellNew | IN St Fran | 12/21/2009 NoCalRd | Sold | | | | | 196,986 | 196,986 | | -8,186 | | |
| | | | | 829,070 | 1,320,141 | 26,942 | 1,347,032 | 1,441,361 | 1,828,185 | 9,140 | | | |
| | | | | | | | | | | | | | |
| 1 | JEA FLA Elec Sys | 1/26/2010 CalRd | Bought | | 149,526 | 3,051 | 152,577 | | | | | | |
| 2 | JEA FLA Elec Sys | 1/26/2010 CalRd | Bought | | 100,068 | 2,042 | 102,110 | | 132,005 | | | 6,999 l/t gain | 104 |
| 3 | NewYorkH2O | 1/26/2010 CalRd | Sold | | | | | | | | | | |
| 4 | IN FIN Auth HwyRev | 2/19/2010 NoCalRd | Bought | 105,919 | 103,801 | 2,118 | 105,919 | | | | | | |
| 5 | WashingtonSt. H/C | 2/23/2010 CalRd | Bought | | 194,775 | 3,975 | 198,750 | | 128,750 | | | 4,033 l/t gain | 104 |
| 6 | NY | 2/23/2010 CalRd | Sold | | | | | | 127,493 | | | 2,488 l/t gain | 104 |
| 7 | NY | 2/23/2010 CalRd | Sold | | | | | | | | | | |
| 8 | CHI IL O HARE | 4/16/2010 NoCalRd | Bought | 251,562 | 246,531 | 5,031 | 251,562 | | | | | | |
| 9 | IN Health-St. Francis | 4/16/2010 NoCalRd | Bought | 157,434 | 149,305 | 3,048 | 152,434 | 149,433 | 149,433 | | -3,150 | -3,150 s/t loss | 3 |
| 10 | JEA | 4/16/2010 NoCalRd | Sold | | | | | | | | | | |
| 11 | IN FIN AuthHwyRev | 4/22/2010 CalRd | Bought | | 198,603 | 4,053 | 202,656 | | | | | | |
| 12 | FL St.TPK Rev. | 5/20/2010 CalRd | Bought | | 174,226 | 3,555 | 177,782 | | | | | | |
| 13 | IN FIN Auth Hwy Rev | 5/20/2010 CalRd | Bought | | 99,837 | 2,038 | 101,875 | | | | | | |
| 14 | HI St. Univ | 5/20/2010 CalRd | Bought | | 149,305 | 3,047 | 152,353 | | 189,160 | | -9,165 | -9,165 s/t loss | 6 |
| 15 | Birmingham | 5/20/2010 CalRd | Sold | | | | | | 285,140 | | -14,582 | -14,582 s/t loss | 6 |
| 16 | Birmingham | 5/20/2010 CalRd | Sold | | | | | 262,072 | 262,072 | | | 13,027 l/t gain | 106 |
| 17 | Maine | 6/9/2010 NoCalRd | Sold | | | | | 261,250 | 261,250 | | | 11,402 l/t gain | 80 |
| 18 | NY | 6/9/2010 NoCalRd | Sold | | | | | | | | | | |
| 19 | Omaha Pub Power | 7/21/2010 TrdeB4CH | Bought | 202,750 | 198,695 | 4,055 | 202,750 | 189,610 | 189,610 | | -9,150 | -9,150 s/t loss | 5 |
| 20 | Washington | 7/21/2010 TrdeB4CH | Sold | | | | | | | | | | |
| 21 | PA St. Tpk | 7/29/2010 CalRd | Bought | | 124,643 | 2,544 | 127,187 | | 5,212 | | | 241 l/t gain | 109 |
| 22 | HI | 7/29/2010 CalRd | Sold | | | | | | 121,900 | | | 2,704 l/t gain | 109 |
| 23 | HI | 7/29/2010 CalRd | Sold | | | | | | | | | | |
| 24 | PA St. Tpk | 8/24/2010 NoCalRd | Bought | 112,588 | 110,336 | 2,252 | 112,588 | | | | | | |
| 25 | King Cty WA | 9/20/2010 NoCalRd | Bought | 126,718 | 124,184 | 2,534 | 126,718 | 131,877 | 131,877 | | | 8,083 l/t gain | 91 |
| 26 | NY | 9/20/2010 NoCalRd | Sold | | | | | | | | | | |
| 27 | PA HSG FIN | 10/26/2010 CalRd | Bought | | 201,802 | 4,118 | 205,920 | | | | | | |
| 28 | IN St. Fin Auth -Trinity | 10/26/2010 CalRd | Bought | | 199,208 | 4,065 | 203,273 | | 159,007 | | | 8,035 l/t gain | 15 |
| 29 | FL | 10/26/2010 CalRd | Sold | | | | | | | | | | |
| 30 | Atlanta Rapid Trans | 11/15/2010 NoCalRd | Bought | 99,874 | 97,877 | 1,997 | 99,874 | | | | | | |
| 31 | NY Rev Transn | 11/15/2010 NoCalRd | Bought | 201,500 | 197,470 | 4,030 | 201,500 | | | | | | |
| 32 | S Carolina Trans | 11/15/2010 NoCalRd | Bought | 201,500 | 197,470 | 4,030 | 201,500 | | | | | | |
| 33 | San Antonio TX WTR | 11/15/2010 NoCalRd | Bought | 226,687 | 222,153 | 4,534 | 226,687 | 116,894 | 116,894 | | -9,802 | -9,802 s/t loss | 2 |
| 34 | King Cty WA | 11/15/2010 NoCalRd | Sold | | | | | 111,250 | 111,250 | | -15,867 | -15,867 s/t loss | 4 |
| 35 | PA St. Tpk | 11/15/2010 NoCalRd | Sold | | | | | 97,900 | 97,900 | | -14,628 | -14,628 s/t loss | 3 |
| 36 | PA St. Tpk | 11/15/2010 NoCalRd | Sold | | | | | 189,550 | 189,550 | | -13,017 | -13,017 s/t loss | 4 |
| 37 | Omaha Pub Power | 11/15/2010 NoCalRd | Sold | | | | | 184,250 | 184,250 | | -21,627 | -21,627 s/t loss | 1 |
| 38 | PA HSG FIN | 11/19/2010 NoCalRd | Sold | | | | | | | | | | |
| 39 | NY Mun WTR (5%) | 12/9/2010 NoCalRd | Bought | 253,750 | 248,675 | 5,075 | 253,750 | | | | | | |
| 40 | Houston TX HGHR ED | 12/9/2010 NoCalRd | Bought | 245,937 | 241,018 | 4,919 | 245,937 | | | | | | |
| 41 | TX St.Trans | 12/9/2010 NoCalRd | Bought | 199,750 | 195,755 | 3,995 | 199,750 | | | | | | |
| 42 | PA St. Tpk | 12/9/2010 NoCalRd | Bought | 246,032 | 241,111 | 4,921 | 246,032 | 155,478 | 155,478 | | -22,173 | -22,173 s/t loss | 7 |
| 43 | FL St. Tpk | 12/9/2010 NoCalRd | Sold | | | | | 99,319 | 99,319 | | -6,495 | -6,495 s/t loss | 10 |
| 44 | In Fin Rev | 12/9/2010 NoCalRd | Sold | | | | | | | | | | |
| | In Fin Rev | 12/16/2010 12/9cncld | n/a | Cancelled | | | Cancelled | 94,589 | 94,589 | | -7,128 | -7,128 s/t loss | 7 |
| 45 | In Fin Rev | 12/9/2010 NoCalRd | Sold | | | | | 178,740 | 178,740 | | -22,760 | -22,760 s/t loss | 1 |
| 46 | NY Rev Transn | 12/9/2010 NoCalRd | Sold | | | | | 228,762 | 228,762 | | -22,715 | -22,715 s/t loss | 8 |
| 47 | CHI/Ohare | 12/9/2010 NoCalRd | Sold | | | | | 133,944 | 133,944 | | -18,271 | -18,271 s/t loss | 7 |
| 48 | HI St.Univ | 12/14/2010 NoCalRd | Sold | | | | | | | | -210,530 | | |
| | | | | 2,627,001 | | 85,029 | 4,251,484 | 2,584,918 | 3,734,565 | 18,672 | | | |

ML-Compton-00021594

| # | Type | Name | Date | Call | Action | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | NewIssue | AZ St. University | 1/24/2011 | NoCallRd | Bought | 251,230 | 246,205 | 5,025 | 251,230 | | | | | | | |
| 2 | | Grand Rapids SWR | 1/24/2011 | NoCallRd | Bought | 245,937 | 241,018 | 4,919 | 245,937 | | | | | | | |
| 3 | | NY Triborough Brdg | 1/24/2011 | NoCallRd | Bought | 244,562 | 239,670 | 4,892 | 244,562 | | | | | | | |
| 4 | | Ohio St. Tpk Rev | 1/24/2011 | NoCallRd | Bought | 250,715 | 245,700 | 5,015 | 250,715 | | | | | | | |
| 5 | | Washington St. Higher E | 1/24/2011 | NoCallRd | Sold | | | | | 137,371 | 137,371 | | -13,584 | -13,584 l/t loss | 18 | |
| 6 | | Eastern IN University Re | 1/24/2011 | NoCallRd | Sold | | | | | 228,982 | 228,982 | | -21,840 | -21,840 l/t loss | 19 | |
| 7 | | NY NYC Mun WFA | 1/24/2011 | NoCallRd | Sold | | | | | 137,766 | 137,766 | | -9,804 | -9,804 l/t loss | 18 | |
| 8 | | FL St TFK Auth TFK | 1/25/2011 | NoCallRd | Sold | | | | | 235,860 | 235,860 | | -31,799 | -31,799 l/t loss | 16 | |
| | | FL St. BRD ED | 1/25/2011 | NoCallRd | Cancel | | | | | n/a | n/a | | n/a | n/a | n/a | |
| 9 | | FL St. BRD ED | 1/26/2011 | NoCallRd | Sold | | | | | 216,474 | 216,474 | | -36,219 | -36,219 l/t loss | 15 | |
| 10 | | FL St. Tpk Auth | 2/18/2011 | NoCallRd | Bought | 149,989 | 146,989 | 2,999 | 149,989 | | | | | | | |
| 11 | | IL HSG DEV AUTH REV | 2/22/2011 | NoCallRd | Sold | | | | | 109,367 | 109,367 | | -637 | -637 l/t loss | 115 | |
| 12 | NewIssue | TX A&M Univer | 2/25/2011 | CallRd | Bought | | 245,613 | 5,012 | 250,625 | | | | | | | |
| 13 | | S.Carolina Trans. | 2/25/2011 | CallRd | Sold | | | | | | 174,130 | | -27,314 | -27,314 s/t loss | 3 | |
| 14 | NewIssue | Brownsburg IN Sewer | 5/12/2011 | NoCallRd | Bought | 199,380 | 195,393 | 3,987 | 199,380 | | | | | | | |
| 15 | | TX St.Trenta | 5/12/2011 | NoCallRd | Sold | | | | | 192,383 | 192,383 | | -7,378 | -7,378 s/t loss | 5 | |
| 16 | | TN Health -Ascension | 6/15/2011 | NoCallRd | Bought | 200,124 | 196,122 | 4,002 | 200,124 | | | | | | | |
| 17 | | IN St. Fin Auth -Trinity I | 6/15/2011 | NoCallRd | Sold | | | | | 182,000 | 182,000 | | -21,085 | -21,085 s/t loss | 8 | |
| oddtrade | | FL St. Tpk Auth | 7/6/2011 | Cancelled | Bought | | n/a | | (CANCELLED) | | | | n/a | n/a | CANCELLED TRADE | |
| | | FL St. Tpk Auth | 7/6/2011 | Cancelled | Bought | | n/a | | (CANCELLED) | | | | n/a | n/a | CANCELLED TRADE | |
| 18 | NewIssue | FL. St. Tpk Auth | 7/8/2011 | NoCallRd | Bought | 298,125 | 292,163 | 5,962 | 298,125 | | | | | | | |
| 19 | | New Jersey TPK | 7/19/2011 | NoCallRd | Bought | 254,847 | 249,750 | 5,097 | 254,847 | | | | | | | |
| 20 | | San Antonio TX WTR | 7/19/2011 | NoCallRd | Sold | | | | | 214,031 | 214,031 | | -12,511 | -12,511 s/t loss | 8 | |
| | | Brownsburg IN Sewer | 7/22/2011 | Off.Visit? | Sold | | n/a | | (Cancelled) | | | | | | POSSIBLE OFFICE * | |
| 21 | | TN SCH BD Higher Ed | 7/22/2011 | Off.Visit? | Bought | | 200,712 | 4,096 | 204,808 | | | | | | POSSIBLE OFFICE * | |
| 22 | | TN HSG DEV AGY | 7/22/2011 | Off.Visit? | Bought | | 217,121 | 4,431 | 221,553 | | | | | | POSSIBLE OFFICE * | |
| 23 | | TN HSG DEV AGY | 7/22/2011 | Off.Visit? | Bought | | 215,968 | 4,407 | 220,375 | | | | | | POSSIBLE OFFICE * | |
| 24 | | Houston TX HGHR ED | 7/22/2011 | Off.Visit? | Sold | | | | | | 245,252 | | -695 | -695 s/t loss | 7.5 | |
| 25 | | Atlanta Rapid Trans | 7/22/2011 | Off.Visit? | Sold | | | | | | 97,250 | | -2,634 | -2,634 s/t loss | 8 | |
| 26 | | JEA FLA Elec Sys | 7/22/2011 | Off.Visit? | Sold | | | | | | 99,613 | | -1,235 | -1,235 s/t loss | 10 | |
| 27 | | ATL Water | 7/28/2011 | NoCallRd | Bought | 101,276 | 99,251 | 2,025 | 101,276 | | | | | | | |
| 28 | SellNew | Brownsburg | 7/28/2011 | NoCallRd | Sold | | | | | 199,334 | 199,334 | | -51 | -51 s/t loss | 2 | |
| 29 | NewIssue | Maine Health & Higher E | 8/16/2011 | NoCallRd | Bought | 251,250 | 246,225 | 5,025 | 251,250 | | | | | | | |
| 30 | SellNew | ArizonaSt.University | 8/16/2011 | NoCallRd | Sold | | | | | 266,137 | 266,137 | | | 14,958 s/t gain | 7 | |
| 31 | | Ohio St. Tpk Rev | 8/16/2011 | NoCallRd | Sold | | | | | 265,040 | 265,040 | | | 14,350 s/t gain | 7 | |
| 32 | NewIssue | Memphis/Shelby City | 8/29/2011 | NoCallRd | Bought | 249,527 | 244,537 | 4,990 | 249,527 | | | | | | | |
| 33 | | IN FIN Auth Hwy Rev | 8/29/2011 | NoCallRd | Sold | | | | | 202,360 | 202,360 | | | 170 l/t gain | 16 | |
| 34 | | IN Health -St. Francis | 8/30/2011 | NoCallRd | Bought | 258,125 | 252,963 | 5,163 | 258,125 | | | | | | | |
| 35 | | PA St. Tpk | 8/30/2011 | NoCallRd | Sold | | | | | 243,677 | 243,677 | | -2,385 | -2,385 s/t loss | 8 | |
| 36 | | Memphis Ctr City Rev | 9/29/2011 | NoCallRd | Bought | 306,345 | 300,219 | 6,126 | 306,345 | | | | | | | |
| 37 | | FL St TPK | 9/29/2011 | NoCallRd | Sold | | | | | 300,969 | 300,969 | | | 2,838 s/t gain | 3 | |
| 38 | NewIssue | Anderson Cnty TN | 10/13/2011 | NoCallRd | Bought | 252,187 | 247,144 | 5,043 | 252,187 | | | | | | | |
| 39 | | TX A&M Univer | 10/13/2011 | NoCallRd | Sold | | | | | 258,910 | 258,910 | | | 8,313 s/t gain | 8 | |
| 40 | | Clarksville TN Nat. Gas | 10/17/2011 | NoCallRd | Bought | 251,875 | 246,838 | 5,037 | 251,875 | | | | | | | |
| 41 | SellNew | Maine Health & Higher E | 10/17/2011 | NoCallRd | Sold | | | | | 243,660 | 243,660 | | -7,581 | -7,581 s/t loss | 2 | |
| 42 | | TN HSG DEV AGY | 11/21/2011 | NoCallRd | Bought | 227,975 | 223,416 | 4,559 | 227,975 | | | | | | | |
| 43 | | GrandRapids | 11/21/2011 | NoCallRd | Sold | | | | | 255,107 | 255,107 | | | 9,159 s/t gain | 10 | |
| 44 | NewIssue | DC Revenue | 12/2/2011 | NoCallRd | Bought | 304,444 | 298,356 | 6,088 | 304,444 | | | | | | | |
| 45 | SellNew | Memphis | 12/2/2011 | NoCallRd | Sold | | | | | 241,250 | 241,250 | | -8,282 | -8,282 s/t loss | 3 | |
| | | | | | | 4,297,913 | | 133,905 | 5,195,274 | 4,130,678 | 4,746,923 | 23,734 | -205,034 | -155,258 | | |
| | | | | | | | | | | | | | | | | |
| 1 | | NY Tribirough Brdg | 1/24/2012 | NoCallRd | Sold | | | | | 267,332 | 267,332 | | | 22,764 s/t gain | 12 | |
| 2 | | NJ St. Trans. TR | 2/9/2012 | NoCallRd | Bought | 275,760 | 270,244 | 5,515 | 275,760 | | | | | | | |
| 3 | | DCRev | 2/10/2012 | NoCallRd | Sold | | | | | 315,000 | 315,000 | | | 10,609 s/t gain | 4 | |
| 4 | | Port Auth NY/NJ | 2/16/2012 | CallRd | Bought | | 249,900 | 5,100 | 255,000 | | | | | | | |
| 5 | | Anderson Cnty TN | 2/16/2012 | CallRd | Sold | | | | | | 263,750 | | | 11,632 s/t gain | 4 | |

ML-Compton-00021595

| # | Name | Date | Call | Action | | | | | | | | | | |
|---|------|------|------|--------|---|---|---|---|---|---|---|---|---|---|
| 6 | New Jersey TFK | 3/7/2012 | NoCallRd | Sold | | | | | 272,317 | 272,317 | | | 17,764 s/t gain | 8 |
| 7 | Austin TX College | 4/5/2012 | NoCallRd | Bought | 71,225 | 69,800 | 1,425 | 71,225 | | | | | | |
| 8 ZeroCoupon | IL ST.Rev McCerrick | 5/22/2012 | NoCallRd | Bought | 263,700 | 258,426 | 5,274 | 263,700 | 273,246 | 273,246 | | -5,457 | -5,457 s/t loss | 3 |
| 9 ZeroCoupon | NJ St Trans. TR | 5/22/2012 | NoCallRd | Sold | | | | | | | | | | |
| 10 | METRO ATLANTA TRAN | 6/18/2012 | NoCallRd | Bought | 255,180 | 250,076 | 5,103 | 255,180 | | | | | | |
| 11 ZeroCoupon | Leander TX IndptSchool | 6/18/2012 | NoCallRd | Bought | 222,055 | 217,613 | 4,441 | 222,055 | | | | | | |
| 12 | IL St.Rev | 6/18/2012 | NoCallRd | Sold | | | | | 238,422 | 238,422 | | -26,009 | -26,009 s/t loss | 1 |
| 13 | Port Auth NY/NJ | 6/18/2012 | NoCallRd | Sold | | | | | 251,435 | 251,435 | | -3,430 | -3,430 s/t loss | 4 |
| 14 | Wisconsin Health&EDL | 10/1/2012 | CallRd | Bought | | 395,920 | 8,080 | 404,000 | | | | | | |
| 15 | IN FinAuthHosp-CMNTY | 10/29/2012 | NoCallRd | Bought | 511,250 | 501,025 | 10,225 | 511,250 | | | | | | |
| | | | | | 1,599,170 | | | | | | | | | |
| | | | | | | | 45,163 | 2,258,170 | 1,617,752 | 1,881,502 | 9,407 | -34,896 | | |
| 1 | Knoxville TN Gas | 3/12/2013 | CallRd | Bought | | 601,824 | 12,282 | 614,106 | | | | | | |
| 2 | JEA FL ELEC | 6/4/2013 | CallRd | Bought | | 296,591 | 6,052 | 302,643 | | | | | | |
| 3 | Cal High School | 6/4/2013 | CallRd | Bought | | 294,609 | 6,016 | 300,825 | | | | | | |
| 4 | UniversityAL | 6/4/2013 | CallRd | Bought | | 399,350 | 8,150 | 407,500 | | | | | | |
| 5 | WacoHith&EDL | 6/4/2013 | CallRd | Sold | | | | | | 374,500 | | -29,283 | -29,283 s/t loss | 8 |
| 6 | IN HOSP Cmnty | 6/4/2013 | CallRd | Sold | | | | | | 473,125 | | -37,658 | -37,658 s/t loss | 8 |
| 7 | San Antonio TX WTR RE | 6/24/2013 | CallRd | Bought | | 392,862 | 8,017 | 400,880 | | | | | | |
| 8 | IN RevHealthTrinity | 6/24/2013 | CallRd | Bought | | 190,333 | 3,884 | 194,218 | | | | | | |
| 9 | Cal. St.Rev. Kaiser | 6/24/2013 | CallRd | Bought | | 392,000 | 8,000 | 400,000 | Still Own | as of 3/30/15 | | | | |
| 10 | IN HealthHosp-Clarian | 6/25/2013 | TradeB4Call | Bought | 293,625 | 287,752 | 5,872 | 293,625 | | | | | | |
| 11 | IN HealthHosp Clarian | 6/26/2013 | TradeB4Call | Bought | 196,940 | 193,000 | 3,940 | 196,940 | | | | | | |
| | FL St. Tpk | 7/1/2013 | Redeem | Redeem | | | | | | | | | | |
| 12 | PANGherEduSaEle | 7/12/2013 | TradeB4Call | Bought | 152,166 | 149,122 | 3,043 | 152,166 | | | | | | |
| 13 ZeroCoupon | MetroWVTax | 7/12/2013 | TradeB4Call | Bought | 227,750 | 223,195 | 4,555 | 227,750 | | | | | | |
| 14 | IMStopDeaconess | 7/12/2013 | TradeB4Call | Bought | 513,978 | 503,693 | 10,229 | 513,978 | | | | | | |
| 15 | Knoxville Gas | 7/12/2013 | CallRd | Sold | | | | | | 537,750 | | -75,818 | -75,818 l/t loss | 4 |
| 16 | Atl RapidTrans | 7/12/2013 | TradeB4Call | Sold | | | | | 223,020 | 223,020 | | -31,698 | -31,698 l/t loss | 13 |
| | LeanderTX | 7/12/2013 | TradeB4Call | Cancel | | | | | | | | | Trade canc Trade cancelled -wrong price - | |
| | Oregon HSG | 7/12/2013 | Redeem | Redeem | | n/a | | | | | | | | |
| 17 ZeroCoupon | LeanderTX | 7/19/2013 | NoCallRd | Sold | | | | | 191,250 | 191,250 | | -40,541 | -40,541 l/t loss | 13 |
| 18 | FL St. Brd. Univ. Rev | 8/7/2013 | CallRd | Bought | | 248,981 | 5,081 | 254,062 | | | | | | |
| 19 | Oregon Health Sciences | 8/7/2013 | CallRd | Bought | | 229,761 | 4,689 | 234,450 | | | | | | |
| 20 | TxCommColl | 8/7/2013 | CallRd | Sold | | | | | | 61,102 | | -9,920 | -9,920 l/t loss | 16 |
| 21 | Utah St. Univ. Rev | 8/7/2013 | CallRd | Bought | | 239,389 | 4,685 | 244,275 | | | | | | |
| 22 | Oregon Health Sciences | 8/27/2013 | NoCallRd | Bought | 543,005 | 532,144 | 10,860 | 543,005 | | | | | | |
| 23 | IMHospDeaconess | 8/30/2013 | NoCallRd | Bought | | | | | 462,000 | 462,000 | | -51,988 | -51,988 s/t loss | 8 |
| 24 | KnoxvilleWtr.Serv | 9/10/2013 | NoCallRd | Bought | 250,780 | 245,765 | 5,015 | 250,780 | | | | | | |
| 25 | KnoxvilleWtr.Serv | 9/10/2013 | NoCallRd | Bought | 506,675 | 496,738 | 10,137 | 506,875 | | | | | | |
| 26 | KnoxvilleWtr.Serv | 9/10/2013 | NoCallRd | Bought | 504,750 | 494,655 | 10,095 | 504,750 | | | | | | |
| 27 | South Carolina | 9/24/2013 | CallRd | Bought | | 230,492 | 4,703 | 235,195 | | | | | | |
| 28 | WisconsinHealth&EDL | 9/24/2013 | CallRd | Bought | | 493,675 | 10,075 | 503,750 | | | | | | |
| 29 | UtahSt.Univ.Rev | 9/24/2013 | CallRd | Bought | | 246,958 | 5,039 | 251,997 | | | | | | |
| 30 | BirmALWaterwks | 9/24/2013 | CallRd | Bought | | 493,558 | 10,072 | 503,630 | | | | | | |
| 31 | CalHigh School | 9/24/2013 | CallRd | Sold | | | | | | 262,266 | | -38,549 | -38,549 s/t loss | 3 |
| 32 | JEA FL ELEC | 9/24/2013 | CallRd | Sold | | | | | | 259,875 | | -42,634 | -42,634 s/t loss | 3 |
| 33 | UniversityAL | 9/24/2013 | CallRd | Sold | | | | | | 350,828 | | -56,487 | -56,487 s/t loss | 3 |
| 34 | BristolTN | 10/31/2013 | CallRd | Bought | | 454,260 | 9,270 | 463,531 | | | | | | |
| 35 | Knox N&E Rev | 11/25/2013 | NoCallRd | Bought | 545,710 | 534,796 | 10,914 | 545,710 | | | | | | |
| 36 | Nashville H&E Rev | 11/25/2013 | NoCallRd | Bought | 74,173 | 73,609 | 1,472 | 74,173 | | | | | | |
| 37 | IN HOSP Rev/Beacon | 12/18/2013 | CallRd | Bought | | 248,736 | 5,076 | 253,812 | | | | | | |
| 38 | IN HospTrin | 12/18/2013 | CallRd | Sold | | | | | | 180,442 | | -13,787 | -13,787 s/t loss | 6 |
| | | | | | 3,809,752 | | 187,492 | 9,374,626 | 876,270 | 3,376,238 | 16,881 | -428,363 | | |
| 1 592090FF6 | Metro Nashville/stadium | 1/22/2014 | CallRd | Bought | | 260,515 | 5,210 | 265,725 | Still Own | as of 3/30/15 | | | | |

ML-Compton-00021596

| # | CUSIP | Name | Date | Type | Action | | | | | Still Own | | | | | Note | Ref |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 | 59259NT29 | NY Trans. Tax | 1/22/2014 | CalRd | Sold | | | | | 234,364 | | | | | 92 s/t gain | 6 |
| 3 | 592090FF6 | Metro Nashville/Stadium | 2/12/2014 | NoCalRd | Bought | 269,582 | 264,297 | 5,285 | 269,582 | Still Own as of 3/30/15 | | | | | | 6 |
| 4 | 34157RCT5 | FL St. Brd. Univ. Rev | 2/12/2014 | NoCalRd | Sold | | | | | 255,057 255,057 | | | | | 1,162 s/t gain | 6 |
| 5 | 592090FH2 | Metro Nashville/Stadium | 3/12/2014 | ? 3mincall | Bought | | 864,944 | 17,698 | 882,642 | Still Own as of 3/30/15 | | | | | | 7 |
| 6 | 685869EG0 | Oregon Health Sciences | 3/12/2014 | CalRd | Sold | | | | | 248,498 | | | | | 13,524 s/t gain | 7 |
| 7 | 685869EG0 | Oregon Health Sciences | 3/12/2014 | CalRd | Sold | | | | | 596,396 | | | | | 51,642 s/t gain | 7 |
| 8 | 586145E | Memphis TN Gen | 3/25/2014 | CalRd | Bought | | 253,437 | 5,069 | 258,505 | Still Own as of 3/30/15 | | | | | | 6 |
| 9 | 837152RY5 | South Carolina | 3/25/2014 | CalR Bd | Sold | | | | | 243,660 | | | | | 8,382 s/t gain | 6 |
| 10 | 592090FF6 | Metro/Nashville/Std. | 4/2/2014 | CalRd | Bought | | 268,945 | 5,378 | 274,323 | Still Own | | | | | | |
| 11 | 100K 5h | San Antonio TX WTR RE | 4/2/2014 | CalRd | Sold | | | | | 252,872 | | | | | 2,422 s/t gain | 10 |
| 12 | * | Knox TN Water | 4/23/2014 | CalRd | Bought | | 530,310 | 10,606 | 540,916 | Still Own as of 3/30/15 516,310 516,310 | | | | | | 8 |
| 13 | 917563FG8 | Utah St. Univ. Rev | 4/24/2014 | NoCalRd | Sold | | | | | 516,310 | | | | | 13,750 s/t gain | 8 |
| 14 | 162410cx0 | Chatt TN Health | 5/23/2014 | CalRd | Bought | | 303,718 | 6,021 | 309,792 | Still Own as of 3/30/15 433,772 | | | | | | 33 |
| 15 | 45470YCO1 | IN-St.Francis | 5/23/2014 | CalRd | Sold | | | | | 433,772 | | | | | 26,523 s/t gain | 33 |
| 16 | 499816KD9 | Knoxville TN Water | 6/23/2014 | CalRd | Bought | | 265,167 | 5,303 | 270,470 | Still Own | | | | | | |
| 17 | 64970XV20 | NY/NYC/HUD | 6/23/2014 | CalRd | Sold | | | | | 251,662 | | | | | 1,180 l/t gain | 42 |
| 18 | 58614E | Memphis TN Gen | 6/24/2014 | CalRd | Bought | | 264,355 | 5,287 | 269,642 | Still Own as of 3/30/15 256,687 | | | | | | 12 |
| 19 | 1309116N5 | Cal. St.Rev. Kaiser | 6/24/2014 | CalRd | Sold | | | | | 256,687 | | | | | 6,684 s/t gain | 12 |
| 20 | 454795BT1 | In Ascension | 7/22/2014 | CalRd | Sold | | | | | 207,424 | | | | | 7,360 l/t gain | 37 |
| 21 | 45479RAF4 | IN Clinton | 9/16/2014 | CalRd | Bought | | 101,675 | 2,075 | 103,750 | Still Own as of 3/30/15 | | | | | | |
| 22 | 499815P97 | Knoxville Tn Wtr.Serv. | 9/17/2014 | NoCalRd | Bought | 151,792 | 148,757 | 3,035 | 151,792 | Still Own as of 3/30/15 | | | | | | |
| 23 | 499746WZ4 | Knoxville Tn ElecRev | 9/17/2014 | NoCalRd | Bought | 350,357 | 343,350 | 7,007 | 350,357 | Still Own as of 3/30/15 | | | | | | |
| | | **Totals** | | | | 771,731 | | 78,949 | 3,947,496 | 26,374,082 | 1,647,637 | 3,496,702 | 17,483 | | 0 | -887,099 |

| # | CUSIP | Name | Date | Type | Action | | | | | | | | | | Note | Ref |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 25154A108 | DB Prefd 7.6% | 9/8/2009 | NoCalRd | Bought | 87,504 | 86,400 | 1104 | 87,504 | | | | | | | 3 |
| 2 | 456837806 | ING 8.5% | 9/8/2009 | NoCalRd | Sold | | | | | 86,400 | 86,400 | 1,164 | 85,236 | -7,919 | -7,919 s/t loss | 3 |
| 3 | 414567206 | Harris Pfd | 9/17/2009 | NoCalRd | Bought | 115,346 | 114,000 | 1,346 | 115,346 | | | | | | | 3 |
| 4 | 18805200 | Allianz | 9/17/2009 | NoCalRd | Sold | | | | | 124,100 | 124,100 | 1,413 | 122,687 | | 14,228 s/t gain | 3 |
| 5 | 06739H362 | Barclay's8.1 | 10/1/2009 | CalRd | Bought | | | | | | 105,143 | 1,206 | 103,937 | | 20,450 s/t gain | 4 |
| 6 | 06739H362 | Barclay's8.1 | 10/1/2009 | CalRd | Sold | | | | | | 16,613 | 190 | 16,423 | | | |
| 7 | 06739F390 | Barclay's 6.625% | 10/5/2009 | NoCalRd | Bought | 34,940 | 34,510 | 430 | 34,940 | | | | | | | |
| 8 | 06739F390 | Barclay's 6.625% | 10/5/2009 | NoCalRd | Bought | 2,056 | 2,031 | 25 | 2,056 | | | | | | | |
| 9 | 06739F390 | Barclay's 6.625% | 10/5/2009 | NoCalRd | Bought | 2,057 | 2,032 | 25 | 2,057 | | | | | | | |
| 10 | 06739F390 | Barclay's 6.625% | 10/5/2009 | NoCalRd | Bought | 4,116 | 4,066 | 50 | 4,116 | | | | | | | |
| 11 | 06739F390 | Barclay's 6.625% | 10/5/2009 | NoCalRd | Bought | 4,118 | 4,068 | 50 | 4,118 | | | | | | | |
| 12 | 06739F390 | Barclay's 6.625% | 10/5/2009 | NoCalRd | Bought | 55,628 | 54,945 | 683 | 55,628 | | | | | | | |
| 13 | 40428H862 | HSBC 6.5% | 11/3/2009 | NoCalRd | Bought | 82,873 | 81,800 | 1073 | 82,873 | | | | | | | |
| 14 | 25154A108 | DB 7.6% | 11/3/2009 | NoCalRd | Sold | | | | | 90,280 | 90,280 | 1,129 | 89,138 | | 471 s/t gain | 2 |
| 15 | 34539CZU9 | Ford 6.8% | 11/25/2009 | NoCalRd | Sold | | | | | 22,360 | 22,360 | NotDisd | 22,360 | -2,644 | -2,644 l/t loss | 56 |
| 16 | 40428H862 | HSBC 6.5% | 12/11/2009 | NoCalRd | Sold | | | | | 2,308 | 2,308 | 18 | 2,290 | | 9,049 s/t gain | 1 |
| 17 | | HSBC 6.5% | 12/11/2009 | NoCalRd | Sold | | | | | 2,315 | 2,315 | 18 | 2,297 | | (inabove) | |
| 18 | | HSBC 6.5% | 12/11/2009 | NoCalRd | Sold | | | | | 39,372 | 39,372 | 316 | 39,056 | | (inabove) | |
| 19 | | HSBC 6.5% | 12/11/2009 | NoCalRd | Sold | | | | | 36,029 | 36,029 | 289 | 35,740 | | (inabove) | |
| 20 | | HSBC 6.5% | 12/11/2009 | NoCalRd | Sold | | | | | 2,017 | 2,017 | 16 | 2,001 | | (inabove) | |
| 21 | | HSBC 6.25% | 12/11/2009 | NoCalRd | Sold | | | | | 10,639 | 10,639 | 85 | 10,554 | | (inabove) | |
| 22 | | HCP 7.1% | 12/21/2009 | NoCalRd | Bought | 56,289 | 55,479 | 810 | 56,289 | | | | | | | |
| 23 | | KeyCorp-8% | 12/21/2009 | NoCalRd | Bought | 55,582 | 54,777 | 805 | 55,582 | | | | | | | |
| 24 | | Harris | 12/21/2009 | NoCalRd | Sold | | | | | 6,681 | 6,681 | 80 | 6,601 | -4,459 | -4,459 s/t loss | 3 |
| 25 | | Harris | 12/21/2009 | NoCalRd | Sold | | | | | 2,228 | 2,228 | 26 | 2,202 | | (inabove) | |
| 26 | | Harris | 12/11/2009 | NoCalRd | Sold | | | | | 6,690 | 6,690 | 80 | 6,610 | | (inabove) | |
| 27 | | Harris | 12/21/2009 | NoCalRd | Sold | | | | | 15,617 | 15,617 | 186 | 15,431 | | (inabove) | |
| 28 | | Harris | 12/21/2009 | NoCalRd | Sold | | | | | 22,420 | 22,420 | 266 | 22,154 | | (inabove) | |
| 29 | | Harris | 12/21/2009 | NoCalRd | Sold | | | | | 4,466 | 4,466 | 53 | 4,433 | | (inabove) | |
| 30 | | Harris | 12/21/2009 | NoCalRd | Sold | | | | | 2,244 | 2,244 | 26 | 2,218 | | (inabove) | |

ML-Compton-00021597

| No. | Security | Date / Call | Action | | | | | | | | | Adj | Gain/Loss | Type | Days |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 31 | Harris | 12/21/2009 NoCallRd | Sold | | | | | 6,735 | 6,735 | 60 | 6,655 | | | (inabove) | |
| 32 | Harris | 12/21/2009 NoCallRd | Sold | | | | | 11,260 | 11,260 | 133 | 11,127 | | | (inabove) | |
| 33 | Harris | 12/21/2009 NoCallRd | Sold | | | | | 9,012 | 9,012 | 106 | 8,906 | | | (inabove) | |
| 34 | Harris | 12/21/2009 NoCallRd | Sold | | | | | 22,600 | 22,600 | 266 | 22,334 | | | (inabove) | |
| 35 | Harris | 12/21/2009 NoCallRd | Sold | | | | | 2,262 | 2,262 | 26 | 2,236 | -7,103 | | (inabove) | |
| 1 | SunTrust | 1/26/2010 CallRd | Sold | | | | | | 120,715 | 1,400 | 119,315 | | 16,315 | s/t gain | 7 |
| 2 | Aegon Cap. 6.875% | 2/19/2010 NoCallRd | Bought | 147,466 | 145,790 | 1,676 | 147,466 | | | | | | | | |
| | ING Group 7.375% | 2/19/2010 NoCallRd | Bought | n/a | n/a | n/a | | | | | | | | | |
| 3 | Barclay-7.25 | 2/19/2010 NoCallRd | Sold | | | | | 124,297 | 124,297 | 1,414 | 122,883 | CANCELLED xxx xxx | 28,075 | s/t gain | 8 |
| 4 | KeyCorp- | 2/19/2010 NoCallRd | Sold | | | | | 182,004 | 182,004 | 2,026 | 179,979 | | 31,832 | s/t gain | 8 |
| 5 | FFLUS-7.25 | 2/19/2010 NoCallRd | Sold | | | | | 4,878 | 4,878 | 67 | 4,811 | | 1,164 | s/t gain | 8 |
| 6 | FFLUS-7.25 | 2/19/2010 NoCallRd | Sold | | | | | 4,878 | 4,878 | 67 | 4,811 | | 1,074 | s/t gain | 8 |
| 7 | FFLUS-7.25 | 2/19/2010 NoCallRd | Sold | | | | | 36,713 | 36,713 | 510 | 36,203 | | 6,616 | s/t gain | 8 |
| 8 | FFLUS-7.25 | 2/19/2010 NoCallRd | Sold | | | | | 7,196 | 7,196 | 100 | 7,096 | | 1,461 | s/t gain | 8 |
| 9 | FFLUS-7.25 | 2/19/2010 NoCallRd | Sold | | | | | 7,317 | 7,317 | 101 | 7,216 | | 1,265 | s/t gain | 8 |
| 10 | FFLUS-7.25 | 2/22/2010 NoCallRd | Sold | | | | | 2,473 | 2,473 | 33 | 2,440 | | 404 | s/t gain | 8 |
| 11 | FFLUS-7.25 | 2/22/2010 NoCallRd | Sold | | | | | 36,315 | 36,315 | 474 | 35,841 | | 5,691 | s/t gain | 8 |
| 12 | FFLUS-7.25 | 2/22/2010 NoCallRd | Sold | | | | | 24,030 | 24,030 | 335 | 23,695 | | 3,637 | s/t gain | 7 |
| 13 | HCP Prefd | 4/15/2010 CallRd | Sold | | | | | | 175,866 | 1,975 | 173,291 | | 26,139 | l/t gain | 10 |
| 14 | Aegon-6.875 | 5/20/2010 CallRd | Sold | | | | | | 121,380 | 1,515 | 119,865 | -27,614 | -27,614 | s/t loss | 3 |
| 15 | Barclay Pfd | 5/20/2010 CallRd | Sold | | | | | | 94,570 | 1,206 | 93,334 | -7,500 | -7,500 | s/t loss | 7 |
| 16 | Barclay Pfd | 5/20/2010 CallRd | Sold | | | | | | 1,934 | 24 | 1,910 | -156 | -156 | s/t loss | 7 |
| 17 | ProtectLife | 10/26/2010 CallRd | Sold | | | | | | 121,850 | 1,398 | 120,452 | | 31,204 | l/t gain | 16 |
| 18 | BAC Trust | 10/26/2010 CallRd | Sold | | | | | | 118,900 | 1,378 | 117,522 | | 26,023 | l/t gain | 16 |
| | | | | | | | | | 1,184,716 | 14,023 | | -35,270 | 145,630 | | |
| 1 MLNewIssue | Aviva PLC | 11/17/2011 NoCallRd | Bought | 200,000 | 193,700 | 6,300 | 200,000 | | | | | | | | |
| 1 MLNewIssue | Aegon NV 8% Notes | 1/24/2012 NoCallRd | Bought | 200,000 | 193,811 | 6,189 | 200,000 | | | | | | | | |
| 2 | Harris Preferred Cap Cor | 3/7/2012 NoCallRd | Bought | 210,351 | 208,169 | 2,237 | 210,351 | | | | | | | | |
| 3 MLNewIssue | Qwest $25 | 3/22/2012 CallRd | Bought | | 193,700 | 6,300 | 200,000 | | | | | | | | |
| 4 | Harris Preferred Cap Cor | 4/16/2012 NoCallRd | Sold | | | | | 202,420 | 202,420 | 2,197 | 200,223 | -10,138 | -10,138 | s/t loss | 1 |
| 5 MLNewIssue | Qwest Sr. Notes 7% | 6/14/2012 NoCallRd | Bought | 200,000 | 193,700 | 6,300 | 200,000 | | | | | | | | |
| 6 | Qwest Sr. Notes 7% | 6/15/2012 NoCallRd | Sold | | | | | 202,555 | 202,555 | 2,198 | 200,346 | | 346 | s/t gain | 1 day |
| 7 | AIG FFD..7.7% | 7/18/2012 NoCallRd | Bought | 208,094 | 205,856 | 2,236 | 208,094 | | | | | | | | |
| 8 MLNewIssue | AvivaPLC | 7/18/2012 NoCallRd | Sold | | | | | 220,074 | 220,074 | 2,319 | 217,755 | | 17,745 | st/gain | 8 |
| 9 MLNewIssue | GE-Sr.Notes-4.875% | 10/2/2012 NoCallRd | Bought | 200,000 | 193,700 | 6,300 | 200,000 | | | | | | | | |
| 10 | Barclay's PLC (7.75%) | 10/15/2012 NoCallRd | Bought | 207,426 | 205,209 | 2,217 | 207,426 | | | | | | | | |
| 11 | Aegon NV 8% Notes | 10/15/2012 NoCallRd | Sold | | | | | 220,921 | 220,921 | 2,325 | 218,596 | | 18,586 | s/t gain | 9 |
| 12 | AIG FFD..7.7% | 11/1/2012 CallRd | Sold | | | | | | 207,240 | 2,409 | 199,831 | -10,515 | -10,515 | s/t loss | 4 |
| 13 | AIG FFD..7.7% | 12/3/2012 NoCallRd | Bought | 204,317 | 201,891 | 2426 | 204,317 | | | | | | | | |
| | | | | | | | 1,630,188 | | 1,048,210 | | | | | | |
| 1 | Qwest Sr. Notes 7% | 7/15/2013 NoCallRd | Bought | 203,911 | 201,508 | 2402 | 203,911 | | | | | | | | |
| 2 | GE-4.875% | 7/15/2013 NoCallRd | Sold | | | | | 182,081 | 182,081 | 2,237 | 179,835 | -20,164 | -20,164 | s/t loss | 9 |
| | | | | | | | 203,911 | | | | | | | | |
| 1 | CitiBkS.8% | 2/20/2014 NoCallRd | Bought | 182,058 | 179,840 | 2,218 | 182,058 | | | | | | | | |
| 2 | Qwest7% | 2/20/2014 NoCallRd | Sold | | | | | 198,320 | 198,320 | 2,375 | 195,945 | -4,065 | -4,065 | l/t loss | 20 |
| | | | | | | | 182,058 | | | | | | | | |
| | | | | | | 53,202 | 2,864,132 | | 3,263,138 | 37,255 | | -95,174 | -8,205 | | |

ML-Compton-00021598

| # | Name | Date | Method | Action | c1 | c2 | c3 | c4 | c5 | c6 | c7 | c8 | c9 | Gain/Loss | Ref |
|---|------|------|--------|--------|----|----|----|----|----|----|----|----|----|-----------|-----|
| 1 | Kinder Morgan | 12/11/2009 | NoCalRd | Bought | 23,579 | 23,310 | 269 | 23,579 | | | | | | | |
| 2 | Enterprise | 12/11/2009 | NoCalRd | Bought | 25,095 | 24,800 | 295 | 25,095 | | | | | | | |
| 1 | Plains All American LP | 3/12/2010 | CalRd | Bought | | 56,985 | 730 | 57,715 | | | | | | | |
| 2 | Sunoco Logistics LP | 3/12/2010 | CalRd | Bought | | 69,018 | 809 | 69,827 | | | | | | | |
| 3 | Enterprise LP | 3/12/2010 | CalRd | Sold | | | | | | 42,148 | 536 | 41,612 | | 15,117 l/t gain | 14 |
| 4 | Enterprise LP | 3/12/2010 | CalRd | Sold | | | | | | 26,974 | 343 | 26,631 | | 1873 s/t gain | 3 |
| 5 | Kinder Morgan LP | 5/10/2010 | CalRd | Sold | | | | | | 26,076 | 327 | 25,719 | | 2,161 s/t gain | 5 |
| 6 | Kinder Morgan LP | 5/10/2010 | CalRd | Sold | | | | | | 32,595 | 408 | 32,187 | | 6,183 l/t gain | 55 |
| 7 | Kinder Morgan LP | 7/29/2010 | CalRd | Bought | | 19,967 | 237 | 20,204 | | | | | | | |
| 8 | Kinder Morgan LP | 7/29/2010 | CalRd | Bought | | 46,592 | 555 | 47,147 | | | | | | | |
| 9 | Global Partners | 7/29/2010 | CalRd | Bought | | 5,022 | 64 | 5,086 | | | | | | | |
| 10 | Global Partners | 7/29/2010 | CalRd | Bought | | 30,216 | 389 | 30,605 | | | | | | | |
| 11 | Global Partners | 7/29/2010 | CalRd | Bought | | 17,633 | 226 | 17,859 | | | | | | | |
| 12 | Global Partners | 7/29/2010 | CalRd | Bought | | 22,680 | 291 | 22,971 | | | | | | | |
| 13 | PlainsAll | 7/29/2010 | CalRd | Sold | | | | | | 62,162 | 764 | 61,398 | | 3671 s/t gain | 4 |
| 14 | SunocoPtrs | 7/29/2010 | CalRd | Sold | | | | | | 15,142 | 170 | 14,972 | | 999 s/t gain | 4 |
| 15 | SunocoPtrs | 7/29/2010 | CalRd | Sold | | | | | | 60,578 | 683 | 59,695 | | 4028 s/t gain | 4 |
| 16 | Williams Partners | 11/1/2010 | NoCalRd | Bought | 13,370 | 13,221 | 149 | 13,370 | | | | | | | |
| 17 | Williams Partners | 11/1/2010 | NoCalRd | Bought | 75,782 | 74,936 | 846 | 75,782 | | | | | | | |
| 18 | Global Partners | 11/1/2010 | NoCalRd | Sold | | | | | 79,020 | 79,020 | 995 | 78,025 | | 1,301 s/t gain | 4 |
| 1 | Boardwlk.Partners | 2/18/2011 | NoCalRd | Bought | 6,655 | 6,580 | 75 | 6,655 | | | | | | | |
| 2 | Boardwlk.Partners | 2/18/2011 | NoCalRd | Bought | 73,223 | 72,397 | 825 | 73,223 | | | | | | | |
| 3 | Boardwlk.Partners | 2/18/2011 | NoCalRd | Bought | 13,314 | 13,163 | 150 | 13,314 | | | | | | | |
| 4 | Boardwlk.Partners | 2/18/2011 | NoCalRd | Bought | 6,662 | 6,582 | 75 | 6,662 | | | | | | | |
| 5 | Williams Partners | 2/18/2011 | NoCalRd | Sold | | | | | 21,205 | 21,205 | 227 | 20,978 | | 2,159 s/t gain | 3 |
| 6 | Williams Partners | 2/18/2011 | NoCalRd | Sold | | | | | 35,189 | 35,189 | 377 | 34,811 | | 3,607 s/t gain | 3 |
| 7 | Williams Partners | 2/18/2011 | NoCalRd | Sold | | | | | 44,189 | 44,189 | 473 | 43,716 | | 4,576 s/t gain | 3 |
| 8 | Enterprise Prdts LP | 3/15/2011 | CalRd | Bought | | 31,640 | 413 | 32,053 | | | | | | | |
| 9 | Enterprise Prdts LP | 3/15/2011 | CalRd | Bought | | 7,912 | 103 | 8,015 | | | | | | | |
| 10 | Enterprise Prdts LP | 3/15/2011 | CalRd | Bought | | 19,790 | 258 | 20,048 | | | | | | | |
| 11 | Plains All American LP | 3/15/2011 | CalRd | Bought | | 36,990 | 456 | 37,446 | | | | | | | |
| 12 | Plains All American LP | 3/15/2011 | CalRd | Bought | | 24,664 | 304 | 24,968 | | | | | | | |
| 13 | Kinder Morgan LP | 3/15/2011 | CalRd | Sold | | | | | | 35,585 | 411 | 35,162 | | 1,485 s/t gain | 8 |
| 14 | Kinder Morgan LP | 3/15/2011 | CalRd | Sold | | | | | | 35,595 | 411 | 35,177 | | 1,506 s/t gain | 8 |
| 15 | Enbridge En.Prs. | 7/25/2011 | NoCalRd | Bought | 5,894 | 5,820 | 74 | 5,894 | | | | | | | |
| 16 | Enbridge En.Prs. | 7/25/2011 | NoCalRd | Bought | 67,804 | 66,949 | 855 | 67,804 | | | | | | | |
| 17 | TC Pipelines LP | 9/13/2011 | NoCalRd | Bought | 26,418 | 26,120 | 298 | 26,418 | | | | | | | |
| 18 | TC Pipelines LP | 9/13/2011 | NoCalRd | Bought | 61,578 | 60,885 | 693 | 61,578 | | | | | | | |
| 19 | Boardwalk Partners | 9/13/2011 | NoCalRd | Sold | | | | | 74,214 | 74,214 | 962 | 73,252 | -26,610 | -26,610 s/t loss | 6 |
| 20 | Enterprise Prdts LP | 11/23/2011 | NoCalRd | Bought | 26,640 | 26,154 | 486 | 26,640 | | | | | | | |
| 21 | Plains All American LP | 11/23/2011 | NoCalRd | Bought | 25,481 | 25,022 | 459 | 25,481 | | | | | | | |
| 22 | TC Pipelines LP | 11/23/2011 | NoCalRd | Bought | 27,661 | 27,163 | 498 | 27,661 | | | | | | | |
| 23 | Enbridge En.Prs. | 11/23/2011 | NoCalRd | Sold | | | | | 74,957 | 74,957 | 938 | 74,019 | -624 | -624 s/t loss | 4 |
| 1 | Buckeye Partners | 2/2/2012 | NoCalRd | Bought | 76,766 | 75,900 | 866 | 76,766 | | | | | | | |
| 2 | Buckeye Partners | 2/2/2012 | NoCalRd | Bought | 25,715 | 25,289 | 426 | 25,715 | | | | | | | |
| 3 | Buckeye Partners | 2/2/2012 | NoCalRd | Bought | 6,431 | 6,325 | 105 | 6,431 | | | | | | | |
| 4 | PlainsAllAm | 2/2/2012 | NoCalRd | Sold | | | | | 77,415 | 77,415 | 64 | 76,543 | | 14,120 s/t gain | 11 |
| 5 | PlainsAllAm | 2/2/2012 | NoCalRd | Sold | | | | | 30,969 | 30,969 | 522 | 30,447 | | 4,494 s/t gain | 11 |
| 6 NotUnsol | Buckeye Partners | 3/21/2012 | CalRd | Sold | | | | | | 31,196 | 528 | 30,668 | | -700 s/t loss | 1 |
| 7 NotUnsol | EnterpriseLP | 3/21/2012 | CalRd | Sold | | | | | | 25,615 | 409 | 25,206 | | 5,164 s/t gain | 12 |
| 8 NotUnsol | EnterpriseLP | 3/21/2012 | CalRd | Sold | | | | | | 10,252 | 163 | 10,089 | | 2,074 s/t gain | 12 |

ML-Compton-00021599

| | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9 NotUnsol | TC Pipelines | 3/21/2012 | CalRd | Sold | | | | | | 27,724 | 499 | 27,225 | | 550 s/t gain | 6 |
| 10 | Buckeye Partners | 5/22/2012 | NoCalRd | Sold | | | | 33,215 | 33,215 | 555 | 32,660 | -12,000 | -12,000 s/t loss | 3 |
| 11 | Buckeye Partners | 5/22/2012 | NoCalRd | Sold | | | | 23,725 | 23,725 | 425 | 23,300 | -8,534 | -8,534 s/t loss | 3 |
| 12 | TCPipelines | 6/18/2012 | NoCalRd | Sold | | | | 54,278 | 54,278 | 736 | 53,542 | -8,035 | -8,035 s/t loss | 9 |
| 13 | TCPipelines | 6/18/2012 | NoCalRd | Sold | | | | 23,262 | 23,262 | 425 | 22,837 | -5,300 | -5,300 s/t loss | 7 |
| 14 | Regency Energy | 7/24/2012 | CalRd | Bought | | 2,379 | 40 | 2,419 | | | | | | |
| 15 | Regency Energy | 7/24/2012 | CalRd | Bought | | 14,277 | 240 | 14,517 | | | | | | |
| 16 | Regency Energy | 7/24/2012 | CalRd | Bought | | 2,379 | 40 | 2,419 | | | | | | |
| 17 | Regency Energy | 7/24/2012 | CalRd | Bought | | 7,140 | 120 | 7,260 | | | | | | |
| 18 | Regency Energy | 7/24/2012 | CalRd | Bought | | 7,141 | 120 | 7,261 | | | | | | |
| 19 | Regency Energy | 7/24/2012 | CalRd | Bought | | 4,758 | 80 | 4,838 | | | | | | |
| 20 | EnterpriseLP | 7/24/2012 | CalRd | Sold | | | | | 43,125 | 626 | 42,499 | | 10,422 l/t gain | 16 |
| 21 | BuckeyePtnrs | 7/24/2012 | CalRd | Bought | | 21,471 | 386 | 21,857 | | | | | | |
| 22 | BuckeyePtnrs | 7/24/2012 | CalRd | Bought | | 5,370 | 96 | 5,466 | | | | | | |
| 23 | Buckeye Partners | 7/24/2012 | CalRd. | Bought | | 26,841 | 482 | 27,323 | | | | | | |
| 24 | TC Pipelines LP | 7/26/2012 | NoCalRd | Bought | 27,220 | 26,733 | 487 | 27,220 | | | | | | |
| 25 | EnterprisePtrs | 7/26/2012 | NoCalRd | Sold | | | | | 32,292 | 32,292 | 543 | 31,749 | 4,611 s/lgain | 8 |
| 26 | Buckeye Partners | 9/25/2012 | CalRd | Bought | | 191,526 | 1,873 | 193,399 | | | | | | |
| 27 | TC Pipelines LP | 9/25/2012 | CalRd | Bought | | 184,738 | 1,826 | 185,564 | | | | | | |
| 28 | TC Pipelines LP | 11/1/2012 | CalRd | Sold | | | | | 170,680 | 1,940 | 168,740 | | 3766 s/t loss | 2 |
| 29 | TC Pipelines LP | 12/3/2012 | NoCalRd | Bought | 167,980 | 166,079 | 1,901 | 167,980 | | | | | | |
| 30 | Buckeye Partners | 12/13/2012 | CalRd | Sold | | | | | 187,217 | 2,081 | 185,136 | -22,000 | -22,000 s/t loss | 3 |
| 31 | Buckeye Partners | 12/13/2012 | CalRd | Sold | | | | | 23,428 | 478 | 22,950 | -4,385 | -4,385 NotInNOR | 5 |
| 32 | TC Pipelines LP | 12/13/2012 | CalRd | Sold | | | | | 160,171 | 1,851 | 158,320 | -9,676 | -9,676 s/t loss | 1 |
| 33 | TC Pipelines LP | 12/13/2012 | CalRd | Sold | | | | | 24,122 | 492 | 23,630 | -3,601 | -3,601 s/t loss | 5 |
| 34 | Regency | 12/13/2012 | CalRd | Sold | | | | | 33,691 | 656 | 33,035 | -5,694 | -5,694 s/t loss | 5 |
| | | | | | | | | | | | | | | | |
| 1 | Kinder Morgan LP | 10/10/2013 | CalRd | Bought | | 79,802 | 1,018 | 80,820 | | | | | | |
| 2 | Transmontaigne Partner | 10/10/2013 | CalRd | Bought | | 81,379 | 1,081 | 82,460 | | | | | | |
| 3 | Kinder Morgan LP | 11/25/2013 | CalRd | Bought | 41,593 | 40,931 | 662 | 41,593 | | | | | | |
| 4 | Transmontaigne Partner | 11/25/2013 | NoCalRd | Bought | 43,702 | 42,997 | 705 | 43,702 | | | | | | |
| 5 | Atlas Pipeline LP | 12/18/2013 | CalRd | Sold | | | | | 164,299 | 1,936 | 162,350 | -28,659 | -28,659 s/t loss | 6 |
| 6 | Kinder Morgan LP | 12/18/2013 | CalRd | Sold | | | | | 116,632 | 1,356 | 115,268 | -3,177 | -3,177 s/t loss | |
| 7 | Transmontaigne Partner | 12/18/2013 | CalRd | Sold | | | | | 119,365 | 1,454 | 117,903 | -3,864 | -3,864 s/t loss | 2 |
| 8 | TC Pipelines LP | 2/14/2013 | CalRd | Bought | | 182,745 | 2,043 | 184,788 | | | | | | |
| 9 | Williams Partners | 2/14/2013 | CalRd | Bought | | 187,980 | 2,062 | 190,042 | | | | | | |
| 10 | Atlas Pipeline LP | 6/4/2013 | CalRd | Bought | | 188,863 | 2,145 | 191,009 | | | | | | |
| 11 | Sunoco Logistics LP | 6/4/2013 | CalRd | Bought | | 184,469 | 2,007 | 186,477 | | | | | | |
| 12 | TC Pipelines LP | 6/4/2013 | CalRd | Sold | | | | | 173,214 | 1,962 | 171,253 | -13,550 | -13,550 s/t loss | 4 |
| 13 | Williams Partners | 6/4/2013 | CalRd | Sold | | | | | 175,345 | 1,955 | 173,388 | -16,667 | -16,667 s/t loss | 4 |
| | | | | | | | | | | | | | | | |
| 1 | HollyFrontier | 1/13/2014 | CalRd | Bought | | 220,832 | 2,392 | 223,224 | | | | | | |
| 2 | BuckeyePtrs | 1/13/2014 | CalRd | Bought | | 174,846 | 1,901 | 176,747 | | | | | | |
| 3 | Sunoco | 1/13/2014 | CalRd | Sold | | | | | 220,490 | | 2,314 | 218,175 | 27,188 s/t gain | 7 |
| 4 | AtlasPipePtrs. | 1/21/2014 | NoCalRd | Bought | 169,486 | 167,523 | 1,963 | 169,486 | | | | | | |
| 6 | KinderMorgan | 1/21/2014 | NoCalRd | Bought | 124,912 | 123,499 | 1,413 | 124,912 | | | | | | |
| 6 | Transmontalgne | 1/21/2014 | NoCalRd | Bought | 129,863 | 128,333 | 1,530 | 129,863 | | | | | | |
| 7 | AtlasPipePtrs. | 1/21/2014 | NoCalRd | Bought | 169,486 | 167,523 | 1,963 | 169,486 | | | | | | |
| 8 | KinderMorgan | 1/21/2014 | NoCalRd | Bought | 124,912 | 123,499 | 1,413 | 124,912 | | | | | | |
| 9 | Transmontaigne | 1/21/2014 | NoCalRd | Bought | 129,863 | 128,333 | 1,530 | 129,863 | | | | | | |
| 10 | Transmontalgne | 6/19/2014 | CalRd | Sold | | | | | 129,300 | 1,539 | 127,761 | -2,388 | -2,388 s/t loss | 5 |
| 11 | Hollyfrontier | 7/22/2014 | CalRd | Sold | | | | | 197,977 | 2,197 | 195,780 | -27,460 | -27,460 s/t loss | 6 |
| 12 | KinderMorgan | 8/20/2014 | CalRd | Bought | | 145,382 | 1,700 | 147,082 | | | | | | |
| 13 | Kin/Mor Ptrs | 8/20/2014 | CalRd | Sold | | | | | 148,230 | 1,624 | 146,606 | | 21,768 s/t gain | 10 |
| 14 | Hollyfrontier | 8/25/2014 | NoCalRd | Bought | 228,915 | | 2,460 | 231,375 | | | | | | |
| 15 | BuckeyePtrs | 12/23/2014 | CalRd | Sold | | | | | 188,372 | 2,016 | 186,356 | | 19,145 s/t gain | 11 |

ML-Compton-00021600

|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  | 49,459 | 4,277,376 |  | 3,311,230 | 39,371 |  | -202,224 | -40,956 |  |  |
|  | No Mutual Fund Trades | 2009 |  |  |  |  |  |  |  |  |  |  |  |  |  |
| 1 | BlackRock Global Alt. FD | 2/23/2010 CallRd | Bought |  | 97,980 | 2,014 | 99,994 |  |  |  |  |  |  |  |  |
| 2 | American Euro Pacific | 2/23/2010 CallRd | Bought |  | 98,005 | 1989 | 99,994 |  |  |  |  |  |  |  |  |
| 3 | Columbia Seligmann | 2/23/2010 CallRd | Bought |  | 96,507 | 3,487 | 99,994 |  |  |  |  |  |  |  |  |
| 4 | Invesco | 5/20/2010 CallRd | Bought |  | 96,513 | 3,481 | 99,994 |  |  |  |  |  |  |  |  |
| 5 | BlackRockGlobal | 6/9/2010 NoCallRd | Bought | 49,994 | 48,989 | 1,005 | 49,994 |  |  |  |  |  |  |  |  |
| 6 | New Issue Invesco | 6/9/2010 NoCallRd | Bought | 49,994 | 48,255 | 1,739 | 49,994 |  |  |  |  |  |  |  |  |
|  | American Euro Pacific | 12/28/2010 Reinvest |  |  | 1,553 |  | 1,553 |  |  |  |  |  |  |  |  |
| 1 | Columbia Seligmann | 2/25/2011 CallRd | Bought |  | 48,241 | 1,753 | 49,994 |  |  |  |  |  |  |  |  |
|  | Columbia Seligmann | 2/25/2011 CallRd | Reinvst |  | 838 | reinvest | 838 |  |  |  |  |  |  |  |  |
| 2 | BlackRock Global Alt. FD | 3/15/2011 CallRd | Sold |  |  |  |  |  | 29,160 | NotDiscl | 29,160 |  | 2,348 l/t gain | 13 |
| 3 | Invesco Inter. Growth | 3/15/2011 CallRd | Sold |  |  |  |  |  | 67,750 | NotDiscl | 67,750 |  | 10,292 s/t gain | 10 |
| 4 | American Euro Pacific | 3/15/2011 CallRd | Sold |  |  |  |  |  | 30,891 | NotDiscl | 30,891 |  | 2,919 l/t gain | 13 |
| 5 | BlackRock Res & Comm | 3/28/2011 NoCallRd | Bought | 60,000 | 76,400 | 3,600 | 80,000 |  |  |  |  |  |  |  |  |
| 6 | Nuveen Muni Advantage | 8/16/2011 NoCallRd | Bought | 70,114 | 69,069 | 1,045 | 70,114 |  |  |  |  |  |  |  |  |
| 7 | Nuveen Prem. Muni 4 | 8/16/2011 NoCallRd | Bought | 61,983 | 60,990 | 993 | 61,983 |  |  |  |  |  |  |  |  |
| 8 | BlackRock Muni Int | 8/16/2011 NoCallRd | Bought | 72,473 | 71,410 | 1,063 | 72,473 |  |  |  |  |  |  |  |  |
| 9 | Wells Fargo Emerg Mkts | 8/23/2011 CallRd | Bought |  | 47,623 | 2,371 | 49,994 |  |  |  |  |  |  |  |  |
| 10 | Oppenheimer Develop | 8/23/2011 CallRd | Bought |  | 47,619 | 2,375 | 49,994 |  |  |  |  |  |  |  |  |
| 11 | American Euro Pacific | 8/23/2011 CallRd | Bought |  | 48,248 | 1,746 | 49,994 |  |  |  |  |  |  |  |  |
| 12 | Columbia Seligmann | 8/23/2011 CallRd | Bought |  | 48,246 | 1,748 | 49,994 |  |  |  |  |  |  |  |  |
|  | Wells Fargo Emerg Mkts | 9/26/2011 CANCELLED | Bought |  | n/a | n/a |  |  |  |  |  |  |  | CANCELLED | 10 |
| 13 | Oppenheimer Develop | 9/26/2011 NoCallRd | Bought | 49,994 | 48,117 | 1,877 | 49,994 |  |  |  |  |  |  |  |  |
| 14 | American Euro Pacific | 9/26/2011 NoCallRd | Sold |  |  |  |  | 45,707 | 45,707 | n/a | 45,707 | -5,875 | -5,875 s/t loss | 1 |
| 15 | American Euro Pacific | 9/26/2011 NoCallRd | Sold |  |  |  |  | 67,313 | 67,313 | n/a | 67,313 | -4,696 | -4,696 l/t loss | 19 |
| 16 | Nuveen Muni Advantage | 10/4/2011 CallRd | Sold |  |  |  |  | 71,701 | 1,064 | 70,637 |  | 502 s/t gain | 3 |
| 17 | Wells Fargo Emerg Mkts | 10/5/2011 NoCallRd | Bought | 54,163 | 51,779 | 2,384 | 54,163 |  |  |  |  |  |  |  |  |
| 18 | Invesco Inter. Growth | 10/18/2011 NoCallRd | Sold |  |  |  |  | 47,827 | 47,827 | n/a | 47,827 | 5,289 l/t gain | 17 |
| 19 | Invesco Inter. Growth | 10/18/2011 NoCallRd | Sold |  |  |  |  | 55,475 | 55,475 | n/a | 55,475 | 5,488 l/t gain | 16 |
| 20 | Invesco Inter. Growth | 10/18/2011 NoCallRd | Sold |  |  |  |  | 1,683 | 1,683 | reinvest | s/t loss | 10 |
| 21 | Columbia Seligmann | 11/16/2011 CallRd | Bought |  | 48,741 | 1253 | 49,994 |  |  |  |  |  |  |  |  |
| 22 | Nuveen Prem. Muni 4 | 11/16/2011 CallRd | Sold |  |  |  |  | 64,575 | 1,020 | 63,555 |  | 1,555 s/t gain | 3 |
| 23 | BlackRockMuni Int | 11/16/2011 CallRd | Sold |  |  |  |  | 74,202 | 1,083 | 73,119 |  | 629 s/t gain | 3 |
|  | Wells Fargo Emerg Mkts | 12/11/2011 n/a | Reinvest |  | 493 |  | 493 |  |  |  |  |  |  |  |  |
|  | Wells Fargo Emerg Mkts | 12/16/2011 n/a | Reinvest |  | 2,307 |  | 2,307 |  |  |  |  |  |  |  |  |
|  | Columbia Seligmann | 12/20/2011 n/a | Reinvest |  | 63 |  | 63 |  |  |  |  |  |  |  |  |
|  | Columbia Seligmann | 12/20/2011 n/a | Reinvest |  | 10,311 |  | 10,311 |  |  |  |  |  |  |  |  |
| 1 NewIssue | Virbus Emer. Mkts. | 2/14/2012 NoCallRd | Bought | 49,994 | 47,614 | 2,380 | 49,994 |  |  |  |  |  |  |  |  |
| 2 | Eaton Vance Muni Opp. | 3/7/2012 NoCallRd | Bought | 22,852 | 22,412 | 440 | 22,852 |  |  |  |  |  |  |  |  |
| 3 | Eaton Vance Muni Opp. | 3/8/2012 NoCallRd | Bought | 87,926 | 86,822 | 1,104 | 87,926 |  |  |  |  |  |  |  |  |
| 4 NotUnsol | ColumbiaSel | 3/21/2012 CallRd | Sold |  |  |  |  | 107,120 | NotDiscl |  |  | 22,853 l/t gain | 25 |
| 5 | ColumbiaSel | 4/5/2012 NoCallRd | Sold |  |  |  |  | 68,880 | 68,880 | NotDiscl |  | 3,990 l/t gain | >14 |
| 6 NewIssue | Prudential Sh. HiYield | 4/25/2012 NoCallRd | Bought | 100,000 | 95,500 | 4,500 | 100,000 |  |  |  |  |  |  |  |  |
| 7 NOTUNSOL | BlackRock Global Alt. FD | 4/27/2012 NoCallRd | Bought | 101,952 | 99,417 | 2,535 | 101,952 |  |  |  |  |  |  |  |  |
| 8 | Pimco Commodity | 4/30/2012 NoCallRd | Bought | 59,994 | 57,299 | 2,695 | 59,994 |  |  |  |  |  |  |  |  |
| 9 | BlkRockRes | 4/30/2012 NoCallRd | Sold |  |  |  |  | 56,866 | 56,866 | 909 | 55,957 | -22,649 | -22,649 l/t loss | 13 |
| 10 | BlkRockGlobal | 7/25/2012 NoCallRd | Sold |  |  |  |  | 111,120 | 111,120 | NotDiscl |  | 4,763 l/t gain | >24 |
| 11 | WellsFargo | 7/25/2012 NoCallRd | Sold |  |  |  |  | 94,107 | 94,107 | NotDiscl |  | -11,885 | -11,885 s/t loss | 10 |

Inpurchase

ML-Compton-00021601

| # | Security | Date / Type | Action | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12 NewIssue | BlackRockMuni Term | 8/28/2012 NoCallRd | Bought | 250,000 | 238,750 | 11,250 | 250,000 | | | | | | |
| 13 | Virtus Emer. Mkts. | 9/25/2012 CallRd | Bought | | 96,223 | 3,771 | 99,994 | | | | | | |
| 14 | Columbia Seligmann | 9/25/2012 CallRd | Bought | | 96,504 | 3,490 | 99,994 | | | | | | |
| 15 | BlackRock Res & Comm | 9/25/2012 CallRd | Bought | | 88,140 | 1,235 | 89,375 | | | | | | |
| 16 NotUnsol | Mainstay Defined Term | 9/25/2012 CallRd | Bought | | 198,794 | 2,297 | 201,091 | | | | | | |
| 17 | Virtus Emer. Mkts. | 9/25/2012 CallRd | Bought | | 96,223 | 3,771 | 99,994 | | | | | | |
| 18 | Prudential Sh. HiYield | 10/1/2012 CallRd | Bought | | 201,217 | 2,314 | 203,531 | | | | | | |
| 19 | Mainstay Defined Term | 10/1/2012 CallRd | Bought | | 99,994 | 1,253 | 101,247 | | | | | | |
| 20 | BlackRockMuni Term | 10/1/2012 CallRd | Bought | | 115,073 | 1,327 | 116,400 | | | | | | |
| 21 | Virtus Emer. Mkts. | 10/1/2012 CallRd | Bought | | 48,137 | 1,857 | 49,994 | | | | | | |
| 22 | Columbia Seligmann | 10/1/2012 CallRd | Bought | | 48,745 | 1249 | 49,994 | | | | | | |
| 23 | BlackRock Res & Comm | 11/7/2012 CallRd | Bought | | 98,560 | 1,477 | 100,037 | | | | | | |
| 24 | Virtus Emer. Mkts. | 11/26/2012 CallRd | Bought Cancelled | n/a | | | | | CANCELLED | | | n/a | | |
| 24 | Pimco Commodity | 11/26/2012 CallRd | Sold | | | | | 58,858 NotDisd | 58,858 | -1,140 | -1,140 s/t loss | 7 |
| | Pimco Commodity | 11/26/2012 CallRd | Sold | | | | | 7 NotDisd | | | 0 | 2 |
| | Pimco Commodity | 11/26/2012 CallRd | Sold | | | | | 6 NotDisd | | | 0 | 2 |
| | Pimco Commodity | 11/26/2012 CallRd | Sold | | | | | 345 NotDisd | | | -6 s/t loss | 2 |
| 25 | Oppenheimer | 11/26/2012 CallRd | Sold | | | | | 109,111 NotDisd | 109,111 | | 7,096 l/t gain | 14 |
| 26 | Virtus Emer. Mkts. | 12/3/2012 NoCallRd | Bought | 149,992 | 145,914 | 4,078 | 149,992 | | | | | |
| | Virtus Emer. Mkts. | 12/4/2012 cancelled 11/3 | n/a | n/a | n/a | | | 170,478 | 2,389 | 168,089 | -21,344 | -21,344 s/t loss | 2 |
| 27 NewIssue | NuveenInterMuniTerm | 12/5/2012 NoCallRd | Bought | 300,000 | 286,500 | 13,500 | 300,000 | | | | | |
| 28 | BlackRockRes | 12/13/2012 CallRd | Sold | | | | | | | | | |
| 29 | Columbia Seligmann | 12/14/2012 NoCallRd | Bought | 99,994 | 97,505 | 2,489 | 99,994 | | | | | |
| | Columbia Seligmann | 12/20/2012 n/a | reinvest | | 15,329 | | 15,329 | | | | | |
| | Columbia Seligmann | 12/20/2012 n/a | reinvest | | 6,711 | | 6,711 | | | | | |
| | Virtus Emer. Mkts. | 12/20/2012 n/a | n/a | reinvest | | | | n/a | | | | |

| # | Security | Date / Type | Action | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | BlackRock Global | 1/17/2013 CallRd | Sold | | | | | n/a | | | | 0.34 s/t gain | 1 |
| 2 | BlackRock 2020 | 4/1/2013 NoCallRd | Bought | 231,669 | 228,749 | 2,919 | 231,669 | | | | | |
| 3 | BlkRkMunTarg | 4/1/2013 NoCallRd | Sold | | | | | 331,634 | 331,634 | 3,837 | 327,791 | -38,093 | -38,093 s/t term |
| 4 | BlackRock 2020 | 4/2/2013 NoCallRd | Bought | 106,862 | 105,352 | 1500 | 106,862 | | | | | |
| 5 | BlackRock 2018 | 5/24/2013 CallRd | Bought | | 325,735 | 4058 | 329,794 | | | | | |
| | Columbia Seligmann | 5/23/2013 n/a | Reinvest | | | 33 reinvest | 33 | | | | | |
| 6 | Western Asset Muni | 6/4/2013 CallRd | Bought | | 217,299 | 2,637 | 219,936 | | | | | |
| 7 | Invesco MuniGpTrust | 6/4/2013 CallRd | Bought | | 196,486 | 2,710 | 199,196 | | | | | |
| 8 | Pru Global HiYield | 6/4/2013 CallRd | Bought | | 266,524 | 3,305 | 269,830 | | | | | |
| 9 | NuveenInterMuniTerm | 6/4/2013 CallRd | Bought | | 203,356 | 2,768 | 206,125 | | | | | |
| 10 | PruSrtDur | 6/4/2013 CallRd | Sold | | | | | 191,936 | 3,487 | 189,604 | -13,932 | -13,932 s/t loss | 8 |
| 11 | PruSrtDur | 6/4/2013 CallRd | Sold | | | | | 95,968 (inabove) | 94,802 | -5197 | -5197 l/t loss | 14 |
| 12 | MainStayMun | 6/4/2013 CallRd | Sold | | | | | 274,791 | 3,375 | 271,401 | -30,944 | -30,944 s/t loss | 3 |
| 13 | NuveenInterMuniTerm | 6/4/2013 CallRd | Sold | | | | | 257,174 | 3,475 | 253,683 | -46,311 | -46,311 l/t loss | 6 |
| | Virtus Emer. Mkts. | 6/20/2013 n/a | Reinvest | | | n/a | | | | | | |
| 14 | EatonVanceMun | 8/7/2013 CallRd | Sold | | | | | 90,910 | 1,312 | 89,596 | -21,199 | -21,199 l/t loss | 17 |
| 15 | Columbia Seligmann | 8/15/2013 NoCallRd | Sold | | | | | 281,982 | 281,982 NotDisd | 281,982 | | 9,860 s/t gain | 8 |
| 16 | Columbia Seligmann | 8/15/2013 CallRd | Sold | | | | | 120,768 | 120,768 NotDisd | 120,768 | | 9,603 l/t gain | 20 |
| 17 | IvyScience | 8/15/2013 NoCallRd | Bought | 399,994 | 390,608 | 9,986 | 399,994 | | | | | |
| 18 | NuveenInterMuniTerm | 9/24/2013 CallRd | Bought | | 172,462 | 2,505 | 174,973 | | | | | |
| 19 | Eaton Vance Muni Opp. | 9/24/2013 CallRd | Bought | | 215,148 | 2,868 | 218,022 | | | | | |
| 20 | Invesco MuniTrst | 9/24/2013 CallRd | Sold | | | | | 174,782 | 2,525 | 172,227 | -26,982 | -26,982 s/t loss | 3 |
| 21 | NuveenInterMuniTerm | 9/24/2013 CallRd | Sold | | | | | 171,691 | 2,499 | 169,192 | -36,947 | -36,947 s/t loss | 3 |
| 22 | Prudential Sh. HiYield | 11/25/2013 NoCallRd | Bought | 150,000 | 143,300 | 6,700 | 150,000 | | | | n/a | n/a | **IPO11/20/2013 |
| 23 | PruSht HiYield | 11/25/2013 NoCallRd | Bought | 270,570 | 267,258 | 3,311 | 270,570 | | | | | |
| 24 | PruGlobhiYld | 11/25/2013 NoCallRd | Sold | | | | | 252,150 | 252,150 | 3,128 | 248,956 | -20,878 | -20,878 s/t loss | 6 |
| | Prudential Sh. HiYield | 11/27/2013 NoCallRd | CANCEL | | n/a | n/a | | | | | | 11/25 trade cancelled |
| 25 | BlackRock Muni Int | 12/18/2013 CallRd. | Bought | | 296,598 | 3,911 | 300,510 | | | | | |

ML-Compton-00021602

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 26 | BisRk2020 | 12/18/2013 CallRd | Sold | | | | | | 215,567 | 2,715 | 212,846 | -18,827 | -18,827 s/t loss | 8 |
| 27 | BiaRk2020 | 12/18/2013 CallRd | Sold | | | | | | 99,182 | 1,249 | 97,901 | -8956 | -8956 s/t loss | 8 |
| | | | | | | | | | | | | | |
| 1 | VirtusEmlMkts | 1/24/2014 CallRd | Sold | | | | | | 317,377 notdisd. | | 317,377 | -35,947 | -35,947 l/t loss | 25 |
| 2 | NuveenIntDur | 4/2/2014 CallRd | Bought | | 207,305 | 2,902 | 210,207 | | | | | | | |
| 3 | WesternAsset | 4/2/2014 CallRd | Sold | | | | | | 218,639 | 2,647 | 215,892 | -4,070 | -4,070 s/t loss | 10 |
| 4 NotUnsol | Halostay | 6/23/2014 CallRd | Bought | | 352,038 | 4,282 | 356,320 | | | | | | | |
| 5 | BIsRk2018 | 6/23/2014 CallRd | Sold | | | | | | 6,352 | 221 | 6131 | -470 | -470 l/t loss | 13 |
| 6 NotUnsol | BIaRk2018 | 6/23/2014 CallRd | Sold | | | | | | 310,524 | 3,909 | 306,615 | -16,600 | -16,600 l/t loss | 13 |
| 7 | BIaRk2020 | 7/22/2014 CallRd | Bought | | 248,098 | 3,148 | 251,246 | | | | | | | |
| 8 | BIaRk 2018 | 12/23/2014 CallRd | Bought | | 157,848 | 2,121 | 159,969 | | | | | | | |
| 9 | PruShtDuration | 12/23/2014 CallRd | Sold | | | | | | 240,594 | 3,085 | 237,509 | -33,077 | -33,077      l/tloss | 13 |
| | | | | | | 7,549,277 | 166,566 | 7,715,871 | 4,985,043 | 43,929 | | -426,019 | | |
| | | | | | | | | | | | | | |
| 1 | Health Care Reit | 8/24/2010    NoCallRd | Bought | 71,882 | 71,024 | 858 | 71,882 | | | | | | | |
| | | | | | | | | | | | | | |
| 1 | Health Care Reit | 4/25/2011 CallRd | Sold | | | | | | 85,488 | 954 | 84,534 | | 12,638 s/t gain | 8 |
| 2 | Health Care Reit | 7/19/2011 NoCall Rd | Bought | 53,479 | 52,777 | 702 | 53,479 | | | | | | | |
| 3 | HealthCare Reit | 7/25/2011 NoCallRd | Bought | 16,153 | 15,842 | 311 | 16,153 | | | | | | | |
| | | | | | | | | | | | | | |
| 1 | Ventas REIT | 1/18/2012 NoCallRd | Bought | 56,240 | 55,520 | 720 | 56,240 | | | | | | | |
| 2 | HlthCareREIT | 1/18/2012 NoCallRd | Sold | | | | | 54,880 | 54,880 | 716 | 54,164 | | 672 s/t gain | 6 |
| 3 | Ventas REIT | 1/18/2012 NoCallRd | Bought | 16,973 | 16,656 | 317 | 16,973 | | | | | | | |
| 4 | HlthCareREIT | 1/18/2012 NoCallRd | Sold | | | | | 16,464 | 16,464 | 315 | 16,149 | -327 | -327 s/t loss | 6 |
| 5 | Ventas REIT | 5/15/2012 NoCallRd | Sold | | | | | 17,571 | 17,571 | 328 | 17,243 | | 257 s/t gain | 4 |
| 6 | Ventas REIT | 5/15/2012 NoCallRd | Sold | | | | | 58,570 | 58,570 | 740 | 57,830 | | 1,577 s/t gain | 4 |
| | | | | | | | | | | | | | |
| 1 | Ventas REIT | 10/21/2013 CallRd | Bought | | 129,395 | 1,489 | 130,886 | | | | | | | |
| 2 | Ventas REIT | 12/18/2013 CallRd | Sold | | | | | | 112,967 | 1,350 | 111,610 | -19,280 | -19,280 s/t loss | 2 |
| | | | | | | | | | | | | | |
| 1 | Ventas | 2/20/2014 NoCallRd | Bought | 125,343 | 123,900 | 1,443 | 125,343 | | | | | | | |
| | | | | | | | 5,480 | 470,956 | 345,940 | 4,403 | | -19,607 | | |
| | | | | | | | | | | | | | |
| 1 | Basket Clrm BAC | 7/27/2012 CallRd | Bought | 150,000 | 147,000 | 3,000 | 150,000 | | | | | | | |
| 2 | SPDR GOLD TRUST | 11/7/2012 CallRd | Bought | | 99,816 | 1,168 | 100,984 | | | | | | | |
| 1 | SPDR GOLD TRUST | 7/1/2013 NoCallRd | Sold | | | | | | | 931 | 71,024 | -29,704 | -29,704 s/t loss | 8 |
| 2 | SPDR GOLD TRUST | 8/6/2013 NoCallRd | Bought | 75,373 | 74,421 | 952 | 75,373 | | | | | | | |
| 1 | SX5E16.8% | 1/30/2014 NoCallRd | Bought | 300,000 | 294,000 | 6,000 | 300,000 | | | | | | | |
| 2 | KKR | 5/23/2014 CallRd | Bought | | 139,680 | 1,777 | 141,457 | | | | | | | |
| 3 | SPDRGold | 5/29/2014 OFFICE VISIT | Sold | | | | | | 72,517 | | | | | |
| 4 | MSCI-10.92% | 7/24/2014 NoCallRd | Bought | 194,250 | 190,365 | 3,885 | 194,250 | | | | | | | |
| | Bskt Clrm BAC | 7/25/2014 Redeem | Redeem | | | | | | | | | | 44,250 l/t gain | 24 |
| 5 | BlackstoneGrp | 11/21/2014 CallRd | Bought | | 164,999 | 1,942 | 166,941 | | 72,517 | | | -29,704 | 14,546 | |
| | | | | | | | 18,724 | 1,129,005 | | | | | | |

|  |  |  |
|---|---|---|
| $29,893,377 | $59,304,866 | $22,321,436 |

1,032,339 Commissions/HkUp
37,496 ExactTarget purchases

309,657 Commissions
95,320 Bond .005%
74,996 Exact Target sold

ML-Compton-00021603

| | | | | | |
|---|---|---|---|---|---|
| Commissions from Purchases | | | | 1,069,835 | |
| Commissions from Sales | | | | 479973 | |
| Total Commissions | | | | 1,549,808 | |
| (Includes mk/up, mk/down) | | | | | |

| # | | Firm | Date | Type | | | Amt1 | Amt2 | Amt3 |
|---|---|---|---|---|---|---|---|---|---|
| 176 NotUnsol | Exact Target | 9/19/2012 NoCallRd | Sold | | | | 6,151,979 | 6,151,979 | 13,316 |
| 177 | Exact Target | 9/20/2012 CallRd | Sold | | | | | 2,153,774 | -4,630 |
| 178 | Exact Target | 9/21/2012 CallRd | Sold | | | | | 1,837,970 | 3,944 |
| 179 NotUnsol | Exact Target | 9/24/2012 NoCallRd | Sold | | | | 2,406,691 | 2,406,691 | 5,202 |
| 180 | Exact Target | 9/25/2012 CallRd | Sold | | | | | 2,199,596 | 4,735 |
| 181 | Exact Target | 10/1/2012 CallRd | Sold | | | | | 1,397,662 | 2,865 |
| 182 NotUnsol | Exact Target | 10/2/2012 NoCallRd | Sold | | | | 1,347,481 | 1,347,481 | 2,806 |
| 183 | Exact Target | 10/3/2012 CallRd | Sold | | | | | 890,302 | 1,865 |
| 184 | Exact Target | 10/4/2012 CallRd | Sold | | | | | 848,985 | 1,793 |
| 185 NotUnsol | Exact Target | 10/5/2012 NoCallRd | Sold | | | | 968,870 | 968,870 | 2,021 |
| 186 NotUnsol | Exact Target | 10/8/2012 NoCallRd | Sold | | | | 1,636,863 | 1,636,863 | 3,460 |
| 187 NotUnsol | Exact Target | 10/9/2012 NoCallRd | Sold | | | | 1,489,420 | 1,489,420 | 3,194 |
| 188 | Exact Target | 10/11/2012 CallRd | Sold | | | | | 1,467,531 | 3,206 |
| 189 | Exact Target | 10/12/2012 CallRd | Sold | | | | | 1,840,914 | 3,990 |
| 190 NotUnsol | ExactTarget | 10/15/2012 NoCallRd | Sold | | | | 957,004 | 957,004 | 2,170 |
| 191 NotUnsol | ExactTarget | 10/16/2012 NoCallRd | Sold | | | | 2,909,912 | 2,909,912 | 6,655 |
| 192 | ExactTarget | 10/17/2012 CallRd | Sold | | | | | 1,757,168 | 4,000 |
| 193 | ExactTarget | 10/18/2012 NoCallRd | Sold | | | | 2,256,557 | 2,256,557 | 5,144 |
| | | | | | | | | 34,508,679 | 74,996 |
| | | | | | | | | | |
| 194 | ExactTarget | 10/19/2012 CallRd | Bought | | | 2,231,710 | 5,000 | | |
| 195 NotUnsol | ExactTarget | 10/22/2012 NoCallRd | Bought | 985,084 | 985,084 | 2,171 | | | |
| 196 NotUnsol | ExactTarget | 10/23/2012 NoCallRd | Bought | 251,421 | 251,421 | 548 | | | |
| 197 | ExactTarget | 10/26/2012 CallRd | Bought | | 1,430,510 | 3,025 | | | |
| 198 NotUnsol | ExactTarget | 10/31/2012 NoCallRd | Bought | 1,956,779 | 1,956,779 | 4,172 | | | |
| 199 | ExactTarget | 11/1/2012 CallRd | Bought | | 1,936,885 | 4,000 | | | |
| | ExactTarget | 11/2/2012 | | | NoTransactiononthisDate | | | | |
| 200 | ExactTarget | 11/5/2012 NoCallRd | Bought | 5,278,006 | 5,278,006 | 11,086 | | | |
| | ExactTarget | 11/6/2012 NoCallRd | Bought | | CANCELLED | CANCELLED | | | |
| | ExactTarget | 11/6/2012 CallRd | Bought | | CANCELLED | CANCELLED | | | |
| 201 NotUnsol | ExactTarget | 11/9/2012 NoCallRd | Bought | 2,425,020 | 2,425,020 | 5,232 | | | |
| 202 NotUnsol | ExactTarget | 11/9/2012 NoCallRd | Bought | 1,012,503 | 1,012,503 | 2,192 | | | |
| | | | | 17,507,918 | 37,496 | 17,545,414 | | | |

ML-Compton-00021604

③

2009-2014 Purchases/Sales and Allocation At Beginning/End of Year

| | Cash | Bonds | Equities | Mutual | Total Assets | MTD Purchases | MTD Sales | YTD Investments Purchased | YTD Investments Sold | Realized Short Term Gain/Loss | Realized Long Term Gain/Loss | Unrealized Gain/Loss | Income Transferred to me | Add'l $$ Transferred to me |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/31/2010 | 1,204,401 | 4,694,669 | 1,068,407 | 218 | | | | | | | | | | |
| 12/31/2010 | 576,144 | 3,455,975 | 2,085,012 | | 576,464 6,772,101 | | | 7,225,007 | 6,429,083 | -19,429 | | 134,148 | 259,440 | |
| 1/1/2011 | 576,144 | 3,455,975 | 2,085,012 | | 576,464 6,722,101 | | | | | | | | | |
| 12/31/2011 | 542,742 | 3,582,199 | 2,740,412 | | 639,330 7,949,593 | | | 6,934,932 | 2,665,786 | -61,863 | -580 | 168,482 | 234,418 | 342,500 |
| **Infusion of new $1.5329 M at end of 6/2011 | | | | | | | | | | | | | | |
| 1/1/2012 (before ExactTarget sells) | 542,742 | 3,582,199 | 2,740,412 | | 639,330 7,904,684 | | | | | | | | | |
| 8/31/2012 (before ExactTarget sells) | | | | | | | | | | | | | | |
| Acct. 8268 | 455,508 | 383,869 | 209,039 | 298,424 | 1,378,292 | | | | | | | | | |
| Acct. 1050 | 60,931 | 3,238,055 | 2,540,909 | 620,776 | 6,460,671 7,838,963 | | | 5,933,911 | 6,275,499 | 8,727 | 33,945 | 413,886 | | |
| 9/30/2012 | | | | | | | | | | | | | | |
| Acct. 8268 | 456,353 | 405,445 | 218,682 | 301,328 | 1,381,810 | | | | | | | | | |
| Acct. 1050 | 11,226,114 | 3,243,355 | 26,399,984 | 1,112,165 | 41,981,619 43,363,429 | 3,814,090 | 15,019,109 | | | 32,818 | 33,945 | 322,189 | 210,556 | 51,109 |
| --ExactTarget Sales | 14,721,819 | | | | | | | | | | | | | |
| --new equities (bought 9/24-25 w/ET$) | | | 3,322,701 | 491,389 | | 3,814,015 (Bought w/ET $$) | 297,349 | | | | | | | |
| --ExactTarget remaining | | | 20,912,129 | | | | | | | | | | | |
| 10/31/2012 | 26,008,077 | 4,226,903 | 10,030,388 | 1,914,658 | | 6,243,432 1,332,917 (non-ET) | 20,638,146 903,153 | | | -19,158 | 31,000 | 449,132 | | |
| 12/31/2012 | | | | | | | | | | | | | | |
| Acct. 8268 | 377,373 | 233,600 | 67,760 | 202,804 | 881,538 | | | 829,166 | 799,268 | | | | | |
| Acct. 1050 | 12,936,792 | 4,706,404 | 2,851,407 | 1,843,215 | 22,337,819 | | | 23,005,765 | 43,284,913 | | | 411,159 | 256,938 | 440,000 |
| Acct. 1463 | | | 1,276,987 | | 1,276,987 24,496,344 | | | | | | | | | |
| **Infusion of new $3.8 Million in new investments during 9/2012 from Exact Target Sales | | | | | | | | | | | | | | |
| 1/1/2013 | | | | | | | | | | | | | | |
| Acct. 8268 | 377,373 | | 2,362,306 | 1,313,073 | 4,102,939 | | | | | | | | | |
| Acct. 1050 | 8,487,925 | 4,696,804 | 1,015,717 | | 14,200,447 | | | | | | | | | |
| Acct. 1463 | | | 1,276,987 | | 1,276,987 19,580,373 | | | | | | | | | |
| 12/31/2013 | | | | | | | | | | | | | | |
| Acct. 8268 | 265,698 | | 2,852,324 | 998,470 | 4,116,493 | | | | | | | | | |
| Acct. 1050 | 31,362 | 9,466,499 | 113,660 | 1,477,790 | 11,089,312 | | | 15,052,370 | 9,155,259 | -604,972 | 24,966 | 555,440 | 335,938 | 40,000 |
| Acct. 1463 | 523,327 | | 3,027,392 | 156,000 | 3,706,719 10,912,524 | | | 3,142,005 18,194,375 | 2,223,392 11,378,651 | 3,115 | 135,743 | 428,370 983,810 | | 4,500,000 1,300,000 3,000,000 |
| 1/1/2014 | | | | | | | | | | | | | | |
| Acct. 8268 | 341,711 | | 2,893,487 | 1,011,331 | 4,246,530 | | | | | | | | | |
| Acct. 1050 | 100,933 | 9,712,149 | | 1,534,005 | 11,324,001 | | | | | | | | | |
| Acct. 1463 | 33,928 | | 3,451,817 | 144,675 | 3,630,420 19,197,951 | | | | | | | | | |
| 12/31/2014 | | | | | | | | | | | | | | |
| Acct. 8268 | 3,050,005 | | 1,971,471 | 619,576 | 5,641,061 | | | 6,416,182 | 6,863,200 | 72,698 | 106,301 | 1,202,279 | 532,410 | 40,000 |

ML-Compton-00021605

| Acct. 1050 | | 132,565 | 10,429,094 | | 1,749,419 | 12,301,079 | | 2,425,482 | 3,165,209 | | 58,843 | 239,635 |
| Acct. 1463 | 3,684,284 | | | 2,234,286 | 130,000 | 6,049,370 | | 194,250 | 194,250 | | | 1,441,914 |
| Acct. 5311 | | | | | | 557,712 | | 9,035,914 | 10,322,659 | | | |
| | | | | | | 24,549,222 | | | | | | |

**Transferred $5.0 from Exact Target Account on 5/23/2014 to-1463 &-8268

2/27/2015

| Acct. 8268 | 2,856,888 | | | 2,029,495 | 647,939 | 5,534,323 | | | | | | 520,840 |
| Acct. 1050 | | 142,454 | 10,408,817 | | 1,784,550 | 12,335,821 | | | | | | 880,714 |
| Acct. 1463 | 3,706,114 | | | 2,257,005 | 133,500 | 6,096,619 | | | | | | 251,013 |
| Acct. 5311 | 0.32 | 592,072 | | | | 592,072 | | | | | | 63,487 |
| | | | | | | 24,558,834 | | | | | -164,101 | 1,716,054 |

| | | | | | | | | | | | -164,101 | 1,716,054 | 1,829,700 | 913,609 (EXCLUDES TAX AMOUNTS) |

ML-Compton-00021606



## MUTUAL FUNDS

| Investment | CUSIP | Purchase Date | Cost (no Comm) | Comm. | Total Investment | Date Sold | Sales | Comm | Losses | Gain/Loss ST/LT | Months | Interest/Dividend | 2010 | 2011 | 2012 | 2013 | 2014 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 BlackRock Credit | | Transferred | | | | | | | | | | | | | | | |
| 2 American Euro Pacific | 298706102 1.98% | 2/23/2010 | 98,005 | 1,989 | 99,994 | 3/15/2011 | 30,691 NotDiscl | | | 2,919 l/t gain | 13 | 1553 | | | | | |
| American Euro Pacific | 298706102 | 2/23/2010 xxx | | xxx | | 9/26/2011 | 67,313 NotDiscl | | -4,696 | -4,696 l/t loss | 19 | | | | | | |
| American Euro Pacific | 298706102 | 12/28/2010 | 1552 reinvest | | 1552 | 9/26/2011 | | NotDiscl | -244 | -244 s/t loss | 9 | | | | | | |
| American Euro Pacific | 298706102 3.49% | 8/23/2011 | 48,248 | 1,746 | 49,994 | 9/26/2011 | 45,707 NotDiscl | | -5,619 | -5,619 s/t loss | 1 | | | | | | |
| 3 BlackRock Global | 09251T103 2.01% | 2/23/2010 | 97,980 | 2,014 | 99,994 | 3/15/2011 | 29,160 NotDiscl | | | 2,348 l/t gain | 13 | 1894 | 2514 | | | | |
| BlackRock Global | 09251T103 2.01% | 2/23/2010 xxxx | | xxx | | 7/25/2012 | 75,835 NotDiscl | | | 2,654 l/t gain | 29 | | | | | | |
| NewIssue BlackRock Global | 09251T103 2.01% | 6/9/2010 | 48,989 | 1005 | 49,994 | 7/25/2012 | 35,270 NotDiscl | | | 2,109 l/t gain | 24 | | | 1553 | | |
| NewIssue BlackRock Global | 09251T103 2.49% | 4/27/2012 | 99,412 | 2,535 | 101,947 | | | | | | | | | | 699 | 1710 | 3049 |
| 4 Columbia Seligmann | 2161sh    MFund | 2/23/2010 | 96,507 | 3,487 | 99,994 | 3/21/2012 | 107,115 NotDiscl | | | 22,853 l/t gain | 25 | | | | | | |
| Columbia Seligmann | 403 sh | 2/23/2010 | | (inabove) | | 4/5/2012 | 19,626 NotDiscl | | | 4,112 l/t gain | 26 | | | | | | |
| NewIssue Columbia Seligmann | 19842W200 | 2/25/2011 | 48,241 | 1,753 | 49,994 | 4/5/2012 | 49,058 NotDiscl | | -122 | -122 l/t loss | 14 | | | | | | |
| Columbia Seligmann | 19842W200 | 2/25/2011 | 838 not sold | | 838 | 8/15/2013 | 789 NotDiscl | | -48 | -48 l/t loss | 30 | | | | | | |
| 5 Columbia Seligmann | | 8/23/2011 | 48,246 | 1,748 | 49,994 | | | | | | | | | | | | |
| Columbia Seligmann | 19766H429 | 11/16/2011 | 48,741 | 1,253 | 49,994 | 8/15/2013 | 51,512 NotDiscl | | | 1,513 l/t gain | 20 | | | | | | |
| Columbia Seligmann | 19766H429 | 12/20/2011 | 43 reinvest | | 43 | 8/15/2013 | 46 NotDiscl | | | 3 l/t gain | 20 | | | | | | |
| Columbia Seligmann | 19766H429 | 12/20/2011 | 10,311 reinvest | | 10,311 | 4/5/2012 | 11,658 NotDiscl | | | 1,347 l/t gain | 20 | | | | | | |
| Columbia Seligmann | 19766H429 | 9/25/2012 | 96,504 | 3,490 | 99,994 | 8/15/2013 | 100,702 NotDiscl | | | 708 s/t gain ($3490) | | | | | | | |
| Columbia Seligmann | 19766H429 | 10/1/2012 | 48,745 | 1,249 | 49,994 | 8/15/2013 | 51,326 NotDiscl | | | 1,242 s/t gain | 8 | | | | | | |
| Columbia Seligmann | 19766H429 | 12/14/2012 | 97,505 | 2,489 | 99,994 | 8/15/2013 | 105,160 NotDiscl | | | 5,133 s/t gain | 8 | | | | | | |
| Columbia Seligmann | 19766H429 | 12/20/2012 | 15,329 reinvest | | 15,329 | 8/15/2013 | 17,186 NotDiscl | | | 1,061 s/t gain | 8 | | (long term gain/reinvested) | | | | |
| Columbia Seligmann | 19766H429 | 12/20/2012 | 6,711 reinvest | | 6,711 | 8/15/2013 | 7,524 NotDiscl | | | 813 s/t gain | 8 | | (short term gain/reinvested) | | | | |
| Columbia Seligmann | 19766H429 | 5/23/2013 | 33 reinvest | | 33 | 8/15/2013 | 34 NotDiscl | | | 2 s/t gain | 3 | | | | | | |
| 6 Invesco Inter. Growth | 8882102 3.48% | 5/20/2010 | 96,513 | 3,481 | 99,994 | 3/15/2012 | 67,750 NotDiscl | | | 10,292 s/t gain | 10 | 1737 | | | | | |
| Invesco Inter. Growth | 8882102 | 5/20/2010 n/a | | n/a | | 10/18/2011 | 47,827 NotDiscl | | | 5,289 l/t gain | 17 | | | | | | |
| NewIssue Invesco Inter. Growth | 8882102 | 6/9/2010 | 48,255 | 1,739 | 49,994 | 10/18/2011 | 55,475 NotDiscl | | | 5,403 l/t gain | 16 | | | | | | |
| Invesco Inter. Growth | 8882102 | 12/10/2010 Re-inv | | n/a | | 10/18/2011 | 1,683 NotDiscl | | -75 | -75 s/t loss | 10 | | | | | | |
| BlackRockHuniTerm | 09255FP105 4.50% | 8/16/2011 | 71,410 | 1,063 | 72,473 | 11/16/2011 | 74,202 | 1,083 | | 629 s/t gain | 3 | | 1072 | | | | |
| 7 BlackRockHuniTerm | 09255FP105 | 8/28/2012 | 238,250 | 11,750 | 250,000 | 4/1/2013 | 227,692 | 2,635 | -24,587 | -24,587 s/t loss | 8 | | | | | | 2355 |
| NewIssue BlackRockHuniTerm | 09255FP105 | 10/1/2012 | 115,073 | 1,327 | 116,405 | 4/1/2013 | 103,941 | 1,202 | -13,505 | -13,505 s/t loss | 6 | | | | 1355 | 2355 | 1177 |
| 8 BlackRock Muni Int | 09253X102 | 12/18/2013 | 296,598 | 3,911 | 300,509 | 5/0 3/30/20 xxxx | | xxxx | | xxx | xxx | xx | | | | | | 18,216 |
| NewIssue 9 BlackRock Res & Comm | ClosedEnd 4.50% | 3/28/2011 | 76,400 | 3,600 | 80,000 | 4/30/2012 | 56,866 | 909 | -22,649 | -22,649 l/t loss | 13 | | 1400 | | | | |
| BlackRock Res & Comm | 09257A108 | 9/25/2012 | 88,140 | 1,235 | 89,381 | 12/13/2012 | 77,575 | 1,103 | -11,805 | -11,805 s/t loss | 3 | | | | | | |
| BlackRock Res & Comm | 09257A108 | 11/7/2012 | 98,560 | 1,477 | 100,037 | 12/13/2012 | 90,504 | 1,286 | -9,538 | -9,538 s/t loss | 1 | | | | | | |
| 10 Nuveen Muni Advantage | 67062H106 | 8/16/2011 | 69,069 | 1,045 | 70,114 | 10/4/2011 | 71,701 | 1,064 | | 502 s/t gain | 3 | | 412 | | | | |
| 11 Nuveen Prem. Muni 4 | 6706N4105 | 8/16/2011 | 60,990 | 993 | 61,983 | 11/16/2011 | 64,575 | 1,020 | | 1,555 s/t gain | 3 | | 1,065 | | | | |
| 12 Oppenheimer Develop | 683974109 | 8/23/2011 | 47,619 | 2,375 | 49,994 | 11/26/2012 | 50,703 NotDiscl | | | 709 l/t gain | 15 | | 1770 | | | | |
| Oppenheimer Develop | 683974109 | 9/26/2011 | 48,117 | 1,877 | 49,994 | 11/26/2012 | 56,371 NotDiscl | | | 6,356 l/t gain | 14 | | (inabove) | | | | |

ML-Compton-00021607

| | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 13 Wells Fargo Emerg Hkt 94984B389 | | 8/23/2011 | 47,623 | 2,371 | | 49,994 | 7/25/2012 | 42,131 | | -7,865 | -7,865 s/t loss | 11 | 718 | | | |
| Wells Fargo Emerg Hkt 94984B389 | | 9/26/2011 n/a | | Not/Discl | | xxxx | | xxx | xxx | xxx | xxx | xxx | xx | | | |
| Wells Fargo Emerg Hkt 94984B389 | | 10/5/2011 | 51,779 | 2,384 | | 54,163 | 7/25/2012 | 50,229 NotDiscl | | -3,938 | -3,938 s/t loss | 9 | | | | |
| Wells Fargo Emerg Hkt 94984B389 | | 12/11/2011 | 1,097 reinvest | | | 1,097 | 7/25/2012 | 1,026 | | -72 | -72 s/t loss | 7 | | | | |
| Wells Fargo Emerg Hkt 94984B389 | | 12/16/2011 | | reinvest | | | 7/25/2012 | | | | | 7 | | | | |
| | | | | | | | | | | | | | | | | |
| 14 Virtus Emer. Mkts. | 92828T707  >2.5% | 2/14/2012 | 47,614 | 2,380 | | 49,994 | 1/24/2014 | 45,797 | | -4,197 | -4,197 REMPT. | 23 | | | | |
| Virtus Emer. Mkts. | 92828T707 | 9/25/2012 | 96,223 | 3,771 | | 99,994 | 1/24/2014 | 90,206 | | -9,792 | -9,792 l/t loss | 16 | | | | |
| Virtus Emer. Mkts. | 92828T707 | 10/1/2012 | 48,137 | 1,857 | | 49,994 | 1/24/2014 | 44,417 | | -5,577 | -5,577 l/t loss | 27 | | | | |
| Virtus Emer. Mkts. | 92828T707 | 12/3/2012 | 145,914 | 4,078 | | 149,992 | 1/24/2014 | 133,677 NotDiscl | | -16,321 | -16,321 l/t loss | 26 | | 350 | 2811 | 2974 |
| Virtus Emer. Mkts. | 92828T707 | 6/20/2013 | | 493 reinvst | | 493 | 1/24/2014 | 477 | | | | | | | | |
| Virtus Emer. Mkts. | 92828T707 | 12/20/2013 | | 2,307 reinvst | | 2,307 | 1/24/2014 | 2,239 | | | | | | | | |
| Virtus Emer. Mkts. | 92828T707 | | | 63 reinvst | | 63 | 1/24/2014 | 62 | | | | | | | | |
| | | | | | | | | | | | | | | | | |
| 15 Eaton Vance Muni Opp. | | 3/7/2012 | 22,412 | 440 | | 22,852 | 8/7/2013 | 18,909 | 273 | -4,223 | -4,223 l/t loss | 17 | | 4475 | 3029 | |
| Eaton Vance Muni Opp. | | 3/8/2012 | 86,822 | 1,104 | | 87,926 | 8/7/2013 | 72,000 | 1039 | -16,976 | -16,976 l/t loss | 17 | | | | |
| Eaton Vance Muni Opp. 27829U105 | | 9/24/2013 | 215,148 | 2,868 | | 218,022 | S/O 3/30/20 | xxxx | xxxx | xxxx | xxxx | xxx | xx | | | 3187 | 12,651 |
| | | | | | | | | | | | | | | | | |
| NewIssue | | | | | | | | | | | | | | | | |
| 16 Prudential Sht HiYield | Closedi | 4/25/2012 | 95,500 | 4,500 | | 100,000 | 6/4/2013 | 95,968 | 1,162 | -5,197 | -5,197 l/t loss | 14 | 11,225 | | | |
| Prudential Sht HiYield | 74442F107 | 10/1/2012 | 201,217 | 2,314 | | 203,531 | 6/4/2013 | 191,936 | 2,324 | -13,932 | -13,932 s/t loss | 8 | | | | |
| Prudential Sht HiYield | 74442F107  -1050 | 11/25/2012 | 267,255 | 3,311 | | 270,569 | 12/23/2014 | 240,594 | 3,085 | -33,076 | -33,076 l/t loss | 13 | | | 12,942 | 20,212 |
| 17 Fru Global HiYield | 74433A109 Closedi | 6/4/2013 | 266,524 | 3,305 | | 269,829 | 11/25/2013 | 252,150 | 3183 | -20,878 | -20,878 s/t loss | 5 | | 11,250 | | |
| | | | | | | | | | | | | | | | | |
| NewIssue | | | | | | | | | | | | | | | | |
| 18 Pimco Commodity | 722005584 | 4/30/2012 | 57,299 | 2,695 | | 59,994 | 11/26/2012 | 58,858 NotDiscl | | -1,140 | -1,140 s/t loss | 7 | 650 | | | |
| Pimco Commodity | 722005584 | 6/21/2012 reinvest | n/a | | | | 11/26/2012 | 331 n/a | | 40 | 40 s/t gain | 5 | | | | |
| Pimco Commodity | 722005584 | 9/20/2012 reinvest | n/a | | | | 11/26/2012 | 7 n/a | | 0 | 0 | 2 | | | | |
| Pimco Commodity | 722005584 | 9/20/2012 reinvest | n/a | | | | 11/26/2012 | 6 n/a | | 0 | 0 | 2 | | | | |
| Pimco Commodity | 722005584 | 9/20/2012 reinvest | n/a | | | | 11/26/2012 | 345 n/a | | -6 | -6 s/t loss | 2 | | | | |
| | | | | | | | | | | | | | | | | |
| 19 Mainstay Defined Term 56064K100 Closedi | | 9/25/2012 | 198,794 | 2,297 | | 201,091 | 6/4/2013 | 183,194 | 2,250 | -20,159 | -20,159 s/t loss | 9 | 3686 | | | |
| Mainstay Defined Term | | 10/1/2012 | 99,994 | 1,253 | | 101,248 | 6/4/2013 | 91,597 | 1,125 | -10,784 | -10,784 s/t loss | 8 | 582 | 6,976 | 280 | |
| Mainstay Defined Term | | 6/23/2014 | 352,038 | 4,282 | | 356,320 | S/O 3/30/20 | xxxx | xxxx | xxxx | xxxx | xxxx | xx | | | 11,419 | |
| | | | | | | | | | | | | | | | | |
| NewIssue | | | | | | | | | | | | | | | | |
| 20 NuveenInterMuniTerm | 670671106 .675 di | 12/5/2012 | 286,500 | 13,500 | | 300,000 | 6/4/2013 | 257,174 | 3,475 | -46,311 | -46,311 s/t loss | 6 | 4,400 | 98 | | |
| NuveenInterMuniTerm | 670671106 of 15.0 | 9/24/2013 | 172,462 | 2,505 | | 174,973 | S/O 3/30/20 | xxxx | xxxx | xxxx | xxxx | xx | | | 2,475 | 10,260 | |
| | | | | | | | | | | | | | | | | |
| 21 BlackRock 2018 | 09248C106 Closedi | 5/24/2013 | 325,735 | 4058 | | 329,793 | 6/23/2014 | 316,876 | 4130 | -17,071 | -17,071 l/t loss | 13 | | 8,712 | 6,720 | |
| BlackRock 2018 | 09248C106 | 12/23/2014 | 157,848 | 2121 | | 159,969 | S/O 3/30/20 | xxxx | xxxx | xxxx | xxx | xxx | xx | | | | |
| | | | | | | | | | | | | | | | | |
| 22 BlackRock 2020 | 09249X109 Closedi | 4/1/2013 | 228,749 | 2919 | | 231,668 | 12/18/2013 | 215,567 | 2715 | -18,827 | -18,827 s/t loss | 8 | | | | |
| BlackRock 2020 | 09249X109 | 4/2/2013 | 105,351 | 1500 | | 106,856 | 12/18/2013 | 99,152 | 1249 | -8,956 | -8,956 s/t loss | 8 | | | | |
| BlackRock 2020 | 09249X109 | 7/22/2014 | 248,098 | 3148 | | 251,246 | S/O 3/30/20 | xxxx | xxxx | xxxx | xxxx | xxxx | xx | | | 14,505 | 4,050 |
| 23 Invesco MunicipTrust | 46131J103 | 6/4/2013 | 196,486 | 2710 | | 199,196 | 9/24/2013 | 174,752 | 2,525 | -26,982 | -26,982 s/t loss | 3 | | 4,125 | | |
| 24 NuveenQualMuniTerm | 670677103 | 6/4/2013 | 203,356 | 2,768 | | 206,125 | 9/24/2013 | 171,691 | 2,499 | -36,947 | -36,947 s/t loss | 3 | | 2,880 | 7573 | |
| NuveenQualMuniTerm | 670677103 | 4/2/2014 | 207,305 | 2,902 | | 210,207 | S/O 3/30/20 | xxxx | xxxx | xxxx | xxxx | xxxx | xx | | | | |
| | | | | | | | | | | | | | | | | |
| 25 Western Asset Muni | 95768A109 | 6/4/2013 | 217,299 | 2,637 | | 219,936 | 4/2/2014 | 218,529 | 2,647 | -4,070 | -4,070 s/t loss | 10 | | 5,860 | 2520 | |
| NewIssue 26 Goldman Sachs MLP | 38147W103 | 11/25/2013 | 143,300 | 6,700 | | 150,000 | | | | | | | | | | 2849 | |
| NewIssue 27 IvyScience | 466000718 2.497 | 8/15/2013 | 390,008 | 9,986 | | 399,594 | | xxxx | xxxx | | xxxx | xxxx | xx | | | | |

ML-Compton-00021608

| | | 7,549,277 | 166,566 | 7,715,871 | | 4,985,043 | 43,929 | -426,019 | -345,579 | | 5,184 | 8,951 | 24,575 | 87,237 | 106,403 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Interest/Dividends** | | | | | | | | | | | | | | | |
| | 2010 Blue | 5,184 | | | | | | | | | | | | | |
| | 2011 Purple | 8,951 | | | | | | | | | | | | | |
| | 2012 Green | 24,575 | | | | | | | | | | | | | |
| | 2013 RED | 87,237 | | | | | | | | | | | | | |
| | 2014 Black | 106,403 | | | | | | | | | | | | | |
| **Commissions** | | 166,566 | | | | | | | | | | | | | |
| | | 43,929 | | | | | | | | | | | | | |
| | | 210,495 | | | | | | | | | | | | | |
| **Total Interest/DividendsPaid** | | 232,350 | | | | | | | | | | | | | |

ANY PURCHASES OR SALES IN RED --INDICATES THERE WAS NO CALL RECORD FROM T J BUCK

ML-Compton-00021609

$\int$

### PREFERRED STOCKS

| | Investment Name | Advisor Fee | Purch. Date | Transferred | Purchase Amount | Commission | Date Sold or Still Own(s/o Date | Actual Redempt. | Sales Amount (w/Comm) | Commiss | GAIN/LOSS | Months Held | Yearly Dividend | Dividend/ Interest Pd. | Months from Sale Date to Redempt Date | Lost Divider or Interest |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 NewIssue | Barclay's PLC (7.75%) | Trfrred | 6/25/2009 | 94,799 | | n/a | 2/19/2010 | 3/15/2013 | 124,297 | 1,414 | 28,076 s/t gain | 8 | 9,685 | 9263 | 37 months | 29,025 |
| 2 | Barclay's PLC (7.75%) | 3.15% | 10/15/2012 | | 205,209 | 2,217 | S/O 3/30/2015 | | xxxx | xxx | xxx xxx xx | | 15,496 | | | |
| 3 | Barclay' PLC(6.625%) | | 10/5/2009 | | 102,915 | 1263 | 5/20/2010 | 9/15/2016 | 96,504 | 1,230 | -7,656 s/t loss | 7 | 15,496 | 4140 | 76 months | 92,976 |
| 4 | Barclay's PLC(8.125%) | Trnfrd | 6/25/2009 | 99,900 | | n/a | 10/1/2009 | 12/15/2018 | 121,756 | 1,396 | 20,450 s/t gain | 4 | 10,155 | 2539 | 110 months | 91,395 |
| 5 | CitiGrp. Prferrd | | 2/20/2014 | | 179,840 | 2218 | S/O 3/30/2015 | 4/22/2018 (actual 10/22/2018) | xxxx | xxx | xxx xxx xx | | 11,600 | 8,700 | | |
| 6 | Harris Preferred | | 9/17/2009 | | 114,000 | 1,346 | 12/21/2009 | 4/30/2013 | 112,235 | 1,328 | -4,460 s/t loss | 3 | 9216 | 2304 | 40 months | 27,648 |
| 7 | Harris Preferred | | 3/7/2012 | | 209,109 | 2,237 | 4/16/2012 | 4/30/2013 | 202,420 | 2,197 | -8,911 s/t loss | 1 | 14745 | 2460 | 12 months | 9840 |
| 8 | Aegon Cap. 6.875% | | 2/19/2010 | | 145,790 | 1,676 | 5/20/2010 | 9/15/2011 actual(5/18/2014) | 121,380 | 1,515 | -27,614 s/t loss | 3 | 12,056 | 3,007 | 16 months 46 months | 12,056 |
| 9 NewIssue | Aegon NV 8% Notes | 3.09% | 1/24/2012 | | 193,812 | 6,188 | 10/15/2012 | 8/15/2017 actual(5/18/2017) | 220,911 | 2,325 | 18,586 s/t gain | 9 | 16,000 | 8,666 | 58 months 65 months | 80,000 |
| 10 | AIG PFD..7.7% | | 7/18/2012 | | 205,858 | 2236 | 11/1/2012 | 12/12/2012 | 202,240 | 2409 | -10,515 s/t loss | 4 | 15,400 | 7,700 | 1 month | |
| 11 | AIG PFD..7.7% | | 12/3/2012 | | 201,891 | 2426 | Called | actual(3/18/2013) | 200,000 NotDisc | -6,749 | -6,749 s/t loss | 3 | | 2850/ 3859 | 4 months | |
| 12 | Allianz (8.375%) | Trnfrd | 6/25/2009 | 108,450 | | n/a | 9/17/2009 | 6/15/2013 | 124,100 | 1,413 | 14,228 s/t gain | 3 | 10,465 | 2,617 | 45 months | 41,860 |
| 13 NewIssue | Aviva 8.25%Notes | 3.15% 0.7875 | 11/17/2011 | | 193,700 | 6,300 | 7/18/2012 | 12/1/2016 | 220,074 | 2,319 | 17,745 s/t gain | 8 | 16,497 | 8,662 | 52 months | 65,988 |
| 14 | DB Cont Cap7.60% | | 9/8/2009 | | 86,400 | 1,104 | 11/3/2009 | 2/20/2018 | 90,280 | 1,129 | 471 s/t gain | 3 | 7600 | 1,604 | 99 months | 60,800 |
| 15 | Ford Motor 6.8 % | Trnfrd | 3/18/2005 | | 25,000 | n/a | 11/25/2009 | | 22,360 | 335 | -2,644 l/t loss | 56 | 1700 | 1,185 | | |
| 16 NewIssue | GE-Sr.Notes-4.875% | 3.11% | 10/2/2012 | | 193,780 | 6,220 | 7/15/2013 | 10/15/2017 (actual 3/1/2018) | 182,081 | 2,237 | -20,164 s/t loss | 9 | 9748 | 7,447 | 51 months 56 months | 38,992 |
| 17 | HSBC--6.65% | | 11/3/2009 | | 92,760 | 744 | 12/11/2009 | 7/1/2011 (actual 6/30/2016) | 92,600 | 744 | 9,050 s/t gain | 1 | 6500 | 1,625 | 19 months 66 months | 6500 |
| 18 | ING GROEP-8.5% | Trnfrd | 6/25/2009 | 93,139 | 93,139 | n/a | 9/8/2009 | 12/15/2013 (actual12/15/2013) | 85,228 | 1,164 | -7,910 s/t loss | 3 | 10,625 | 2,656 | 54 months | 42,500 |
| 19 | ING Group 7.375% | | 2/19/2010 | | n/a | n/a | CANCELLED | n/a | xxxx | xxx | xxx xxx xx | | | xx | | |
| 20 | ING Group 7.375% | | 2/24/2010 | | n/a | n/a | Cancel the 2/19/2010 | | xxxx | xxx | xxx xxx xx | | | xx | | |
| 21 NewIssue | Qwst7%-4/2052-Notes | 3.15% | 3/22/2012 | | 193,700 | 6300 | 6/15/2012 | 7/1/2017 | 202,555 | 2,198 | 346 | 3 | 14,001 | 3,733 | 61 months | 70,005 |
| 22 | Qwst7%-4/2052-Notes | | 7/15/2013 | | 201,508 | 2402 | S/O 3/30/2015 | | xxxx | xxxx | xxx xxx xx | | 14,000 | 3,500 | | |
| 23 NewIssue | Qwst7%-7/2052-Notes | 3.15% | 6/14/2012 | | 193,700 | 6300 | 2/20/2014 | 7/1/2017 | 198,320 | 2,375 | -4,065 l/t loss | 20 | 14,001 | 3733/1400 | 40 months | 42,003 |
| 24 | PFLUS Series -7.25% | Trnfrd | 6/26/2009 | 3,646 | | n/a | 2/19/2010 | 7/18/2009 | 4,811 | 845 | 1,164 s/t gain | 8 | 9063 | 5475 | | |
| 25 | PFLUS Series -7.25% | Trnfrd | 6/26/2009 | 3,736 | | n/a | 2/19/2010 (actual 1/18/2011) | | 4,811 (incl. In ab) | | 1,074 s/t gain | | 8 In above | In above | | |
| 26 | PFLUS Series -7.25% | Trnfrd | 6/26/2009 | 5,755 | | n/a | 2/22/2010 | | 7,216 (incl. in ab) | | | | | | | |
| 27 | PFLUS Series -7.25% | Trnfrd | 6/29/2009 | 29,587 | | n/a | 2/19/2010 | | 36,203 (incl in ab) | | 6,616 s/t gain | | 8 in above | in above | | |
| 28 | PFLUS Series -7.25% | Trnfrd | 6/30/2009 | 5,830 | | n/a | 2/19/2010 | | 7,096 (incl in ab) | | 1,265 s/t gain | | 8 in above | in above | | |
| 29 | PFLUS Series -7.25% | Trnfrd | 6/30/2009 | 27,768 | | n/a | 2/22/2010 | | 58,440 | 811 | 5,691 s/t gain | | 8 in above | in above | | |
| 30 | PFLUS Series -7.25% | Trnfrd | 7/1/2009 | 20,058 | | n/a | 2/22/2010 | | | | 3,637 s/t gain | | 7 in above | in above | | |
| 31 | PFLUS Series -7.25% | Trnfrd | 6/30/2009 | 1,976 | | n/a | 2/19/2010 | | 2,440 | 34 | 404 s/t gain | | 8 in above | in above | | |
| 32 | Suntrust Capital IX Trust | Trnfrd | 6/26/2009 | 104,399 | | n/a | 1/26/2010 | 3/15/2013 (actual 7/11/2012) | 122,122 | 1,400 | 16,315 s/t gain | 7 | 9,842 | 4920 | 30 months | 19,684 |
| 33 | BAC Capital 6.875 | Trnfrd | 6/25/2009 | 89,413 | | n/a | 10/26/2010 | 8/2/2011 (actual 11/3/2012) | 117,520 | 1,379 | 26,023 l/t gain | 16 | 8,590 | 10,669 | 10 months 23 months | 6445 |

ML-Compton-00021610

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 34 | HCP 7.1 Perpetual | Trnfrd | 8/29/2009 | 90,856 | n/a | 4/15/2010 | 12/3/2008 (actual 4/23/2012) | 175,266 | 1,975 | 26,139 s/t gain | 10 | 8,875 | 13,056 24 months | 17,750 |
| 35 | KeyCorp Capital | Trnfrd | 6/26/2009 | 92,549 | n/a | 2/19/2010 | 3/15/2013 (actual 7/12/2012) | 179,977 | 2,026 | 31,832 s/t gain | 8 | 10,000 | 5,000 29 months | 20,000 |
| 36 | Protective Life Corp | Trnfrd | 6/25/2009 | 88,509 | n/a | 10/26/2010 | 6/30/2011 Part. call6/19/2012 (full call 9/4/2012) | 120,451 | 1,379 | 31,204 l/t gain | 16 | 9,060 | 2,265 8 months | |
| | | | | 960,371 | 2,831,111 | 51,177 | | 3,454,362 | 37,577 | -96,623 159,628 | | | 123,193 | 775,467 |

Total Comm. Purch.  51,177
Total Comm. Sales  37,577
Total Commision  88,754

Realized Gain/Loss  -96,623

Lost Revenue from Selling  775,467
Preferred's before Redempt

Only 4 out of 36 held over
12 months

ALL TRADES IN RED--UNAUTHORIZED TRADES PER CALL RECORDS

ML-Compton-00021611

BOND TRANSACTIONS IN J. COMPTON ACCOUNTS

| | | Bonds Bought | Mark/Up 2% | | Bonds Sold | Mark/Dwn .005 % | #of Bonds Bought | #of Bonds Sold |
|---|---|---|---|---|---|---|---|---|
| 2009 | | 1,347,032 | 26,942 | | 1,828,185 | 9,140 | 6 | 9 |
| | Unauthor. | 829,070 | | | 1,441,361 | | | |
| 2010 | | 4,251,484 | 85,029 | | 3,734,585 | 18,672 | 24 | 24 |
| | Unauthor. | 2,627,001 | | | 2,584,918 | | | |
| 2011 | | 5,195,274 | 103,905 | | 4,746,923 | 23,734 | 22 | 23 |
| | Unauthoriz. | 4,297,913 | | | 4,130,678 | | | |
| 2012 | | 2,258,170 | 45,163 | | 1,881,502 | 9,407 | 8 | 7 |
| | Unauthoriz. | 1,599,170 | | | 1,617,752 | | | |
| 2013 | | 9,374,626 | 187,492 | | 3,376,238 | 16,881 | 28 | 11 |
| | Unauthoriz. | 3,809,752 | | | 876,270 | | | |
| 2014 | | 3,947,496 | 78,949 | | 3,496,702 | 17,483 | 12 | 10 |
| | Unauthoriz. | 771,731 | | | 1,647,637 | | | |
| Total Traded | | 26,374,082 | 527,481 | | 19,064,135 | 94,658 | 100 | 84 |
| | Unauthoriz. | 13,934,637 | | | 11,356,512 | | | |
| Total $$ Traded | | 45,438,217 | 622,139 | total mk/up and mk/dwn(commissions) | | | | |
| | Unauthorized | 25,291,149 | | Markup/Markdown amounts are estimates based on industry standards | | | | |
| | Realized Losses | -887,009 | | Initial Bond Portfolio Value on August 18, 2009--26 Bon $4.140M | | | | |
| | Interest Income | 1,096,760 | | | | | | |

ML-Compton-00021612

⑦

BOND TRANSACTIONS IN J. COMPTON ACCOUNTS

| | Bonds Bought | Mark/Up 2% | Bonds Sold | Mark/Dwn .005 % | #of Bonds Bought | #of Bonds Sold | | Interest Income Received |
|---|---|---|---|---|---|---|---|---|
| 2009 | 1,347,032 | 26,942 | 1,828,185 | 9,140 | 6 | 9 | 78,221 | 34748 |
| Unauthor. | 829,070 | | 1,441,361 | | | | (4 months) | 44748 |
| | | | | | | | | -1275 |
| | | | | | | | | 78,221 |
| 2010 | 4,251,484 | 85,029 | 3,734,585 | 18,672 | 24 | 24 | 178,599 | 178,599 |
| Unauthoriz. | 2,627,001 | | 2,584,918 | | | | | |
| 2011 | 5,195,274 | 103,905 | 4,746,923 | 23,734 | 22 | 23 | 169,640 | 194,636 |
| Unauthoriz. | 4,297,913 | | 4,130,678 | | | | | -24,996 |
| | | | | | | | | 169,640 |
| 2012 | 2,258,170 | 45,163 | 1,881,502 | 9,407 | 8 | 7 | 122,438 | 124,526 |
| Unauthoriz. | 1,599,170 | | 1,617,752 | | | | | -2088 |
| | | | | | | | | 122,438 |
| 2013 | 9,374,626 | 187,492 | 3,376,238 | 16,881 | 28 | 11 | 167,684 | 225,346 |
| Unauthoriz. | 3,809,752 | | 876,270 | | | | | 9,060 |
| | | | | | | | | -66,722 |
| | | | | | | | | 167,684 |
| 2014 | 3,947,496 | 78,949 | 3,496,702 | 17,483 | 12 | 10 | 380,178 | 412,937 |
| Unauthoriz. | 771,731 | | 1,647,637 | | | | | -32,759 |
| | | | | | | | | 380,178 |
| Total Traded | 26,374,082 | 527,481 | 19,064,135 | 94,658 | 100 | 84 | 1,096,760 | |
| Unauthoriz. | 13,934,637 | | 11,356,512 | | | | | |
| Total $$ Traded | 45,438,217 | 622,139 total mk/up and mk/dwn(commissions) | | | | | | |
| Unauthorized | 25,291,149 | Markup/Markdown amounts are estimates based on industry standards | | | | | | |
| Realized Losses | -887,009 | Initial Bond Portfolio Value on August 18, 2009--26 $4.140M | | | | | | |
| Interest Income | 1,096,760 | | | | | | | |

ML-Compton-00021613

⑧

**All Bonds by Purchase Date**

Bond # is also tied to EMMA MSRB Prevailing Market Price documents
Bond Purchase and Sale Price (any price in RED had no CALL RECORD associated with transaction)
Bond Income Lost by Selling before Call Date
Bond Call Date in both columns (E) and (K) to assess trades

**Bonds Transferred 8/2009**

| Bond # | Account | CUSIP | Bond Call Date | Coup | Purchase Date | Purchase Price | Sell Price | Sell Date | Bond Call Date | Months Held | Difference of bond sale date and bond call date | Annual Bond Income | Interest Income lost By Selling before call date | Loss | Capital Gain/Loss ST/LT | Bonds Redeemed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Canadian Riv | 136542F25 | | | 4/24/2009 | 97.58 | 0.000 | 3/4/2010 | REDEEMED | 119 | | 2,406 n/a | | | | 25,000 |
| 2 | Montara St, | 61212RH85 | | | 3/18/2001 | 100.07 | 0.000 | 12/1/2010 | REDEEMED | 115 | | 1,767 n/a | | | | 5,000 |
| | Montara St, | 61212RH85 | | | 5/18/2001 | 100.07 | 0.000 | 12/1/2011 | REDEEMED | | | n/a | | | | 30,000 |
| 3 | NH ST, HFA | 64468PCH5 | | | 5/18/2001 | 100. | 0.000 | 12/15/2010 | REDEEMED | 115 | | 2,832 n/a | | | | 30,000 |
| | NH ST, HFA | 64468PCH5 | | | 5/18/2001 | n/a | 0.000 | 6/1/2011 | REDEEMED | | | n/a | | | | 25,000 |
| 4 | Oregon StHSG | 68606BC76 | | | 5/18/2001 | 100. | 0.000 | 9/23/2010 | REDEEMED | 112 | | 2,430 n/a | | | | 45,000 |
| 5 | HI St. Bldg Au | 594614320 | 10/15/2011 | | 6/22/2001 | 99.32 | 104.258 | 7/29/2010 | 10/15/2011 | 109 1 year 3 months | | 8,406 | 6,406 | | 241 l/t gain | |
| | HI St. Bldg Au | 594614HL0 | 10/15/2011 | | 6/22/2001 | n/a | 101.584 | 7/29/2010 | 10/15/2011 | 109 | | | | | 2,704 l/t gain | |
| 6 | NY St.EFC ST | 64985HUG9 | 6/15/2011 | | 6/22/2001 | 99.81 | 103.000 | 2/23/2010 | 6/15/2011 | 104 1 year 3 months | | 6,250 | 6,250 | | 4,035 l/t gain | |
| 7 | Clackamas Cty | 179027SS7 | 5/1/2011 | | 6/25/2001 | 100.94 | 105.935 | 9/8/2009 | 5/1/2011 | 93 1 year 8 months | | 6,375 | 6,375 | | 6,234 l/t gain | |
| 8 | NY St.EFC ST | 64989HWJ1 | 5/15/2011 | | 6/29/2001 | 100. | 101.995 | 2/23/2010 | 5/15/2011 | 104 1 year 3 months | | | | | 2,488 l/t gain | |
| 9 New | IL HSG DEV | 45201YCS4 | 3/22/2011 | | 7/19/2001 | 100. | 0.000 | 7/1/2010 | REDEEMED | | | 6,375 n/a | | | | 15,000 |
| | IL HSG DEV | 45201YCS4 | 3/22/2011 | | 7/19/2001 | 100. | 99.425 | 2/22/2011 | 3/22/2011 | 115 1month | | | | -537 | -637 l/t loss | |
| 10 | Hawaii St. | 419780TH3 | 8/1/2011 | | 8/10/2001 | 99.37 | 104.037 | 10/16/2009 | 8/1/2011 | 98 1 year 10 months | | 12,500 | 12,500 | | 11,609 l/t gain | |
| 11 | Oregon StHSG | 68606RF73 | | | 6/10/2001 | 100. | 0.000 | 1/2/2011 | REDEEMED | | | 2,317 | | | | 40,000 |
| 12 New | Maine GvtL | 56041NDN1 | 10/1/2011 | | 8/23/2001 | 100. | 104.829 | 8/5/2010 | 10/1/2011 | 106 1 year 4 months | | 12,210 | 12,210 | | 13,617 l/t gain | |
| 13 | Oregon St.Kid | 68607LFG7 | | | 8/27/2001 | 100. | 0.000 | 8/1/2011 | REDEEMED | 120 | | n/a | | | | 105,000 |
| 14 | HN St. HSG Fin Agy | 60415NEH0 | | | 9/26/2001 | 100. | 0.000 | 7/1/2010 | REDEEMED | | | n/a | | | | 5,000 |
| | HN St. HSG Fin Agy | 60415NEH0 | | | 9/26/2001 | n/a | 0.000 | 1/4/2012 | REDEEMED | | | n/a | | | | 5000 |
| | HN HSG Dev | 60415NEH0 | | | 9/26/2001 | n/a | 0.000 | 1/5/2012 | REDEEMED | | | n/a | | | | 5000 |
| | HN HSG Dev | 60415NEH0 | | | 9/26/2001 | n/a | 0.000 | 6/1/2012 | REDEEMED | | | n/a | | | | 65,650 |
| 15 New | New York NYC | 64970XUX3 | 6/15/2012 | | 6/20/2002 | 100.135 | 604 | 1/26/2010 | 6/15/2012 | 91 2 years 6 mon | | 6,250 | 12,500 | | 6,999 l/t gain | |
| 16 | NY-Fiscal-5.0 | 64966CDG3 | 3/1/2013 | | 2/28/2003 | 99.03 | 105.502 | 9/20/2010 | 3/1/2013 | 91 2 years 6 mon | | 6,250 | 12,500 | | 8,093 l/t gain | |
| 17 | NYFscl-5.125% | 64966CDH1 | 3/1/2013 | | 2/28/2003 | 99.93 | 104.503 | 6/9/2010 | 3/1/2013 | 80 2 years 9 mon | | 12,812 | 23,624 | | 11,402 l/t gain | |
| 18 New | NewYNY (4.6%) | 64966CJG7 | 6/1/2013 | | 6/2/2003 | 99.45 | 101.404 | 11/24/2009 | 6/1/2013 | 77 3 years 6 mon | | 5,750 | 17,250 | | 3,678 l/t gain | |
| 19 New | Pennsylvania HFA | 708796NT0 | 10/1/2017 | | 5/14/2008 | 100. | 0.000 | 4/16/2010 | REDEEMED | 23 | | 13,125 | n/a | | | 250,000 |
| 20 | ISFinAuthHwy | 45470RBO7 | 12/1/2016 | | 3/16/2009 | 94.62 | 103.125 | 12/11/2009 | 12/1/2016 | 9 7 years | | 11,250 | 78,750 | | 13,745 s/t gain | |
| 21 New | WashCntyOr | 93824GBY3 | 10/1/2019 | | 3/19/2009 | 102.33 | 109.919 | 9/1/2009 | 10/1/2019 | 6 10 years | | 13,125 | 130,125 | | 16,006 s/t gain NotstCoup | |
| 22 New | DallasRapidTrans | 235241JW7 | 12/1/2018 | | 6/22/2009 | 100.378 | 100.695 | 12/11/2009 | 12/1/2018 | 6 9 years | | 19,000 | 171,000 | | 9,263 s/t gain | |
| New | DallasRapidTrans | 235241JW7 | 12/1/2018 | | 6/25/2009 | 100. | 102.695 | 12/11/2009 | 12/1/2018 | 6 9 years | | 2,375 | 21,375 | | 1,366 s/t gain | |
| 23 New | Eastern HI Un | 276731Y86 | 2/15/2019 | | 6/25/2009 | 100.326 | 91.593 | 1/24/2011 | 2/15/2019 | 19 8 years | | 11,875 | 95,000 | -21,840 | -21,840 l/t loss | |
| 24 New | JacksAvlle FL | 466485HT6 | 10/1/2018 | | 7/1/2009 | 100.739 | 106.025 | 10/26/2010 | 10/1/2018 | 14 8 years | | 7,500 | 60,000 | | 8,035 s/t gain | |
| 25 | NY NYC Mun WFA | 64972FBF2 | 6/15/2016 | | 7/1/2009 | 98.376 | 91.844 | 1/24/2011 | 6/15/2016 | 18 5 years 5 months | | 7,125 | 35,625 | -9,804 | -9,804 l/t loss | |
| 26 | Washington St. Higher | 93978LZY9 | 11/1/2017 | | 7/1/2009 | 100.751 | 94.035 | 7/21/2010 | 11/1/2017 | 5 7 years 4 months | | 7,875 | 55,125 | -9,150 | -9,150 s/t loss | |

**NEW BONDS BOUGHT AND SOLD AFTER ACCT. TRANSFERRED on 8/19/2009**

| Bond # | Account | CUSIP | Bond Call Date | Coup | Purchase Date | Purchase Price | Sell Price | Sell Date | Bond Call Date | Months Held | Difference | Annual Bond Income | Interest Income lost | Loss | Capital Gain/Loss ST/LT | Bonds Redeemed |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 27 | FL St TPK Auth TPK | 343136Y76 | 7/1/2016 | | 8/31/2009 | 101. | 89.034 | 1/25/2011 | 7/1/2016 | 16 5 years 6 months | | 12,588 | 69,234 | -31,799 | -31,799 l/t loss | |
| 28 | Chicago IL BRD EO | 167501GH3 | 12/1/2016 | | 9/8/2009 | 102 | 99.781 | 12/21/2009 | 12/1/2016 | 3 7 years | | 5,938 | 41,566 | -2,685 | -2,665 s/t loss | |
| 29 | FL St. BRD ED | 341535K84 | 6/1/2017 | | 10/16/2009 | 100.125 | 86.592 | 1/26/2011 | 6/1/2017 | 15 6 years 6 months | | 11,250 | 73,125 | -56,219 | -56,219 l/t loss | |
| 30 New | In Health St.-Francis | 45470YCD1 | 11/1/2019 | | 11/24/2009 | 101.25 | 98.493 | 12/21/2009 | 11/1/2019 | 1 9 years 11 months | | 10,000 | 95,000 | -5,502 | -5,502 s/t loss NotstCoup | |
| 31 New | Birmingham AL Wtrwks | 091095CA3 | 7/1/2019 | | 12/21/2009 | 93.16 | 94.580 | 5/20/2010 | 7/1/2019 | 5 9 years 2 months | | 9,000 | 81,000 | -9,165 | -9,165 s/t loss NotstCoup | |
| 32 New | Birmingham AL Wtrwks | 091096CC0 | 7/1/2019 | | 12/21/2009 | 100.23 | 95.380 | 5/20/2010 | 7/1/2019 | 5 9 years 2 months | | 14,250 | 128,250 | -14,502 | -14,502 s/t loss NotstCoup | |
| 33 | JEA FLA Elec Sys | 46613CLK9 | 10/1/2012 | | 1/26/2010 | 101.875 | 99.622 | 4/21/2010 | 10/1/2012 | 32 2 years 6 months | | 11,250 | 28,125 | -3,150 | -3,150 s/t loss | |
| | JEA FLA Elec Sys | 46613CLK9 | 10/1/2012 | | 1/26/2010 | 101.875 | 99.619 | 7/22/2011 | 10/1/2012 | 18 1 year 3 months | | 6,750 | | -1,235 | -1,235 s/t loss | |
| 34 | IN FIN Auth Hwy Rev | 45470RBO0 | 12/1/2016 | | 2/19/2010 | 102.876 | 94.590 | 12/9/2010 | 12/1/2016 | 10 6 years | | 4,725 | 28,350 | -6,495 | -6,495 s/t loss | |
| 35 | Washington St. H/C | 93978EAS1 | 10/1/2016 | | 2/23/2010 | 99.37 | 94.005 | 1/24/2011 | 10/1/2016 | 18 6 years 8 month | | 9,250 | 60,125 | -13,584 | -13,584 s/t loss | |
| 36 New | CHI ILL O'HARE | 167593DX7 | 1/1/2020 | | 4/16/2010 | 102.625 | 91.505 | 12/9/2010 | 1/1/2020 | 8 9 years | | 12,500 | 112,500 | -22,715 | -22,715 s/t loss NotstCoupon | |
| 37 | IN Health-St. Francis | 45470YCD1 | 11/1/2019 | | 4/18/2010 | 101.623 | 108.443 | 5/23/2014 | 11/1/2019 | 49 5 years 6 month | | 7,500 | 37,500 | | 11,142 l/t gain | |

| # | Name | CUSIP | Maturity | Purchase | | Date | Call/Mat | Term | Par | Cost | Gain/Loss | Note |
|---|------|-------|----------|----------|--|------|----------|------|-----|------|-----------|------|
| 38 | IN FIN Auth Hwy Rev | 45470RBE5 | 12/1/2016 | 4/22/2010 | 101.328 101.100 | 6/29/2011 | 12/1/2016 | 16 5 years 4 months | 9,000 | 45,000 | | 178 l/t gain |
| 39 | FL St.TFK Rev. | 34161FB01 | 7/1/2014 | 5/20/2010 | 101.590 86 845 | 12/9/2010 | 7/1/2014 | 7 3 years 7months | 7,875 | 23,625 -22,173 | | -22,173 s/t loss |
| 40 | IN FIN Auth Hwy Rev | 45470RBG0 | 12/1/2016 | 5/20/2010 | 101.875 94 590 | 12/9/2010 | 12/1/2016 | 7 6 years | 4,500 | 27,000 -7,127 | | -7,127 s/t loss |
| 41 New | HI St.University | 594712RA9 | 2/15/2020 | 5/20/2010 | 101.569 89.300 | 12/14/2010 | 2/15/2020 | 7 9 years 10 mon | 6,750 | 64,125 -18,271 | | -18,271 s/t loss |
| 42 | Omaha Pub Power | 6817932P9 | 2/15/2015 | 7/21/2010 | 101.375 94.775 | 11/15/2010 | 2/15/2015 | 4 4 years 4 months | 9,000 | 36,000 -13,017 | | -13,017 s/t loss |
| 43 New | PA St. Tpk | 709223ZP9 | 12/1/2019 | 7/29/2010 | 101.75 69.003 | 11/15/2010 | 12/1/2019 | 3 9 years | 5,625 | 50,625 -15,967 | | -15,967 s/t loss NolstCoupon |
| New | PA St. Tpk | 709223ZP9 | 12/1/2019 | 8/24/2010 | 102.353 69.003 | 11/15/2010 | 12/1/2019 | 3 9 years | 4,950 | 44,550 -14,628 | | -14,628 s/t loss NolstCoupon |
| 44 New | King Cty WA | 495269WK2 | 7/1/2020 | 9/20/2010 | 101.375 93.520 | 11/15/2010 | 7/1/2020 | 2 9 years 7 mon | 5,313 | 50,473 -9,802 | | -9,802 s/t gain NolstCoupon |
| 45 New | IN St. Fin Auth -Trinity | 455053F46 | 3/1/2013 | 10/26/2010 | 101.625 91.000 | 6/15/2011 | 3/1/2013 | 8 1 year 6 months | 8,500 | 12,750 -21,085 | | -21,085 s/t loss |
| 46 New | PA HSG FIN | 70896HN3 | 10/1/2019 | 10/26/2010 | 102.959 92.125 | 11/19/2010 | 10/1/2019 | 1 9 years | 9,000 | 81,000 -21,627 | | -21,627 s/t loss NolstCoupon |
| 47 notUnsol | Atlanta Rapid Trans | 591745D68 | 7/1/2017 | 11/15/2010 | 93.87 97.250 | 7/22/2011 | 7/1/2017 | 8 6 years | 4,500 | 27,000 -2,634 | | -2,634 s/t loss |
| 48 | NY Rev Tranan | 59259YB46 | 11/15/2107 | 11/15/2010 | 100.75 93.370 | 12/9/2010 | 11/15/2107 | 1 7 years | 9,000 | 63,000 -22,760 | | -22,760 s/t loss |
| 49 | S.Carolina Trans | 837152PH4 | 10/1/2016 | 11/15/2010 | 100.75 87.065 | 2/25/2011 | 10/1/2016 | 3 4 years 4 mon | 9,000 | 36,000 -27,314 | | -27,314 s/t loss |
| 50 | San Antonio TX WTR | 79642BCV3 | 5/15/2017 | 11/15/2010 | 100.75 95.125 | 7/15/2011 | 5/15/2017 | 8 6 years | 10,125 | 60,750 -12,511 | | -12,511 s/t loss |
| 51 notUnsol | Houston TX HGHR EO | 442378CC7 | 11/13/2017 | 12/9/2010 | 98.375 98.101 | 7/22/2011 | 11/17/2017 | 7.5 6 years 6 mon | 11,250 | 73,125 -695 | | -695 s/t loss |
| 52 | NY Mun WTR (5%) | 64970XV20 | 12/15/2014 | 12/9/2010 | 101.5 100.665 | 6/23/2014 | 12/15/2014 | 42 6 months | 12,500 | 6,250 | | 1,180 l/t gain |
| 53 | PA St. Tpk | 709223ZH6 | 12/1/2019 | 12/9/2010 | 93.413 97.471 | 8/30/2011 | 12/1/2019 | 8 8 years 4 months | 12,500 | 100,000 -2,385 | | -2,385 s/t loss |
| 54 | TX St.Tranan | 882721PA5 | 4/1/2017 | 12/9/2010 | 59.675 96.191 | 5/12/2011 | 4/1/2017 | 5 5 years 11 months | 9,000 | 49,500 -7,378 | | -7,378 s/t loss |
| 55 New | AZ St. University | 0404BAEW2 | 7/1/2020 | 1/24/2011 | 100.492 106.450 | 8/16/2011 | 7/1/2020 | 7 8 years11 month | 13,438 | 114,223 | | 14,958 s/t gain NolstCoupon |
| 56 | Grand Rapids SWK | 386289BL2 | 7/1/2015 | 1/24/2011 | 98.375 102.043 | 11/21/2011 | 7/1/2015 | 10 3 years8 months | 12,500 | 43,750 | | 9,159 s/t gain |
| 57 | NY Triborough Brdg | 89002JXV9 | 11/15/2017 | 1/24/2011 | 97.625 106.935 | 1/24/2013 | 11/15/2017 | 12 5 years 10 months | 12,500 | 69,750 | | 22,764 s/t gain |
| 58 | Ohio St. Tpk Rev | 67760HD04 | 2/15/2020 | 1/24/2011 | 100.266 106.010 | 8/16/2011 | 2/15/2020 | 7 8 years6 months | 12,500 | 106,250 | | 14,350 s/t gain |
| 59 | FL St. Tpk AuthTFK | 343136WG8 | 7/1/2014 | 2/16/2011 | 93.933 0.000 | 7/1/2013 | 7/1/2014 | 29 REDEEMED | | | | 151,500 |
| 60 New | TX A&M Univer | 882135498 | 5/15/2020 | 2/25/2011 | 100.25 103.564 | 10/13/2011 | 5/15/2020 | 8 8 years 7 months | 11,975 | 103,937 | | 8,313 s/t gain |
| 61 New | Brownsburg IN Sewer | 116097BL9 | 11/1/2019 | 5/12/2011 | 93.69 99.667 | 7/28/2011 | 11/1/2019 | 2 8 years 4 months | 9,250 | 74,000 -51 | | -51 s/t loss NolstCoupon |
| 62 | IN Health -Ascension | 454795BT1 | 11/15/2016 | 6/15/2011 | 100.062 103.712 | 7/22/2014 | 11/15/2016 | 37 2 years 4 mon | 10,000 | 20,000 | | 7,359 l/t gain |
| 63 New | FL. St. Tpk Auth | 343136W78 | 7/1/2021 | 7/8/2011 | 93.375 100.323 | 9/23/2011 | 7/1/2021 | 3 9 years 10mon | 14,250 | 135,375 | | 2,830 s/t gain NolstCoupon |
| 64 | New Jersey TPK | 646139X75 | 1/1/2020 | 7/19/2011 | 101.939 103.927 | 3/7/2012 | 1/1/2020 | 8 7 years 9 mon | 12,500 | 93,750 | | 17,764 s/t gain | 11 |
| 65 MEETING | TN SCH BO Higher Ed | 880557B51 | 5/1/2012 | 7/22/2011 | 102.404 0.000 | 8/15/2012 | 5/1/2012 | REDEEMEO | n/a | | | -$4,784 | 202,000 |
| 66 HSG AGY | TN HSG AGY | 88045RYX5 | 1/1/2018 | 7/22/2011 | 103.046 | | 1/1/2018 | | | | | | |
| 67 MEETING | TN HSG AGY | 88045PY23 | 1/1/2018 | 7/22/2011 | 102.500 | | 1/1/2018 | | | | | | 40,000 |
| 68 | ATL Water | 047870CZ1 047870CE4 | 5/1/2012 | 7/28/2011 | 101.376 0.000 | 11/1/2013 | 5/1/2012 | REDEEMEO REDEEMEO | 5,000 | | | | 60,000 |
| 69 New | Maine Health & Higher I | 560427LW4 | 7/1/2021 | 8/16/2011 | 100.5 97.464 | 10/17/2011 | 7/1/2021 | 2 9 years 9 month | 11,875 | 112,812 -7,591 | | -7,591 s/t loss NolstCoupon |
| 70 New | Memphis/Shelby Cnty | 586132AW3 | 4/1/2021 | 8/29/2011 | 99.811 96.500 | 12/2/2011 | 4/1/2021 | 3 9 years 4 months | 13,500 | 121,500 -8,262 | | -8,282 s/t loss |
| 71 | IN Health -St. Francis | 45470YCD1 | 11/1/2019 | 8/30/2011 | 103.25 108.443 | 5/23/2014 | 11/1/2019 | 33 5 years 6 months | 7,500 | 41,250 | | 15,382 l/t gain |
| 72 | Memphis Ctr City Rev | 586078BN3 | 11/1/2011 | 9/29/2011 | 102.115 | n/a owned3/2015 | 11/1/2011 | | | | xxxx | xxxx |
| 73 New | Anderson Cnty TN | 033790C53 | 5/1/2020 | 10/13/2011 | 100.875 105.500 | 2/16/2012 | 5/1/2020 | 4 8 years | 10,000 | 80,000 | | 11,532 s/t gain NolstCoupon |
| 74 | Clarksville TN Nat. Gas | 18252180Q6 | | 10/17/2011 | 100.75 | n/a owned3/2015 | | xx | | | xxx | xxxx |
| 75 | TN HSG AGY | 88045RHA3 | 7/1/2018 | 11/21/2011 | 103.625 | | 7/1/2018 | | | 10,750 | | |
| 76 New | DC Revenue | 25483VEY6 | 10/1/2021 | 12/2/2011 | 101.483 105.000 | 2/10/2012 | 10/1/2021 | 2 9 years 7 month | 14,250 | 128,250 | | 10,669 s/t gain NolstCoupon |
| 77 Zero Coupon | NJ St Tranc. TR | 646136TF6 | | 2/9/2012 | 45.96 45.541 | 5/22/2012 | | 3 | 0 | | -5,457 | -5,457 s/t loss |
| 78 | Port Auth NY/NJ | 7335BWGC2 | 1/15/2022 | 2/15/2012 | 102.100.570 | 6/18/2012 | 1/15/2022 | 4 9 years 7 month | 10,000 | 93,000 -3,430 | | -3,430 s/t loss NolstCoupon |
| 79 | Austin TX Ccollege | 052400CC9 | 8/1/2022 | 4/5/2012 | 101.75 87.403 | 8/7/2013 | 8/1/2022 | 16 9 years | 2,688 | 25,932 -9,920 | | -9,920 s/t loss |

ML-Compton-00021615

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 80 | Zero Coupon IL ST.Rev McCormick | 592247J50 | | 5/21/2012 | 43.55 39.737 | 6/19/2012 | | 1 | 0 | | -26,000 | -26,009 s/t loss |
| 81 | ZERO COUP | Leander TX IndptSchoo | 521841AJ5 | 8/15/2022 | 8/19/2013 | 44.411 38.250 | 7/19/2013 | 8/15/2022 | 13 9 years | 0 | | -40,541 | -40,541 l/t loss |
| 82 | | METRO ATLANTA TRAN | 591745H84 | 7/1/2022 | 8/18/2012 | 102.07 69.200 | 7/12/2013 | 7/1/2022 | 13 9 years | 10,000 | | 90,000 -31,608 | -31,698 l/t loss |
| 83 | | Wisconsin Health$EDL | 9771084C3 | 11/15/2016 | 10/1/2012 | 101. 93.625 | 6/4/2013 11/15/2016 | | 3 1 years 5 months | 16,000 | | 48,000 -29,283 | -29,283 s/t loss |
| 84 New | | IN FinAuthHosp-CHNTY 45471AXG6 | | 5/1/2023 | 10/29/2012 | 102.25 94.625 | 6/4/2013 | 5/1/2023 | 8 9 years11months | 20,000 | | 190,000 -37,658 | -37,658 s/t loss |
| 85 | | Knoxville TN Gas | 499764RF5 | 3/1/2021 | 3/12/2013 102.351 89.625 | | 7/12/2013 | 3/1/2021 | 4 5 years | 18,000 | | 90,000 -75,818 | -75,818 s/t lossNotatCoupon |
| 86 | | Cal.High School | 79750BFN3 | 8/1/2023 | 6/4/2013 100.275 87.422 | | 6/24/2013 | 8/1/2023 | 3 9 years11months | 12,000 | | 114,000 -38,549 | -38,549 s/t lossNotatCoupon |
| 87 | | JEA FL ELEC | 46613C4B8 | 10/1/2018 | 6/4/2013 100.881 86.625 | | 9/24/2013 | 10/1/2018 | 3 5 years | 12,000 | | 60,000 -42,634 | -42,634 s/t lossNotatCoupon |
| 88 | | UniversityAL | 914025DE8 | 4/1/2023 | 6/4/2013 101.875 87.707 | | 9/24/2013 | 4/1/2023 | 3 9years 7months | 16,000 | | 112,000 -56,487 | -56,487 s/t lossNotatCoupon |
| 89 | | Cal. St.Rev. Kaiser | 130911GN5 | 4/1/2017 | 6/24/2013 | 100. 87.422 | 6/24/2013 | 4/1/2017 | 1 2 years 10months | 19,000 | | 47,500 | 6,684 s/t gain |
| 90 | | IN RevHealthThrinity | 45505FF87 | 12/1/2020 | 6/24/2013 | 97.109 90.221 | 12/19/2013 | 12/1/2020 | 6 7 years | 9,000 | | 63,000 -13,787 | -13,787 s/t loss |
| 91 | | San Antonio TX WTR RI | 79642BCV3 | 5/15/2017 | 6/24/2013 | 100.22 101.151 | 4/2/2014 | 5/15/2017 | 10 3 years | 18,000 | | 54,000 | 2,432 s/t gain |
| 92 | | San Antonio TX WTR | 79642BCV3 | 5/15/2017 | 6/24/2013 100.22 n/a | | owned3/2015 | 5/15/2017 xx | | | | | xxx |
| 93 | | IN HealthHosp-Clarian | 45479RAG2 | 2/15/2016 | 6/25/2013 | 97.875 | n/a owned3/2015 | 2/15/2016 xx | | | | | xxx |
| 94 TradBefCall | | IN HealthHosp-Clarian | 45479RAG2 | 2/15/2016 | 6/26/2013 | 98.5 | n/a owned3/2015 | 2/15/2016 xx | | | | | xxx |
| 95 Zero Coupon | HetroNYTex | 59259NT29 | 11/1/2017 | 7/12/2013 | 45.55 46.874 | 12/31/2013 | 11/1/2017 | 6 3 years10months | 0 | | | 90 s/t gain |
| 96 TradBefCall | | INHospDeaconess | 45471AXK9 | 3/1/2023 | 7/12/2013 | 85.663 77.000 | 8/30/2013 | 3/1/2023 | 1.5 9years7months | 21,750 | | 206,625 -51,969 | -51,969 s/t lossNotatCoupon |
| 97 TradBefCall | | PAHigherEdLaSalle | 70917RNN1 | 11/1/2017 | 7/12/2013 101.444 | | n/a owned3/2015 | xx | | | | | xx |
| 98 | | FL St. Brd. Univ. Rev | 34157RCT5 | 5/1/2023 | 8/7/2013 101.625 102.025 | | 2/12/2014 | 5/1/2023 | 6 9years2months | 11,250 | | 101,250 | 1,162 s/t gain |
| 99 | | Oregon Health Science | 685869EG0 | 7/1/2022 | 8/7/2013 | 93.78 99.400 | 3/12/2014 | 7/1/2022 | 7 8years3months | 10,000 | | 80,000 | 13,524 s/t gain |
| 100 | | Utah St. Univ. Rev | 917563FG8 | 12/1/2023 | 8/7/2013 | 97.71 103.246 | 4/24/2014 | 12/1/2023 | 8 9years3months | 11,250 | | 101,875 | 13,750 s/t gain |
| 101 | | Oregon Health Sciences | 685869EG0 | 7/1/2022 | 8/27/2013 | 93.500 99.400 | 3/12/2014 | 7/1/2022 | 7 8 years3months | 24,000 | | 192,000 | 51,642 s/t gain |
| 102 | | KnoxvilleWtr.Serv | 49981BWZ1 | 3/1/2021 | 9/10/2013 103.312 | | n/a owned3/2015 | 3/1/2021 | | | | | xxxx |
| 103 | | KnoxvilleWtr.Serv | 49981BXB3 | 3/1/2021 | 9/10/2013 101.375 | | n/a owned3/2015 | 3/1/2021 | | | | | xxxx |
| 104 | | KnoxvilleWtr.Serv | 49981BXF4 | 3/1/2021 | 9/10/2013 102.950 | | n/a owned3/2015 | 3/1/2021 | | | | | xxxx |
| 105 | | South Carolina | 837152AY5 | 10/1/2021 | 9/24/2013 | 94.078 97.464 | 3/25/2014 | 10/1/2021 | 6 7years7months | 10,000 | | 75,000 | 8,383 s/t gain |
| 106 | | BirmALWaterwks | 091096FA0 | 1/1/2021 | 9/24/2013 100.726 | | n/a owned3/2015 | 1/1/2021 xx | | | | | xxx |
| 107 | | UtahSt.Univ.Rev | 917563FG8 | 6/1/2023 | 9/24/2013 100.799 103.246 | | 4/24/2014 | 6/1/2023 | 7 9years | 11,250 | | 101,250 | 6,209 s/t gain |
| 108 | | WisconsinHealth$EOL | 97712DCV0 | 4/15/2023 | 9/24/2013 | 100.75 | n/a owned3/2015 | 4/15/2023 xx | | | | | xxx |
| 109 | | BristolTN | 110223CK8 | 9/1/2023 | 10/31/2013 101.875 | | n/a owned3/2015 | 9/1/2023 xx | | | | | xxxx |
| 110 | | Knox H&E Rev | 499527BL2 | 1/1/2023 | 11/25/2013 109.142 | | n/a owned3/2015 | 1/1/2023 xx | | | | | xxxx |
| 111 | | Nashville H&E Rev | 592041RS8 | 10/1/2019 | 11/25/2013 105.156 | | n/a owned3/2015 | 10/1/2019 xx | | | | | xxxx |
| 112 | | IN HOSP Rev/Beacon | 45471ALS9 | 8/15/2023 | 12/18/2013 101.525 | | n/a owned3/2015 | 8/15/2023 xx | | | | | xxxx |
| 113 | | Metro Nashville/stadium | 59209QFF6 | 8/1/2023 | 1/22/2014 104.206 | | n/a owned3/2015 | 8/1/2023 xx | | | | | xxxx |
| 114 | | Metro Nashville/stadium | 59209QFF6 | 8/1/2023 | 2/12/2014 105.719 n/a | | owned3/2015 | 8/1/2023 xx | | | | | xxxx |
| 115 | | Metro Nashville/Stadium | 59209QFH2 | 8/1/2023 | 3/12/2014 103.118 | | n/a owned3/2015 | 8/1/2023 xx | | | | | xxxx |
| 116 | | Memphis TN GO | 586145E91 | 4/1/2024 | 3/25/2014 101.375 | | n/a owned3/2015 | 4/1/2024 xx | | | | | xxxx |
| 117 | | MetroNashville/Std. | 59209QFF6 | 8/1/2023 | 4/2/2014 107.578 | | n/a owned3/2015 | 8/1/2023 xx | | | | | xxxx |
| 118 | | Knox TN Water | 49981BXD9 | 3/1/2021 | 4/23/2014 106.062 | | n/a owned3/2015 | 3/1/2021 xx | | | | | xxxx |
| 119 | | Chatt TN Health | 162410CX0 | 1/1/2013 | 5/23/2014 110.443 | | n/a owned3/2015 | 1/1/2013 xx | | | | | xxxx |
| 120 | | Knoxville TN Water | 49981BXD9 | 3/1/2021 | 6/23/2014 106.067 | | n/a owned3/2015 | 3/1/2021 xx | | | | | xxxx |
| 121 | | Memphis TN Gen | 586145E91 | 4/1/2024 | 6/24/2014 105.742 | | n/a owned3/2015 | 4/1/2024 xx | | | | | xxxx |
| 122 | | IN Health Hosp-Clarian | 45479RAF4 | 2/15/2016 | 9/16/2014 103.75 | | n/a owned3/2015 | 2/15/2016 xx | | | | | xxxx |
| 123 | | Knoxville TN ElecRev | 499746W24 | 4/1/2021 | 9/17/2014 101.195 | | n/a owned3/2015 | 4/1/2021 xx | | | | | xxxx |

ML-Compton-00021616

| 124 | Knoxville Tn Wtr.Serv. | 499815PP7 | 7/1/2021 | 9/17/2014 | 100.102 | n/a owned3/2015 | 7/1/2021 xx | xxxx |

Total of 124 Bonds Held from August 2009-March 2015

| | | 5,497,545 -887,002 | LOSS |

ML-Compton-00021617

BUCK's PERFORMANCE FOR EXACT TARGET

On 9/18/2012 JJ Compton transfers founders stock to MLynch account
Post 144 days, now can legally trade stock.

This price (23.07) is ML/Tom Buck cost basis for this stock--and therefore his performance in accounts. My cost basis was as portrayed on statements.

| Date | Share Quantity | Actual ML Cost Basis | | Price/Share Actually Traded | Proceeds From Sale (before Comm/ Fees taken out) | Subtract Commission | Subtract Fees | Net Proceeds (after comm fees) | ML acted as agent/ principal* | Realized/ Unrealized Gains/Losses | Buck's Performance from trades |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 9/18/2012 | 1,500,000 | 23.07 | 34,605,000 | | | | | | | | |
| Sold: | | | | | | | | | | | |
| 9/19/2012 | 266331 | 23.07 | 6,144,256 | 23.09 | 6,151,979 | 13,317 | 133.15 | 6,138,520 | agency | Realized | |
| 9/20/2012 | 92600 | 23.07 | 2,136,282 | 23.589 | 2,153,774 | 4,630 | 53.59 | 2,149,091 | agency | Realized | |
| 9/21/2012 | 78893 | 23.07 | 1,820,061 | 23.3476 | 1,841,962 | 3,945 | 46.61 | 1,837,971 | agency | Realized | |
| 9/24/2012 | 104052 | 23.07 | 2,400,479 | 23.1297 | 2,406,692 | 5,203 | 59.26 | 2,401,430 | 90%agent 10%princip | Realized | |
| 9/25/2012 | 94700 | 23.07 | 2,184,729 | 23.227 | 2,199,597 | 4,735 | 54.62 | 2,194,807 | agency | Realized | |
| shares sold | 636,576 | | 14,685,808 | | 14,754,004 | 31,829 | 347.23 | 14,721,819 | | Realized | 36,011 gain |
| shares remaining | 863,424 | 23.07 | 19,919,192 | | | | | | | | |
| Sold: | | | | | | | | | | | |
| 10/1/2012 | 57300 | 23.07 | 1,321,911 | 24.2175 | 1,387,663 | 2,865 | 36.43 | 1,384,761 | agency | | |
| 10/2/12 | 56124 | 23.07 | 1,294,780 | 24.009 | 1,347,481 | 2,806 | 35.53 | 1,344,639 | agency | | |
| 10/3/12 | 37300 | 23.07 | 860,511 | 23.8687 | 890,303 | 1,865 | 25.29 | 888,412 | agency | | |
| 10/4/12 | 35875 | 23.07 | 827,636 | 23.6651 | 848,985 | 1,794 | 24.37 | 847,167 | agency | | |
| 10/5/12 | 40425 | 23.07 | 932,604 | 23.9671 | 968,870 | 2,021 | 27.05 | 966,822 | agency | | |
| 10/8/12 | 69200 | 23.07 | 1,596,444 | 23.654 | 1,636,864 | 3,460 | 42.02 | 1,633,362 | agency | | |
| 10/9/12 | 63891 | 23.07 | 1,413,965 | 23.3119 | 1,489,421 | 3,195 | 38.71 | 1,486,187 | agency | | |
| 10/11/12 | 64123 | 23.07 | 1,479,317 | 22.886 | 1,467,532 | 3,206 | 38.22 | 1,464,287 | agency | | |
| 10/12/12 | 79800 | 23.07 | 1,840,986 | 23.0691 | 1,840,914 | 3,990 | 46.59 | 1,836,878 | agency | | |

ML-Compton-00021618

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/15/12 | 43400 | 23.07 | 1,001,238 | 22.0508 | 957,005 | 2,170 | 26.79 | 954,808 | agency | | |
| 10/16/12 | 133100 | 23.07 | 3,070,617 | 21.8626 | 2,909,912 | 6,655 | 70.53 | 2,903,187 | 99%agency 1%principal | | |
| 10/17/12 | 80000 | 23.07 | 1,845,600 | 21.9646 | 1,757,168 | 4,000 | 54.71 | 1,753,123 | agency | | |
| 10/18/12 | 102886 | 23.07 | 2,373,580 | 21.9326 | 2,256,557 | 5,144 | 55.9 | 2,251,357 | 98%agency 2%principal | | |
| (shares sold) | 863,424 | 23.07 | 19,919,192 | | 19,758,674 | 43,171 | 522.14 | 19,714,991 | | Realized | -204,201 loss |
| | total shares sold | | | | | 31,829 | 347.23 | 14,721,819 | | | 36,011 gain |
| | 1,500,000 | | | | | 43,171 | 522.14 | 19,714,991 | | | |
| | | Cost Basis | 34,605,000 | | | 75,000 | 869.37 | 34,436,810 | (net proceeds) | | |
| | | Actual Trades | 34,436,810 | | | | | | | | -168,190 loss from 1 trades |
| | | | -168,190 | Loss from trading | | | | | | | |
| BUY: | | | | | | | | | | | |
| 10/19/12 | 100000 | | | 22.317 | 2,231,710 | 5,000 | | 2,236,715 | agent | | |
| 10/22/12 | 43435 | | | 22.6795 | 985,084 | 2,171 | | 987,261 | 94%agency 6%principal | | |
| 10/23/12 | 10969 | | | 22.9211 | 251,422 | 548 | | 251,975 | 76%agency 24%principal | | |
| 10/26/12 | 60500 | | | 23.6448 | 1,430,510 | 3,025 | | 1,433,541 | 100%agency | | |
| 10/31/12 | 83459 | | | 23.446 | 1,956,780 | 4,173 | | 1,960,958 | 100%agency | | |
| | | | | | 6,855,506 | 14,917 | | 6,870,450 | | | |
| | 298,363 | | | | | | | 6,879,450 | | | |
| 11/1/12 | 81617 | | | 23.7314 | 1,936,886 | 4,081 | 5.35 | 1,940,972 | 100%agency | | |
| 11/5/12 | 221724 | | | 23.8044 | 5,278,006 | 11,086 | 5.35 | 5,289,098 | 100%agency | | |
| 11/6/12 | 43652 | | | 23.1949 | 1,012,504 | 2,183 | cancelled on11/ | 1,014,692 | 100%agency | | |
| 11/6/12 | | | 148,296 | 23.174 | 3,436,612 | 7,415 | cancelledon11/5 | 3,444,032 | 100%agency | | |
| 11/9/12 | 104644 | | | 23.174 | 2,425,020 | 5,232 | | 2,430,258 | 100%agency | | |
| 11/9/12 | 43652 | | | 23.1949 | 1,012,504 | 2,183 | uncancel11/7act | 1,014,692 | 100%agency | | |
| | 643,585 | | | | | | | | | | |
| | 451,637 | | | | 10,652,416 | 22,582 | | 10,675,020 | | | |
| | | | | | | 37,499 | | 6,879,450 | | | |

NO TRADES OCCURRED OR SETTLED ON 11/2/12 or as referred to on confirmation cancellations

| | | | |
|---|---|---|---|
| 750,000 | | 112,498.85 | 17,554,470 |

*Agency vs. Principal --Mr. Buck also owned pre-IPO stock in Exact Target, so why are trades allowed as "principal"?

ML-Compton-00021619

Exhibit 4

Capital Forensics, Inc.

Janice J Compton
Merrill Lynch – Account #613-31463
11/30/2012 - 02/28/2015

## MONTHLY SUMMARY

| Month | Values | | Flows | | | | Account Activity | | | | Performance | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Month End Account Value | Month End Cash Balance | Cash Contributions | Security Contributions | Cash Withdrawals | Security Withdrawals | Purchases | Sales | Int./Div.* | Comm./Fees | Monthly Gain(Loss) | Cumulative Gain(Loss) |
| Nov 12 | $1,276,987.00 | - | - | - | - | - | - | - | - | - | - | - |
| Dec 12 | - | - | - | $1,293,595.00 | - | - | - | - | - | - | ($16,608.00) | ($16,608.00) |
| 2012 Total | | | | $1,293,595.00 | | | | | | | ($16,608.00) | ($16,608.00) |
| Jan 13 | $2,005,507.80 | $4,686.80 | $90,356.00 | $535,348.00 | - | - | $104,803.79 | $14,448.25 | $4,586.34 | ($1,656.64) | $102,816.80 | $86,208.80 |
| Feb 13 | $2,554,541.44 | $0.44 | $537,788.00 | - | - | - | $743,092.13 | $197,535.87 | $3,081.90 | ($10,457.61) | $6,245.64 | $92,454.44 |
| Mar 13 | $2,660,817.49 | $6,226.49 | - | - | - | - | - | - | $56,351.05 | ($125.00) | $111,276.05 | $203,730.49 |
| Apr 13 | $2,939,788.31 | $1,094.31 | $220,000.00 | - | - | - | $449,081.79 | $216,651.17 | $7,298.44 | ($7,168.12) | $58,920.82 | $262,651.31 |
| May 13 | $3,048,887.20 | $1.20 | $175,340.00 | - | - | - | $312,056.00 | $123,989.96 | $10,632.93 | ($5,227.89) | ($66,221.11) | $196,430.20 |
| Jun 13 | $3,108,615.96 | $41,755.96 | $65,870.00 | - | - | - | $377,497.08 | $344,026.16 | $8,756.88 | ($8,071.10) | ($7,111.24) | $189,318.96 |
| Jul 13 | $3,193,453.75 | $52,180.75 | - | - | - | - | - | - | $10,423.79 | - | $90,937.79 | $280,156.75 |
| Aug 13 | $3,184,828.71 | $71,452.71 | - | - | - | - | - | - | $19,451.96 | ($180.00) | ($34,625.04) | $245,531.71 |
| Sep 13 | $3,232,547.19 | $76,622.19 | $23,296.00 | - | - | - | $484,495.84 | $480,687.49 | $6,257.83 | ($10,665.48) | $67,718.48 | $313,250.19 |
| Oct 13 | $3,457,614.00 | $4,360.00 | $215,400.00 | - | - | - | $435,721.37 | $329,318.42 | $10,864.76 | ($9,428.31) | $201,770.81 | $515,021.00 |
| Nov 13 | $3,690,562.75 | $17.75 | - | - | - | - | $235,307.29 | - | $15,545.04 | ($1,368.39) | $17,938.75 | $532,959.75 |
| Dec 13 | $3,708,719.65 | $523,327.65 | - | - | - | - | - | $513,414.81 | $9,935.09 | ($6,292.43) | $15,766.90 | $548,726.65 |
| 2013 Total | | | $1,329,050.00 | $535,348.00 | | | $3,142,055.29 | $2,220,672.13 | $113,265.81 | ($60,650.97) | $565,334.65 | |
| Jan 14 | $3,630,420.54 | $33,928.54 | - | - | - | - | $945,528.25 | $442,659.17 | $13,489.97 | ($15,514.11) | ($79,298.11) | $472,427.54 |
| Feb 14 | $3,637,854.53 | $7,418.53 | - | - | - | - | $478,808.25 | $432,192.37 | $20,105.87 | ($10,175.95) | $57,433.99 | $529,861.53 |
| Mar 14 | $3,787,078.79 | $15,779.79 | - | - | - | - | - | - | $8,486.26 | ($125.00) | $99,224.26 | $629,085.79 |
| Apr 14 | $3,920,231.13 | $28,312.13 | - | - | - | - | - | - | $10,532.24 | - | $133,152.34 | $762,238.13 |
| May 14 | $6,478,157.09 | $2,514,573.09 | $2,500,000.00 | - | - | - | $155,304.09 | $121,867.70 | $21,697.15 | ($3,585.10) | $57,925.96 | $820,164.09 |
| Jun 14 | $6,452,913.98 | $2,492,344.98 | - | - | - | - | $165,014.04 | $127,752.74 | $15,279.04 | ($3,494.72) | ($24,097.26) | $796,066.83 |
| Jul 14 | $6,356,335.63 | $2,701,870.63 | - | - | ($1,145.85) | - | $185,769.96 | $195,769.96 | $13,835.69 | ($2,277.81) | ($96,578.35) | $699,488.48 |
| Aug 14 | $6,501,005.54 | $2,621,910.54 | - | - | - | - | $502,688.33 | $400,938.30 | $21,789.94 | ($3,424.35) | $144,669.91 | $844,158.39 |
| Sep 14 | $6,392,656.34 | $2,954,234.34 | - | - | - | - | $178,139.39 | $324,133.81 | $8,189.99 | ($5,811.77) | ($108,349.20) | $735,809.19 |
| Oct 14 | $6,384,417.73 | $3,116,289.73 | - | - | ($1,100.04) | - | $324,540.27 | $324,540.27 | $14,754.55 | ($5,811.77) | ($7,138.57) | $728,670.62 |
| Nov 14 | $6,413,632.47 | $3,132,265.47 | - | - | - | - | - | - | $8,657.74 | - | $29,214.74 | $757,885.36 |
| Dec 14 | $6,049,370.99 | $3,684,284.99 | - | - | ($250,000.00) | - | $793,361.78 | $328,540.27 | $16,976.04 | ($525.00) | ($114,261.48) | $643,623.88 |
| 2014 Total | | | $2,500,000.00 | | ($252,245.89) | | $2,425,482.35 | $3,165,216.10 | $173,794.48 | ($64,332.31) | $94,897.23 | |
| Jan 15 | $6,046,569.61 | $3,695,794.61 | - | - | - | - | - | - | $11,534.62 | ($525.00) | ($801.38) | $642,822.50 |
| Feb 15 | $6,096,619.49 | $3,706,114.49 | $73.46 | - | - | - | - | - | $10,246.42 | - | $47,976.42 | $690,798.92 |
| 2015 Total | | | $73.46 | | | | | | $21,781.04 | ($525.00) | $47,175.04 | |
| Grand Total | | | $3,829,123.46 | $1,828,943.00 | ($252,245.89) | - | $5,567,537.64 | $5,385,888.23 | $308,861.33 | ($125,008.28) | | $690,798.92 |

* Includes accrued interest

ML-Compton-00021649

Exhibit 5

## TOLLING AND STANDSTILL AGREEMENT

This Tolling and Standstill Agreement, effective as of September 5, 2019 (the "Tolling Agreement"), is made and entered into by and among Janice Compton and her successors and assigns ("Compton"), and Merrill Lynch, Pierce, Fenner & Smith Incorporated and its parents, affiliates, subsidiaries, successors and assigns ("Merrill Lynch"). Compton and Merrill Lynch are each a "Party" under this Agreement, and together they constitute the "Parties."

WHEREAS, the Parties wish to preserve their rights to assert any claims and/or any statutory, common law or equitable theory and/or cause of action regarding Compton's investment accounts (the "Potential Claims") and also to assert any counterclaims, cross-claims, third-party claims, defenses, demands for indemnification or contribution relating to the Potential Claims (the "Potential Defenses");

WHEREAS, the Parties believe that it would be mutually beneficial to delay the commencement of any action or proceeding relating to the Potential Claims in order to allow for, among other things, an opportunity for further investigation, dialogue, negotiation, and analysis;

WHEREAS, the Parties, without admitting any liability, wrongdoing, or responsibility, or lack thereof, wish to avoid the cost, expense, and disruption caused by unnecessary litigation;

WHEREAS, the Parties do not intend for this Agreement to govern, modify, limit or otherwise affect any pending litigation; and

WHEREAS, the Parties find it mutually desirable to enter into the Tolling Agreement;

NOW, THEREFORE, in consideration of the mutual promises contained herein and intending to be legally bound hereby, Compton and Merrill Lynch understand and agree as follows:

1.      The Tolling Agreement relates to any and all Potential Claims and Potential Defenses.

DB3/ 202901937

Compton_013822

Tolling and Standstill Agreement, Page 2 of 6

2.      The effective date of the Tolling Agreement is September 5, 2019 (the "Effective Date"). The termination date of the Tolling Agreement shall be the earliest of (i) January 3, 2020, (ii) thirty (30) business days after any Party receives express written notice of termination from any other Party by overnight courier (such as Federal Express or UPS), with a courtesy copy provided via electronic mail, or (iii) a date prior to January 3, 2020 that the Parties, by mutual agreement, consent to in writing is the date on which the Tolling Agreement will terminate ("Termination Date").

3.      The tolling period is the period starting from the Effective Date through and including the Termination Date ("Tolling Period").

4.      Each Party agrees that it shall not assert in any arbitral forum or before any court or tribunal any Potential Claim or Potential Defense against the other Party during the Tolling Period.

5.      Other than as stated herein, any eligibility, statute of limitations, statute of repose, and/or other time-related defense or claim, whether statutory, contractual or otherwise, whether under the FINRA Code of Arbitration Procedure, federal, or state law, and whether at law, in equity or otherwise, which are or may be applicable to any Potential Claims or Potential Defenses are hereby temporarily tolled for the duration of, and shall not run at any time during, the Tolling Period.

6.      The Parties agree not to assert directly or indirectly, plead, raise by defense or avoidance, or otherwise rely on any passage of time during the Tolling Period in asserting any defenses related to the Potential Claims or Potential Defenses, including any defense to vicarious liability based on such passage of time.

DB3/ 202901937

Compton_013823

7.      Each Party reserves to itself the absolute and sole discretion to terminate the Tolling Agreement by the method provided herein for any reason or no reason whatsoever, in accordance with paragraph 2, above.  The Tolling Agreement will not renew automatically.  To renew the Tolling Agreement, each Party must execute a new tolling agreement or a written extension or amendment of this Tolling Agreement.

8.      Nothing in the Tolling Agreement shall be taken as an admission by any of the Parties as to the applicability, running, expiration or non-expiration of any eligibility period, statute of limitations, statute of repose, or similar rule of arbitration, law or equity prior to the Effective Date.

9.      Nothing in the Tolling Agreement shall itself have the effect of reviving any claims or defenses that are otherwise barred by any statute of limitations, statute of repose, eligibility period, or similar rule of law or equity prior to the Effective Date; nor shall this Agreement re-start or begin anew any applicable statute of limitations or period of repose (for example, if a statute of limitations is one year with 15 days remaining when the Tolling Period begins, then 15 days of the limitations period will remain when the Tolling Period ends).

10.     The Tolling Agreement is not, and shall not be asserted or construed to be, an admission or indication of liability, wrongdoing, or responsibility by the Parties to any other person (whether or not a Party to the Tolling Agreement) on any Potential Claims, nor shall it be asserted or construed to be a waiver of any Potential Claims or Potential Defenses or to prejudice or affect any other rights or liabilities of the Parties or to be used to form the basis of any liability against the Parties.

11.     The Parties agree that the Tolling Agreement, the negotiation of the Tolling Agreement, and the terms of the Tolling Agreement are protected by the applicable evidentiary

Compton_013824

rules governing the tribunal. The Tolling Agreement, the negotiation of the Tolling Agreement, and the terms of the Tolling Agreement, and any extensions or amendments thereof, shall not be offered or introduced into evidence in any action or proceeding (including a FINRA arbitration), except to the extent necessary to enforce or effectuate the terms of the Tolling Agreement or to oppose the assertion of a time-related defense or claim.

12.    The existence of the Tolling Agreement, the negotiation of the Tolling Agreement, and the terms of the Tolling Agreement, shall be treated by the Parties as confidential, and no Party nor its counsel or agents shall make or permit any disclosure hereof except: (i) for the purposes set forth in paragraph 11, *supra*, (ii) any internal or external auditors of any Party or the affiliate of any Party, or (iii) should an arbitration be filed, in the form of a stipulated statement, agreed to in form and signed by both Parties, informing the arbitration panel of the agreed number of days that constitute the Tolling Period, such as to eliminate unnecessary confusion in the mind of any arbitrator as to the eligibility period under the FINRA Code of Arbitration Procedure or the period subject to any time-related defense.

13.    The Tolling Agreement constitutes the entire agreement and understanding among the Parties respecting the subject matter herein and shall not be modified except in a writing signed by all the Parties.

14.    The parties agree that any dispute regarding the meaning or effect of this Tolling Agreement shall be heard and by a single arbitrator appointed Chair of any arbitration panel convened to adjudicate any Potential Claims and that the construction and application of the Tolling Agreement shall be governed by the laws of the State of New York without giving effect to its conflict of laws principles, provided, however, that New York law shall not be deemed, by operation of this provision, to govern (or not to govern) the issue of which jurisdiction's law shall

Compton_013825

apply to any statute of limitations defense, or any other defense in law or equity relating to the passage of time.

15.      If any term or condition of this Tolling Agreement is deemed or found to be unlawful or void, the remainder of this Tolling Agreement shall be severed and shall survive, and the Parties shall take such further action as is necessary in order to effect the intent of the Parties as set forth above, to the greatest extent possible.

16.      The Tolling Agreement may be executed in counterparts, each of which shall be deemed an original, but together shall constitute one and the same instrument.

17.      A faxed or optically-scanned signature shall be deemed an original signature for the purpose of the Tolling Agreement.

18.      An accurate copy of the Tolling Agreement shall be enforceable to the same extent as the original, regardless of any best-evidence rule.

19.      Each Party represents and warrants that it is authorized to enter into the Tolling Agreement, on its own behalf and it intends the Tolling Agreement to be a valid and binding obligation, enforceable in accordance with its terms.

20.      The signatories to the Tolling Agreement represent that they have the authority to bind the Parties on whose behalf they are signing.

DB3/ 202901937

Compton_013826

IN WITNESS WHEREOF, AND INTENDING TO BE LEGALLY BOUND, the Parties hereto

have caused the Tolling Agreement to be executed effective as of September 5, 2019.

Merrill Lynch, Pierce, Fenner & Smith
Incorporated

By
Name: _Thomas J. Hennessey_

Title: _Counsel ~ Morgan Lewis_

Janice Compton
By her attorney
Niel Prosser
Prosser Law Firm
5865 Ridgeway Center Parkway
Suite 300
Memphis, Tennessee 38120
901-820-4433

DB3/ 202901937

## FIRST AMENDED TOLLING AND STANDSTILL AGREEMENT

This First Amended Tolling and Standstill Agreement, effective as of September 5, 2019 (the "First Amended Tolling Agreement"), is made and entered into by and among Janice Compton and her successors and assigns ("Compton"), and Merrill Lynch, Pierce, Fenner & Smith Incorporated and its parents, affiliates, subsidiaries, successors and assigns ("Merrill Lynch"). Compton and Merrill Lynch are each a "Party" under this Agreement, and together they constitute the "Parties."

WHEREAS, the Parties wish to preserve their rights to assert any claims and/or any statutory, common law or equitable theory and/or cause of action regarding Compton's investment accounts (the "Potential Claims") and also to assert any counterclaims, cross-claims, third-party claims, defenses, demands for indemnification or contribution relating to the Potential Claims (the "Potential Defenses");

WHEREAS, the Parties believe that it would be mutually beneficial to delay the commencement of any action or proceeding relating to the Potential Claims in order to allow for, among other things, an opportunity for further investigation, dialogue, negotiation, and analysis;

WHEREAS, the Parties, without admitting any liability, wrongdoing, or responsibility, or lack thereof, wish to avoid the cost, expense, and disruption caused by unnecessary litigation;

WHEREAS, the Parties do not intend for this Agreement to govern, modify, limit or otherwise affect any pending litigation;

WHEREAS, the Parties previously entered into a tolling agreement ("First Tolling Agreement") and mutually agree to extend the Tolling Period by an additional 90 days; and

WHEREAS, the Parties find it mutually desirable to enter into the First Amended Tolling Agreement;

DB3/ 203289298

Compton_013836

First Amended Tolling and Standstill Agreement, Page 2 of 6

NOW, THEREFORE, in consideration of the mutual promises contained herein and intending to be legally bound hereby, Compton and Merrill Lynch understand and agree as follows:

1.    The First Amended Tolling Agreement relates to any and all Potential Claims and Potential Defenses.

2.    The effective date of the First Amended Tolling Agreement is September 5, 2019 (the "Effective Date").  The termination date of the First Amended Tolling Agreement shall be the earliest of (i) April 2, 2020, (ii) thirty (30) business days after any Party receives express written notice of termination from any other Party by overnight courier (such as Federal Express or UPS), with a courtesy copy provided via electronic mail, or (iii) a date prior to April 2, 2020 that the Parties, by mutual agreement, consent to in writing is the date on which the First Amended Tolling Agreement will terminate ("Termination Date").

3.    The tolling period is the period starting from the Effective Date through and including the Termination Date ("Tolling Period").

4.    Each Party agrees that it shall not assert in any arbitral forum or before any court or tribunal any Potential Claim or Potential Defense against the other Party during the Tolling Period.

5.    Other than as stated herein, any eligibility, statute of limitations, statute of repose, and/or other time-related defense or claim, whether statutory, contractual or otherwise, whether under the FINRA Code of Arbitration Procedure, federal, or state law, and whether at law, in equity or otherwise, which are or may be applicable to any Potential Claims or Potential Defenses are hereby temporarily tolled for the duration of, and shall not run at any time during, the Tolling Period.

Compton_013837

First Amended Tolling and Standstill Agreement, Page 3 of 6

6.      The Parties agree not to assert directly or indirectly, plead, raise by defense or avoidance, or otherwise rely on any passage of time during the Tolling Period in asserting any defenses related to the Potential Claims or Potential Defenses, including any defense to vicarious liability based on such passage of time.

7.      Each Party reserves to itself the absolute and sole discretion to terminate the First Amended Tolling Agreement by the method provided herein for any reason or no reason whatsoever, in accordance with paragraph 2, above.  The First Amended Tolling Agreement will not renew automatically.  To renew the First Amended Tolling Agreement, each Party must execute a new tolling agreement or a written extension or amendment of this First Amended Tolling Agreement.

8.      The calculation of prejudgment interest on any purported damages or other payments related to the Potential Claims shall be suspended for the period of January 3, 2020 through April 2, 2020.

9.      Nothing in the First Amended Tolling Agreement or the First Tolling Agreement (collectively the "Tolling Agreements") shall be taken as an admission by any of the Parties as to the applicability, running, expiration or non-expiration of any eligibility period, statute of limitations, statute of repose, or similar rule of arbitration, law or equity prior to the Effective Date.

10.     Nothing in the Tolling Agreements shall itself have the effect of reviving any claims or defenses that are otherwise barred by any statute of limitations, statute of repose, eligibility period, or similar rule of law or equity prior to the Effective Date; nor shall this Agreement re-start or begin anew any applicable statute of limitations or period of repose (for example, if a statute of limitations is one year with 15 days remaining when the Tolling Period begins, then 15 days of the limitations period will remain when the Tolling Period ends).

Compton_013838

11.     The Tolling Agreements are not, and shall not be asserted or construed to be, an admission or indication of liability, wrongdoing, or responsibility by the Parties to any other person (whether or not a Party to the Tolling Agreements ) on any Potential Claims, nor shall it be asserted or construed to be a waiver of any Potential Claims or Potential Defenses or to prejudice or affect any other rights or liabilities of the Parties or to be used to form the basis of any liability against the Parties.

12.     The Parties agree that the Tolling Agreements, the negotiation of the Tolling Agreements, and the terms of the Tolling Agreements are protected by the applicable evidentiary rules governing the tribunal. The Tolling Agreements, the negotiation of the Tolling Agreements, and the terms of the Tolling Agreements, and any extensions or amendments thereof, shall not be offered or introduced into evidence in any action or proceeding (including a FINRA arbitration), except to the extent necessary to enforce or effectuate the terms of the Tolling Agreement or to oppose the assertion of a time-related defense or claim.

13.     The existence of the Tolling Agreements, the negotiation of the Tolling Agreements, and the terms of the Tolling Agreements shall be treated by the Parties as confidential, and no Party nor its counsel or agents shall make or permit any disclosure hereof except: (i) for the purposes set forth in paragraph 12, *supra,* (ii) any internal or external auditors of any Party or the affiliate of any Party, or (iii) should an arbitration be filed, in the form of a stipulated statement, agreed to in form and signed by both Parties, informing the arbitration panel of the agreed number of days that constitute the Tolling Period, such as to eliminate unnecessary confusion in the mind of any arbitrator as to the eligibility period under the FINRA Code of Arbitration Procedure or the period subject to any time-related defense.

Compton_013839

14.     The First Amended Tolling Agreement constitutes the entire agreement and understanding among the Parties respecting the subject matter herein and shall not be modified except in a writing signed by all the Parties.

15.     The parties agree that any dispute regarding the meaning or effect of this First Amended Tolling Agreement shall be heard and by a single arbitrator appointed Chair of any arbitration panel convened to adjudicate any Potential Claims and that the construction and application of the First Amended Tolling Agreement shall be governed by the laws of the State of New York without giving effect to its conflict of laws principles, provided, however, that New York law shall not be deemed, by operation of this provision, to govern (or not to govern) the issue of which jurisdiction's law shall apply to any statute of limitations defense, or any other defense in law or equity relating to the passage of time.

16.     If any term or condition of this First Amended Tolling Agreement is deemed or found to be unlawful or void, the remainder of this First Amended Tolling Agreement shall be severed and shall survive, and the Parties shall take such further action as is necessary in order to effect the intent of the Parties as set forth above, to the greatest extent possible.

17.     The First Amended Tolling Agreement may be executed in counterparts, each of which shall be deemed an original, but together shall constitute one and the same instrument.

18.     A faxed or optically-scanned signature shall be deemed an original signature for the purpose of the First Amended Tolling Agreement.

19.     An accurate copy of the First Amended Tolling Agreement shall be enforceable to the same extent as the original, regardless of any best-evidence rule.

Compton_013840

First Amended Tolling and Standstill Agreement, Page 6 of 6

20.     Each Party represents and warrants that it is authorized to enter into the First Amended Tolling Agreement, on its own behalf and it intends the First Amended Tolling Agreement to be a valid and binding obligation, enforceable in accordance with its terms.

21.     The signatories to the First Amended Tolling Agreement represent that they have the authority to bind the Parties on whose behalf they are signing.

IN WITNESS WHEREOF, AND INTENDING TO BE LEGALLY BOUND, the Parties hereto have caused the First Amended Tolling Agreement to be executed effective as of September 5, 2019.

Merrill Lynch, Pierce, Fenner & Smith
Incorporated
By its attorney
Thomas J. Hennessey
Morgan, Lewis & Bockius LLP
One Federal Street
Boston, MA 02110
617-951-8520

Janice Compton
By her attorney
Niel Prosser
Prosser Law Firm
5865 Ridgeway Center Parkway
Suite 300
Memphis, Tennessee 38120
901-820-4433

DB3/ 203289298

Compton_013841

## SECOND AMENDED TOLLING AND STANDSTILL AGREEMENT

This Second Amended Tolling and Standstill Agreement, effective as of September 5, 2019 (the "Second Amended Tolling Agreement"), is made and entered into by and among Janice Compton and her successors and assigns ("Compton"), and Merrill Lynch, Pierce, Fenner & Smith Incorporated and its parents, affiliates, subsidiaries, successors and assigns ("Merrill Lynch"). Compton and Merrill Lynch are each a "Party" under this Agreement, and together they constitute the "Parties."

WHEREAS, the Parties wish to preserve their rights to assert any claims and/or any statutory, common law or equitable theory and/or cause of action regarding Compton's investment accounts (the "Potential Claims") and also to assert any counterclaims, cross-claims, third-party claims, defenses, demands for indemnification or contribution relating to the Potential Claims (the "Potential Defenses");

WHEREAS, the Parties believe that it would be mutually beneficial to delay the commencement of any action or proceeding relating to the Potential Claims in order to allow for, among other things, an opportunity for further investigation, dialogue, negotiation, and analysis;

WHEREAS, the Parties, without admitting any liability, wrongdoing, or responsibility, or lack thereof, wish to avoid the cost, expense, and disruption caused by unnecessary litigation;

WHEREAS, the Parties do not intend for this Agreement to govern, modify, limit or otherwise affect any pending litigation;

WHEREAS, the Parties previously entered into a tolling agreement ("First Tolling Agreement"), a First Amended Tolling Agreement ("Prior Tolling Agreements") and mutually agree to extend the Tolling Period by an additional 90 days; and

DB3/ 203385579.1

Compton_013850

Second Amended Tolling and Standstill Agreement, Page 2 of 6

WHEREAS, the Parties find it mutually desirable to enter into the Second Amended Tolling Agreement;

NOW, THEREFORE, in consideration of the mutual promises contained herein and intending to be legally bound hereby, Compton and Merrill Lynch understand and agree as follows:

1.     The Second Amended Tolling Agreement relates to any and all Potential Claims and Potential Defenses.

2.     The effective date of the Second Amended Tolling Agreement is September 5, 2019 (the "Effective Date"). The termination date of the Second Amended Tolling Agreement shall be the earliest of (i) July 1, 2020, (ii) thirty (30) business days after any Party receives express written notice of termination from any other Party by overnight courier (such as Federal Express or UPS), with a courtesy copy provided via electronic mail, or (iii) a date prior to July 1, 2020 that the Parties, by mutual agreement, consent to in writing is the date on which the Second Amended Tolling Agreement will terminate ("Termination Date").

3.     The tolling period is the period starting from the Effective Date through and including the Termination Date ("Tolling Period").

4.     Each Party agrees that it shall not assert in any arbitral forum or before any court or tribunal any Potential Claim or Potential Defense against the other Party during the Tolling Period.

5.     Other than as stated herein, any eligibility, statute of limitations, statute of repose, and/or other time-related defense or claim, whether statutory, contractual or otherwise, whether under the FINRA Code of Arbitration Procedure, federal, or state law, and whether at law, in equity or otherwise, which are or may be applicable to any Potential Claims or Potential Defenses are

Compton_013851

hereby temporarily tolled for the duration of, and shall not run at any time during, the Tolling Period.

6.      The Parties agree not to assert directly or indirectly, plead, raise by defense or avoidance, or otherwise rely on any passage of time during the Tolling Period in asserting any defenses related to the Potential Claims or Potential Defenses, including any defense to vicarious liability based on such passage of time.

7.      Each Party reserves to itself the absolute and sole discretion to terminate the Second Amended Tolling Agreement by the method provided herein for any reason or no reason whatsoever, in accordance with paragraph 2, above. The Second Amended Tolling Agreement will not renew automatically. To renew the Second Amended Tolling Agreement, each Party must execute a new tolling agreement or a written extension or amendment of this Second Amended Tolling Agreement.

8.      The calculation of prejudgment interest on any purported damages or other payments related to the Potential Claims shall be suspended for the period of January 3, 2020 through July 1, 2020.

9.      Nothing in the Second Amended Tolling Agreement or the Prior Tolling Agreements (collectively the "Tolling Agreements") shall be taken as an admission by any of the Parties as to the applicability, running, expiration or non-expiration of any eligibility period, statute of limitations, statute of repose, or similar rule of arbitration, law or equity prior to the Effective Date.

10.     Nothing in the Tolling Agreements shall itself have the effect of reviving any claims or defenses that are otherwise barred by any statute of limitations, statute of repose, eligibility period, or similar rule of law or equity prior to the Effective Date; nor shall this

Compton_013852

Second Amended Tolling and Standstill Agreement, Page 4 of 6

Agreement re-start or begin anew any applicable statute of limitations or period of repose (for example, if a statute of limitations is one year with 15 days remaining when the Tolling Period begins, then 15 days of the limitations period will remain when the Tolling Period ends).

11. The Tolling Agreements are not, and shall not be asserted or construed to be, an admission or indication of liability, wrongdoing, or responsibility by the Parties to any other person (whether or not a Party to the Tolling Agreements ) on any Potential Claims, nor shall it be asserted or construed to be a waiver of any Potential Claims or Potential Defenses or to prejudice or affect any other rights or liabilities of the Parties or to be used to form the basis of any liability against the Parties.

12. The Parties agree that the Tolling Agreements, the negotiation of the Tolling Agreements, and the terms of the Tolling Agreements are protected by the applicable evidentiary rules governing the tribunal. The Tolling Agreements, the negotiation of the Tolling Agreements, and the terms of the Tolling Agreements, and any extensions or amendments thereof, shall not be offered or introduced into evidence in any action or proceeding (including a FINRA arbitration), except to the extent necessary to enforce or effectuate the terms of the Tolling Agreement or to oppose the assertion of a time-related defense or claim.

13. The existence of the Tolling Agreements, the negotiation of the Tolling Agreements, and the terms of the Tolling Agreements shall be treated by the Parties as confidential, and no Party nor its counsel or agents shall make or permit any disclosure hereof except: (i) for the purposes set forth in paragraph 12, *supra,* (ii) any internal or external auditors of any Party or the affiliate of any Party, or (iii) should an arbitration be filed, in the form of a stipulated statement, agreed to in form and signed by both Parties, informing the arbitration panel of the agreed number of days that constitute the Tolling Period, such as to eliminate

Compton_013853

unnecessary confusion in the mind of any arbitrator as to the eligibility period under the FINRA Code of Arbitration Procedure or the period subject to any time-related defense.

14.     The Second Amended Tolling Agreement constitutes the entire agreement and understanding among the Parties respecting the subject matter herein and shall not be modified except in a writing signed by all the Parties.

15.     The parties agree that any dispute regarding the meaning or effect of this Second Amended Tolling Agreement shall be heard and by a single arbitrator appointed Chair of any arbitration panel convened to adjudicate any Potential Claims and that the construction and application of the Second Amended Tolling Agreement shall be governed by the laws of the State of New York without giving effect to its conflict of laws principles, provided, however, that New York law shall not be deemed, by operation of this provision, to govern (or not to govern) the issue of which jurisdiction's law shall apply to any statute of limitations defense, or any other defense in law or equity relating to the passage of time.

16.     If any term or condition of this Second Amended Tolling Agreement is deemed or found to be unlawful or void, the remainder of this Second Amended Tolling Agreement shall be severed and shall survive, and the Parties shall take such further action as is necessary in order to effect the intent of the Parties as set forth above, to the greatest extent possible.

17.     The Second Amended Tolling Agreement may be executed in counterparts, each of which shall be deemed an original, but together shall constitute one and the same instrument.

18.     A faxed or optically-scanned signature shall be deemed an original signature for the purpose of the Second Amended Tolling Agreement.

19.     An accurate copy of the Second Amended Tolling Agreement shall be enforceable to the same extent as the original, regardless of any best-evidence rule.

Compton_013854

Second Amended Tolling and Standstill Agreement, Page 6 of 6

20.    Each Party represents and warrants that it is authorized to enter into the Second Amended Tolling Agreement, on its own behalf and it intends the Second Amended Tolling Agreement to be a valid and binding obligation, enforceable in accordance with its terms.

21.    The signatories to the Second Amended Tolling Agreement represent that they have the authority to bind the Parties on whose behalf they are signing.

IN WITNESS WHEREOF, AND INTENDING TO BE LEGALLY BOUND, the Parties hereto have caused the Second Amended Tolling Agreement to be executed effective as of September 5, 2019.

| | |
|---|---|
| Merrill Lynch, Pierce, Fenner & Smith Incorporated | Janice Compton |
| By its attorney | By her attorney |
| Thomas J. Hennessey | Niel Prosser |
| Morgan, Lewis & Bockius LLP | Prosser Law Firm |
| One Federal Street | 5865 Ridgeway Center Parkway |
| Boston, MA 02110 | Suite 300 |
| 617-951-8520 | Memphis, Tennessee 38120 |
| | 901-820-4433 |

4/6/2020

DB3/ 203385579.1

Exhibit 6



KAUFMANN
GILDIN &
ROBBINS LLP
ATTORNEYS AT LAW

767 THIRD AVENUE
NEW YORK NEW YORK 10017

TEL(212) 755-3100
FAX(212) 755-3174
WWW.KAUFMANNGILDIN.COM

Direct Dial: 212-705-0815
drobbins@kaufmanngildin.com

July 19, 2021

**Via Email**

Niel Prosser, Esq.
The Prosser Law Firm, PLC
5865 Ridgeway Center Parkway, Suite 300
Memphis, TN 38120

Re: Janice J. Compton vs. Merrill Lynch, Pierce, Fenner & Smith Incorporated and
  Thomas J. Buck
  <u>FINRA Office of Dispute Resolution Arbitration Number 20-02468</u>

## TOM BUCK'S FIRST REQUEST FOR DOCUMENTS AND INFORMATION PURSUANT TO RULE 12507

Dear Niel,

  Pursuant to FINRA 12507, what follows are Respondent Tom Buck's first, rather discrete set of six requests for documents and information from your client, Claimant Janice Compton. They are based on specific assertions made in the Statement of Claim. If you have an issue with any of these, give me a call. First, the standard discovery guidelines and definitions, which you can feel free to skip.

### GUIDELINES and DEFINITIONS

  1. These requests are continuing so as to require you to supplement your response if you obtain further or different information before the arbitration hearing.

  2. Unless otherwise indicated, these requests refer to the time, place and circumstances of the occurrence mentioned or complained of in the Statement of Claim.

*Kaufmann Gildin & Robbins LLP*

Niel Prosser, Esq.
July 19, 2021
Page 2

3. The term "you" means the Claimant and each answer shall provide the information requested from Claimant.

4. "Document" or "documents" or any other form of these words, unless the context clearly indicated otherwise, means the original or copies of any written, recorded or graphic matter, however produced or reproduced, in any tangible thing which, in whole or in part, illustrates or conveys information in your possession or custody or control, whether produced, reproduced or stored on paper, cards, tapes, disks, charts, film, computer storage devices or any other medium or device including, but not limited to, all writings, correspondence, reports, memoranda, notes, agreements, contract, recordings, notations of telephone conversations or meetings or conferences, interoffice communications, work records, notices, summaries or other tangible communications, all in interim or final drafts, versions or copies of such matters or things.

5. Please identify each document for which a privilege is asserted or which you maintain is otherwise excludable from discovery, and state the basis for each claim of privilege or ground for exclusion.

6. Where the name or identity of a person is requested, please state his or her full name, occupation, present or last known address and telephone number, as well as business address and telephone number, if known.

7. The noun "person" shall include, without limitation, any individual, official, corporation, association, LLC, partnership, board, department, trust and any other legal entity.

8. Documents produced in response to these Requests are to be furnished in an unprotected or unlocked format. Where appropriate, documents may be produced in native format.

*Kaufmann Gildin & Robbins LLP*

Niel Prosser, Esq.
July 19, 2021
Page 3

9. If you object to, or otherwise decline to answer, any portion of a Request, provide all documents or information called for in that portion of the Request, to which you do not object or to which you do not decline to answer. If you object to a Request on the ground that it is too broad (i.e., that it calls both for documents or information which are relevant to the subject matter of the action and documents or information which are not), provide such information as is concededly relevant. If you object to a Request on the ground that to provide an answer would constitute an undue burden, provide such requested documents or information as can be supplied without undertaking an undue burden. For those portions of any Requests to which you object or otherwise decline to answer, state the reason for such objection or declination.

**DISCOVERY REQUESTS BASED ON STATEMENT OF CLAIM ASSERTIONS**

What follows is list of only six requests for documents and information we seek from you, so that we are better able to defend Mr. Buck. While I believe they are reasonable and specifically targeted to assertions in the Statement of Claim, if you differ, please give me a call to discuss since I prefer speaking with you to receiving a long letter filled with adjectives and telling me, in legalese, to take a hike.

To put these requests in context, we seek:

- what your client's damages are:
- how she had retained you since you are seeking reimbursement of attorney's fees;
- which trades within the six years prior to the Claim being accepted by FINRA are at issue;
- the tolling agreement with Merrill Lynch;

*Kaufmann Gildin & Robbins LLP*

Niel Prosser, Esq.
July 19, 2021
Page 4

- a copy of opening account forms that I don't believe we received (but if we did, just give us the Bates number[1]); and,

- trades at issue during a certain period of time.

**Request #1 – What Are Claimant's Damages?**

**Context:**   Many customer attorneys think best practice is to surprise defense counsel with detailed damage calculations just 20 days before the hearing supposedly "in compliance" with Rule 12514(a) - Prehearing Exchange of Documents and Witness Lists, and Explained Decision Requests – which states that: "At least 20 days before the first scheduled hearing date, all parties must provide all other parties with copies of all documents and other materials in their possession or control that they intend to use at the hearing that have not already been produced."

This rule is not, however, a "get out of jail free card" for failing to respond to case-specific Rule 12507 requests within 60 days of the discovery requests.  One has nothing to do with the other.

And when:

1. Claimant alleges millions and millions of dollars in damages without any specificity and

2. Claimant is "delighted" in obtaining $946,865 from the victim's fund set up with Mr. Buck's money (See attached email),

then we believe it is only fair to know just what are the claimed damages so that we can retain our own expert witness to assist us in defending the claim.

---

[1] Did you know that Bates numbering is named after the inventor Edwin G. Bates, who obtained a patent in the late 19th century for the Bates Automatic Numbering Machine or Bates Stamper, which was used to manually stampdocuments with consecutive numbers?

*Kaufmann Gildin & Robbins LLP*

Niel Prosser, Esq.
July 19, 2021
Page 5

Getting that information on the eve of a hearing would not be fair to either side since there is a chance our expert would be compelled to issue her own analysis within 20 days before the hearing. Lastly, by now, you must know what damages your client has allegedly suffered.

> *The Statement of Claim makes the following assertions on this subject:*

- "The amount of her losses for lack of prudent management will be the subject of expert testimony at the hearing, but it is currently believed to exceed $7 million with pre-judgment interest."

- "The damages Janice seeks in this case are very substantial and are intended to send a message: No profits should come from putting clients last."

- "Janice's damages extend far beyond disgorgement of commissions and the interest thereon. Indeed, her single largest element of damage stems from Buck's mismanagement. Because Buck's primary goal in managing her accounts was to generate commissions for himself (and Merrill), Janice largely missed out on one of the longest bull markets in United States history."

- "The amount of such damages will be proved at trial but with interest, is expected to exceed $7 million."

- "While the amount will be shown at trial, once just the compensatory damages are trebled, they alone will likely exceed $20 million."

- "As a result of the Respondents' misconduct as set forth above, Janice seeks an award of damages jointly and severally against the Respondents as follows:

  1. An amount equal to the returns Janice lost due to the Respondents' failure to prudently manage her accounts e.g. well managed damages;

*Kaufmann Gildin & Robbins LLP*

Niel Prosser, Esq.
July 19, 2021
Page 6

     2.  Disgorgement of the balance of the commissions Janice has not recovered
        to date from the SEC's Victim's Fund;"

    When Respondent Merrill Lynch asked for your damage calculation, you responded as
follows

        Request 16. All documents and/or communications supporting Claimant's claims for
        damages, and all calculations thereof, in this arbitration, including without limitation
        documents, if any, supporting Claimant's claims in this arbitration for: (a) well
        managed damages; (b) "[d]isgorgement of the balance of the commissions Janice has
        not recovered to date from the SEC's Victim's Fund;" (c) punitive/exemplary damages;
        (d) attorney's fees, costs, and expenses, and (e) treble damages, referenced on pages 42-
        43 of the Statement of Claim.

        **Response:** Janice directs Merrill to, inter alia, her Merrill account statements,
        trade confirmations and correspondence with Merrill. To the extent anything
        further is sought, Janice objects on grounds that this request is premature, calls
        for information not due until the 20-day exchange and because this request
        cannot be accurately answered until discovery is completed. Janice further
        objects on grounds that this request seeks documents that are privileged,
        including those that relate to the calculation of damages. Janice also relies upon
        her General Objections and, in addition, specifically objects that this request is
        overly broad, unduly burdensome, invades her attorneys' work product and calls
        for extensive fact finding that is outside that permitted by the rules governing
        FINRA arbitrations.

*Kaufmann Gildin & Robbins LLP*

Niel Prosser, Esq.
July 19, 2021
Page 7

<u>Mr. Buck's Request</u>

1. Produce your damage calculations. We don't seek privileged communications. Nor should we be compelled to do our own calculation when, respectfully, your client was "delighted" with what she already got from Tom Buck's fund.

2. Idenfity the expert witness firm and address that prepared it.

**Request #2 – Attorney's Fees**

In the Prayer for Relief section of the Statement of Claim, Claimant seeks: "Attorney's fees, costs and expenses"

<u>Mr. Buck's Request</u>

1. Produce Claimant's letter of retention with your firm.

2. Produce all invoices since being retained with privileged information redacted. (This is a continuing request).

**Request #3 – Statute of Limitations**

A footnote in the Statement of Claim states that "The tolling agreement [between Ms. Compton and Merrill Lynch] went into effective on September 5, 2019 and expired on the date of the filing of this Statement of Claim.

<u>Mr. Buck's Request</u>

Produce the executed tolling agreement.

*Kaufmann Gildin & Robbins LLP*

Niel Prosser, Esq.
July 19, 2021
Page 8

**Request #4 – Other Accounts**

While you have provided monthly statements for Claimant's accounts with Merrill Edge, JP Morgan, Fidelity (for December 2017, please confirm if there are additional statements that have not been produced) and 2018 Foreign Tax Form from Vanguard without any statements. I don't believe we have a copy of the opening account forms from the last three firms.

> Mr. Buck's Request
>
> Produce the opening account forms for the JP Morgan, Fidelity and Vanguard accounts opened by Claimant.

**Request #6 – Trades At Issue Within Six Years of Filing Statement of Claim**

While we have a professional disagreement on the applicability of Rule 12206 to the claims, our side has no idea which *trades that took place within six years of the filing of of the the Claim* your client is seeking damages for. And while we can certainly read monthly account statements, we don't know which of those trades are at issue.

> Mr. Buck's Request
>
> Identify which trades as set forth in the August 2014 – February 2015 Merill Lynch monthly account statements are at issue in this case (i.e., for which Claimant seeks damages), especially in light of the following statement in paragraph 8 of the Statement of Claim: "During 2014, however, his trading slowed and in 2015 it stopped altogether."

Very truly yours,

KAUFMANN GILDIN & ROBBINS LLP

By: DAVID E. ROBBINS

Message

| | |
|---|---|
| **From:** | Fagel, Brian D. [FagelB@SEC.GOV] |
| **Sent:** | 2/3/2020 12:08:28 PM |
| **To:** | Kyle Johnson [kjohnson@prosserlaw.com] |
| **CC:** | Niel Prosser [np@prosserlaw.com]; Jake Dickerson [jdickerson@prosserlaw.com] |
| **Subject:** | RE: Compton - Follow Up re: Buck Victim Fund |

The motion was filed today.

**From:** Kyle Johnson <kjohnson@prosserlaw.com>
**Sent:** Friday, January 24, 2020 2:30 PM
**To:** Fagel, Brian D. <FagelB@SEC.GOV>
**Cc:** Niel Prosser <np@prosserlaw.com>; Jake Dickerson <jdickerson@prosserlaw.com>
**Subject:** RE: Compton - Follow Up re: Buck Victim Fund

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Good to hear Brian. Keep us updated once the Motion is filed.

**From:** Fagel, Brian D. <FagelB@SEC.GOV>
**Sent:** Friday, January 24, 2020 10:41 AM
**To:** Kyle Johnson <kjohnson@prosserlaw.com>
**Cc:** Niel Prosser <np@prosserlaw.com>; Jake Dickerson <jdickerson@prosserlaw.com>
**Subject:** RE: Compton - Follow Up re: Buck Victim Fund

Thanks. Trial counsel was reviewing your edits and we've accepted all of them. We are all set – he is going to file the motion next week.

**From:** Kyle Johnson <kjohnson@prosserlaw.com>
**Sent:** Friday, January 24, 2020 8:25 AM
**To:** Fagel, Brian D. <FagelB@SEC.GOV>
**Cc:** Niel Prosser <np@prosserlaw.com>; Jake Dickerson <jdickerson@prosserlaw.com>
**Subject:** RE: Compton - Follow Up re: Buck Victim Fund

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hey Brian,

Just a follow-up on the below.

Thanks.

**From:** Kyle Johnson
**Sent:** Wednesday, January 15, 2020 6:29 PM
**To:** Fagel, Brian D. <FagelB@SEC.GOV>
**Cc:** Niel Prosser <np@prosserlaw.com>; Jake Dickerson <jdickerson@prosserlaw.com>
**Subject:** RE: Compton - Follow Up re: Buck Victim Fund

Brain,

Compton_013549

Thanks again for the call today and all of the work that you have done over the past few months. We spoke to Ms. Compton and she was delighted to hear the final distribution number of $946,868. She is willing to accept and passes along her thanks to you and the SEC.

I have attached a redlined draft copy of the Motion with updated amount as well as a few other changes throughout. Let us know your thoughts.

Thanks.

**From:** Fagel, Brian D. <FagelB@SEC.GOV>
**Sent:** Wednesday, January 15, 2020 10:16 AM
**To:** Jake Dickerson <jdickerson@prosserlaw.com>
**Cc:** Niel Prosser <np@prosserlaw.com>; Kyle Johnson <kjohnson@prosserlaw.com>
**Subject:** RE: Compton - Follow Up re: Buck Victim Fund

Attached are the numbers we discussed. Thanks.

**From:** Jake Dickerson <jdickerson@prosserlaw.com>
**Sent:** Tuesday, January 14, 2020 4:25 PM
**To:** Fagel, Brian D. <FagelB@SEC.GOV>
**Cc:** Niel Prosser <np@prosserlaw.com>; Kyle Johnson <kjohnson@prosserlaw.com>
**Subject:** Re: Compton - Follow Up re: Buck Victim Fund

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Thanks Brian. We will call you on your office line at 10a tomorrow.

-Jake

**From:** Fagel, Brian D. <FagelB@SEC.GOV>
**Sent:** Tuesday, January 14, 2020 4:23:04 PM
**To:** Jake Dickerson <jdickerson@prosserlaw.com>
**Cc:** Niel Prosser <np@prosserlaw.com>; Kyle Johnson <kjohnson@prosserlaw.com>
**Subject:** RE: Compton - Follow Up re: Buck Victim Fund

Thanks, that works. I'll be in my office if you just want to call me – 312-886-0843.

**From:** Jake Dickerson <jdickerson@prosserlaw.com>
**Sent:** Tuesday, January 14, 2020 3:18 PM
**To:** Fagel, Brian D. <FagelB@SEC.GOV>
**Cc:** Niel Prosser <np@prosserlaw.com>; Kyle Johnson <kjohnson@prosserlaw.com>
**Subject:** RE: Compton - Follow Up re: Buck Victim Fund

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

We are generally available in the morning tomorrow. Does 10:00am Central work for you?

If not, then please let us know if there is a better time for you tomorrow morning. Thanks!

- Jake

**From:** Fagel, Brian D. <FagelB@SEC.GOV>
**Sent:** Tuesday, January 14, 2020 2:31 PM
**To:** Jake Dickerson <jdickerson@prosserlaw.com>
**Cc:** Niel Prosser <np@prosserlaw.com>; Kyle Johnson <kjohnson@prosserlaw.com>
**Subject:** RE: Compton - Follow Up re: Buck Victim Fund

Are you available for a call tomorrow (Wednesday)?

**From:** Jake Dickerson <jdickerson@prosserlaw.com>
**Sent:** Wednesday, January 8, 2020 11:14 AM
**To:** Fagel, Brian D. <FagelB@SEC.GOV>
**Cc:** Borghard, Aleah <borgharda@SEC.GOV>; Niel Prosser <np@prosserlaw.com>; Kyle Johnson <kjohnson@prosserlaw.com>
**Subject:** RE: Compton - Follow Up re: Buck Victim Fund

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Thanks for the update, Brian. We'll look forward to hearing from you next week. Safe travels.

- Jake

**From:** Fagel, Brian D. <FagelB@SEC.GOV>
**Sent:** Wednesday, January 8, 2020 11:12 AM
**To:** Jake Dickerson <jdickerson@prosserlaw.com>
**Cc:** Borghard, Aleah <borgharda@SEC.GOV>; Niel Prosser <np@prosserlaw.com>; Kyle Johnson <kjohnson@prosserlaw.com>
**Subject:** RE: Compton - Follow Up re: Buck Victim Fund

We actually have an accountant who is in the process of doing the interest calculations right now. We should be able to get back to you soon (although it may not be until early next week because I'm traveling tomorrow and Friday).

**From:** Jake Dickerson <jdickerson@prosserlaw.com>
**Sent:** Wednesday, January 8, 2020 10:41 AM
**To:** Fagel, Brian D. <FagelB@SEC.GOV>
**Cc:** Borghard, Aleah <borgharda@SEC.GOV>; Niel Prosser <np@prosserlaw.com>; Kyle Johnson <kjohnson@prosserlaw.com>
**Subject:** Compton - Follow Up re: Buck Victim Fund

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Good morning Brian,

I hope that you had a great holiday season and that your New Year is off to a good start. I wanted to follow up to see if you needed anything else from us concerning the issues below and/or if you'd like to schedule a telephone conference to discuss any of this further. We are generally available for a telephone call with you this afternoon, tomorrow, and Friday if that would be helpful.

Thanks Brian.

- Jake

Jake Dickerson
Attorney
Prosser Law Firm
5865 Ridgeway Center Parkway, Suite 300
Memphis, Tennessee 38120
901-820-4433
www.prosserlaw.com

---

**From:** Fagel, Brian D. <FagelB@SEC.GOV>
**Sent:** Friday, December 20, 2019 4:10 PM
**To:** Jake Dickerson <jdickerson@prosserlaw.com>
**Cc:** Borghard, Aleah <borgharda@SEC.GOV>; Niel Prosser <np@prosserlaw.com>; Kyle Johnson <kjohnson@prosserlaw.com>
**Subject:** RE: Compton - Follow Up re: Kokesh and 28 USC 2462

Jake – I'll take a closer look at your email, but I wanted to let you know that I've been approaching a similar conclusion (after consultation with others here). So we should be able to come to a resolution beneficial to your client. I'll be in touch, but probably not until after the new year.

Thanks and happy holidays,
Brian

---

**From:** Jake Dickerson <jdickerson@prosserlaw.com>
**Sent:** Friday, December 20, 2019 3:56 PM
**To:** Fagel, Brian D. <FagelB@SEC.GOV>
**Cc:** Borghard, Aleah <borgharda@SEC.GOV>; Niel Prosser <np@prosserlaw.com>; Kyle Johnson <kjohnson@prosserlaw.com>
**Subject:** Compton - Follow Up re: Kokesh and 28 USC 2462

> CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Brian,

Thank you for taking the time to speak with us on Wednesday afternoon concerning Ms. Compton's distribution from the Buck Victim Fund. This email is to follow up on the issue of whether the 5-year limitations period that governs SEC enforcement actions should somehow also function to restrict the potential payment Ms. Compton can receive from the Buck Victim Fund. After researching 28 USC 2462 (5-year statute of limitations for an enforcement action against a Defendant to recover "any civil fine, penalty, or forfeiture"); the *Kokesh* decision; and related case law, we believe that the 5-year statute of limitations is clearly <u>not</u> applicable to limit Ms. Compton's distribution from the Buck Victim Fund and that she should be eligible to recover from the Fund going back to at least January 1, 2012.

Courts have been unanimous in their determination that Section 2462's 5-year statute of limitations is just that – a standard statute of limitations that benefits a Defendant – which is waived if not affirmatively raised by the Defendant. It is <u>not</u> a jurisdictional statute that extinguishes all rights and remedies relating to a crime, as would be the case if 28 USC 2462 were a statute of repose or some other jurisdictional statute. See *In re:*

*Horowitz*, File No. 3-15790 (Jan. 28, 2015) (attached) ("the overwhelming weight of authority recognizes Section 2462 as a statute of limitations" and not a statute of repose (quoting *SEC v. Geswein*, 2 F. Supp. 3d 1074, 1084 (N.D. Ohio 2014)).

We have not been able to find any authority that might suggest that 28 USC 2462 could limit a Victim from recovering from an existing Fund that resulted from a guilty plea and settlement from the Defendant. In fact, Courts have been unanimous that 28 USC 2462 should be narrowly construed in favor of permitting recovery against the Defendant and in favor of Victims. As a result, 28 USC 2462's 5-year statute of limitations does not apply to Ms. Compton's distribution from the Buck Victim Fund, and she should be eligible to recover from the Fund going back to the beginning of 2012, if not before.

As for *Kokesh,* the Supreme Court held that distributions from a Victim Fund are not governed by "any statutory command" and are instead "within the Court's discretion" as guided by principles of equity and fairness. *Kokesh*, 137 S.Ct. at 1644. Because distributions from a Victim Fund are matters of discretion, equity, and fairness, the statute of limitations that applies to actions by the SEC against a Defendant have no bearing on a Victim's ability to recover from an existing Victim Fund. Even if a statute of limitations applicable to Buck could be a factor here (which it is not), that limitations defense was waived by Buck when he agreed to turn over the $5.1 million in funds to the SEC. As a result, Ms. Compton should be eligible to recover from the Victim Fund for losses going back to at least the beginning of 2012.

Given: a) the egregious circumstances here; b) Buck's settlement and guilty plea; and c) the existence of an established Victim Fund with no other victims, we believe that the SEC should distribute to Ms. Compton $782,220 (plus applicable pre-judgment interest), which represents the difference between actual commissions charged by Buck and the hypothetical management fee from January 1, 2012 through February 27, 2015 (as discussed in our December 3, 2019 email to you). Alternatively, Ms. Compton, at a minimum, should receive the full $633,183 previously proposed by the SEC, plus accrued interest. We submit that the interests of equity, justice, and fairness are best served with such a distribution, since – as we have discussed – Ms. Compton's damages extend far beyond those that can be compensated from the Victim's Fund.

Thank you for your time and attention to this matter. I regret having to send you such a lengthy email just before the holiday week, but I wanted to get you this analysis as soon as possible, so that you can have it when considering these matters after the Christmas holiday. Please let us know if you have any questions about any of this. We are happy to provide more case law analysis if that would be helpful. And we are available to talk with you on the phone to discuss this further whenever it would be convenient for you. If I don't get a chance to speak with you before then, I hope you and your family have a very happy holidays!

Sincerely,

Jake Dickerson
Attorney
Prosser Law Firm
5865 Ridgeway Center Parkway, Suite 300
Memphis, Tennessee 38120
901-820-4433
www.prosserlaw.com

IN ARBITRATION PROCEEDINGS BEFORE
FINRA DISPUTE RESOLUTION

| | |
|---|---|
| **IN THE MATTER OF ARBITRATION BETWEEN:** ) | |
| ) | |
| **JANICE J. COMPTON** ) | |
| ) | |
| **CLAIMANT,** ) | |
| ) | **CASE NO. 20-02468** |
| **vs.** ) | |
| ) | |
| **MERRILL LYNCH, PIERCE, FENNER &** ) | |
| **SMITH, INC., THOMAS J. BUCK and** ) | |
| **JOHN DOE(S),** ) | |
| ) | |
| **RESPONDENTS.** ) | |

**CLAIMANT'S OBJECTIONS AND RESPONSES TO RESPONDENT BUCK'S FIRST
REQUEST FOR DOCUMENTS AND INFORMATION PURSUANT TO RULE 12507**

Pursuant to the FINRA Code of Arbitration Procedure, Claimant, Janice J. Compton ("Ms.

Compton"), by and through her counsel, hereby files these Objections and Responses (the

"Responses") to Tom Buck's ("Buck") First Request for Documents and Information Pursuant to

Rule 12507 (hereinafter the "Requests").

**GENERAL OBJECTIONS**

Each of Ms. Compton's Responses below are made subject to and without waiving the

following general objections (collectively the "General Objections") which are hereby

incorporated by reference into each Response where applicable:

1. Ms. Compton objects to Buck's Guidelines and Definitions as follows:

    a. Ms. Compton objects to the extent each definition is vague, overly broad, burdensome,

        distorts the normal and obvious meaning of the defined term, seeks documents which

        are privileged, which have no relevance to this action, and/or which conflict with the

1

prior Orders of the Panel (e.g. creation of a privilege log at this juncture). Ms. Compton's Responses should therefore not be construed as comporting with Buck's Guidelines and Definitions and defined terms will therefore be interpreted pursuant to their ordinary meaning.

b. Ms. Compton objects to Buck's Guidelines and Definitions #5, #6, and #9 on the grounds that they are overly broad and unduly burdensome. Such definitions are also vague and ambiguous and/or violate the discovery requirements of the FINRA Rules. Ms. Compton also objects to the extent these items require her to answer on behalf of people over whom she has no control.

c. Ms. Compton objects to Buck's Guidelines and Definitions #6 and #9 because these exceed the proper scope of FINRA Rule 12507 and are unduly burdensome, precluding an accurate response.

2. Ms. Compton's Responses and Objections are based upon the facts, documents, and information presently known and available to her. Discovery, investigation, and analysis are ongoing and may disclose the existence of additional facts, add meaning to known facts, and establish entirely new factual conclusions or legal contentions, or possibly lead to additions, variations, changes or retractions to these Responses. Ms. Compton expressly reserves the right to amend, modify, supplement and/or withdraw her Responses.

3. Ms. Compton objects to each request to the extent that it seeks information and/or documents that are protected from disclosure based upon any privilege, including the attorney-client privilege, the attorney work product doctrine, the joint defense privilege, the privilege for documents created in anticipation of litigation, the accountant privilege, or any other applicable privilege. Ms. Compton will not produce any such information or document knowingly. Any

privileged document/information that has been/is produced, was unintentionally produced , and Ms. Compton reserves the right to maintain later that any such document/information is still protected by the applicable privilege and must be returned and the information contained therein not be used. It is specifically represented that disclosure of any such protected information is inadvertent.

4. Ms. Compton objects to each request to the extent it seeks information and/or documents containing private or personal information or information that is commercially sensitive or otherwise confidential. Documents containing such information relating to Ms. Compton are only be produced subject to the Panel's Confidentiality Order.

5. Where Ms. Compton agrees to produce documents herein, any production shall be limited to documents still in existence and which can be located by means of a reasonable search of the location(s) reasonably likely to contain responsive documents.

6. Ms. Compton objects to each request to the extent it calls for the production of documents outside of her possession, custody or control.

7. Each General Objection herein applies, to the extent applicable, to each of Ms. Compton's Responses, even though they may not necessarily be repeated in the response to each individual request. The assertion of the same, similar, or additional objections in Ms. Compton's specific objections to an individual request (or the failure to assert any additional objection) to a request does not waive Ms. Compton's reliance upon the General Objections set forth in this section.

8. The fact that Ms. Compton provides information or documents in response to a request should not be construed as an admission or acknowledgment that such document/information is relevant or admissible at any hearing. Ms. Compton reserves any and all objections to the admissibility of any information/documents provided herein.

3

9.  The agreement to produce a document or category of documents is not a representation that such document or category of documents exists or that it is in Ms. Compton's possession, custody, or control.

10. Ms. Compton objects to each request to the extent that it is vague, overly broad and/or unduly burdensome.

11. Ms. Compton objects to each request to the extent it seeks documents and/or information which are not relevant or for which the relevance is outweighed by the burden of review and/or production.

12. Ms. Compton objects to each request to the extent it seeks documents and/or information that calls for information due at the 20-day exchange.

## RESPONSES TO DOCUMENT REQUESTS

All of the following responses are made subject to and without waiving the General Objections as stated above.

*Request #1 – What are Claimant's Damages?*[1]

1.  *Produce your damage calculations. We don't seek privileged communications. Nor should we be compelled to do our own calculation, when, respectfully, your client was "delighted" with what she already got from Tom Buck's fund.*

    **Ms. Compton's Response: Ms. Compton objects to the argumentative (and prolix) nature of this Request. While Mr. Buck's format is novel, it does not**

---

[1] In Buck's discovery requests, he listed two different requests under the first heading of Request #1 and misnumbers others throughout. To avoid confusion, Ms. Compton's responses follow the number in Buck's requests.

4

change the fact that any preliminary damages calculations are privileged work-product. In addition, the Request is premature since discovery is ongoing and no damages calculations have been finalized. Ms. Compton continues to rely on the Response she provided to Merrill's similar Request No. 16 in its First Set of Discovery and hereby incorporates its substance by reference herein. Ms. Compton directs Mr. Buck to her Merrill account statements, trade confirmations and correspondence with Merrill/Buck that have been produced to date by all parties. To the extent anything further is sought, Ms. Compton objects and states that documentation to support her claimed trading damages will be provided at the 20-day exchange. Ms. Compton also relies upon her General Objections.

2. *Identify the expert witness firm and address that prepared it.*

   <u>Ms. Compton's Response:</u> Ms. Compton objects to this Request based upon relevance, privilege and because it is at best premature. Ms. Compton has no obligation to identify non-testifying experts and her counsel has not yet determined who may be called to render expert testimony at trial. Moreover, Mr. Buck has likewise refused to produce documents pertaining to his experts, claiming that any such production is premature.[2] Ms. Compton will

---

[2] Ms. Compton sought from Mr. Buck the identity of "each expert [he] intend[s] to call at the final hearing and produce each such expert's resume, all publications he/she has authored and any report prepared for this case" to which Mr. Buck responded

> Subject to and without waving any of his General Objections, Mr. Buck objects to this request as it is premature. If Mr. Buck elects to call an expert at the hearing, responsive documents and information will be provided in compliance with FINRA Rule 12514.

thus produce the CV of expert(s) she anticipates calling at the parties' 20-day exchange, pursuant to FINRA Rule 12514.

*Request #2 – Attorney's Fees*

1. *Produce Claimant's letter of retention with your firm.*

   **Ms. Compton's Response: Ms. Compton directs Mr. Buck to Compton_013828-013835 and Compton_013842-013849. To the extent anything further is sought then Ms. Compton objects and relies upon her General Objections.**

2. *Produce all invoices since being retained with privileged information redacted. This is a continuing request).*

   **Ms. Compton's Response: In addition to her General Objections, Ms. Compton objects to this request as premature and thus also on the basis of relevance. The total amount of attorneys' fees Ms. Compton will be seeking at trial will not be known until at best shortly before trial. The parties have agreed that they will mutually produce the legal invoices of their respective clients, redacted for privileged matter, at a later date or near the 20-day exchange.**

*Request #3 – Statute of Limitations*

*Produce the executed tolling agreement.*

   **Ms. Compton's Response:** Ms. Compton agrees to produce the subject tolling

---

(*See* Mr. Buck's Response to Ms. Compton's Request No. 85.) Notably, Merrill took the same approach to a similar request propounded to it, stating that such a Request is premature and beyond the scope of discovery contemplated by the FINRA Rules/Discovery Guide

6

agreements. To the extent anything further is sought, Ms. Compton relies upon her General Objections.

<u>*Request #4 – Other Accounts*</u>

*Produce the opening account forms for the JP Morgan, Fidelity and Vanguard accounts opened by Claimant.*

**<u>Ms. Compton's Response:</u> Ms. Compton refers Buck to her response to Request No. 6 of Merrill's First Request for Documents, which is hereby incorporated by reference, and the documents she produced pursuant thereto. Ms. Compton produced all account opening forms in her possession that she was able to locate. Ms. Compton objects to doing anything further based on both burden and relevance.**

<u>*Request #6 (sic) – Trades At Issue Within Six Year of Filing Statement of Claim*</u>

*Identify which trades as set forth in the August 2014 – February 2015 Merrill Lynch monthly account statements are at issue in this case (i.e., for which Claimant seeks damages), especially in light of the following statement in paragraph 8 of the Statement of Claim: During 2014, however, his trading slowed and in 2015 it stopped altogether."*

**<u>Ms. Compton's Response:</u> Ms. Compton objects to the argumentative (and prolix) nature of this Request, the implication that there is some legal basis to limit trades to those occurring "within six years of the filing of the Statement of Claim", or that the dates specified in Mr. Buck's Request even correspond to such a date range. Ms. Compton also objects to this Request because it is not limited to the "identification of individuals, entities, and time periods related to**

the dispute", and is thus prohibited under FINRA Rule 12507. Subject to the above and her General Objections, Ms. Compton states that *all trades* are at issue. By his own admission, Buck usurped control over Ms. Compton's accounts thereby assuming a fiduciary duty legally obligating him to act in her best interest.

## RIGHT TO SUPPLEMENT

Due to the ongoing nature of discovery and her investigation of the facts, Ms. Compton reserves the right to amend, change and/or supplement her objections/responses as information and documents become available.

Respectfully submitted this 17th day of September, 2021.

/s/ Rob Clapper
Niel Prosser (TN #11647)
Rob Clapper (TN #34180)
Kyle Johnson (TN #36066)

The Prosser Law Firm, PLC
5865 Ridgeway Center Parkway, Suite 300
Memphis, Tennessee 38120
Telephone: (901) 820-4433

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing "Claimant's Objections And Responses

8

To Tom Buck's First Request For Documents And Information Pursuant To Rule 12507" has been sent to counsel by way of electronic mail and filed via the FINRA DR portal this 17th day of September 2021.

/s/ Rob Clapper
Rob Clapper